# EXHIBIT D



M-10-468

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Pursuant to Section 157(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 are referred to the bankruptcy judges for this district.

So Ordered,

ROBERT J. WARD
Acting Chief Judge

July 10, 1984

MICROFILM
JUN 11 1984

David M. Friedman
Christopher P. Johnson
David E. Ross
Adina G. Storch
KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP
1633 Broadway
New York, NY 10019
Telephone:  (212) 506-1700
Facsimile:   (212) 506-1800

*Counsel to David Lichtenstein and Lightstone Holdings LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

BANK OF AMERICA, N.A.; WACHOVIA BANK,
N.A; and U.S. BANK NATIONAL ASSOCIATION,
as TRUSTEE for MAIDEN LANE COMMERCIAL
MORTGAGE BACKED SECURITIES TRUST 2008-1,

                    Plaintiffs,

        -against-

LIGHTSTONE HOLDINGS, LLC and
DAVID LICHTENSTEIN,

                   Defendants.

---------------------------------------------------------------X

**NOTICE OF REMOVAL**

     PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1452, 28 U.S.C. § 157(a), Federal

Rule of Bankruptcy Procedure 9027, and further based upon the grounds set forth in this Notice

of Removal, defendants David Lichtenstein ("Lichtenstein") and Lightstone Holdings LLC

("Lightstone") (together, the "Removing Defendants"), by and through their attorneys, Kasowitz,

Benson, Torres & Friedman LLP, hereby remove this action from the Supreme Court of the State

of New York, County of New York, to the United States District Court for the Southern District

of New York. This Court has original jurisdiction of this case pursuant to 28 U.S.C. § 1334.

In support of their Notice of Removal, the Removing Defendants state as follows:

1.    This action involves claims brought against the Removing Defendants by certain lenders in a complex commercial real estate financing transaction undertaken in connection with the June 2007 purchase of a hotel chain, Extended Stay Hotels, Inc. ("Extended Stay"), by entities affiliated with the Removing Defendants. Extended Stay was purchased for approximately $8 billion, $7.4 billion of which was financed through a combination of mortgage loans, some of which were subsequently securitized and resold, and so-called "mezzanine" debt (the "Transaction"). In connection with the Transaction, the Removing Defendants entered into a series of agreements with certain lenders which, among other things, are alleged to provide for the guaranty of certain indebtedness up to $100 million in limited circumstances. Removing Defendant Lichtenstein is the Chief Executive Officer, President and Chairman of Extended Stay. Removing Defendant Lightstone Holdings, LLC, is another entity owned by Lichtenstein.

2.    On June 15, 2009, Extended Stay filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). Extended Stay's bankruptcy case is pending before federal Bankruptcy Court Judge James M. Peck under the case name In re Extended Stay Inc., Case No. 09-13764 (JMP) (Bankr. S.D.N.Y.).

3.    On June 16, 2009, plaintiffs Bank of America, N.A., Wachovia Bank, N.A., and U.S. Bank National Association, as trustee for Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1 (collectively, "Plaintiffs"), filed a summons with notice in the Supreme Court of the State of New York seeking to enforce one of the contractual guaranties entered into by the Removing Defendants in connection with the financing of the Transaction. According to the summons, Plaintiffs are seeking declaratory relief and money damages against the Removing

2

Defendants in excess of $100 million. A copy of the summons with notice is attached hereto as Exhibit A.

4.    As of this date, the Removing Defendants have not been served with a complaint and no other proceedings have transpired in the state court action.

5.    The issues and agreements at stake in the present action are inextricably linked to Extended Stay's pending bankruptcy proceedings. The connections to the bankruptcy include but are not limited to the following:

   a.  First, if the Bankruptcy Court approves Extended Stay's proposed restructuring plan, the Removing Defendants would be relieved of any liability under the alleged guarantees that the Plaintiffs in the instant action seek to enforce.

   b.  Second, under the terms of the loan agreements, any recovery awarded to Plaintiffs under the guarantees depends, among other things, upon a threshold determination of the extent of actual losses suffered by Plaintiffs as a result of the bankruptcy filing. Any such determination would be premature while the bankruptcy case is pending.

   c.  Third, any recovery awarded under the guarantees would be subject to a contractual *pro rata* allocation agreed upon by the various lenders in the Intercreditor Agreement, as likely to be interpreted by the Bankruptcy Court.

   d.  Finally, the prohibition against duplicative recovery requires that, in the unlikely event a judgment is obtained by Plaintiffs in this action, the resulting recovery be applied as an offset to reduce their claims against the bankruptcy estate, thereby potentially increasing the distribution to lenders junior to Plaintiffs.

3

6.      Each claim and cause of action in this action is related to the Chapter 11 case. This action is one "arising under title 11, or arising in or related to [a case] under title 11," and this Court therefore has original jurisdiction over this action. 28 U.S.C. § 1334(b). Jurisdiction exists under Section 1334(b) if the case "could conceivably have any effect on the estate being administered in bankruptcy." Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). See In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992) (adopting the "conceivable effect" standard in the Second Circuit). "Related to" jurisdiction is construed broadly in the Second Circuit to encompass "nearly every matter directly or indirectly related to the bankruptcy." Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 103 (2d Cir. 2004). A proceeding is "related to" a bankruptcy proceeding even if it does not involve claims against the debtor or the debtor's property. See In re Cuyahoga, 980 F.2d at 114.

7.      In addition to the reasons cited above, because the guaranty agreements at issue in the instant action internally reference, and must be construed in connection with, the loan agreements, Intercreditor Agreement and various other agreements central to the administration of Extended Stay's bankruptcy estate, the "conceivable effect" standard is satisfied here.

8.      28 U.S.C. § 1452(a) provides: "A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Thus, because this Court has original jurisdiction over Plaintiffs' claims under Section 1334, those claims may be removed to this Court under Section 1452. Further, removal of each claim and cause of action of the civil action to the Bankruptcy Court is authorized by 28 U.S.C. §§ 1452, 1334 and 157 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of

the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting

C.J.) ("Order of Referral"). Removal is in accordance with Rule 9027 of the Federal Rules of

Bankruptcy Procedure.

      9.     Finally, the claims and causes of action subject to removal are "core" matters with

respect to Extended Stay's bankruptcy proceedings because their resolution will have a clear and

direct impact on property of the estate under 11 U.S.C. § 541. Indeed, the rights and

responsibilities of the parties to this action cannot be decided without threshold determinations

by the Bankruptcy Court, and certain claims may be mooted altogether if the restructuring plan is

approved as proposed. As a result, this action clearly involves matters which "invoke[]

substantive right[s] provided by title 11" or that "could arise only in the context of a bankruptcy

case." See In re Housecraft Indus. USA, Inc., 310 F.3d 64, 70 (2d Cir. 2002), citing In re Wood,

825 F.2d 90, 96 (5th Cir. 1987).

      10.    In addition, resolution of the claims asserted in this action will significantly affect

the handling and administration of the bankruptcy estate, would involve an estimation of claims

or interests for the purpose of confirming a plan of reorganization under Chapter 11, and would

affect the adjustment of the debtor/creditor or the equity security holder relationship.

