Stephen B. Meister (sbm@msf-law.com)
Stuart Rich (sir@msf-law.com)
Larry F. Morrison (lfm@msf-law.com)
MEISTER SEELIG & FEIN LLP
2 Grand Central Tower
140 East 45th Street, 19th Floor
New York, NY 10017
(212) 655-3500

*Attorneys for Line Trust Corporation Ltd.*
*and Deuce Properties Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------- X

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| EXTENDED STAY INC., et al., | : | **Case No. 09-13764 (JMP)** |
| | : | |
| Debtors. | : | **Jointly Administered** |

--------------------------------------------------------------------------- X

**STATEMENT OF LINE TRUST CORPORATION LTD. AND
DEUCE PROPERTIES LTD. IN SUPPORT OF MOTION BY THE
U.S. TRUSTEE FOR THE APPOINTMENT OF AN INDEPENDENT
EXAMINER PURSUANT TO SECTION 1104 OF THE BANKRUPTCY CODE**

### I. Introduction

Line Trust Corporation, Ltd. ("Line Trust") and Deuce Properties Ltd. ("Deuce"), by and through their undersigned counsel, hereby respectfully submit this statement in support of the motion (the "Motion")[1] of the United States Trustee (the "U.S. Trustee") for the appointment of an independent examiner pursuant to section 1104 of the Bankruptcy Code. In support of the Motion, Line Trust and Deuce respectfully state as follows:

---

[1] Capitalized terms used herein without definition shall have the same meanings ascribed to them in the Motion.

## II. Background

1. On the Petition Date (June 15, 2009), the Debtors each filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

2. Twelve days prior to the Petition Date, on June 3, 2009, Line Trust and Deuce commenced an action in the Supreme Court of the State New York, in and for the County of New York (the "State Court"), entitled Line Trust Corp., et al. v. Wachovia Bank, N.A., et al., Index No. 601713/2009 (the "First State Court Action"). The First State Court Action, which was brought against some of the Debtors, and their original lenders, Bank of America, Wachovia and U.S. Bank National Association, as successor in interest to Bear Stearns Commercial Mortgage, Inc. (collectively, the "Original Lenders"), was commenced by Order to Show Cause. On June 3, 2009, New York State Supreme Court Justice Richard B. Lowe, III, granted Line Trust and Deuce a Temporary Restraining Order preliminarily enjoining the defendants in the First State Court Action from proceeding with a threatened conveyance in lieu transaction among certain Debtors and the Original Lenders based on a trivial and contrived operating expense default, which had been collusively arranged between the Original Lenders and Debtors.

3. The Original Lenders had engineered the contrived and trivial operating expense default in order to permit them to move forward with a conveyance in lieu transaction so that they could wipe out billions of dollars worth of junior mezzanine debt, on or before the maturity date of the entire debt stack, June 12, 2009, and thereby satisfy a so-called debt yield test (on a vastly reduced debt stack) and avoid the millions of

dollars in required amortization payments due to the senior debt holders, in the event of a failure of the debt yield test on June 12, 2009.

4. After the Petition Date, Line Trust and Deuce acknowledged that the filing of this Chapter 11 case had stayed the First State Court Action as against the Debtors. Accordingly, Line Trust and Deuce voluntarily dismissed without prejudice the First State Court Action by filing a Notice of Discontinuance with respect thereto on June 22, 2009 with the State Court.

5. Under the terms of the Mortgage Loan Agreement, David Lichtenstein ("Lichtenstein"), the Chief Executive Officer and President of Debtors ESI and Homestead, as well as the President of the Debtors, and his controlled company, non-Debtor Lightstone Holdings LLC (together, the "Guarantors"), entered into "non-recourse carve out" guarantees (the "Guarantees") with respect to the Mortgage Loan and Mezzanine Debt, by virtue of which the Guarantors have springing liability under such guaranties (as to both the Mortgage Loan and Mezzanine Debt) in the event, *inter alia*, the Borrowers file for bankruptcy protection. These non-recourse carve out guarantees were designed to avoid bankruptcy filings by creating vast liabilities to Lichtenstein, the person in control of the filings, in the event petitions were filed.

6. On the Petition Date, the Debtors and the non-Debtor defendant lenders (the "Supporting Holders") submitted a term sheet which Debtors said had been approved by the Debtors and the Supporting Holders (the "Term Sheet"). The Term Sheet sets forth a proposed restructuring of the Debtors' debt and proposed distributions to various claimants and interest holders. The Term Sheet was attached to the Teichman Decl. at <u>Exhibit C</u>.

