| | |
|---|---|
| Howard O. Godnick | Bonnie Steingart |
| Adam Harris | Gregg L. Weiner |
| Michael Swartz | FRIED, FRANK, HARRIS, SHRIVER |
| SCHULTE ROTH & ZABEL LLP | & JACOBSON LLP |
| 919 Third Ave | One New York Plaza |
| New York, New York 10022 | New York, New York 10004 |
| Telephone: (212) 756-2000 | Telephone: (212) 859-8000 |
| Facsimile: (212) 593-5955 | Facsimile: (212) 859-4000 |
| *Attorneys for Cerberus Capital Management, L.P.* | *Attorneys for Centerbridge Partners, L.P.* |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re: : Chapter 11
:
**EXTENDED STAY INC.,** *et al.,* : Case No. 09-13764 (JMP)
: (Jointly Administered)
Debtors. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**JOINT OBJECTION OF CERBERUS CAPITAL MANAGEMENT, L.P., CENTERBRIDGE PARTNERS, L.P., AND HOULIHAN LOKEY HOWARD & ZUKIN, INC. TO THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AUTHORIZING DISCOVERY PURSUANT TO BANKRUPTCY RULES 2004 AND 9016**

---

Cerberus Capital Management, L.P. ("Cerberus"), Centerbridge Partners, L.P. ("Centerbridge"), and Houlihan Lokey Howard & Zukin ("Houlihan," and collectively with Cerberus and Centerbridge, the "Objecting Parties"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the Application of the Official Committee of Unsecured Creditors (the "Committee") for an Order Authorizing Discovery Pursuant to Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2004 and 9016 (the "Application").[1] In support of this Objection, the Objecting Parties respectfully state as follows:

**INTRODUCTION**

1. By the Application, the Committee seeks unlimited and unspecified discovery of the non-debtor Objecting Parties pursuant to Bankruptcy Rules 2004 and 9016 relating to, among other things, (i) pre-petition agreements and understandings reached or discussed, and information exchanged, between Debtors and the Objecting Parties pertaining to a potential restructuring of the Debtors and (ii) pre-petition agreements and understandings between and among Lichtenstein, the Debtors and various non-debtor entities.

2. The Committee's Application is improper and should be denied for a host of reasons. First, the Application fails to set forth any justification or good cause in support of the discovery request; is silent as to the scope of documents requested and why examinations and production of documents at this time are important to the reorganization of the Debtors or for any other purpose; and does not allege that the Committee would suffer any harm or undue hardship if the Application were denied. For these reasons, the Application should be denied.

3. Second, at this early stage in these Chapter 11 Cases, the Application is premature, as the Debtors have not yet proposed a chapter 11 plan of reorganization. The Committee seeks discovery of the pre-petition communications between the Objecting Parties and the Debtors concerning the restructuring term sheet that accompanied the Debtors' first day filings. The Term Sheet (and the terms therein, including any provisions relating to Lichtenstein) is not the Debtors' chapter 11 plan; it is a framework which the Debtors have indicated *could* form the basis of a chapter 11 plan. Any chapter 11 plan the Debtors propose must be provided

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the Application.

to all creditors, meet the requirements of the Bankruptcy Code, be voted on, and be approved by the Bankruptcy Court. Accordingly, discovery with respect to plan matters is not ripe and will result in a waste of the Debtors' assets and this Court's resources. Any discovery on these matters must be postponed until such time (if ever) as the terms set forth in the Term Sheet are incorporated into a chapter 11 plan.

4. Third, to the extent the Committee seeks financial or other information provided by the Debtors to the Objecting Parties or any other party, that information is best and most properly obtained from the Debtors themselves.[2] Finally, if the Committee intends to seek from the Objecting Parties their evaluation of the Term Sheet or the Debtors' businesses, such intercreditor discovery is entirely inappropriate. The purpose of Bankruptcy Rule 2004 discovery is to investigate a debtor, its estate, the administration of its chapter 11 cases, and its restructuring plan (when such a plan is actually filed). In summary, Bankruptcy Rule 2004 discovery is inappropriate to discover matters regarding an unfiled chapter 11 plan or to delve into the thoughts and evaluations of other creditors.

