**Hearing Date and Time: January 14, 2010 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: January 8, 2010 at 4:00 p.m. (prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Marcia L. Goldstein
Jacqueline Marcus

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| **EXTENDED STAY INC., et al.,** | : | **09-13764 (JMP)** |
| **Debtors.** | : | **(Jointly Administered)** |

**SUMMARY SHEETS PURSUANT TO UNITED STATES TRUSTEE GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

**FIRST INTERIM FEE APPLICATION**

| | |
|---|---|
| NAME OF APPLICANT: | Weil, Gotshal & Manges LLP |
| TIME PERIOD: | June 15, 2009 through and including October 31, 2009 |
| ROLE IN THE CASE: | Attorneys for the Debtors |
| CURRENT APPLICATION: | Total Fees Requested: $2,178,127.50 |
| | Total Expenses Requested: $132,474.31 |
| PRIOR APPLICATIONS: | N/A |

**COMPENSATION BY PROFESSIONAL**
**JUNE 15, 2009 THROUGH OCTOBER 31, 2009**

| NAME OF PROFESSIONAL PERSON<br><br>PARTNERS & OF COUNSELS: | DEPARTMENT AND YEAR ADMITTED[1]<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|
| Goldstein, Marcia L. | BFR – 1976 | $950.00 | 277.80 | $263,910.00 |
| Rosen, J.P. | CORP – 1982 | $950.00 | 9.50 | $9,025.00 |
| Gold, Simeon | CORP – 1974 | $925.00 | 10.60 | $9,805.00 |
| Kam, Michael K. | TAX – 1987 | $875.00 | 3.00 | $2,625.00 |
| Nocco, Frank P.. | CORP – 1989 | $875.00 | 0.50 | $437.50 |
| Stangland, Elaine | CORP – 1991 | $860.00 | 19.40 | $16,684.00 |
| Dedyo, John J. | CORP – 1994 | $850.00 | 34.80 | $29,580.00 |
| Gelbfish, Larry J. | TAX - 1988 | $850.00 | 3.30 | $2,805.00 |
| Meyer, Bruce S. | LR – 1987 | $850.00 | 76.90 | $65,365.00 |
| Cohn, Paul T. | CORP – 1988 | $825.00 | 21.00 | $17,325.00 |
| Comet, Howard B. | LR – 1976 | $825.00 | 104.20 | $85,965.00 |
| Marcus, Jacqueline | BFR – 1983 | $810.00 | 627.30 | $505,561.50 |
| Strochak, Adam P. | LR – 1994 | $790.00 | 0.30 | $237.00 |
| Sontag, Scott M. | TAX – 1998 | $725.00 | 5.20 | $3,770.00 |
| Murgio, David P. | CORP – 2000 | $650.00 | 58.40 | $37,960.00 |
| **Total Partners and Of Counsel** | | | **1252.20** | **$1,051,055.00** |

[1] BFR- Business Finance & Restructuring, CORP – Corporate, LR – Litigation/Regulatory, TAX – Tax, LS – Litigation Support.

* Not yet admitted to the bar.

| NAME OF PROFESSIONAL PERSON<br><br>ASSOCIATES: | DEPARTMENT AND YEAR ADMITTED<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | HOURLY BILLING RATE (including changes) | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|
| Meyrowitz, Melissa | CORP – 1999 | $640.00 | 0.90 | $576.00 |
| Lichter, Jason | LR – 2005 | $540.00 | 264.70 | $142,047.00 |
| Noethen, Kirsten A. | CORP – 2005 | $540.00 | 29.50 | $15,930.00 |
| Hickey Zalka, Caroline | LR – 2004 | $500.00 | 0.20 | $100.00 |
| Kim, Jae Y. | BFR – 2006 | $500.00 | 665.50 | $330,925.00 |
| Lucas, John W. | BFR – 2005 | $500.00 | 2.10 | $1,050.00 |
| Bailey, Andrew C. | CORP – 2009 | $465.00 | 145.40 | $67,611.00 |
| Burns, Gregory C. | TAX – 2008 | $465.00 | 2.30 | $1,069.50 |
| Ryan, Jessica | CORP – 2007 | $465.00 | 1.70 | $790.50 |
| Seltzer, Steven | CORP – 2006 | $465.00 | 5.50 | $2,557.50 |
| Tran, Diem | LR – 2007 | $465.00 | 96.80 | $45,012.00 |
| Williams, Olanrewaju A. | CORP – 2007 | $465.00 | 7.70 | $3,580.50 |
| Anusionwu, Ijeoma | BFR – 2009 | $415.00 | 48.70 | $17,288.50 |
| Beyer, Stefanie K. | BFR – 2008 | $415.00 | 355.20 | $146,661.00 |
| Carrozza, Lorri Anne | CORP – 2008 | $415.00 | 3.50 | $1,452.50 |
| Reicher, Aliza | BFR – 2008 | $415.00 | 386.20 | $159,443.00 |
| Drozda, Brian C. | CORP – 2009 | $355.00 | 5.20 | $1,846.00 |
| Gokhale, Ajit | TAX – * | $355.00 | 2.50 | $887.50 |
| Kulawik, Tomasz | CORP – 2008 | $355.00 | 18.30 | $6,496.50 |
| Liou, Jessica | BFR – 2009 | $355.00 | 214.60 | $75,828.00 |
| **Total Associates** | | | **2256.50** | **$1,021,152.00** |