Consequently, this action also involves "core" bankruptcy matters under 28 U.S.C. § 157

(b)(2)(A), (B) and (O).

      11.    If the claims are determined to be non-core matters – and they should be not be –

the Removing Defendants consent to the entry of final orders or judgments by the Bankruptcy

Court.

      12.    Pursuant to 28 U.S.C. § 1446(a) and/or Federal Rule of Bankruptcy Procedure

9027(a)(1), all process, pleadings and orders served on the Removing Defendants in the state

court action are being filed along with this Notice of Removal, and are attached as Exhibit A hereto.

13.     Pursuant to 28 U.S.C. § 1446(d) and/or Federal Rule of Bankruptcy Procedure 9027(b) and (c), promptly after the filing of the instant Notice of Removal with this Court, copies of the instant Notice of Removal (without the attached state court pleadings) will be filed with the Clerk of the Court for the Supreme Court of the State of New York, County of New York and will be served on counsel for the other parties to the removed action.

14.     This Notice of Removal is timely filed within thirty (30) days of service of the summons in accordance with 28 U.S.C. § 1446(b) and Fed. R. Bankr. P. 9027(a)(3).

WHEREFORE, the instant action is hereby removed to this Court, and should thereafter be referred to the Bankruptcy Court pursuant to the Order of Referral.

Dated: New York, New York
July 8, 2009

KASOWITZ, BENSON,
TORRES & FRIEDMAN LLP

By: _____

David M. Friedman (dfriedman@kasowitz.com)
Christopher P. Johnson
David E. Ross
Adina G. Storch
1633 Broadway
New York, NY 10019
(212) 506-1700

*Counsel to David Lichtenstein and*
*Lightstone Holdings LLC*

# EXHIBIT A

B 106—Summons with notice, blank court, personal or substituted service, 4-94

© 1993 JULIUS BLUMBERG, INC.
PUBLISHER, NYC 10013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 601853/09
Date purchased 6/16/09

Bank of America, N.A.; Wachovia Bank, N.A.; and U.S. Bank National Association, as Trustee for Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1

Plaintiff(s) designate(s)   Date filed
New York
County as the place of trial. 6/16/09

The basis of the venue is

*Plaintiff(s)*

CPLR Section 509

*against*

**Summons**
**with Notice**

Lightstone Holdings, LLC and David Lichtenstein

Plaintiff(s) reside(s) at

Bank of America, N.A.

*Defendant(s)*

900 West Trade St., Suite 650
Mail Code NC1-026-06-01
Charlotte, NC 28255

To the above named Defendant(s)

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within   20   days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated, June 16, 2009

Defendant's address:
Lightstone Holdings, LLC, 323 Third St., Lakewood, NJ 08701
Attention: David Lichtenstein

David Lichtenstein, 323 Third St., Lakewood, NJ 08701
**Notice:** The nature of this action is

Suit to enforce guaranty related to commercial real estate mortgage

Attorney(s) for Plaintiff

Office and Post Office Address

KAYE SCHOLER LLP
H. Peter Haveles, Jr.
425 Park Ave.
New York, NY 10022
Attorneys for Plaintiff Bank of America, N.A.

The relief sought is

Declaratory judgment and money damages in excess of $100 million

Upon your failure to appear, judgment will be taken against you by default for the sum of $100 million with interest from   June 15, 2009   and the costs of this action.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
BANK OF AMERICA, N.A.; WACHOVIA BANK,      :
N.A; and U.S. BANK NATIONAL ASSOCIATION,    :
as TRUSTEE for MAIDEN LANE COMMERCIAL    :
MORTGAGE BACKED SECURITIES TRUST 2008-1,   :

                  Plaintiffs,        :

                              :

              -against-         :

                              :
LIGHTSTONE HOLDINGS, LLC and           :
DAVID LICHTENSTEIN,               :

             Defendants.      :
------------------------------------------------------------X

09 CV 6151

**Rule 7.1 Statement**

     Pursuant to Federal Rule of Civil Procedure 7.1 and to enable District Judges and

Magistrate Judges of the Court to evaluate possible disqualification or recusal, the undersigned

counsel for defendants Lightstone Holdings LLC and David Lichtenstein, hereby certifies that

defendant Lightstone Holdings LLC (1) has no parent corporation and (2) that no publicly owned

corporation owns 10% or more of its stock.

Dated:    July 8, 2009
           New York, New York

Respectfully submitted,

KASOWITZ, BENSON,
TORRES & FRIEDMAN LLP

By: /s/ David M. Friedman
    David M. Friedman
    Christopher P. Johnson
    David E. Ross
    Adina G. Storch
    1633 Broadway
    New York, NY 10019
    (212) 506-1700

    *Counsel to David Lichtenstein and*
    *Lightstone Holdings LLC*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------x
BANK OF AMERICA, N.A., et al.,                    :

                     Plaintiffs,          :        Index No. 601853/09

         -against-                       :

LIGHTSTONE HOLDINGS, LLC, et al.,                 :

                 Defendants.          :
------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT


KAYE SCHOLER LLP
Office and Post Office Address:
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8000
Attorneys for Plaintiffs Bank of America, N.A. and
    Merrill Lynch Mortgage Lending, Inc.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Office and Post Office Address:
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Attorneys for Plaintiff U.S. Bank National
    Association (not individually but solely as Trustee
    for Maiden Lane Commercial Mortgage Backed
    Securities Trust 2008-1)

MORRISON & FOERSTER LLP
Office and Post Office Address:
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Attorneys for Plaintiff Wachovia Bank, N.A.