7. Pursuant to the terms of the Term Sheet, the Supporting Holders promised, *inter alia*, to provide the Guarantors (i.e., Lichtenstein and his company, Lightstone Holdings LLC) with a $100,000,000 indemnity (funded out of Debtors' assets) with respect to the liabilities of the Guarantors if they caused the borrowers to file for bankruptcy protection, along with a $5 million litigation defense war chest (also funded out of Debtors' assets), to resist the claims asserted by other lenders against the Guarantors under the Guarantees, as well as an equity participation to Lichtenstein through a new management agreement.

8. Subsequent to Debtors' Chapter 11 filings, Line Trust and Deuce, on June 24, 2009, commenced a second State Court Action entitled <u>Line Trust Corp., et al. v. David Lichtenstein, et al.</u>, Index No. 601951/2009 (the "State Court Action"). This second State Court Action incorporates the claims asserted against the non-Debtor defendants in the First State Court Action, and, as well, asserts new claims against other non-Debtor defendants not previously asserted in the First State Court Action, including claims against Lichtenstein and non-Debtor entities controlled by him arising out of the tortious, conspiratorial, collusive, bad faith and predatory conduct of the Lichtenstein and the Supporting Holders in offering and agreeing to the fraudulent bankruptcy inducements contained in the Term Sheet, as part of a comprehensive scheme designed to induce Lichtenstein to do that which the Supporting Holders themselves promised all other lenders, under the express terms of the Intercreditor Agreement, they would never do – cause the Borrowers to file for bankruptcy protection, despite the numerous other "bankruptcy remoteness" provisions built into the relevant loan documents.

9. On July 8, 2009, the Lichtenstein and Lightstone Holdings LLC filed a Notice of Removal pursuant to 28 U.S.C. §§ l452(a) and 157 (the "Notice of Removal"), removing the State Court Action to the United States District Court for the Southern District of New York. The District Court transferred the case to the Bankruptcy Court pursuant to the Standing Order of Referral from the District Court to the Bankruptcy Court. No answer, motion or other responsive pleading has been filed by any Defendant (including the Guarantors) in the State Court Action, other than a motion to dismiss filed by the Original Lenders.

10. On July 17, 2009, Line Trust and Deuce filed a Reply to the Notice of Removal ("Reply") in accordance with Federal Rule of Bankruptcy Procedure 9027(e)(3). Plaintiffs' Reply asserts that the claims set forth in the State Court Action are non-core, denies substantially all of the allegations made in the Notice of Removal, and states that Plaintiffs do not consent to the entry of final orders or judgments by the Bankruptcy Court.

11. On July 27, 2009, Line Trust and Deuce filed a motion for an order remanding the State Court Action back to the New York State Supreme Court pursuant to 28 U.S.C. § l452(b) or, alternatively, for abstention pursuant to 28 U.S.C. § 1334(c) (the "Remand Motion"). The Remand Motion is presently set for hearing before this Court on September 10, 2009.

### III. Statement in Support

12. Line Trust and Deuce support the appointment of an independent examiner in these Chapter 11 cases pursuant to section 1104 of the Bankruptcy Code, for the reasons set forth in the Motion and for the following additional reasons.

13. The facts surrounding what transpired in the weeks and days leading up to these bankruptcy filings shocks the conscience, and compels the appointment of an independent examiner in these Chapter 11 cases pursuant to Bankruptcy Code section 1104(c)(2). The appointment of an examiner is also warranted here under Bankruptcy Code section 1104(c)(1), as an independent examiner will clearly benefit all creditors, in light of the very real questions that exist concerning what occurred in the weeks and months leading up to the Petition Date.

14. The facts and circumstances that led to the Term Sheet — which proposes to indemnify the Guarantors from any liability (up to $100 million), and also to provide the Guarantors with a $5 million "war chest"— must be investigated thoroughly and carefully by the independent examiner. The Term Sheet forcefully demonstrates the collusion that took place between Lichtenstein and the Ad Hoc Mortgage Lender Group. In situations such as this, where issues of fraud and misconduct exist, appointment of an independent examiner is necessary in order to preserve the integrity of the bankruptcy process.

15. Additionally, the facts and circumstances surrounding the contrived trivial operating expense default declared by the Original Lenders and their proposed conveyance in lieu transaction must be investigated thoroughly.

16. Finally, the appointment of an independent examiner will reduce expenses for all creditors, and will reduce the burden of duplicative discovery by requiring the examiner to share its findings with the creditors.