## BACKGROUND

5. On June 15, 2009 (the "Petition Date") the Debtors filed their voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"). The Debtors continue to operate their business as debtors and debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On June 19, 2009, the United States Trustee for the Southern District of New York (the "United States Trustee") appointed five of the Debtors' unsecured creditors to serve as members of the Committee in these Chapter 11 Cases.

---

[2] It is difficult to know exactly what documents or information the Committee seeks. The Application has no defined scope nor is it accompanied by any specific document requests.

3

6.      As set forth in the First Day Affidavit, the Debtors had extensive negotiations with certain of its mezzanine lenders, including members of the Committee and each of the Objecting Parties. In addition, in connection with the filing of these Chapter 11 Cases, the Debtors indicated their intention to formulate a plan of reorganization based on the terms of a non-binding restructuring term sheet (the "Term Sheet") that accompanied the Debtors' first-day affidavit. While each of the Objecting Parties indicated to the Debtors that they would support a chapter 11 plan based on the expressly non-binding Term Sheet, none of the Objecting Parties entered into a lock-up agreement. The Debtors' first day filings set forth the entire scope of (i) the Objecting Parties' knowledge of agreements concerning the restructuring of the Debtors and (ii) agreements and understandings between Lichtenstein, the Debtors and non-debtor entities. There are no side agreements or understandings among the Objecting Parties and Lichtenstein.

## ARGUMENT

A.      **The Committee has not Shown Good Cause Exists to Grant the Application**

7.      Although Bankruptcy Rule 2004 examination is generally less restrictive than discovery under the Federal Rules of Civil Procedure, it is not without limits. *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (finding that, although the scope of Rule 2004 is broader than the discovery rules in Part VII of the Federal Rules of Bankruptcy Procedure, it should be limited to matters regarding administration of the estate); *In re Duratech Indus., Inc.*, 241 B.R. 291, 296 (Bankr. E.D.N.Y. 1999) ("resort to Rule 2004 cannot include discovery conducted in bad faith or for improper purposes"); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (stating that Rule 2004's "application is not without bounds"). Indeed, because Bankruptcy Rule 2004 requires courts to "balance the competing interests of the parties, weighing the relevance of and necessity of the information [being] sought by examination," such discovery is subject to careful judicial

oversight. *See In re Drexel Burnham*, 123 B.R. at 711-12 (noting that, although a Fed. R. Bankr. P. 2004 examination is like a "fishing expedition," the court can "carefully stitch [the net] to limit its catch"); *In re Wilcher,* 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("the imprecise standard of relevancy in Rule 2004 requires the court to exercise its discretion and balance the competing interests between the examiner's right to expose alleged chicanery and [defendant's] right to privacy in his business affairs") (citations omitted); *see also In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (narrowing the creditor's discovery request of the debtor because it was too broad and "border[ed] on the ridiculous").

8. Accordingly, a party seeking Rule 2004 discovery bears the burden of showing good cause for the examination it seeks. *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994), citing *In re Drexel Burnham*, 123 B.R. at 712. Here, the Committee has not shown relevance, let alone good cause. Even if they could show relevance, relevance alone is insufficient to demonstrate good cause. *In re Drexel Burnham*, 123 B.R. at 712 (citations omitted). Rather, the movant must demonstrate that the "requested documents are necessary to establish [the movant's claim] or that the denial of production would [result in] undue hardship or injustice." *Id.* (citations omitted). The Application fails on all accounts.