| NAME OF PROFESSIONAL<br><br>**Paralegals, Clerks, Library Staff and Other Non-Legal Staff:** | DEPARTMENT AND YEAR ADMITTED<br><br>Position of the Applicant | HOURLY BILLING RATE (including changes) | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|
| Lee, Kathleen | BFR | $245.00 | 16.00 | $3920.00 |
| Stauble, Christopher | BFR | $245.00 | 15.40 | $3,773.00 |
| Jones, Peggy | CORP | $230.00 | 9.70 | $2,231.00 |
| Shiroma, Lance | CORP | $230.00 | 23.90 | $5,497.00 |
| George, Camille A. | BFR | $210.00 | 4.20 | $882.00 |
| Siebel, Peter A. | BFR | $210.00 | 110.50 | $23,205.00 |
| Marquez, Francheska | CORP | $200.00 | 5.60 | $1,120.00 |
| Amponsah, Duke | BFR | $180.00 | 241.70 | $43,506.00 |
| Koul, Yashomati B. | BFR | $180.00 | 4.00 | $720.00 |
| Prindle, Kaitlin C. | BFR | $180.00 | 9.10 | $1,638.00 |
| Rodriguez, Ilusion | BFR | $180.00 | 3.90 | $702.00 |
| Aliseo, Nicole K. | BFR | $160.00 | 8.00 | $1,280.00 |
| Etienne, Donald | BFR | $160.00 | 15.10 | $2,168.00 |
| Matiteyahu, Gillad | BFR | $160.00 | 10.70 | $1,712.00 |
| Schoenfeld, Matthew | BFR | $160.00 | 21.70 | $3,072.00 |
| Wilmer, Andrea | BFR | $160.00 | 53.00 | $8,400.00 |
| Carmant, Marie J. | LIBRARY | $145.00 | 1.00 | $145.00 |
| Paison, Luis L. | BFR | $140.00 | 6.50 | $910.00 |
| Cruz, Luis | LIBRARY | $135.00 | 3.30 | $445.50 |
| Bettinin, Elio | LIBRARY | $125.00 | 2.30 | $287.50 |
| Pancham, Brenda | LIBRARY | $100.00 | 0.50 | $50.00 |
| Sully, Dawil R. | BFR | $95.00 | 1.00 | $95.00 |
| Greco, Maximiliano | LIBRARY | $85.00 | 1.90 | $161.50 |
| **Total Paraprofessionals** | | | **569.00** | **$105,920.50** |

| PROFESSIONALS<br><br>**TOTALS:** | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Of Counsel | $839.37 | 1252.20 | $1,051,055.00 |
| Associates | $452.54 | 2256.50 | $1,021,152.00 |
| Paraprofessionals | $186.15 | 569.00 | $105,920.50 |
| **Total Fees Incurred** | | **4077.70** | **$2,178,127.50** |
| **Blended Attorney Rate** | **$590.59** | | |
| | | | |
| **Grand Total Fees Requested** | | **4077.70** | **$2,178,127.50** |

**COMPENSATION BY PROJECT CATEGORY**
**JUNE 15, 2009 THROUGH OCTOBER 31, 2009**

| PROJECT CODE | PROJECT DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 001 | Adversary Proceedings | 279.10 | $166,987.00 |
| 003 | Automatic Stay | 194.40 | $106,337.50 |
| 004 | Bar Date Motion and Claims Reconciliation Issues | 45.80 | $19,492.00 |
| 006 | Case Administration | 444.80 | $142,784.50 |
| 007 | Cash Collateral | 451.90 | $286,260.50 |
| 009 | Client Communications | 8.80 | $7,842.50 |
| 010 | Committee & Bondholders Issues /Meetings /Communications | 131.10 | $70,777.50 |
| 011 | Communications and Public Relations | 7.40 | $6,454.50 |
| 012 | Corporate Governance / Securities / D&O Insurance | 6.80 | $4,591.00 |
| 013 | Customer, Tenant and Vendor Issues | 0.80 | $450.50 |
| 015 | Exclusivity | 48.00 | $25,441.50 |
| 017 | General Business Operations | 42.10 | $26,031.50 |
| 018 | General Strategy/Internal Communications and Meetings (includes calls) | 184.20 | $137,953.00 |
| 019 | General Corporate Issues | 122.00 | $81,769.00 |
| 020 | General Creditor Inquiries / Meetings (includes 341 meetings) | 22.00 | $15,821.50 |
| 021 | General Customer / Vendor / Creditor Issues | 10.40 | $4,623.50 |
| 022 | General Employee / ERISA / Benefits Issues | 234.80 | $129,410.00 |
| 023 | General Real Property / Contract / 365 Issues | 82.00 | $39,299.00 |
| 025 | Hearing and Court Matters | 326.40 | $148,837.50 |
| 026 | Insurance & Workers Comp Issues | 44.30 | $21,718.50 |
| 028 | Investigations & 2004 Exams | 210.50 | $138,870.50 |
| 029 | Non-Bankruptcy Litigation | 64.30 | $44,768.50 |
| 030 | Non-Working Travel | 35.60 | $7,927.50 |
| 031 | Plan of Reorganization (Negotiations and Drafting) / Plan Confirmation | 256.00 | $147,955.00 |
| 032 | Retention/Fee Application: Ordinary Course Professionals | 94.30 | $40,056.00 |
| 033 | Retention/Fee Application: Other Professionals | 223.40 | $113,009.00 |
| 034 | Retention / Billing / Fee Applications: WGM | 200.80 | $66,258.50 |
| 035 | Schedules/Statement of Financial Affairs/ MORs | 155.40 | $74,430.50 |
| 036 | Secured Lenders Issues / Meetings / Communications | 98.60 | $75,929.50 |
| 037 | Tax Issues | 6.60 | $3,936.00 |
| 038 | US Trustee | 27.10 | $14,341.50 |
| 039 | Utility Issues | 18.00 | $7,762.50 |
| **TOTAL** | | **4,077.70** | **$2,178,127.50** |

**EXPENSE SUMMARY**
**JUNE 15, 2009 THROUGH OCTOBER 31, 2009**

| EXPENSES | AMOUNTS |
|---|---|
| Document Processing | $689.60 |
| Local Transportation | $3,574.33 |
| Meals | $2,378.48 |
| Postage | $1.90 |
| Air Courier/Express Mail | $663.53 |
| Duplicating | $17,304.00 |
| Printing & Photostats (Outside) | $1,826.58 |
| Special Order Supplies | $1,055.57 |
| Consultants and Witness Fees | $4.36 |
| Computerized Research | $26,142.34 |
| O/S Messenger Service | $113.72 |
| Court Reporting | $2,854.15 |
| Filing Fees | $72,730.00 |
| Telephone (Out-of-Pocket) | $3.00 |
| Telephone-Credit/Collect/3rd Party | $22.03 |
| Meals-Meetings/Conference Cost | $1,826.04 |
| Domestic Travel/ Domestic Travel Meals | $1,284.68 |
| **Total Expenses Requested:** | **$132,474.31** |

**Hearing Date and Time: January 14, 2010 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: January 8, 2010 at 4:00 p.m. (prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Marcia L. Goldstein
Jacqueline Marcus

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| **EXTENDED STAY INC., et al.,** | : | **09-13764 (JMP)** |
| **Debtors.** | : | **(Jointly Administered)** |

**FIRST APPLICATION OF WEIL, GOTSHAL & MANGES LLP, ATTORNEYS FOR THE DEBTORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM JUNE 15, 2009 THROUGH OCTOBER 31, 2009**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Weil, Gotshal & Manges LLP ("WGM"), attorneys for Extended Stay Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, "Extended Stay" or the "Debtors"),[1] hereby files this application (the "Application") and respectfully represents as follows:

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as "Exhibit A."