KRAMER, LEVIN, NAFTALIS & FRANKEL LLP
Office and Post Office Address:
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9200
Attorneys for Plaintiffs Debt II ESH, L.P., Debt-U,
    ESH, L.P. and KeyBank National Association

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT ................................................................................................................. 4

POINT I    As a Matter of Law, Defendants Are Obligated To Pay Plaintiffs $100 Million Under the Guaranty Agreements .......................................... 5

POINT II    Plaintiffs Are Entitled To Recover the Costs and Expenses Incurred in Enforcing Their Rights Under the Guaranty Agreements ........................... 7

CONCLUSION .............................................................................................................. 9

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

Banesto Banking Corp. v. Teitler,
172 A.D.2d 469 (1st Dep't 1991) ........................................................................5

Bank Leumi Trust Co. of New York v. Rattet & Liebman,
182 A.D.2d 541 (1st Dep't 1992) ........................................................................5

Beer Sheva Realty Corp. v. Ponjnitayapanu,
214 A.D.2d 352 (1st Dep't 1995) ........................................................................7

Boland v. Indah Kiat Financial (IV) Mauritius Ltd.,
291 A.D.2d 342 (1st Dep't 2002) ........................................................................5

Chase Manhattan Bank v. Marcovitz,
56 A.D.2d 763 (1st Dep't 1977) ........................................................................8

Council Commerce Corp. v. Paschalides,
92 A.D.2d 579 (2d Dep't 1983) ........................................................................4, 7

DDS Partners, LLC v. Celenza,
6 A.D.3d 347 (1st Dep't 1995) ........................................................................8

International Business Machines Corp. v. Murphy & O'Connell,
183 A.D.2d 681 (1st Dep't 1992) ........................................................................8

Jason Trading Corp. v. Lason Trading Corp.,
303 A.D.2d 180 (1st Dep't 2003) ........................................................................4

JPMorgan Chase Bank v. Gamut-Mitchell, Inc.,
27 A.D.3d 622 (2d Dep't 2006) ........................................................................7

Kowlaski Enterprises, Inc. v. SEM International L.L.C.,
250 A.D.2d 648 (2d Dep't 1998) ........................................................................7

Manufacturers Hanover Trust Co. v. Green,
95 A.D.2d 737 (1st Dep't 1983) ........................................................................4-5, 6

Simoni v. Time-Line, Ltd.,
272 A.D.2d 537 (2d Dep't 2000) ........................................................................8

## PRELIMINARY STATEMENT

Plaintiffs Bank of America, N.A. ("Bank of America"), Wachovia Bank, N.A. ("Wachovia"), Merrill Lynch Mortgage Lending, Inc. ("Merrill Lynch"), U.S. Bank National Association (not individually but solely in its capacity as Trustee (the "Maiden Lane Trustee") for Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1 (the "Maiden Lane Trust")), Debt II ESH, L.P. ("Debt II"), Debt-U ESH, L.P. ("Debt-U") and KeyBank National Association ("KeyBank") submit this memorandum of law in support of their motion for summary judgment in lieu of a complaint.

This is an action to recover $100 million pursuant to guaranty agreements given by defendants Lightstone Holdings, LLC ("Lightstone") and David Lichtenstein ("Lichtenstein") in consideration of a series of mezzanine loans made to affiliates of Extended Stay Hotels L.L.C. ("ESH"), in all of which defendants have a direct or indirect interest. Defendants are primary obligors under those guaranty agreements.

All of the pertinent facts are undisputed, and relief under CPLR 3213 is appropriate. Defendants' obligations are unambiguously set forth in the guaranty agreements, by which defendants unconditionally guaranteed to pay the indebtedness due from the borrowers. Their obligation to pay immediately the indebtedness due plaintiffs was triggered by an objective indisputable fact, i.e., the borrowers' filing of voluntary petitions under the Bankruptcy Code.

Under the guaranty agreements, the aggregate amount of the indebtedness that defendants are jointly and severally obligated to pay by virtue of the borrowers' filing of bankruptcy petitions is $100 million. Despite due demand, defendants have not paid plaintiffs any of that indebtedness. Thus, as a matter of law, plaintiffs are entitled to a judgment jointly and severally against defendants, awarding plaintiffs $100 million plus prejudgment interest, costs and expenses (including reasonable attorneys' fees).

# STATEMENT OF FACTS

In June 2007, Bank of America, Wachovia and Bear Stearns Commercial Mortgage, Inc. ("Bear Stearns") (collectively, the "Lenders") made a series of mezzanine loans to the chain of companies that indirectly owned ESH in connection with the mortgage loan that was extended to ESH. See Affidavit of David Fallick, sworn to July 6, 2009 ("Fallick Aff."), ¶ 3. The Lenders made five mezzanine loans to ESH/Homestead Mezz L.L.C., ESA P Mezz L.L.C., ESA Mezz L.L.C., ESH/Homestead Mezz 2 L.L.C., ESA P Mezz 2 L.L.C., ESA Mezz 2 L.L.C., ESH/Homestead Mezz 3 L.L.C., ESA P Mezz 3 L.L.C., ESA Mezz 3 L.L.C., ESH/Homestead Mezz 4 L.L.C., ESA P Mezz 4 L.L.C., ESA Mezz 4 L.L.C., ESH/Homestead Mezz 5 L.L.C., ESA P Mezz 5 L.L.C. and ESA Mezz 5 L.L.C. (each a "Borrower" and collectively, the "Borrowers"). Id. ¶ 16. The loans to the Borrowers are collectively referred to as the "Mezzanine Loans". Each of the Mezzanine Loans is evidenced by a corresponding loan agreement (collectively, the "Mezzanine Loan Agreements").

Under the Mezzanine Loan Agreements, the Borrowers obtained loans in the aggregate amount of $1.9 billion. Id. The Mezzanine Loans were secured by the membership interests in each of the ESH entities to which each respective Mezzanine Loan was made. Id. ¶ 4.

At that time, each Borrower gave the Lenders a promissory note to repay the total amount of the indebtedness due under each Mezzanine Loan Agreement. Id. ¶ 19. On December 16, 2008, the Borrowers executed replacement notes for each of the initial notes (the replacement notes are collectively referred to as the "Notes"). Id. ¶ 20. As partial consideration for those Mezzanine Loans, defendants also entered guaranty agreements for each one of those Loans. Id. ¶¶ 3, 23. As of and since December 16, 2008, Bank of America, Wachovia, Merrill Lynch, the Maiden Lane Trust, Debt II, Debt-U and KeyBank are the holders of the Notes for the Mezzanine Loans. Id. ¶ 22.

The Mezzanine Loans were non-recourse.  Id. ¶ 4.  Under certain circumstances, however, the Mezzanine Loans became fully recourse.  Id.

Under Section 1.1 of each Guaranty Agreement, each Guarantor:

> irrevocably and unconditionally guarantees to Lender [i.e., plaintiffs] and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise.  Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.

Id., Exs. K, L, M, N, O at 2.

Section 1.2 of each Guaranty Agreement defines "Guaranteed Obligations" as including "the obligations or liabilities of Borrower to Lender under Section 9.4 of the Loan Agreement."  Id.  Section 9.4(b) of each Mezzanine Loan Agreement provides that, if (among others) the Mortgage Borrower, an Operating Lessee, a Mortgage Loan Principal, the Borrower, a Senior Mezzanine Borrower or the Property Owner (as those terms are defined in the Mezzanine Loan Agreement) files a voluntary petition under the Bankruptcy Code,[1] the debt due under the Mezzanine Loans becomes fully recourse to the Borrower and that the debt is immediately due and payable.  See, e.g., id., Ex. A at 138.