### IV. Suggested Modifications to the Proposed Order

17. While Line Trust and Deuce support the granting of the Motion, Line Trust and Deuce suggest the following modifications to the Proposed Order submitted by the U.S. Trustee in connection with the Motion which, Line Trust and Deuce believe, will facilitate the proposed investigation to the benefit of all parties.

18. First, the examiner should be granted subpoena power to compel the production of documents and testimony of witnesses. This relief is routinely granted by bankruptcy courts in large Chapter 11 cases and will permit a thorough and complete examination to take place.[2]

19. Thus, the Proposed Order should be modified to add the following decretal paragraph: "ORDERED that, the Examiner is authorized to issue such subpoenas as may be necessary, in the Examiner's discretion, to compel the production of documents and the testimony of witnesses in connection with the Examiner's investigation."

20. Second, the Proposed Order should require that litigation holds and non-destruction orders be placed on emails and other documents in order to preserve all evidence relative to the examiner's investigation. Thus, the Proposed Order should be modified to add the following decretal paragraph: "ORDERED that, all parties to these proceedings are instructed to preserve all evidence relating to the Debtors' business, any notices of default and proposed conveyance in lieu transactions and/or the decision to file for bankruptcy protection."

21. Third, the Proposed Order should require that the materials and findings of the Examiner be made available to the public. This will reduce expenses for all creditors,

---

[2] See cases cited in Statement in Support of Maiden Lane for Motion of the United States Trustee for the Appointment of an examiner Pursuant to Section 1104 of the Bankruptcy Code ("Maiden Lane's Statement in Support"), at p. 3, ¶ 6.

7

and will reduce the burden of duplicative discovery by requiring the Examiner to share his findings with the creditors.

22. Thus, the Proposed Order should be modified to add the following decretal paragraph: "ORDERED that, the materials and findings of the Examiner, including all documents and testimony obtained through the Examiner's Investigation, as well as any written report of the Examiner, be made available to all creditors and other interested parties."

23. Fourth, the Proposed Order should permit the investigation of possible claims against third parties relating to their conduct in connection with the commencement of these Chapter 11 cases and the previously declared event of default and proposed conveyance in lieu transaction. In this regard, the scope of the Examiner's investigation should include the investigation of agents, appraisers, advisors and counsel to the Debtors, the Ad Hoc Mortgage Lender Group and the Supporting Holders.

24. Thus, the first decretal paragraph in the Proposed Order should be modified to state as follows: "(iii) the events and circumstances that led to the Original Lenders' declaration of an operating expense default and the subsequent proposed conveyance in lieu transaction, (iv) whether the Debtors' estates have any claims against Lichtenstein and/or any of the companies that he controls or any other insider relating to the Acquisition or the commencement of these Chapter 11 cases, (v) whether the Debtors' estates have any claims against the Mortgage Lenders relating to the financing for the Acquisition or the commencement of these Chapter 11 cases (the "Investigation"), (vi) whether Debtors' estates and/or creditors have any claims against any person or entity, including but not limited to agents, appraisers, advisors and counsel to the Debtors

and certain of its creditors, relating to their conduct in connection with the commencement of these Chapter 11 cases or, the previously declared event of default and proposed conveyance in lieu transaction, (vii) whether the Debtors' estates or creditors have any claims against the Original Lenders' relating to the pre-petition operating expense default and proposed conveyance in lieu transaction."

25. Fifth, the Proposed Order should make clear that the appointment of the Independent Examiner will have no effect on the venue of third party actions against non-Debtors. Thus, the Proposed Order should be modified to add the following decretal paragraph: "ORDERED, that this order shall not affect the venue of any third party action against any non-Debtor entities."

## V. Conclusion

For all of the reasons set forth herein, Line Trust and Deuce respectfully request that the Court (a) grant the Motion and enter the proposed order as attached to the Motion and as modified herein, and (b) grant all such other and further relief as the Court deems just and proper.

Dated: New York, New York
      August 31, 2009

MEISTER SEELIG & FEIN LLP
Attorneys for Line Trust Corporation, Ltd.
and Deuce Properties, Ltd.

By:   /s/ Stephen B. Meister
      Stephen B. Meister
      Stuart Rich
      Larry F. Morrison
      MEISTER SEELIG & FEIN LLP
      2 Grand Central Tower
      140 East 45th Street, 19th Floor
      New York, New York 10017
      Telephone:   (212) 655-3500
      Facsimile:    (212) 655-3535