9. While the Committee acknowledges that it must demonstrate "good cause" under Bankruptcy Rule 2004, the Application fails to present any justification whatsoever—let alone "good cause"—for the discovery the Committee seeks. Motion at ¶ 8. Indeed, the Application is silent as to why the examinations and production of documents, which are requested without any scope, specificity or limitation, are important to the reorganization of the Debtors or for any other purpose. Instead, the Application summarily states "that cause exists" for the requested discovery, but categorically fails to offer any explanation or support for that conclusory

5

assertion. This is insufficient as a matter of law under Bankruptcy Rule 2004. *See, e.g., In re Eagle-Picher*, 169 B.R. at 134-35 (denying Rule 2004 discovery motion because unsecured creditors' committee failed to show good cause and because the discovery proposed would be disruptive and without apparent benefit to the movants).

10. Nor has the Committee shown (or even alluded to) any undue hardship or injustice that it will suffer if the Application is denied. As discussed in greater detail below, because the Debtors have not filed a chapter 11 plan of reorganization, the Application is a transparent attempt to focus on matters that have not, and may never, coalesce into a proposed chapter 11 plan. Although discovery may be proper in the future depending on the outcome of the Debtors' continuing negotiation of a proposed plan, the Committee will have the opportunity to seek properly focused discovery at that time and will not suffer any undue hardship if the current Application is denied "at this early stage in these cases." Motion ¶ 9. Proposed Rule 2004 discovery, however limited or broad it may be, is simply improper where the movant has not and cannot demonstrate good cause to support its authorization. *In re Eagle-Picher*, 169 B.R. at 134-35.

**B.** **The Committee's Request Is Premature As The Debtors Have Not Filed A Chapter 11 Plan**

11. Any discovery pertaining to the Debtors' restructuring is premature. Section 1121(b) of the Bankruptcy Code provides a debtor with the exclusive right to file a chapter 11 plan during the first 120 days of the Chapter 11 case. *See* 11 U.S.C. § 1121(b); *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex. rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 579 (3d Cir. 2003). The exclusive right to file a chapter 11 plan includes the exclusive right to present the plan (and the business plan upon which it is based) to all parties-in-interest. The Debtors have not yet fully negotiated or filed a chapter 11 plan. Discovery with respect to an

unfiled plan is not within the ambit of Bankruptcy Rule 2004. *See Eagle-Picher Industries, Inc.*, 169 B.R. at 134 ("A creditor has no right to see the draft of a plan before its completion. We do not recognize this demand as providing good cause for a 2004 examination.").

12. The Term Sheet is not the Debtors' chapter 11 plan. Any chapter 11 plan that the Debtors propose must be provided to all creditors, meet the requirements of the Bankruptcy Code, be voted on, and be approved by the Bankruptcy Court. Once a chapter 11 plan is filed, it may be appropriate to afford the Committee an opportunity to conduct discovery as to how such chapter 11 plan coalesced, because then there will be a document that concerns the Debtors' affairs and proposed administration of the Debtors' estates. The Term Sheet is an expressly non-binding document which may or may not form the basis for a future chapter 11 plan; the terms of the Term Sheet, including any provisions relating to Lichtenstein, currently have no force and effect and will not unless and until a chapter 11 plan including such terms is finalized, confirmed and goes effective. Discovery relating to the terms of a possible, but not filed or proposed, chapter 11 plan is not relevant to the administration of the Chapter 11 Cases and is an unnecessary drain on the resources of the Debtors and this Court. Further, any attempt to extract discovery from the Debtors or the Objecting Parties regarding what remains an expressly non-binding term sheet subject to negotiation between the Debtors and all parties-in-interest (in addition to formal presentment to and confirmation by the Court) will distract from continuing efforts to formulate a chapter 11 plan and to effectuate a consensual resolution of these Chapter 11 Cases.