**Preliminary Statement**

1. WGM requests, pursuant to sections 330(a) and 331 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the interim allowance of compensation for professional services performed by WGM for the period commencing June 15, 2009 through and including October 31, 2009 (the "Compensation Period"), and for reimbursement of its actual and necessary expenses incurred during the Compensation Period.

2. The Debtors' chapter 11 cases (the "Chapter 11 Cases") represent one of the biggest restructuring filings in the commercial mortgage-backed securities ("CMBS") market, involving approximately $7.4 billion in debt, including a $4.1 billion mortgage loan and ten levels of mezzanine debt. Although the Debtors had participated in discussions and negotiations with certain debt holders prior to the filing of the Chapter 11 Cases, the commencement of the Chapter 11 Cases created an unpredictable landscape of interested parties and untested issues under the relevant loan documents. Accordingly, since June 15, 2009 (the "Commencement Date"), WGM has expended a significant amount of time and resources negotiating with various constituents regarding the future of Extended Stay's business, and the terms of a restructuring that would significantly delever the Debtors' capital structure, all while effectuating a seamless transition of the Debtors into chapter 11.

3. Since the Commencement Date, WGM has assisted the Debtors in making significant progress in these chapter 11 cases. Specifically, in the first four months of these cases, the Debtors have, among other things: (i) negotiated and reached resolution with a number of parties in interest regarding the consensual use of cash collateral necessary for the Debtors to continue operating the over 680 hotels in the Extended Stay portfolio, located across the United States and Canada; (ii) requested and subsequently implemented relief with respect to

significant operational matters, including reimbursement of HVM, L.L.C. ("HVM") for operating expenses relating to the operation of the business, (iii) formulated and obtained court approval of an incentive plan for critical employees of HVM who operate the Debtors' business, (iv) obtained authorization to continue their prepetition customer programs and insurance programs; (v) assisted in the preparation of the schedules of assets and liabilities and statements of financial affairs for the seventy Debtors; (vi) devoted extensive time and attention to the stabilization of the Debtors' business operations in chapter 11, thereby providing a framework for a successful restructuring of the Debtors; (vii) negotiated and participated in discussions regarding the appointment of Ralph R. Mabey as examiner in the Chapter 11 Cases (the "Examiner") and the relevant scope of the Examiner's investigation, and participated in discussions with the Examiner and his professionals regarding information requests and background materials; and (viii) begun the analysis and negotiations necessary for the successful formulation of a plan of reorganization, and obtained a necessary extension of the Debtors' exclusive period for filing and completing solicitation for a plan of reorganization.

4. During the Compensation Period, WGM: (i) prepared and filed approximately 46 motions, applications, responses, and supplements, as well as 51 declarations, affidavits, notices of filing, agendas, *pro hac vice* motions, fee statements, and monthly operating reports; (ii) participated in and prepared for 8 hearings; (iii) obtained 47 interim and final orders on the Debtors' behalf, ensuring the efficient administration of these cases and securing much needed relief for the Debtors; (iv) assisted in the preparation and filing of 70 sets of schedules and statements of financial affairs for the Debtors, and (v) performed all of the other professional services described in this Application.

**Background**

5. On the Commencement Date, the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On June 19, 2009, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee"). Although no trustee has been appointed in the Chapter 11 Cases, on September 28, 2009, the Examiner was appointed and by order dated September 29, 2009, the Court approved the appointment of the Examiner.

7. On June 15, 2009, the Debtors filed their Application Pursuant to Section 327(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2014(a) for Authorization to Employ and Retain Weil, Gotshal & Manges LLP as Attorneys for the Debtors Nunc Pro Tunc to the Commencement Date [Docket No. 14].

8. By order of this Court, dated July 17, 2009 [Docket No. 175], the Debtors were authorized to retain WGM as their attorneys to render legal services in connection with the Chapter 11 Cases (the "Retention Order"). The Retention Order authorized WGM to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses, in accordance with sections 330 and 331 of the Bankruptcy Code, applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and the Guidelines (as defined below).

9. Although no chapter 11 plan or disclosure statement has been filed in the Chapter 11 Cases, the Debtors are in the process of formulating a chapter 11 plan.

10. The Debtors have advised WGM that, to date, they have paid all quarterly fees due to the U.S. Trustee and have filed all monthly operating reports with the U.S. Trustee. The Debtors are generally paying their administrative expenses as they become due, with the exception of certain items, such as professional fees, which are subject to orders of this Court that provide otherwise.

11. As of the close of business on December 11, 2009, the Debtors had approximately $63.4 million in their debtor in possession account. The Debtors do not believe that they have any unencumbered funds.

**Summary of Professional Compensation and Reimbursement of Expenses Requested**

12. This Application has been prepared in accordance with the guidelines established by the Office of the United States Trustee (the "UST Guidelines"), the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on November 25, 2009 (the "Local Guidelines"), and the Second Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Docket No. 486] (the "Administrative Order," and together with the Local Guidelines and the UST Guidelines, the "Guidelines"). Pursuant to the Local Guidelines, a certification regarding compliance with the same is annexed hereto as Exhibit "B." The Debtors have approved the amounts requested by WGM for services performed and expenses incurred in each of the monthly fee statements filed with the U.S. Trustee during the Compensation Period.

13. By this Application, WGM requests allowance of interim compensation for professional services rendered to the Debtors during the Compensation Period in the amount of $2,178,127.50 and expense reimbursements of $132,474.31. During the Compensation Period, WGM attorneys and paraprofessionals expended a total of approximately 4,077.7 hours for which compensation is sought.