On June 15, 2009, all of the Borrowers, as well as the Mortgage Borrower and the Property Owner, filed voluntary petitions under the Bankruptcy Code.  Id. ¶ 5.  The bankruptcy cases are administratively consolidated under the caption In re Extended Stay Hotels LLC, No. 09-13764 JMP (Bankr. S.D.N.Y.).  Id.  As a result, the amounts that the Borrowers owed under the Mezzanine Loan Agreements became fully recourse and immediately due and payable.  Id.

---

[1]     The Borrower are the parties to whom the Mezzanine Loans were made.  See this Brief at 2, supra; Fallick Aff. ¶ 27 n.1.

Accordingly, defendants, as primary obligors, are obligated to pay the indebtedness due and owing from the Borrowers pursuant to Section 9.4(b) of each Mezzanine Loan Agreement. Id. ¶ 5. Notwithstanding the $1.9 billion indebtedness, pursuant to Section 1.2 of the Guaranty Agreements, defendants' aggregate liability for the debt due and owing under Section 9.4(b) of all Mezzanine Loan Agreements is fixed at $100 million. Id. ¶¶ 3, 28, Exs. K, L, M, N, O at 2. Under Section 5.6 of each Guaranty Agreement, defendants are jointly and severally liable for payment of that amount. Id. ¶ 29, Exs. K, L, M, N, O at 11.

None of the indebtedness due and owing to the plaintiffs under the Notes has been repaid. Id. ¶ 31. On June 16, 2009, plaintiffs notified Lightstone and Lichtenstein that their obligations as primary obligors to pay $100 million under the Guaranty Agreements were due and owing. Id. ¶ 33, Ex. P. Despite plaintiffs' notice and demand, defendants have not paid any part of the $100 million for which they are liable. Id. ¶ 34. Defendants are presently obligated to make immediate payment of $100 million, plus prejudgment interest, cost and expenses (including reasonable attorneys' fees) pursuant to the express terms of the Guarantee Agreements. Id. ¶¶ 35, 36.

**ARGUMENT**

Under CPLR 3213, a plaintiff may move for summary judgment in lieu of serving a complaint if the action is "based upon an instrument for the payment of money only."

The unconditional guaranty of a loan, such as the defendants have executed here, "is an instrument for the payment of money only within the meaning of CPLR 3213." Jason Trading Corp. v. Lason Trading Corp., 303 A.D.2d 180, 180 (1st Dep't 2003); accord Council Commerce Corp. v. Paschalides, 92 A.D.2d 579, 579 (2d Dep't 1983) ("A personal guarantee qualifies as an instrument for the payment of money only"); Manufacturers Hanover Trust Co. v. Green, 95

4

A.D.2d 737, 737 (1st Dep't 1983) ("A guarantee may be the proper subject of a motion for summary judgment in lieu of complaint whether or not it recites a sum certain.").

A plaintiff establishes a <u>prima facie</u> case of its right to judgment under CPLR 3213 by presenting proof of the instrument and the defendant's failure to make the payments required under the instrument. <u>Boland v. Indah Kiat Financial (IV) Mauritius Ltd.</u>, 291 A.D.2d 342, 342-43 (1st Dep't 2002); <u>Banesto Banking Corp. v. Teitler</u>, 172 A.D.2d 469, 469 (1st Dep't 1991) ("Plaintiff established a prima facie right to recover based upon proof that defendant executed the note and subsequently failed to make payment thereon in accordance with its terms.").

As set forth below, as a matter of law, plaintiffs have met that burden, and each of defendants is jointly and severally liable for the payment of $100 million to plaintiffs.

## POINT I

### AS A MATTER OF LAW, DEFENDANTS ARE OBLIGATED TO PAY PLAINTIFFS $100 MILLION UNDER THE GUARANTY AGREEMENTS

The Court is presented with no issues of fact in this action. The terms of the Guaranty Agreements and defendants' obligations thereunder are plain and unambiguous. There is no factual dispute that the Borrowers are in default of their obligation to pay the indebtedness due under the Notes and the Mezzanine Loan Agreements and that defendants, as primary obligors, have failed to make any payment in accordance with their obligations under the Guaranty Agreements. Thus, as a matter of law, judgment should be entered against each of defendants jointly and severally.

Plaintiffs are entitled to proceed under CPLR 3213 to enforce their rights under the Guaranty Agreements. The Mezzanine Loan Agreements, the Notes and the Guaranty Agreements are <u>prima facie</u> evidence of defendants' obligation. <u>See Bank Leumi Trust Co. of New York v. Rattet & Liebman</u>, 182 A.D.2d 541, 542 (1st Dep't 1992) (bank established a <u>prima</u>

5

facie case by presenting notes and unconditional guaranties); <u>Manufacturers Hanover Trust Co.</u>, 95 A.D.2d at 737-38 (plaintiff, which appended the promissory notes, guaranties and a demand letter to its moving papers, established its entitlement to summary judgment).

Further, the following facts are not and cannot be disputed.

The Borrowers executed the Mezzanine Loan Agreements and the Notes. As consideration for each of those Mezzanine Loans, Lightstone and Lichtenstein each unconditionally guaranteed the full and immediate payment of the indebtedness due pursuant to Section 9.4(b) of the Mezzanine Loan Agreements. Under Section 9.4(b) of each of the Mezzanine Loan Agreements, the obligation to repay the Mezzanine Loans became fully recourse to each Borrower upon the filing of a voluntary petition under the Bankruptcy Code by various parties, including the Borrower, and the entire unpaid amount due and owing under the Mezzanine Loan Agreements and the Notes became immediately due and payable upon such a filing. Under Sections 1.1 and 1.2 of each Guaranty Agreement, defendants unambiguously agreed to guaranty, as primary obligors, the repayment of that indebtedness in an aggregate amount not to exceed $100 million.

On June 15, 2009, upon the Borrowers' filing of voluntary petitions under the Bankruptcy Code, the full amount of the $1.9 billion due and payable under the Mezzanine Loan Agreements and the Notes became due. Defendants jointly and severally became absolutely and unconditionally obligated under the Guaranty Agreements to pay the full outstanding indebtedness due under the Mezzanine Loans and the Notes, subject to the $100 million limitation. On June 16, 2009, plaintiffs notified defendants that their obligations under the Guaranty Agreements to pay plaintiffs the full amount of the indebtedness was immediately due and owing. Despite the notice and demand, defendants have failed to pay any part of the $100

million due and payable under the Guaranty Agreements. Consequently, defendants are in default of their payment obligation under the Guaranty Agreements, and they are unconditionally obligated to pay plaintiffs $100 million.