C. **The Committee Should Seek the Requested Information From the Debtors**

13. The Committee's request for discovery is not only without good cause and premature, but it is also duplicative of materials already available from the Debtors and unduly burdensome on the Objecting Parties. Granting the requested discovery of the Objecting Parties

7

would be duplicative as, upon information and belief, the Debtors have already provided the Committee with numerous documents relating to the Debtors' estates and operation of the Debtors' businesses. Additionally, the Debtors have only recently filed their schedules and statements of financial affairs, and (as previously stated) have neither finalized nor filed any proposed plan of reorganization. The Committee should review the schedules and statements recently filed and wait until a plan of reorganization is filed. At that time, should the Committee require any additional information, including information about negotiations concerning a proposed restructuring of the Debtors, it should continue to seek that information from the Debtors.

14. A Bankruptcy Rule 2004 discovery request "should not encompass matters that will be unduly burdensome . . . and duplicative of previously furnished information." *Texaco*, 79 B.R. at 553. Courts have created an exception to compliance with a Bankruptcy Rule 2004 examination if the party can show that the examination is oppressive and burdensome, as is the case here. *In re Vantage Petroleum Corp.*, 34 B.R. 650, 652 (Bankr. E.D.N.Y. 1983); *see also In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (noting that request for Bankruptcy Rule 2004 examination should be denied "if the cost and disruption to the examinee . . . outweigh[s] the benefits to the examiner"). Allowing Bankruptcy Rule 2004 discovery without scope or limitation is clearly oppressive and burdensome. Furthermore, as set forth below, discovery of the Objecting Parties is entirely improper. Accordingly, permitting the Committee to go on a limitless and wide ranging discovery "fishing expedition" with respect to irrelevant and non-discoverable matters is oppressive, burdensome, and will distract all parties from the task of consensually resolving these Chapter 11 Cases.

### D. The Objecting Parties' Internal Evaluation Of The Term Sheet is Not Discoverable

15. "[O]nly [] those persons possessing knowledge of the debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy" are subject to examination pursuant to Bankruptcy Rule 2004. *In re Wilcher*, 56 B.R. at 434 (quoting *GHR Energy*, 35 B.R. at 537); *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990). All the information in the Objecting Parties' possession is derivative of information provided by the Debtors and is not discoverable from third parties. As noted above, the Committee should seek in the first instance the information they require from the Debtors or their financial advisors – the entities that have first-hand knowledge of the Debtors' businesses and financial condition.

16. It is fundamental that "[e]xamination of a witness as to matters having no relationship to the [debtor's] affairs or the administration of his estate . . . is improper." *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984); *see also Drexel Burnham,* 123 B.R. at 711 (same). Internal evaluations made by creditors are generally not discoverable. *See In re Wilcher,* 56 B.R. at 434 ("It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs"); *Cf. In re GHR Energy Corp.*, 33 B.R. 451, 455 (Bankr. D. Ma. 1983) ("A Rule 2004 examination is not intended to provide the *debtors* unlimited access to the internal affairs of its creditors and those employed by its creditors.") (emphasis in original). Accordingly, to the extent that the Committee is seeking the Objecting Parties' internal evaluation of the non-binding Term Sheet, that material is not relevant to the evaluation of a filed plan, and is not pertinent to any other acts subject to Bankruptcy Rule 2004 examination. *See In re Continental Forge Co.*, 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987) (noting that the general purpose of Bankruptcy Rule 2004 is to "locate assets and to make those

assets available for the creditors"); *In re Analytical Sys., Inc.*, 71 B.R. 408, 412 (Bankr. N.D. Ga. 1987) (same). If the Committee desires additional information regarding the Debtors' businesses, they should review the Debtors' statement of financial affairs and schedules or make a request that the Debtors provide them the necessary information directly. The only valuation that has any relevance will be the valuation under the Debtors' plan of reorganization.