14. In accordance with the Administrative Order, WGM has received payments totaling $1,477,194.96 for the Compensation Period, which amount consists of $1,351,291.20 representing 80% of the fees invoiced for the Compensation Period and $125,903.76 representing 100% of the expenses invoiced for the Compensation Period. As of the date of filing, the objection deadline has not passed for monthly fee and expense statement for the period of October 1, 2009 through October 31, 2009 (the "October Compensation Period"). Pursuant to WGM's monthly statement for the October Compensation Period, WGM invoiced a total of $397,781.35, which amount consists of $391,210.80 representing 80% of the fees incurred, and $6,570.55 representing 100% of the expenses incurred.

15. WGM consistently monitors its charges and expenses before and after the submission of monthly fee statements for potential errors or charges that might be inappropriate or otherwise should be reduced. As a result, prior to the submission of monthly fee statements for the Compensation Period, WGM reduced its charges by $20,868.50 and its expenses by $8,575.81 for a total of $29,444.31 in voluntary reductions. WGM will continue to diligently monitor its charges and expenses and, where appropriate, make reductions.

16. Before the Commencement Date, WGM received fee advances from the Debtors in the aggregate amount of $1,065,000.00, which have been applied against payment for services rendered, disbursements made, and expenses incurred in connection with the prepetition

preparation of these cases for filing and related prepetition services. Before the filing of the Chapter 11 Cases, WGM estimated the amount of anticipated charges for professional services to be performed and expenses to be incurred up to the Commencement Date and reduced the balance of the fee advances accordingly. WGM has since reconciled the estimated charges originally applied to the fee advances with the actual charges billed by WGM. The net result as of the date of this Application is a credit balance in favor of the Debtors for future professional services to be performed and expenses to be incurred in the amount of $354,605.92 as set forth in the First Supplemental Affidavit and Disclosure Statement on behalf of Weil, Gotshal & Manges LLP pursuant to Sections 327, 329 and 504 of the Bankruptcy Code and Rules 2014(a) and 2016 (b) of the Federal Rules of Bankruptcy Procedure, dated December 7, 2009 [Docket No. 606].

17. Except to the extent of the advance payments made to WGM as described above or payments made in accordance with the Administrative Order, WGM has received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered during the Compensation Period and addressed by this Application. There is no agreement or understanding between WGM and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases.

18. WGM maintains computerized records of the time spent by all WGM attorneys and paraprofessionals in connection with its prosecution of the Debtors' chapter 11 cases. Subject to redaction where necessary to preserve the attorney-client privilege, WGM has provided itemized time records for professionals and paraprofessionals performing services for the Debtors during the Compensation Period to this Court, the U.S. Trustee, the Creditors' Committee, and attorneys for TriMont Real Estate Advisors, Inc. (the "Special Servicer") and

U.S. Bank National Association, as successor in interest to Wells Fargo Bank, N.A. (the "Successor Trustee").[3] All entries itemized in WGM's time records comply with the requirements set forth in the Guidelines, including the use of separate matter numbers for different project types, as hereinafter described.

**Summary of Services Performed by**
**WGM During the Compensation Period**

19. As described above, in the initial four months of these chapter 11 cases, WGM rendered an extraordinary level of professional services in order to stabilize the Debtors' businesses and operations, address the various issues typically confronted by debtors during chapter 11 cases, and begin the process of formulating a plan of reorganization. In addition, WGM confronted certain issues unique to the CMBS market and related loan documentation, and engaged in negotiations with all of the constituents that became parties in interest as a result of the filing of the Chapter 11 Cases. In particular, because the $4.1 billion mortgage loan became a specially serviced loan immediately after the Commencement Date, the Debtors had to quickly and effectively conduct discussions with the Special Servicer and the Successor Trustee regarding, among other things, the consensual use of cash collateral. Because the Special Servicer was completely new to the situation, the Debtors and their professionals had to provide the Special Servicer with extensive background information and data regarding, among other things, the operations of the Debtors' business and the logistics of the Debtors' cash management system. Due to these unusual circumstances, the Debtors prepared and participated in three

[3] Due to the voluminous nature of the WGM's Billing Summary Report ("BSR"), the BSR is not annexed as an exhibit to this Application. Copies of the BSR have been provided to this Court, the U.S. Trustee, and the attorneys for the Special Servicer and the Successor Trustee and the Creditors' Committee, and will be made available upon request. A summary of WGM's time billed during the Compensation Period by project category is included in the Summary Sheets filed contemporaneously with this Application and described in detail below.

hearings before the final use of cash collateral was authorized. The discussions with the Special Servicer, the Successor Trustee, and other parties in interest regarding the use of cash collateral were required because the continuation of the Debtors' operations depended on their access to cash. Those negotiations could not take place prior to the Commencement Date because the mortgage loan had not been placed in special servicing at such time.

20. Other unusual issues in the Chapter 11 Cases required significant attention from WGM. For example, WGM also participated in numerous discussions and negotiations with parties in interest regarding the use of cash collateral to continue to reimburse HVM for critical operating expenses. HVM, as the third party manager of all of the Extended Stay hotels, required the use of cash collateral in order to continue to pay ordinary course costs of the Debtors' hotel business, such as utilities and service providers. In addition, HVM was responsible for paying all of the employees that provide services to the over 680 Extended Stay hotels. Without the authority to reimburse HVM for such expenses, the Debtors would not have been able to continue their operations. As a result of extensive discussions and negotiations with the requisite parties in interest, the Debtors were authorized to use cash collateral to continue to pay HVM's critical operating expenses.

21. In addition, since the Commencement Date, WGM: (i) participated in the discussions regarding the appointment of the Examiner, and the scope of the Examiner's investigation; (ii) successfully prosecuted applications for examinations pursuant to Bankruptcy Rule 2004 for the production of the names and information of certificate holders holding the Debtors' debt; (iii) successfully negotiated with the U.S. Trustee, the Creditors' Committee, the Special Servicer and the Successor Trustee regarding the use of cash collateral to fund an incentive program for HVM's critical employees; and (iv) prepared, filed, and obtained an

extension of the Debtors' exclusive right to propose and file a chapter 11 plan and obtain acceptance thereof (collectively, the "Exclusive Periods") to February 1, 2010 and April 1, 2010, respectively [Docket No. 500].