Plaintiffs are therefore entitled to summary judgment pursuant to CPLR 3213. See JPMorgan Chase Bank v. Gamut-Mitchell, Inc., 27 A.D.3d 622, 622-23 (2d Dep't 2006) ("[T]he plaintiff made a prima facie showing of its entitlement to judgment as a matter of law by submitting proof of the underlying credit agreement, the guarantee bearing her signature, and the failure to make payment in accordance with the terms of the credit agreement and the guarantee."); Kowlaski Enterprises, Inc. v. SEM International L.L.C., 250 A.D.2d 648, 648 (2d Dep't 1998); Beer Sheva Realty Corp. v. Ponjnitayapanu, 214 A.D.2d 352, 352 (1st Dep't 1995) ("Plaintiff established a prima facie case by proof of defendant's execution of the two promissory notes sued upon, and defendant's failure to make the payments called for by their terms."); Council Commerce, 92 A.D.2d at 579 ("no proof other than the instrument sued upon and the affidavit of nonpayment is needed to establish a prima facie case").

## POINT II

### PLAINTIFFS ARE ENTITLED TO RECOVER THE COSTS AND EXPENSES INCURRED IN ENFORCING THEIR RIGHTS UNDER THE GUARANTY AGREEMENTS

Under each of the Guaranty Agreements, defendants are liable for all the costs and expenses that plaintiffs may incur in connection with enforcing their rights under the Guaranty Agreements. Thus, in addition to $100 million in outstanding indebtedness, plaintiffs are also entitled to recover their costs and expenses from defendants.

Section 1.8 of the Guaranty Agreements provides:

> In the event that Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, immediately upon demand by Lender, pay Lender all costs and expenses

(including court costs and reasonable attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder.

Fallick Aff., Exs. K, L, M, N, O at 3-4.

As set forth above, defendants have failed to make the payment required pursuant to the Guaranty Agreements and are in breach of that obligation. Plaintiffs are now required to enforce defendants' obligations under the Guaranty Agreements. As a result, plaintiffs have incurred, and will continue to incur, costs and expenses (including court costs and reasonable attorneys' fees) until the entry of a final judgment herein.

Pursuant to Section 1.8 of the Guaranty Agreements, plaintiffs are entitled to recover their costs and expenses (including court costs and reasonable attorneys' fees). See DDS Partners, LLC v. Celenza, 6 A.D.3d 347, 348-49 (1st Dep't 1995); Simoni v. Time-Line, Ltd., 272 A.D.2d 537, 537 (2d Dep't 2000); see also International Business Machines Corp. v. Murphy & O'Connell, 183 A.D.2d 681, 682 (1st Dep't 1992); Chase Manhattan Bank v. Marcovitz, 56 A.D.2d 763, 763 (1st Dep't 1977). Therefore, this Court should direct that an inquest be held to determine the amount of costs and expenses to be awarded to plaintiffs.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment in lieu of complaint awarding it $100 million under the Guaranty Agreements should be granted, and plaintiffs' motion for an inquest to determine the amount of costs and expenses (including reasonable attorneys' fees) that they may recover should be granted.

Dated: New York, New York
     July 7, 2009

KAYE SCHOLER LLP

By: _____
    H. Peter Haveles Jr.
Office and Post Office Address:
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8000

Attorneys for Plaintiffs Bank of America, N.A. and
Merrill Lynch Mortgage Lending, Inc.

CLEARY GOTTLIEB
   STEEN & HAMILTON LLP

By: _____Howard Zelbo /BD_____
    Howard Zelbo
Office and Post Office Address:
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000

Attorneys for Plaintiff U.S. Bank National
Association (not individually but solely in its
capacity as Trustee for Maiden Lane Commercial
Mortgage Backed Securities Trust 2008-1)

9

MORRISON & FOERSTER LLP

By: _____ *James E. Hough* /BD _____
      James E. Hough
      Rachel M. Wertheimer
Office and Post Office Address:
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000

Attorneys for Plaintiff Wachovia Bank, N.A.


KRAMER, LEVIN, NAFTALIS & FRANKEL
LLP

By: _____ *Timothy P. Harkness* /BD _____
      Timothy P. Harkness
Office and Post Office Address:
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9200

Attorneys for Plaintiffs Debt II ESH, L.P., Debt-U,
ESH, L.P. and KeyBank National Association

10

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK

```
--------------------------------------------------------  x
BANK OF AMERICA, N.A.; WACHOVIA BANK,       :
N.A.; MERRILL LYNCH MORTGAGE LENDING,       :
INC.; U.S. BANK NATIONAL ASSOCIATION, as    :
TRUSTEE FOR MAIDEN LANE COMMERCIAL          :
MORTGAGE BACKED SECURITIES TRUST            :
2008-1; DEBT II ESH, L.P.; DEBT-U ESH, L.P. and :
KEYBANK NATIONAL ASSOCIATION,               :
                                            :
                    Plaintiffs,             :          Index No. 601853/09
                                            :
         -against-                          :
                                            :
LIGHTSTONE HOLDINGS, LLC and DAVID          :
LICHTENSTEIN,                               :
                                            :
                    Defendants.             :
--------------------------------------------------------  x
```

## NOTICE OF MOTION

PLEASE TAKE NOTICE that upon the supplemental summons dated July 6, 2009, and all prior pleadings, and the accompanying Affidavit of David Fallick, sworn to on July 6, 2009, and the exhibits annexed thereto, plaintiffs will move this Court on August 27, 2009, at 9:30 a.m., at the IAS Motion Support Courtroom, 60 Centre Street, Room 130, New York, New York 10007, for an Order (i) granting summary judgment in lieu of complaint pursuant to CPLR 3213 in the amount of $100 million, plus prejudgment interest, (ii) directing that an inquest be held to determine the amount of costs and expenses (including court costs and reasonable attorneys' fees) to be awarded plaintiffs and (iii) granting such other and further relief as the Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that, pursuant to CPLR 2214, 2215 and 3213 and Rule 202.8 of the Uniform Rules for New York State Trial Courts, answering papers or a cross-motion, if any, must be served upon the plaintiffs at least seven (7) days before the return date of this motion.

Dated: New York, New York
July 7, 2009

KAYE SCHOLER LLP

By: _____
    H. Peter Haveles, Jr.
Office and Post Office Address:
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8000

Attorneys for Plaintiffs Bank of America, N.A. and Merrill Lynch Mortgage Lending, Inc.

CLEARY GOTTLIEB
STEEN & HAMILTON LLP

By: _Howard Zelbo /BD_____
    Howard Zelbo
Office and Post Office Address:
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000

Attorneys for Plaintiff U.S. Bank National Association (not individually but solely in its capacity as Trustee for Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1)

MORRISON & FOERSTER LLP

By: _James E. Hough /BD_
      James E. Hough
      Rachel M. Wertheimer
Office and Post Office Address:
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000

Attorneys for Plaintiff Wachovia Bank, N.A.