17. By requesting overly broad discovery without providing any explanation for its necessity and without attempting to obtain such information from the Debtors directly, the Committee's Application appears designed to abuse and harass the Objecting Parties and delay these Chapter 11 Cases, which conduct is prohibited even under the broadest reading of Bankruptcy Rule 2004. *See In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("courts may limit, condition or forbid [Bankruptcy] Rule 2004 discovery when it is designed to abuse or harass.") (citation omitted). It was the Debtors, facing an impending liquidity crisis and fearing the effects of a "free-fall" chapter 11 filing, who initiated discussions with the Objecting Parties regarding a potential restructuring. The Objecting Parties should not be subjected to burdensome discovery because they responded to the Debtors' restructuring efforts when there was no Special Servicer in place and no other party with an interest in the Mortgage Loan willing to listen to the Debtors' concerns and negotiate with them, particularly where, as here, the plan to be proposed by the Debtors may evolve based upon the Debtors' continuing negotiations with all parties-in-interest.

**E.     The Rule 2004 Motion Is Impermissibly Broad In Scope And Should Be Denied**

18. Although the Committee states that it seeks a "narrowly focused examination," the Committee's stated desire to investigate, among other things, "(i) pre-petition agreements and understandings reached or discussed, and information exchanged, between the Debtors and the [Objecting Parties] pertaining to a restructuring of the Debtors" and "(ii) agreements and

understandings between and among Lichtenstein, the Debtors and various non-debtor entities," belies that contention. Motion at ¶ 9. The Committee has failed to attach or include any specific discovery requests for any documents or depositions and is, in fact, requesting unlimited discovery without grounds or support.[3] The burden cannot be on the Objecting Parties to guess how to accurately respond to such an undefined and unduly broad request. *See* Fed. R. Bankr. P. 9013; *see also In re Arkin-Medo, Inc.*, 44 B.R. 138, 139 (Bankr. S.D.N.Y. 1984) ("Bankruptcy Rule 9013 states that a request for an order shall be by written motion, and that 'motion shall state with particularity the grounds therefor[e], and shall set for the relief or order sought.'"); *In re Analytical Systems*, 71 B.R. at 412 ("Fed. R. Civ. P. 30, made applicable in bankruptcy proceedings pursuant to Bankruptcy Rule 7030, requires in such instances, that the party taking the examination designate 'with reasonable particularity the matters on which examination is requested.'"); *see also* 12 Collier on Bankruptcy, § 16.04 (15th ed. Rev.) (providing sample Bankruptcy Rule 2004 motion for discovery in which desired documents are listed in "Exhibit A"). The Committee's failure to set any boundaries whatsoever in the Application results in an impermissibly broad discovery request as it effectively allows the Committee to request any documents or depositions from the Objecting Parties on any topic without limitation. As such, the Application should be denied.

---

[3] A review of the Committee's proposed order accompanying the Rule 2004 Motion illustrates this point as it is unlimited in scope. The proposed order states, in pertinent part:

ORDERED, that pursuant to Bankruptcy Rules 2004 and 9016, the Committee is hereby authorized to issue subpoenas seeking the production of documents from each of the Examinees, in accordance with Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Federal Rules of Bankruptcy Procedure, and the Local Rules of the Court (collectively, the "Rules"); and it is further

ORDERED, that pursuant to Bankruptcy Rules 2004 and 9016, the Committee is authorized and empowered to seek and conduct the oral examination of the Examinees, in accordance with the Rules

11

## CONCLUSION

The Objecting Parties respectfully request that this Court deny the Application and grant any further relief as the Court deems just and proper.

Dated: New York, New York
October 1, 2009

Respectfully submitted,

| SCHULTE ROTH & ZABEL LLP | FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP |
|---|---|
| /s/ Howard O. Godnick | /s/ Gregg L. Weiner |
| Howard O. Godnick | Bonnie Steingart |
| Adam Harris | Gregg L. Weiner |
| Michael Swartz | One New York Plaza |
| 919 Third Avenue | New York, New York 10004 |
| New York, New York 10022 | Telephone: (212) 859-8000 |
| Telephone: (212) 756-2000 | Facsimile: (212) 859-4000 |
| Facsimile: (212) 593-5955 | |
| *Attorneys for Cerberus Capital Management, L.P.* | *Attorneys for Centerbridge Partners, L.P.* |