22. WGM rendered a substantial amount of other professional services in furtherance of the Chapter 11 Cases during the Compensation Period. The following is a summary of the professional services rendered by WGM during the Compensation Period. This summary is organized in accordance with the internal system of work codes set up by WGM at the outset of the Chapter 11 Cases. In addition, there may be work codes that WGM did not bill time to during the Compensation Period, but may utilize during subsequent compensation periods.

a. Cash Collateral (Task Code 007)

- Participated in meetings and teleconferences regarding the consensual use of cash collateral, and drafted and negotiated the Debtors' interim and final cash collateral orders with various parties in interest;
- Reviewed objections to the Debtors' interim and final cash collateral orders, and drafted and filed the Debtors' responses to such objections;
- Prepared for and participated in contested cash collateral hearing; and
- Drafted and negotiated the Debtors' motion and proposed order authorizing the use of cash collateral by ESA UD Properties L.L.C.

b. General Employee / ERISA / Benefits Issues (Task Code 022)

- Prepared and filed the Debtors' motion to authorize the use of cash collateral to fund employee incentive plan for HVM's critical employees (the "HVM Plan") and supplemental pleadings relating thereto;
- Conducted extensive negotiations regarding terms of the HVM Plan;
- Prepared for and participated in hearings regarding the HVM Plan; and
- Prepared letter agreements with HVM employees incorporating the terms of the HVM Plan.

c. Investigations & 2004 Exams (Task Code 028)

- Reviewed multiple Bankruptcy Rule 2004 applications, drafted the Debtors' response to the same, and prepared for and participated in hearing on same;
- Reviewed and responded to the U.S. Trustee's motion to appoint an examiner;
- Participated in numerous conferences and negotiations regarding the U.S. Trustee's motion to appoint an examiner and the Examiner's work plan; and
- Responded to numerous document requests in connection with ongoing investigations.

d. Secured Lenders Issues / Meetings / Communications (Task Code 036)

- Corresponded and negotiated with the Special Servicer and Successor Trustee on various issues, including adequate protection payments, various motions filed by Debtors, information requests, plan issues; and
- Reviewed Special Servicer's monthly requests for fees.

e. Committee & Bondholders Issues / Meetings / Communications (Task Code 010)

- Responded to numerous requests for information and documents from the Creditors' Committee;
- Participated in numerous conferences and negotiations regarding confidentiality agreements; and
- Participated in discussions with Creditors' Committee regarding various pending matters.

f. Plan of Reorganization (Negotiations and Drafting) / Plan Confirmation (Task Code 031)

- Conferred with the Debtors and coordinated among their professionals to formulate plan of reorganization structure;
- Researched numerous legal issues and performed diligence in connection with formulating a plan of reorganization;
- Prepared initial drafts of the plan of reorganization and disclosure statement; and
- Began preliminary discussions regarding plan terms.

g. General Strategy / Internal Communications & Meetings (includes calls) (Task Code 018)

- Participated in numerous conferences with the Debtors and their financial advisors regarding strategic issues in the Debtors' chapter 11 cases; and
- Weekly conference calls regarding cash flow and chapter 11 issues.

h. Schedules / Statement of Financial Affairs / MORs (Task Code 035)

- Drafted motions requesting additional time to file schedules and statements of financial affairs (the "Schedules and SOFAs"), and coordinated with the U.S. Trustee regarding same;
- Teleconferences and meetings with the Debtors and their claims agent regarding the Schedules and SOFAs;
- Reviewed draft Schedules and SOFAs;
- Teleconferences and meetings with the Debtors regarding the Debtors' periodic reports regarding the value, operations and profitability of entities in which the Debtors' estates hold a substantial or controlling interest pursuant to Bankruptcy Rule 2015.3 (the "Rule 2015.3 Reports");
- Assisted in the preparation of the Rule 2015.3 Reports; and
- Assisted the Debtors in the preparation and filing of monthly operating reports.

i. Exclusivity (Task Code 015)

- Drafted and filed the Debtors' motion to extend the Exclusive Periods; and
- Negotiated consensual extension of Exclusive Periods.

j. Bar Date Motion and Claims Reconciliation Issues (Task Code 004)

- Prepared and filed motion and order establishing deadline for filing proofs of claim and approving the form and manner of notice thereof;
- Negotiated terms of bar date order with the Special Servicer, the Successor Trustee and the Creditors' Committee; and
- Addressed creditor inquiries regarding claims process.

k. Non-Bankruptcy Litigation (Task Code 029)

- Participated in conferences and teleconferences regarding state court litigation; and
- Conducted research regarding removal.

l. Adversary Proceedings (Task Code 001)

- Prepared opposition to motions to remand; and
- Filed notices of appeal related to remand of two actions to state court.

m. Automatic Stay (Task Code 003)

- Researched issues related to the automatic stay; and
- Drafted motion to expand the automatic stay and declaration in support thereof.

n. Retention / Fee Application: Other Professionals (Task Code 033)

- Drafted applications to retain and assisted with affidavits and engagement letters for multiple professionals, including Lazard Freres & Co. LLC, Covington & Burling LLP, Ernst & Young LLP, and PKF Consulting;
- Drafted motion to approve and proposed orders approving procedures for interim compensation of retained professionals;
- Conferred with various applicants regarding scope of retention, terms of compensation and related issues;
- Prepared for and participated in hearings regarding same;
- Responded to inquiries regarding monthly fee statements for retained professionals;
- Reviewed monthly fee statements submitted by Creditors' Committee's professionals; and
- Coordinated Debtors' payments of monthly fees.

o. Retention / Fee Application: Ordinary Course Professionals (Task Code 032)

- Reviewed and assessed the Debtors' need to retain professionals;
- Drafted and filed motion to retain professionals in the ordinary course of business and retention questionnaire and form affidavit in connection with same;

- Conferred with the Debtors and ordinary course professionals regarding retention procedures and conflicts issues; and

- Conferred with the U.S. Trustee regarding ordinary course professional issues and confirmed compliance with UST Guidelines and Local Guidelines.

p. Retention / Billing / Fee Applications: WGM (Task Code 034)