KRAMER, LEVIN, NAFTALIS &
      FRANKEL LLP

By: _Timothy P. Harkness /BD_
      Timothy P. Harkness
Office and Post Office Address:
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9200

Attorneys for Plaintiffs Debt II ESH, L.P.,
Debt-U ESH, L.P. and KeyBank
National Association

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK

---

BANK OF AMERICA, N.A., WACHOVIA
BANK, N.A., MERRILL LYNCH
MORTGAGE LENDING, INC., U.S. BANK
NATIONAL ASSOCIATION, as TRUSTEE
FOR MAIDEN LANE COMMERCIAL
MORTGAGE BACKED SECURITIES
TRUST 2008-1, DEBT II ESH, L.P., DEBT-U
ESH, L.P. and KEYBANK NATIONAL
ASSOCIATION,

Plaintiffs,

v.

LIGHTSTONE HOLDINGS, LLC and
DAVID LICHTENSTEIN,

Defendants.

Index No.: 601853/09

**AFFIDAVIT IN SUPPORT OF
MOTION FOR SUMMARY
JUDGMENT IN LIEU OF
COMPLAINT**

---

STATE OF NEW YORK  )
                    ) ss.:
COUNTY OF NEW YORK  )

DAVID FALLICK, being duly sworn, deposes and says:

1.      I am a Managing Director of plaintiff Bank of America, N.A. ("Bank of America"). I make this affidavit in support of the motion for summary judgment in lieu of complaint by Bank of America and plaintiffs Wachovia Bank, N.A. ("Wachovia"), Merrill Lynch Mortgage Lending, Inc. ("Merrill Lynch"), U.S. Bank National Association, not individually but solely in its capacity as Trustee for Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1 (the "Maiden Lane Trustee"), Debt II ESH, L.P. ("Debt II"), Debt-U ESH, L.P. ("Debt-U") and KeyBank National Association ("KeyBank"). I have personal knowledge of the facts set forth herein.

## NATURE OF THE ACTION

2.　　In this action, plaintiffs seek to enforce a series of Guaranty Agreements (which are each described in paragraph 23 below) made by defendants Lightstone Holdings, LLC ("Lightstone") and David Lichtenstein, pursuant to which they (as guarantors and primary obligors) owe plaintiffs $100 million plus attorneys' fees and costs as a result of their failure to pay upon demand a specific "Guaranteed Obligation" under a series of corresponding mezzanine loans that plaintiffs made to affiliates of Extended Stay Hotels L.L.C. ("ESH"), in all of which defendants had a direct or indirect interest. Plaintiffs bring this action in order to enforce defendants' obligation under the Guaranty Agreements to pay those amounts.

3.　　In June 2007, Bank of America, Wachovia and Bear Stearns Commercial Mortgage, Inc. ("Bear Stearns") (collectively, the "Lenders") made a series of mezzanine loans to the chain of companies owned by ESH in connection with the mortgage loan that was extended to ESH, each of which loan is evidenced by a promissory note. As partial consideration for each of those mezzanine loans, defendants entered Guaranty Agreements corresponding to each one of those loans, pursuant to which defendants, as guarantors, became absolutely and unconditionally liable as primary obligors to pay, upon the borrowers' default, the full amount of the outstanding indebtedness due under the mezzanine loans, subject in certain circumstances to a $100 million cap.

4.　　The mezzanine loans were secured by the membership interests in each of the ESH entities to which each respective mezzanine loan was made, and the mezzanine loans were initially non-recourse. However, pursuant to each of the mezzanine loan agreements, the mezzanine loans were to become fully recourse to the Borrower, among other things, if and when the Borrower, the Mortgage Borrower, the Property Owner or a Senior Mezzanine Borrower (as those terms are uniformly defined in each of the mezzanine loan agreements

described in paragraph 17 below) filed a voluntary petition under the Bankruptcy Code. Further, the filing of a petition under the Bankruptcy Code by any of those entities is an event of default under the mezzanine loan agreements and makes the entire indebtedness due under those mezzanine loan agreements immediately due and payable.

5.      On June 15, 2009, all of the Borrowers, as well as the Mortgage Borrower and the Property Owner, filed voluntary petitions under the Bankruptcy Code. The bankruptcy cases are administratively consolidated under the caption In re Extended Stay Hotels LLC, No. 09-13764-JMP (Bankr. S.D.N.Y.). As a result, the amounts that the ESH entities owed plaintiffs under the mezzanine loan agreements became immediately due and payable. Consequently, demand having been made, under the Guaranty Agreements, as primary obligors, defendants are obligated to make immediate payment of $100 million, as well as costs and expenses (including reasonable attorneys' fees).

6.      Despite demand having been made, defendants have failed to pay plaintiffs any of the indebtedness due under the Guaranty Agreements, and plaintiffs seek to recover those amounts in this action.

## THE PARTIES

7.      Bank of America is a national banking association, with its principal address at Hearst Tower, 214 North Tryon Street, Charlotte, North Carolina.

8.      Wachovia is a national banking association, with its principal address at 8739 Research Drive URP-4, NC 1075, Charlotte, North Carolina.

9.      Merrill Lynch is a Delaware corporation, with its principal address at 4 World Trade Center, New York, New York.

10.     U.S. Bank National Association, suing not individually but solely in its capacity as the trustee for the Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1 (the

"Maiden Lane Trust"), is a national banking association with the principal office of its trust department located at 60 Livingston Avenue, St. Paul, Minnesota. The Maiden Lane Trust holds various debt positions in ESH that it acquired by purchase of certain assets previously held by Bear Stearns, including, _inter alia_, positions in the Mezzanine Loans described in paragraph 17 hereof.

11.    Debt II is a Delaware limited partnership, with its principal address at c/o Starwood Capital Group Global I, L.L.C., 591 West Putnam Avenue, Greenwich, Connecticut. Debt II holds various debt positions in ESH that it acquired by purchase of certain assets previously held by Wachovia, including, _inter alia_, positions in the Mezzanine Loan described in paragraph 17(a) hereof.

12.    Debt-U is a Delaware limited partnership, with its principal address at c/o Starwood Capital Group Global I, L.L.C., 591 West Putnam Avenue, Greenwich, Connecticut. Debt U holds various debt positions in ESH that it acquired by purchase of certain assets previously held by Wachovia, including _inter alia_, positions in the Mezzanine Loan described in paragraph 17(a) hereof.

13.    KeyBank is a national banking association, having an address at 225 Franklin Street, 18th Floor, Boston, Massachusetts.

14.    On information and belief, Lightstone is a Delaware limited liability company with its principal place of business at 460 Park Avenue, New York, New York.