- Prepared and filed WGM retention application and affidavit;

- Maintained and updated list of parties in interest for conflicts purposes; and

- Prepared WGM monthly fee statements.

q. General Real Property / Contract / 365 Issues (Task Code 023)

- Performed diligence relating to ground leases;

- Prepared and filed the Debtors' motion requesting extension of time to assume or reject unexpired leases of nonresidential real property; and

- Prepared and filed the Debtors' motion to purchase certain real property in Anchorage, Alaska.

r. Insurance and Workers Comp Issues (Task Code 026)

- Prepared and filed the Debtors' interim and final orders authorizing the continuation of prepetition insurance programs;

- Prepared for and participated in interim and final hearings regarding the same; and

- Prepared and filed the Debtors' motion to renew the Zurich Insurance Policies.

s. US Trustee (Task Code 038)

- Conferred with the U.S. Trustee regarding case matters, including retention issues, employee matters, hearing items, schedules and statements, cash management, and the U.S. Trustee's motion to appoint an examiner;

- Conferred with the U.S. Trustee's office regarding the initial debtor interview, participated in teleconferences with the Debtors regarding requested information and documents for the initial debtor interview, participated in the initial debtor interview; and

- Monitored compliance with the U.S. Trustee Guidelines and Local Guidelines.

t. General Business Operations (Task Code 017)

- Advised the Debtors on continuation of their business operations while in bankruptcy; and
- Conferred with financial advisors regarding the Debtors' business operations.

u. General Creditor Inquiries / Meetings (includes 341 meetings) (Task Code 020)

- Responded to telephone and email inquiries from creditors and other parties in interest; and
- Prepared for and participated in the initial and continued section 341 meeting.

v. Client Communications (Task Code 009)

- Corresponded with the client regarding general operational issues and general case strategy.

w. Utility Issues (Task Code 039)

- Responded to multiple inquiries, termination notices, and utility deposit requests from utilities, and conferred with client regarding same.

x. Hearings and Court Matters (Task Code 025)

- Prepared for and attended eight court hearings during the Compensation Period; and
- Coordinated with the Court regarding hearings and agenda items.

y. Case Administration (Task Code 006)

- Maintained a project list, case calendar, working group list, master service list, hearing transcripts, and case docket of documents filed with the Court;
- Filed numerous motions, notices, applications, objections, and orders;
- Prepared and filed agenda letters, affidavits of service, and notices for each hearing;
- Coordinated with the Debtors' claims agent with respect to service of pleadings;
- Compiled document binders in advance of hearings;

- Compiled and organized documents in response to numerous document requests; and
- Corresponded with multiple parties regarding case status, pending matters and open issues.

z. General Corporate Issues (Task Code 019)

- Drafted and negotiated multiple confidentiality agreements between the Debtors and various parties.

aa. Communications and Public Relations (Task Code 011)

- Conferred with the Debtors regarding press releases, other communications, and public relations issues related to the Debtors' chapter 11 filing.

bb. Tax Issues (Task Code 037)

- Reviewed and responded to inquiries from various taxing authorities; and
- Prepared preliminary analysis of tax issues relating to the plan of reorganization.

cc. Customer, Tenant and Vendor Issues (Task Code 013)

- Prepared and filed the Debtors' proposed interim and final orders authorizing the Debtors to honor certain prepetition customer programs; and
- Prepared for and participated in hearings regarding the same.

dd. General Customer / Vendor / Creditor Issues (Task Code 021)

- Responded to multiple inquiries from creditors, vendors, and suppliers regarding the Chapter 11 Cases.

ee. Corporate Governance / Securities / D&O Insurance (Task Code 012)

- Conferred with and advised the Debtors on matters relating to their boards of directors.

ff. Non-Working Travel (Task Code 030)

- Traveled to and from meetings and hearings.

23. Professional services performed by WGM on behalf of the Debtors during the Compensation Period required an aggregate expenditure of 4,077.7 recorded hours by WGM's partners, counsel, associates, and paraprofessionals. Of the aggregate time expended,

1,193.8 recorded hours were expended by partners of WGM, 58.4 recorded hours were expended by counsel, 2,256.5 recorded hours were expended by associates, and 569 recorded hours were expended by paraprofessionals of WGM.

24. During the Compensation Period, WGM's hourly billing rates for attorneys ranged from $355 to $950 per hour. Allowance of compensation in the amount requested would result in a blended hourly rate for attorneys of approximately $590.59 (based on 3,508.7 recorded attorney hours at WGM's regular billing rates in effect at the time of the performance of services).

**Actual and Necessary Disbursements**

25. As set forth in the Summary Sheets filed contemporaneously with this Application, WGM disbursed $132,474.31 as expenses incurred in providing professional services during the Compensation Period. WGM's disbursement policies pass through all out of pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine. For example, with respect to duplication charges, WGM charges $0.10 per page because the actual cost is difficult to determine. Similarly, as it relates to computerized research, WGM believes that it does not make a profit on that service as a whole, although the cost of any particular search is difficult to ascertain. Other reimbursable expenses (whether the service is performed by WGM in-house or through a third party vendor) include, but are not limited to, facsimiles, toll calls, overtime meals, deliveries, court costs, transcript fees, travel, and clerk fees.

**The Requested Compensation Should be Allowed**

26. Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. 11 U.S.C. § 331. Section 330 provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." Id. § 330(a)(1)(A). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded … the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).

27. In the instant case, WGM respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the Debtors' orderly administration of their estates. WGM worked assiduously to anticipate or respond to the Debtors' needs and assist in the Debtors'

chapter 11 process and such services and expenditures were necessary and in the best interests of the Debtors' estates and creditors. In light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest, WGM submits that the compensation requested herein is reasonable.

28. Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved. The professional services were performed expediently and efficiently. Whenever possible, WGM sought to minimize the costs of its services to the Debtors by utilizing talented junior attorneys and paraprofessionals to handle more routine aspects of case administration. Groups of the same WGM attorneys were utilized for similar tasks in these cases to minimize the costs of intra-WGM communication and education about the Debtors' circumstances.