15.    On information and belief, Lichtenstein is an individual residing at 326 Third Street, Lakewood, New Jersey. On information and belief, Lichtenstein is chief executive officer of Lightstone, and maintains his offices at Lightstone's offices in New York, New York.

## THE ESH LOANS

16.     On or about June 11, 2007, the Lenders made five mezzanine loans to each of the following entities, respectively: ESH/Homestead Mezz L.L.C., ESA P Mezz L.L.C., ESA Mezz L.L.C., ESH/Homestead Mezz 2 L.L.C., ESA P Mezz 2 L.L.C., ESA Mezz 2 L.L.C., ESH/Homestead Mezz 3 L.L.C., ESA P Mezz 3 L.L.C., ESA Mezz 3 L.L.C., ESH/Homestead Mezz 4 L.L.C., ESA P Mezz 4 L.L.C., ESA Mezz 4 L.L.C., ESH/Homestead Mezz 5 L.L.C., ESA P Mezz 5 L.L.C. and ESA Mezz 5 L.L.C. (collectively, the "Borrowers"). The loans to the Borrowers are collectively referred to as the "Mezzanine Loans". Under the Mezzanine Loans, the Borrowers obtained loans in the aggregate amount of $1.9 billion.

17.     In connection with the Mezzanine Loans, the Lenders and Borrowers entered into the following loan agreements (collectively, the "Mezzanine Loan Agreements"):

   a.     Mezzanine A Loan Agreement, dated as of June 11, 2007 (as amended, restated, replaced, supplemented or otherwise modified from time to time), by and among ESH/Homestead Mezz L.L.C., ESA P Mezz L.L.C. and ESA Mezz L.L.C. (collectively, as Borrower) and Wachovia Bank, N.A., Bear Stearns Commercial Mortgage, Inc. and Bank of America, N.A. (collectively, as Lender),

   b.     Mezzanine B Loan Agreement, dated as of June 11, 2007 (as amended, restated, replaced, supplemented or otherwise modified from time to time), by and among ESH/Homestead Mezz 2 L.L.C., ESA P Mezz 2 L.L.C. and ESA Mezz 2 L.L.C. (collectively, as Borrower) and Wachovia Bank, N.A., Bear Stearns Commercial Mortgage, Inc. and Bank of America, N.A. (collectively, as Lender),

c. Mezzanine C Loan Agreement, dated as of June 11, 2007 (as amended, restated, replaced, supplemented or otherwise modified from time to time), by and among ESH/Homestead Mezz 3 L.L.C., ESA P Mezz 3 L.L.C. and ESA Mezz 3 L.L.C. (collectively, as Borrower) and Wachovia Bank, N.A., Bear Stearns Commercial Mortgage, Inc. and Bank of America, N.A. (collectively, as Lender),

d. Mezzanine D Loan Agreement, dated as of June 11, 2007 (as amended, restated, replaced, supplemented or otherwise modified from time to time), by and among ESH/Homestead Mezz 4 L.L.C., ESA P Mezz 4 L.L.C. and ESA Mezz 4 L.L.C. (collectively, as Borrower) and Wachovia Bank, N.A., Bear Stearns Commercial Mortgage, Inc. and Bank of America, N.A. (collectively, as Lender), and

e. Mezzanine E Loan Agreement, dated as of June 11, 2007 (as amended, restated, replaced, supplemented or otherwise modified from time to time), by and among ESH/Homestead Mezz 5 L.L.C., ESA P Mezz 5 L.L.C. and ESA Mezz 5 L.L.C. (collectively, as Borrower) and Wachovia Bank, N.A., Bear Stearns Commercial Mortgage, Inc. and Bank of America, N.A. (collectively, as Lender).

18. True and correct copies of the pertinent sections of each of the Mezzanine Loan Agreements described in paragraph 17 hereof are annexed hereto as Exhibits A through E, respectively.

19. In connection with the Mezzanine Loans, the Borrowers signed corresponding promissory notes, dated June 11, 2007.

20. On December 16, 2008, the Borrowers signed replacement promissory notes for each Mezzanine Loan. The Borrowers signed the following replacement promissory notes (collectively, the "Notes"):

a. Replacement Promissory Note, Mezzanine A Loan, dated as of December 16, 2008, by ESH/Homestead Mezz L.L.C., ESA P Mezz L.L.C. and ESA Mezz L.L.C. (collectively, as Borrower) to Debt II, Debt-U, Bear Stearns, Bank of America and KeyBank.

b. Replacement Promissory Note, Mezzanine B Loan, dated as of December 16, 2008, by ESH/Homestead Mezz 2 L.L.C., ESA P Mezz 2 L.L.C. and ESA Mezz 2 L.L.C. (collectively, as Borrower) to Wachovia, Bear Stearns, Bank of America and Merrill Lynch.

c. Replacement Promissory Note, Mezzanine C Loan, dated as of December 16, 2008, by ESH/Homestead Mezz 3 L.L.C., ESA P Mezz 3 L.L.C. and ESA Mezz 3 L.L.C. (collectively, as Borrower) to Wachovia, Bear Stearns, Bank of America and Merrill Lynch.

d. Replacement Promissory Note, Mezzanine D Loan, dated as of December 16, 2008, by ESH/Homestead Mezz 4 L.L.C., ESA P Mezz 4 L.L.C. and ESA Mezz 4 L.L.C. (collectively, as Borrower) to Wachovia, Bear Stearns, Bank of America and Merrill Lynch.

e. Replacement Promissory Note, Mezzanine E Loan, dated as of December 16, 2008, by ESH/Homestead Mezz 5 L.L.C., ESA P Mezz 5 L.L.C. and ESA Mezz 5 L.L.C. (collectively, as Borrower) to Wachovia, Bear Stearns, Bank of America and Merrill Lynch.

21. True and correct copies of each of the Notes described in paragraph 20 hereof are annexed hereto as Exhibits F through J, respectively.

22. As of and since December 16, 2008, Bank of America, Wachovia, Merrill Lynch, the Maiden Lane Trust, Debt II, Debt-U and KeyBank are the holders of the Notes corresponding to the Mezzanine Loans.