29. The majority of services performed by WGM were rendered by members of the Business Finance and Restructuring Department, which is a preeminent bankruptcy practice and enjoys a national reputation for its expertise in financial reorganizations and restructurings of troubled entities. WGM has been actively involved in major chapter 11 cases, and currently represents or has represented, among others, the following debtors: General Motors, Inc.; Lehman Brothers Holdings Inc.; General Growth Properties, Inc.; BearingPoint, Inc.; Pilgrim's Pride Corporation; LandSource Communities Development LLC; Vertis Holdings, Inc.; PRC, LLC; Atkins Nutritionals, Inc.; Footstar, Inc.; Parmalat USA Corp.; Worldcom, Inc.; and Enron Corp. Consequently, WGM brings to these cases a high level of expertise and experience that inures to the benefit of the Debtors and all parties in interest.

30. The fees charged by WGM in these cases are billed in accordance with its existing billing rates and procedures in effect during the Compensation Period. The rates WGM

charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates WGM charges for professional and paraprofessional services rendered in comparable nonbankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive national legal market.

31. In sum, the services rendered by WGM were necessary and beneficial to the Debtors' estates, were consistently performed in a timely manner, and reasonable in light of the value of such services to the Debtors, their estates, and all parties in interest, WGM's demonstrated skill and expertise in the bankruptcy field, and the customary compensation charged by comparably skilled practitioners at WGM. Accordingly, WGM submits that approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

**Reservation of Rights**

32. To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, or WGM has for any other reason not sought compensation or reimbursement of expenses herein with respect to any services rendered or expenses incurred during the Compensation Period, WGM reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

**Conclusion**

WHEREFORE WGM respectfully requests (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $2,178,127.50 and expense reimbursement in the amount of $132,474.31; (ii) a determination that the allowance of such compensation for professional services rendered and reimbursement

of actual and necessary expenses incurred be without prejudice to WGM's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of this Application; and (iii) such other and further relief as is just.

Dated: December 15, 2009
New York, New York

/s/ Jacqueline Marcus

Marcia L. Goldstein
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

# Exhibit A

| Debtor | Last Four Digits of Federal Tax I.D. Number |
|---|---|
| Extended Stay Inc. | 7401 |
| ESA P Portfolio L.L.C. f/k/a BRE/ESA P Portfolio L.L.C. | 7190 |
| ESA 2005 Portfolio L.L.C. f/k/a BRE/ESA 2005 Portfolio L.L.C. | 8617 |
| ESA 2005-San Jose L.L.C. f/k/a BRE/ESA 2005-San Jose L.L.C. | 1317 |
| ESA 2005-Waltham L.L.C. f/k/a BRE/ESA 2005-Waltham L.L.C. | 1418 |
| ESA Acquisition Properties L.L.C. f/k/a BRE/ESA Acquisition Properties L.L.C. | 8149 |
| ESA Alaska L.L.C. f/k/a BRE/ESA Alaska L.L.C. | 8213 |
| ESA Canada Properties Borrower L.L.C. f/k/a BRE/ESA Canada Properties Borrower L.L.C. | 7476 |
| ESA FL Properties L.L.C. f/k/a BRE/ESA FL Properties L.L.C. | 7687 |
| ESA MD Borrower L.L.C. f/k/a BRE/ESA MD Borrower L.L.C. | 8839 |
| ESA MN Properties L.L.C. f/k/a BRE/ESA MN Properties L.L.C. | 0648 |
| ESA P Portfolio MD Borrower L.L.C. f/k/a BRE/ESA P Portfolio MD Borrower L.L.C. | 7448 |
| ESA P Portfolio PA Properties L.L.C. f/k/a BRE/ESA P Portfolio PA Properties L.L.C. | 6306 |
| ESA P Portfolio TXNC Properties L.P. f/k/a BRE/ESA P Portfolio TXNC Properties L.P. | 7378 |
| ESA PA Properties L.L.C. f/k/a BRE/ESA PA Properties L.L.C. | 7652 |
| ESA Properties L.L.C. f/k/a BRE/ESA Properties L.L.C. | 1249 |
| ESA TX Properties L.P. f/k/a BRE/ESA TX Properties L.P. | 1295 |
| ESH/Homestead Portfolio L.L.C. f/k/a BRE/Homestead Portfolio L.L.C. | 9049 |
| ESH/HV Properties L.L.C. f/k/a BRE/HV Properties L.L.C. | 8927 |
| ESH/MSTX Property L.P. f/k/a BRE/MSTX Property L.P. | 5862 |
| ESH/TN Properties L.L.C. f/k/a BRE/TN Properties L.L.C. | 5781 |
| ESH/TX Properties L.P. f/k/a BRE/TX Properties L.P. | 6964 |
| ESH/Homestead Mezz L.L.C. f/k/a BRE/Homestead Mezz L.L.C. | 9883 |

| **Debtor** | **Last Four Digits of Federal Tax I.D. Number** |
|---|---|
| ESA P Mezz L.L.C. f/k/a BRE/ESA P Mezz L.L.C. | 7467 |
| ESA Mezz L.L.C. f/k/a BRE/ESA Mezz L.L.C. | 0767 |
| ESH/Homestead Mezz 2 L.L.C. f/k/a BRE/Homestead Mezz 2 L.L.C. | 9903 |
| ESA P Mezz 2 L.L.C. f/k/a BRE/ESA P Mezz 2 L.L.C. | 7480 |
| ESA Mezz 2 L.L.C. f/k/a BRE/ESA Mezz 2 L.L.C. | 0866 |
| ESH/Homestead Mezz 3 L.L.C. f/k/a BRE/Homestead Mezz 3 L.L.C. | 9936 |
| ESA P Mezz 3 L.L.C. f/k/a BRE/ESA P Mezz 3 L.L.C. | 8977 |
| ESA Mezz 3 L.L.C. f/k/a BRE/ESA Mezz 3 L.L.C. | 0929 |
| ESH/Homestead Mezz 4 L.L.C. f/k/a BRE/Homestead Mezz 4 L.L.C. | 9953 |
| ESA P Mezz 4 L.L.C. f/k/a BRE/ESA P Mezz 4 L.L.C. | 8997 |
| ESA Mezz 4 L.L.C. f/k/a BRE/ESA Mezz 4 L.L.C. | 0964 |
| ESH/Homestead Mezz 5 L.L.C. f/k/a BRE/Homestead Mezz 5 L.L.C. | 9613 |
| ESA P Mezz 5 L.L.C. f/k/a BRE/ESA P Mezz 5 L.L.C. | 9186 |
| ESA Mezz 5 L.L.C. f/k/a BRE/ESA Mezz 5 L.L.C. | 1006 |
| ESH/Homestead Mezz 6 L.L.C. f/k/a BRE/Homestead Mezz 6 L.L.C. | 9667 |
| ESA P Mezz 6 L.L.C. f/k/a BRE/ESA P Mezz 6 L.L.C. | 9247 |
| ESA Mezz 6 L.L.C. f/k/a BRE/ESA Mezz 6 L.L.C. | 8995 |
| ESH/Homestead Mezz 7 L.L.C. f/k/a BRE/Homestead Mezz 7 L.L.C. | 9722 |
| ESA P Mezz 7 L.L.C. f/k/a BRE/ESA P Mezz 7 L.L.C. | 9349 |
| ESA Mezz 7 L.L.C. f/k/a BRE/ESA Mezz 7 L.L.C. | 9065 |
| ESH/Homestead Mezz 8 L.L.C. f/k/a BRE/Homestead Mezz 8 L.L.C. | 9779 |
| ESA P Mezz 8 L.L.C. | 9402 |
| ESA Mezz 8 L.L.C. f/k/a BRE/ESA Mezz 8 L.L.C. | 9117 |
| ESH/Homestead Mezz 9 L.L.C. f/k/a BRE/Homestead Mezz 9 L.L.C. | 1011 |
| ESA P Mezz 9 L.L.C. | 0281 |