## THE GUARANTY AGREEMENTS

23. In connection with and as partial consideration for the Mezzanine Loans, defendants each signed corresponding guaranty agreements. Those agreements are as follows (collectively, the "Guaranty Agreements"):

    a.    Guaranty Agreement, Mezzanine A Loan, executed as of June 11, 2007 (as amended, restated, replaced, supplemented or otherwise modified from time to time), by Lightstone Holdings, LLC, David Lichtenstein, Extended Stay Inc. and Homestead Village L.L.C. (collectively, as Guarantor) for the benefit of Wachovia Bank, N.A., Bear Stearns Commercial Mortgage, Inc. and Bank of America, N.A. (collectively, Lender),

    b.    Guaranty Agreement, Mezzanine B Loan, executed as of June 11, 2007 (as amended, restated, replaced, supplemented or otherwise modified from time to time), by Lightstone Holdings, LLC, David Lichtenstein, Extended Stay Inc. and Homestead Village L.L.C. (collectively, as Guarantor) for the benefit of Wachovia Bank, N.A., Bear Stearns Commercial Mortgage, Inc. and Bank of America, N.A. (collectively, Lender),

    c.    Guaranty Agreement, Mezzanine C Loan, executed as of June 11, 2007 (as amended, restated, replaced, supplemented or otherwise modified from time to time), by Lightstone Holdings, LLC, David Lichtenstein, Extended

Stay Inc. and Homestead Village L.L.C. (collectively, as Guarantor) for the benefit of Wachovia Bank, N.A., Bear Stearns Commercial Mortgage, Inc. and Bank of America, N.A. (collectively, Lender),

d.     Guaranty Agreement, Mezzanine D Loan, executed as of June 11, 2007 (as amended, restated, replaced, supplemented or otherwise modified from time to time), by Lightstone Holdings, LLC, David Lichtenstein, Extended Stay Inc. and Homestead Village L.L.C. (collectively, as Guarantor) for the benefit of Wachovia Bank, N.A., Bear Stearns Commercial Mortgage, Inc. and Bank of America, N.A. (collectively, Lender), and

e.     Guaranty Agreement, Mezzanine E Loan, executed as of June 11, 2007 (as amended, restated, replaced, supplemented or otherwise modified from time to time), by Lightstone Holdings, LLC, David Lichtenstein, Extended Stay Inc. and Homestead Village L.L.C. (collectively, as Guarantor) for the benefit of Wachovia Bank, N.A., Bear Stearns Commercial Mortgage, Inc. and Bank of America, N.A. (collectively, Lender).

24.    True and correct copies of each of the Guaranty Agreements described in paragraph 23 hereof are annexed hereto as Exhibits K through O, respectively.

25.    Under Section 1.1 of each Guaranty Agreement, each Guarantor:

irrevocably and unconditionally guaranties to Lender [i.e., plaintiffs] and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Guarantor hereby covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.

26. Section 1.2 of each Guaranty Agreement defines "Guaranteed Obligations" as including, among other things, "the obligations or liabilities of Borrower to Lender under Section 9.4 of the Loan Agreement."

27. Section 9.4(b) of each Mezzanine Loan Agreement provides that, if (among others) the Mortgage Borrower, an Operating Lessee, a Mortgage Loan Principal, the Borrower, a Senior Mezzanine Borrower or the Property Owner (as those terms are defined in the Mezzanine Loan Agreements),[1] files a voluntary petition under the Bankruptcy Code, the debt due under the Mezzanine Loans becomes recourse to the Borrower and the Borrower is liable to plaintiffs for the full amount due under the Mezzanine Loans.

28. Section 1.2 of the Guaranty Agreements further provides that:

> Notwithstanding any thing to the contrary in this Guaranty or any of other Loan Documents, the liability of Guarantor (x) to Lender in respect of the Guaranteed Obligations under this Guaranty arising under Section 9.4(a)(xiv) or Section 9.4(b) (other than clause (g)) of the Loan Agreement, (y) to Mortgage Lender in respect of the Guaranteed Obligations under and as defined in the Guaranty (as such term is defined in the Mortgage Loan Agreement) arising under Section 9.4(a)(xvi) or Section 9.4(b) of the Mortgage Loan Agreement and (z) to the Other Mezzanine Lenders in respect of the Guaranteed Obligations under and as defined in the Guaranty (as such term is defined in the Other Mezzanine Loan Agreements) arising under Section 9.4(a)(xiv) or Section 9.4(b) (other than clause (g) of Section 9.4(b) of the Other Mezzanine Loan Agreements, shall not exceed One Hundred Million and No/100 Dollars ($100,000,000.00) in the aggregate.

29. Under Section 5.6 of each Guaranty Agreement, defendants are jointly and severally liable for the obligations and liabilities owed under each of the Guaranty Agreements.

---

[1] The Borrowers under the Mezzanine Loan Agreements are the entities identified in paragraph 16 hereof.

## DEFENDANTS' OBLIGATION TO PAY $100 MILLION

30.    On or about June 15, 2009, each of the Borrowers filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the Southern District of New York, in derogation of Section 9.4(b) of the Mezzanine Loan Agreements. In addition, the Mortgage Borrower and the Operating Lessee also filed bankruptcy petitions as part of the same proceedings. Those bankruptcy proceedings are described in paragraph 5 hereof.

31.    As a result of the voluntary petitions, under Section 9.4(b) of each of the Mezzanine Loan Agreements, each of the Borrowers thereby became obligated to pay immediately the full amount of the aggregate indebtedness due under the Mezzanine Loans and the Notes, i.e., $1.9 billion.

32.    Under Section 1.1 of each of the Guaranty Agreements, defendants are liable as primary obligors to pay immediately the full amount of the aggregate indebtedness due under Mezzanine Loans and Notes, subject to the cap of the $100 million.

33.    Plaintiffs have made demand on defendants for immediate payment of the Guaranteed Obligations due and owing under the Guaranty Agreements, i.e., $100 million. True and correct copies of plaintiffs' demands are annexed hereto as Exhibit P.

34.    Defendants have failed to pay any part of the Guaranteed Obligations.

35.    Defendants have breached each of the Guaranty Agreements and are liable to plaintiffs in the amount of $100 million.

36.    In addition, under Section 1.8 of each of the Guaranty Agreements, defendants are obligated to pay any and all costs and expenses (including court costs and reasonable attorneys' fees) incurred by plaintiffs in connection with enforcing their rights under the Guaranty Agreements, including with respect to this action.

37. In connection with enforcing their rights under each of the Guaranty Agreements, each of plaintiffs have incurred costs, expenses, attorneys' fees and court costs, all of which they are entitled to recover under Section 1.8 of the Guaranty Agreements.

## RELIEF REQUESTED

38. Accordingly, plaintiffs seek entry of an order granting them summary judgment and awarding them judgment in the amount of $100 million jointly and severally against each of defendants Lightstone Holdings, LLC and David Lichtenstein, plus prejudgment interest on said amount at the interest rate set forth in Section 2.2 of each of the Mezzanine Loan Agreements.

39. In addition, plaintiffs seek entry of an order directing that an inquest be held with respect to the amount of costs, expenses, attorneys' fees and court costs that should be awarded to plaintiffs.

_____
DAVID FALLICK

Sworn to before me this
6 day of July, 2009.

_____
Notary Public

K. DANIELLE CALDWELL
Notary Public - State of New York
No. 01CH6061643
Qualified in New York County
My Commission Expires Dec. 04, 2010

12