| Debtor | Last Four Digits of Federal Tax I.D. Number |
|---|---|
| ESA Mezz 9 L.L.C. | 0923 |
| ESH/Homestead Mezz 10 L.L.C. f/k/a BRE/Homestead Mezz 10 L.L.C. | 1063 |
| ESA P Mezz 10 L.L.C. | 0224 |
| ESA Mezz 10 L.L.C. | 0175 |
| Homestead Village L.L.C. f/k/a BRE/Homestead Village L.L.C. | 8930 |
| ESA MD Beneficiary L.L.C. f/k/a BRE/ESA MD Beneficiary L.L.C. | 7038 |
| ESA P Portfolio MD Trust f/k/a BRE/ESA P Portfolio MD Trust | 8258 |
| ESA MD Properties Business Trust f/k/a BRE/ESA MD Properties Business Trust | 6992 |
| ESA P Portfolio MD Beneficiary L.L.C. f/k/a BRE/ESA P Portfolio MD Beneficiary L.L.C. | 8432 |
| ESA Canada Properties Trust f/k/a BRE/ESA Canada Properties Trust | 2314 |
| ESA Canada Trustee Inc. f/k/a BRE/ESA Canada Trustee Inc. | 2861 |
| ESA Canada Beneficiary Inc. f/k/a BRE/ESA Canada Beneficiary Inc. | 7543 |
| ESA UD Properties L.L.C. | 7075 |
| ESA 2007 Operating Lessee Inc. f/k/a BRE/ESA 2007 Operating Lessee Inc. | 9408 |
| ESA 2005 Operating Lessee Inc. f/k/a BRE/ESA 2005 Operating Lessee Inc. | 8471 |
| ESA Operating Lessee Inc. f/k/a BRE/ESA Operating Lessee Inc. | 4369 |
| ESA P Portfolio Operating Lessee Inc. f/k/a BRE/ESA P Portfolio Operating Lessee Inc. | 7433 |
| ESA Business Trust f/k/a BRE/ESA Business Trust | 8078 |
| ESA Management L.L.C. | 9101 |
| ESA P Portfolio Holdings L.L.C. f/k/a BRE/ESA P Portfolio Holdings L.L.C. | 8432 |
| ESA Canada Operating Lessee Inc. f/k/a BRE/ESA Canada Operating Lessee Inc. | 8838 |
| Extended Stay Hotels L.L.C. | 7438 |

# Exhibit B

## Certification of Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Marcia L. Goldstein
Jacqueline Marcus

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11 Case No.** |
| **EXTENDED STAY INC., et al.,** | **09-13764 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

**CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF FIRST APPLICATION OF WEIL, GOTSHAL & MANGES LLP FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**

I, Jacqueline Marcus, hereby certify that:

1. I am a partner with the applicant firm, Weil, Gotshal & Manges LLP ("WGM"), with responsibility for the chapter 11 cases of Extended Stay Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, "Extended Stay" or the "Debtors").

2. In accordance with the guidelines established by the Office of the United States Trustee (the "UST Guidelines"), the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on November 25, 2009 (the "Local Guidelines"), and the Second Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals

[Docket No. 486] (the "Administrative Order," and together with the Local Guidelines and the UST Guidelines, the "Guidelines"), this certification is made with respect to WGM's application, dated December 15, 2009 (the "Application"), for interim compensation and reimbursement of expenses for the period from June 15, 2009 through and including October 31, 2009 (the "Compensation Period").

3. In respect of section A.1 of the Local Guidelines, I certify that:

a. I have read the Application;

b. to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines and the UST Guidelines;

c. the fees and disbursements sought are billed at rates and in accordance with practices customarily employed by WGM and generally accepted by WGM's clients; and

d. in providing a reimbursable service, WGM does not make a profit on that service, whether the service is performed by WGM in-house or through a third party.

4. In accordance with section A.2 of the Local Guidelines and as required by the Administrative Order, I certify that WGM has complied with those provisions requiring it to provide the Debtors and any official committee appointed in these cases with a statement of WGM's fees and disbursements accrued during the previous month, although such statements were not always provided within the timeframe set forth in the Local Guidelines as the Administrative Order enlarged the timeframe in which to provide statements.

5. In respect of section A.3 of the Local Guidelines, I certify that the Debtors, the Office of the United States Trustee for the Southern District of New York, counsel for the official committee of unsecured creditors, and attorneys for TriMont Real Estate Advisors, Inc. (the "Special Servicer") and U.S. Bank National Association, as successor in

interest to Wells Fargo Bank, N.A. (the "Successor Trustee") are each being provided with a copy of the Application.

Dated: December 15, 2009
New York, New York

/s/ Jacqueline Marcus

Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007