WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Marcia L. Goldstein
Jacqueline Marcus

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------------x
                                               :
In re                                          :        Chapter 11 Case No.
                                               :
EXTENDED STAY INC., et al.,                    :        09-13764 (JMP)
                                               :
              Debtors.                         :        (Jointly Administered)
                                               :
--------------------------------------------------------------x
```

## NOTICE OF HEARING ON DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE APPROVING BIDDING PROCEDURES AND NOTICE OF AUCTION RELATING THERETO AND GRANTING RELATED RELIEF

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Extended Stay Inc. and its debtor affiliates, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively the "Debtors"), for entry of an order approving bidding

procedures substantially in the form attached to the Motion, and notice of auction relating thereto

and granting related relief, all as more fully described in the Motion, will be held before the

Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy

Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,

New York 10004 (the "Bankruptcy Court"), on **April 22, 2010 at 10:00 a.m. (Prevailing**

**Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to the chambers of the Honorable James M. Peck), and shall be served upon: (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Marcia L. Goldstein, Esq. and Jacqueline Marcus, Esq., attorneys for the Debtor; (ii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Paul Schwartzberg, Esq.; (iii) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022, Attn: Mark T. Power, Esq., Mark S. Indelicato, Esq. and Christopher Jarvinen, Esq., attorneys for the Official Committee of Unsecured Creditors; and (iv) McKenna Long & Aldridge LLP, 303 Peachtree Street, NE Suite 5300, Atlanta, GA 30308, Attn: Gary W. Marsh, Esq., and Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022, Attn: Mitchell Seider, Esq. and Keith Simon, Esq., attorneys for the Special Servicer and the Successor Trustee, **so as to be filed and actually received no later than April 20, 2010 at 12:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  April 15, 2010
        New York, New York

/s/ Jacqueline Marcus
Marcia L. Goldstein
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Marcia L. Goldstein
Jacqueline Marcus

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                            :
In re                                       :        Chapter 11 Case No.
                                            :
EXTENDED STAY INC., et al.,                 :        09-13764 (JMP)
                                            :
            Debtors.                        :        (Jointly Administered)
                                            :
------------------------------------------------------------x
```

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY**
**CODE APPROVING BIDDING PROCEDURES AND NOTICE OF THE AUCTION**
**RELATING THERETO AND GRANTING RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Extended Stay Inc. and its debtor affiliates, as debtors and debtors in possession

in the above-captioned chapter 11 cases (collectively, "Extended Stay" or the "Debtors"),[1]

submit this motion (the "Motion") and respectfully represent:

**Preliminary Statement**

1.      Since the filing of their chapter 11 cases, the Debtors have been in

discussions with parties-in-interest regarding the terms of a proposed plan of reorganization.

---

[1] A list of the Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax
identification number, is attached hereto as "Exhibit A."

During the past four months, the Debtors have focused their efforts on negotiations with two separate groups of potential investors, Centerbridge Partners, L.P. and Paulson & Co. Inc. (the "C/P Investors"), and Starwood ESH, L.L.C. (the "Starwood Investor"), the indirect members of which are (a) Starwood Global Opportunity Fund VIII, L.P., Starwood U.S. Opportunity Fund VIII-1, L.P., Starwood U.S. Opportunity Fund VIII-2, L.P., Starwood Capital Hospitality Fund II Global, L.P. and Starwood Capital Hospitality Fund II U.S., L.P., (b) Five Mile Capital Partners II LP, FMCP II Principals LP and Five Mile Capital Partners II (AIV), LP and (c) TPG Partners V, L.P. and TPG Partners VI, L.P.

2.     As a result of the efforts of the Debtors and their professionals, as well as the C/P Investors and the Starwood Investor and their respective professionals, the Debtors have received three competitive offers from two committed groups of potential investors.  The C/P Investors, which are the investors who have proposed the most favorable terms to the Debtors, have agreed with the Debtors that the best course of action would be to conclude the marketing process that has been ongoing throughout these chapter 11 cases by conducting an auction (the "Auction") at which additional proposals for the sponsorship and funding of a plan of reorganization for the Debtors would be entertained.  The Auction will provide a vehicle for the Debtors to obtain the highest or best offer from potential investors, provide ultimate transparency to the marketing process, enable the Debtors to ensure that they have received maximum value for the Debtors' estates, and bring finality to the Debtors' marketing efforts.  The Auction process will also provide all parties notice and an opportunity to put forward their final and best offer to fund the Debtors' chapter 11 plan and to participate in a competitive process.  In addition, the Auction process provides for the involvement and input from the Creditors' Committee and the Mortgage Debt Parties, giving them the opportunity to participate in a

process that maximizes recoveries to such parties' constituencies. As reported at the April 8, 2010 hearing, the Debtors have determined to seek approval of bidding procedures that will govern the Auction (the "Bidding Procedures"). The Bidding Procedures are attached hereto as "Exhibit B."

3. The Debtors' Bidding Procedures afford potential sponsors the opportunity to obtain information from the Debtors, submit higher or better proposals than the Existing C/P Offer (as defined below) and participate in the Auction. As demonstrated below, approval of the Bidding Procedures is in the best interest of the Debtors' estates and will foster an open and competitive process and secure the best terms for the benefit of all parties-in-interest.

## Background

4. Each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on either June 15, 2009 or February 18, 2010 (as applicable, the "Commencement Date"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On June 19, 2009, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Creditors' Committee. On September 28, 2009, Ralph R. Mabey was appointed examiner in these chapter 11 cases (the "Examiner") and by order dated September 29, 2009, the Court approved the appointment of the Examiner. On April 8, 2010, the Examiner publicly filed his report.

## Jurisdiction and Venue

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

7.      By this motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code approving the Bidding Procedures and the form and manner of notice of the Auction relating thereto, and granting related relief.  In addition, the Debtors further request that the Court waive the requirements of Bankruptcy Rule Bankruptcy Rule 6004(h) and implement the requested relief as soon as practicable.  A proposed order granting the relief requested ( the "Proposed Order") is attached hereto as "Exhibit C."

## Negotiations with the C/P Investors and the Starwood Investor

8.      On February 19, 2010, certain of the Debtors entered into a commitment letter (the "C/P Commitment Letter") with the C/P Investors, and filed a motion (the "C/P Motion") [Docket No. 768] for an order authorizing Debtors to enter into an investment and standby purchase agreement (the "C/P Investment Agreement").  The C/P Investment Agreement provided for a $450 million cash infusion by the C/P Investors into the reorganized Debtors and represented the successful result of months of negotiations between the Debtors and the C/P Investors.  As a result of further discussions between the Debtors and the C/P Investors, an amended commitment letter, together with a revised form of the C/P Investment Agreement, was filed with the Court on March 5, 2010 [Docket No. 798].  In addition, the Debtors filed the Debtors' Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, and the Debtors' First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket Nos. 769, 797] (the "C/P Plan") consistent with the terms set forth in the C/P Investment

Agreement, and a disclosure statement with respect to the C/P Plan [Docket No. 790] (together with the C/P Commitment Letter, the C/P Investment Agreement, and the C/P Plan, the "Original C/P Agreements").

9.      The Original C/P Agreements permitted the Debtors to entertain higher or better offers from other potential investors.  Consistent with their fiduciary duties, the Debtors continued to discuss the terms of a possible alternative transaction and related plan with the Starwood Investor, while balancing the need to maintain the commitment from the C/P Investors in the interim.  When virtually all of the terms of the Starwood Agreements (as defined below) were fully negotiated, the Debtors' board of directors convened and determined that the terms of the Starwood Agreements taken as a whole, were more favorable to the Debtors, their creditors and their estates than the Original C/P Agreements.  Consequently, on March 15, 2010, the Debtors terminated the Original C/P Agreements and, later that same day, proceeded to sign the commitment letter with the Starwood Investor, dated March 15, 2010 (the "Starwood Commitment Letter") and the Investment and Standby Purchase Agreement (the "Starwood Investment Agreement" and, collectively with the Starwood Commitment Letter, the "Starwood Agreements").

10.      The Starwood Agreements provided more value to the Debtors' creditors and their estates than the Original C/P Agreements.  Specifically, the Starwood Agreements provided for an investment of up to $905 million by the Starwood Investor, which substantially exceeded the $450 million investment set forth in the C/P Investment Agreement.  The $905 million amount consisted of (a) a $450 million equity investment (the "Investment"), (b) a $200 million rights offering (the "Rights Offering") that is fully backstopped by the Starwood Investor (the "Backstop Commitment"), and (c) up to $255.4 million to be made available to the holders

of certificates secured by the $4.1 billion mortgage loan (the "Certificates") in Classes B through H, to the extent that such certificate holders would prefer to receive cash in lieu of the equity offered under the Starwood Agreements (the "Cash Election Commitment"). Importantly, the Starwood Agreements also permitted the Debtors to entertain higher and better offers, thus creating an even higher floor for competing bids.

11. However, the Starwood Agreements also provided for certain bid protections (collectively, the "Bid Protections") in return for the Investment and the Backstop Commitment. The Bid Protections included a non-refundable payment due to the Starwood Investor in the event the transaction does not close in the amount of $19,500,000 (or 3% of the Investment and Backstop Commitment) (the "Commitment Payment"), and a Cash Election Commitment Fee to be paid if the transaction does close in an amount equal to the sum of (i) $5,108,000, which is equal to 2.0% of the Cash Election Commitment, and (ii) 1.0% of the amount of the Cash Election Commitment actually paid by the Starwood Investor under the Cash Election Commitment. In addition, the Bid Protections included a reimbursement of expenses of up to $10 million (the "Expense Reimbursement").

12. In response to the improved terms set forth in the Starwood Agreements, the C/P Investors provided the Debtors with an Offer and Proposal Letter on March 29, 2010 (the "Offer and Proposal Letter"). Pursuant to the Offer and Proposal Letter, the C/P Investors proposed to assume the obligations of the Starwood Investor under the Starwood Agreements but eliminated certain of the Bid Protections, including the Commitment Payment, the Cash Election Commitment Fee, and the Expense Reimbursement, as well as the management and incentive fees. To secure their obligations to proceed with the proposed transaction, the C/P Investors posted a $150 million deposit. As set forth in the Offer and Proposal Letter, the C/P Investors'

commitment was intended to act as a backstop commitment to allow the Debtors to proceed with an organized, comprehensive and transparent process to once and for all obtain the highest or best deal for the Debtors' estates and creditors, thus paving the way for confirmation of a chapter 11 plan and an expeditious exit from chapter 11. Therefore, the Offer and Proposal Letter required that the Debtors conduct a formal auction process to select the highest or best offer provided by a potential plan sponsor, which provided additional time for potential investors to conduct diligence and formulate offers. Thereafter, the Debtors' board of directors convened and determined that the terms of the Offer and Proposal Letter taken as a whole, were more favorable to the Debtors, their creditors and their estates than the Starwood Agreements and decided it would be a reasonable exercise of their fiduciary duties to terminate the Starwood Agreements, enter into a commitment letter with the C/P Investors based upon the terms of the Offer and Proposal Letter, and conduct a formal auction process, thereby saving the Debtors' estate the need to pay, among other things, the Commitment Payment.

13. Subsequently, the Debtors terminated the Starwood Agreements and entered into a commitment letter with the C/P Investors, which incorporates the terms of the Offer and Proposal Letter, dated April 2, 2010, a copy of which is attached hereto as "Exhibit D" (the "C/P Amended Commitment Letter"). In addition, consistent with the terms of the C/P Amended Commitment Letter, the Debtors intend to file a revised plan of reorganization (the "Fourth Amended Plan") and disclosure statement reflecting the terms of the C/P Amended Commitment Letter on or before April 23, 2010 (collectively, the "Existing C/P Offer").

14. The Debtors believe that the Auction will facilitate the competitive process that has already occurred in the Debtors' chapter 11 cases and provide a formal mechanism for the Debtors to entertain any remaining higher or better offers. In order to provide

further transparency to the Debtors' marketing process, provide all parties-in-interest with appropriate notice of the Auction, and ensure that parties in interest cannot collaterally attack the results of the Auction at a later date, the Debtors determined that it was in the best interests of the estates to seek Court approval of the Bidding Procedures.

## The Bidding Procedures

15.     The Bidding Procedures were developed by the Debtors, and approved by the C/P Investors.  In addition, an earlier iteration of the Bidding Procedures has been provided to the attorneys for the statutory committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Creditors' Committee"), advisors for TriMont Real Estate Advisors, Inc. (the "Special Servicer") and U.S. Bank National Association, as successor in interest to Wells Fargo Bank, N.A., as successor trustee in trust for the holders of Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2007-ESH (the "Trust," and the current trustee thereof, the "Successor Trustee," collectively with the Special Servicer, the "Mortgage Debt Parties"), and the Starwood Investor.  To date, the Debtors have only received comments from the Starwood Investor.  The Debtors intend to work with the Creditors' Committee and the Mortgage Debt Parties to discuss and incorporate as many of their comments and suggestions as the Debtors deem appropriate prior to the April 22 hearing date for this Motion.

16.     The salient points of the Bidding Procedures are as follows: [2]

- On or before April 28, 2010, the Debtors shall publish the notice of the Auction, substantially in the form attached hereto as "Exhibit E," (the "Notice of Auction") with any modifications necessary for ease of publication, once in *The Wall Street Journal* (National Edition).

---

[2] The description of the Bidding Procedures set forth herein is for summary purposes only and in case of any conflict between the Bidding Procedures and this Motion, the Bidding Procedures attached hereto as "Exhibit B" will govern.

- All proposals (the "Proposals") are due no later than 3 p.m. (prevailing Eastern Time) on May 17, 2010 (the "Proposal Deadline").

- Each potential investor (each an "Interested Party") must submit a $150 million deposit with its Proposal.

- Each Proposal must be fully binding and committed, not subject to any further financing, diligence, or approvals or other conditions not set forth in the form investment and standby purchase agreement provided by the Debtors to Interested Parties (the "Investment Agreement").

- Each Proposal must be accompanied by a mark-up of the Fourth Amended Plan, as well as the Investment Agreement and the other plan-related documents, including the HVM Manager Purchase Agreement and the BHAC Intellectual Property Agreement.

- Copies of all Proposals will be provided by the Debtors to the Creditors' Committee, the Mortgage Debt Parties and the C/P Investors.

- On or before May 25, 2010, the Debtors intend to select, in their business judgment, those Proposals that qualify for participation in the Auction (each such party, a "Qualified Bidder" and a "Qualified Proposal," respectively).[3]

- Only those Proposals that (i) were submitted on or before the Proposal Deadline, (ii) provide incremental value to the Debtors' estates as compared to the Existing C/P Offer, (iii) state that they are binding and irrevocable offers, not subject to financing, diligence, approvals or other conditions not set forth in the Investment Agreement, and (iv) are accompanied by a $150,000,000 deposit that was submitted on or before May 17, 2010, may be deemed Qualified Proposals.

- The Debtors will notify each Interested Party that is a Qualified Bidder and qualifies to participate in the Auction in accordance with the Bidding Procedures, in writing, on or before May 25, 2010. Only Qualified Bidders may participate at the Auction and bid for the Debtors' assets.

- The Debtors will provide each Qualified Bidder with a copy of all Qualified Proposals on or before May 25, 2010.

---

[3] Notwithstanding anything to the contrary in the Bidding Procedures, the C/P Investors are deemed to be Qualified Bidders and the Existing C/P Offer is deemed a Qualified Proposal.

- On or before May 25, 2010, the Debtors shall select, in their business judgment, the transaction they intend to use to commence the Auction (the "Pre-Auction Successful Bid").

- If the Debtors receive a timely Qualified Bid other than the Existing C/P Offer, the Auction will be held on May 27, 2010. At the close of the Auction, the Debtors will identify the Qualified Bidder with the highest or otherwise best bid (the "Successful Bid," and such bidder, the "Successful Bidder").

- If no Qualifying Bid other than the C/P Offer is received, the Auction will not take place and at the disclosure statement hearing currently scheduled for June 17, 2010, the Court will consider the adequacy of the information set forth in the disclosure statement filed with respect to the Existing C/P Offer.

- Following the selection of the Successful Bid, the Debtors will (i) immediately cease and cause to be terminated any ongoing solicitation, discussions and negotiations with respect to any other bids or proposals and (ii) not solicit any inquiries or proposals, or enter into any discussions, negotiations, understandings, arrangements or agreements, relating to any other bid or proposal, and (iii) no additional bids or proposals will be accepted or considered by the Debtors, unless and until the earlier of (1) the termination of the Investment Agreement by and among the Successful Bidder and the Debtors and (2) entry of an order of the Bankruptcy Court denying confirmation of the Plan sponsored by the Successful Bidder.

- The Successful Bidder at the Auction shall be entitled to liquidated damages in an amount equal to 10% of the total enterprise value as set forth in the Successful Bid, and reimbursement of reasonable out-of-pocket expenses up to $10,000,000 (collectively, the "Liquidated Damages"), which shall be payable only in the event that (i) the revised plan that reflects the Successful Bid is withdrawn or the Investment Agreement relating to such plan is terminated because the Debtors have determined to pursue a plan or other transaction based on an alternative bid or proposal and the Successful Bidder is not in breach of any of its obligations under the Investment Agreement or (ii) the Special Servicer has exercised any rights or remedies it may have (other than its right to vote on such Plan) that render confirmation of the Plan sponsored by the Successful Bidder impracticable or impossible. In the case of clause (i), the expense reimbursement shall be paid upon such withdrawal or termination and the balance of the Liquidated Damages shall be paid upon consummation of an alternative bid or proposal or other transaction involving the subject assets. In the case of clause (ii), the Liquidated Damages shall be paid

upon the Special Servicer's exercise of such rights or remedies.  The Liquidated Damages shall be payable in cash or in equity.

17.      The Bidding Procedures allow parties with a potential interest in the Debtors both notice and sufficient time to finalize diligence and submit fully-financed binding proposals by the conclusion of the bidding period.  The Bidding Procedures also allow the Debtors sufficient time to assess and develop such proposals and discuss them with the advisors to the Creditors' Committee and the Mortgage Debt Parties.  The Bidding Procedures and the Auction process are designed to encourage all parties to put their best proposals forward, bring finality to the Debtors' competitive plan process, and create a path towards confirmation of a plan that embodies the highest and best available recoveries to creditors.

**Basis for Relief Requested**

**A.      Sound Business Reasons Exist to Approve the Bidding Procedures**

18.      Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the [Debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  In addition, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

19.      Courts in the Second Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business upon a finding that such use is supported by sound business reasons.  See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him … a good business reason to grant such an application."); Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources), 147 B.R. 650, 656

(S.D.N.Y. 1992); In re Enron Corp., 2003 WL 1562202, at *19 (Bankr. S.D.N.Y. Mar. 21, 2003).

Accordingly, courts in the Second Circuit "give great deference to the substance of the directors'

decision and will not invalidate the decision, will not examine its reasonableness, and will not

substitute its views for those of the board if the latter's decision can be attributed to any rational

business purpose." In re Global Crossing, 295 B.R. 726, 744 (Bankr. S.D.N.Y. 2003) (citing

Paramount Commc'n Inc. v. QVC Network Inc., 637 A.2d 34, 45 n.17 (Del. 1994)); accord In re

Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("[w]here the debtor articulates

a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or

capriciously), courts will generally not entertain objections to the debtor's conduct.").

20.     The Debtors carefully evaluated a number of qualitative and quantitative

factors in designing a process that they believe will result in the successful restructuring of the

Debtors and the creation of significant value for all parties-in-interest. This process includes,

inter alia, an Auction, which serves to complete the competitive process that has already taken

place in these chapter 11 cases and provide a mechanism to solicit additional offers from

financially capable and interested investors. In the Debtors' business judgment, the Bidding

Procedures will ensure that they can effectively manage the proposals already received,

maximize recoveries for stakeholders, and provide the Debtors' marketing process with the

finality necessary to effectuate a successful emergence from chapter 11.

21.     Moreover, the Bidding Procedures are designed to attract the maximum

number of bidders while providing the Debtors with the flexibility to select the transaction that

optimizes value for all parties-in-interest. Further, the Bidding Procedures are fair and open, and

do not unfairly favor the C/P Investors, the Starwood Investor, or any other Interested Party.

Finally, the Bidding Procedures establish a time frame that will allow potential investors

sufficient time to conduct due diligence, arrange financing, and construct and submit informed competing bids, while still providing for the expeditious reorganization of the Debtors.

22. The Bidding Procedures provide that the close of the Auction is and will be considered to be the final opportunity for any party, including the Mortgage Debt Parties, to submit proposals to the Debtors to fund or sponsor a plan of reorganization or exercise any rights and remedies such party may have in respect of the Debtors' assets, making it clear that the Auction process is designed to bring finality and certainty to the Debtors' plan process and ensuring that the highest or best plan available for the Debtors' estates and creditors is confirmed and implemented without delay or distraction. Consistent with this, the Bidding Procedures provide for the imposition and payment of Liquidated Damages in the event that a party seeks to circumvent the Bidding Procedures and undermine the Auction by submitting a proposal outside of or after the Auction process or exercising such remedies. Thus, once a Successful Bidder is selected, if (i) the Debtors withdraw the plan reflecting the Successful Bid or terminate the Investment Agreement relating to such Plan to pursue another transaction based on an alternative bid or proposal and the Successful Bidder is not in breach of any of its obligations under the Investment Agreement, or (ii) the Special Servicer has exercised any rights or remedies it may have (other than its right to vote on such Plan) that render confirmation of the Plan sponsored by the Successful Bidder impracticable or impossible, the Liquidated Damages become payable. The certainty afforded by the Liquidated Damages provision will ensure that all potential bidders submit their best offers as part of the Auction and do not remain on the sidelines waiting for a future round of bidding. Such provision provides substantial benefits to the Debtors and other parties in interest, ensuring the integrity of the Auction process is respected and paving the way

for an efficient and expeditious confirmation process for the Debtors after the conduct of the Auction and their selection of the Successful Bid.

23.    The Debtors and their professionals have and continue to work with the C/P Investors, the Starwood Investors, and numerous other parties who have indicated an interest in sponsoring the Debtors' plan.  The Debtors have entered into confidentiality agreements with numerous parties and are assisting such parties with the diligence process.  Coupled with the Debtors' previous marketing efforts, the conduct of the Auction in accordance with the terms of the Bidding Procedures constitutes an exercise of sound business judgment because the proposed process will (i) secure the long-term commitment of capital by the Successful Bidder, thereby providing the liquidity necessary to emerge from chapter 11 and continue the Debtors' business; (ii) provide the Debtors with the ability to explore the possibility of even greater value from alternative plan sponsors; and (iii) preserve the integrity of the Auction process, by committing the Debtors to provide for the payment of Liquidated Damages under certain circumstances.  For the foregoing reasons, the Debtors submit that the Bidding Procedures should be approved by the Court.

**B.    The Court Should Waive the Stay Period Required By**
**Rule 6004(h) of the Federal Rules of Bankruptcy Procedure**

24.    Pursuant to Rule 6004(h) of the Bankruptcy Rules, unless the court orders otherwise, all orders authorizing the use of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for 14 days after entry of the order.  FED. R. BANKR. P. 6004(h). The Debtors hereby request a waiver of Rule 6004(h) so that the Debtors may immediately implement the Bidding Procedures.  Specifically, the Debtors respectfully request that the 14-day stay under Bankruptcy Rule 6004(h) be waived and the Proposed Order be effective immediately.

## **Notice**

25.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the order entered on July 17, 2009 governing case management and administrative procedures for these cases [Docket No. 176] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the attorneys for the Special Servicer and the Successor Trustee; and (iv) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request that the Court enter the Proposed Order and grant the Debtors such other and further relief as the Court deems just and proper.

Dated:  April 15, 2010
      New York, New York

/s/ Jacqueline Marcus
Marcia L. Goldstein
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

## Exhibit A

| Debtor | Last Four Digits of Federal Tax I.D. Number |
|---|---|
| Extended Stay Inc. | 7401 |
| ESA P Portfolio L.L.C. f/k/a BRE/ESA P Portfolio L.L.C. | 7190 |
| ESA 2005 Portfolio L.L.C. f/k/a BRE/ESA 2005 Portfolio L.L.C. | 8617 |
| ESA 2005-San Jose L.L.C. f/k/a BRE/ESA 2005-San Jose L.L.C. | 1317 |
| ESA 2005-Waltham L.L.C. f/k/a BRE/ESA 2005-Waltham L.L.C. | 1418 |
| ESA Acquisition Properties L.L.C. f/k/a BRE/ESA Acquisition Properties L.L.C. | 8149 |
| ESA Alaska L.L.C. f/k/a BRE/ESA Alaska L.L.C. | 8213 |
| ESA Canada Properties Borrower L.L.C. f/k/a BRE/ESA Canada Properties Borrower L.L.C. | 7476 |
| ESA FL Properties L.L.C. f/k/a BRE/ESA FL Properties L.L.C. | 7687 |
| ESA MD Borrower L.L.C. f/k/a BRE/ESA MD Borrower L.L.C. | 8839 |
| ESA MN Properties L.L.C. f/k/a BRE/ESA MN Properties L.L.C. | 0648 |
| ESA P Portfolio MD Borrower L.L.C. f/k/a BRE/ESA P Portfolio MD Borrower L.L.C. | 7448 |
| ESA P Portfolio PA Properties L.L.C. f/k/a BRE/ESA P Portfolio PA Properties L.L.C. | 6306 |
| ESA P Portfolio TXNC Properties L.P. f/k/a BRE/ESA P Portfolio TXNC Properties L.P. | 7378 |
| ESA PA Properties L.L.C. f/k/a BRE/ESA PA Properties L.L.C. | 7652 |
| ESA Properties L.L.C. f/k/a BRE/ESA Properties L.L.C. | 1249 |
| ESA TX Properties L.P. f/k/a BRE/ESA TX Properties L.P. | 1295 |
| ESH/Homestead Portfolio L.L.C. f/k/a BRE/Homestead Portfolio L.L.C. | 9049 |
| ESH/HV Properties L.L.C. f/k/a BRE/HV Properties L.L.C. | 8927 |
| ESH/MSTX Property L.P. f/k/a BRE/MSTX Property L.P. | 5862 |
| ESH/TN Properties L.L.C. f/k/a BRE/TN Properties L.L.C. | 5781 |

| Debtor | Last Four Digits of Federal Tax I.D. Number |
|---|---|
| ESH/TX Properties L.P.<br>f/k/a BRE/TX Properties L.P. | 6964 |
| ESH/Homestead Mezz L.L.C.<br>f/k/a BRE/Homestead Mezz L.L.C. | 9883 |
| ESA P Mezz L.L.C.<br>f/k/a BRE/ESA P Mezz L.L.C. | 7467 |
| ESA Mezz L.L.C.<br>f/k/a BRE/ESA Mezz L.L.C. | 0767 |
| ESH/Homestead Mezz 2 L.L.C.<br>f/k/a BRE/Homestead Mezz 2 L.L.C. | 9903 |
| ESA P Mezz 2 L.L.C.<br>f/k/a BRE/ESA P Mezz 2 L.L.C. | 7480 |
| ESA Mezz 2 L.L.C.<br>f/k/a BRE/ESA Mezz 2 L.L.C. | 0866 |
| ESH/Homestead Mezz 3 L.L.C.<br>f/k/a BRE/Homestead Mezz 3 L.L.C. | 9936 |
| ESA P Mezz 3 L.L.C.<br>f/k/a BRE/ESA P Mezz 3 L.L.C. | 8977 |
| ESA Mezz 3 L.L.C.<br>f/k/a BRE/ESA Mezz 3 L.L.C. | 0929 |
| ESH/Homestead Mezz 4 L.L.C.<br>f/k/a BRE/Homestead Mezz 4 L.L.C. | 9953 |
| ESA P Mezz 4 L.L.C.<br>f/k/a BRE/ESA P Mezz 4 L.L.C. | 8997 |
| ESA Mezz 4 L.L.C.<br>f/k/a BRE/ESA Mezz 4 L.L.C. | 0964 |
| ESH/Homestead Mezz 5 L.L.C.<br>f/k/a BRE/Homestead Mezz 5 L.L.C. | 9613 |
| ESA P Mezz 5 L.L.C.<br>f/k/a BRE/ESA P Mezz 5 L.L.C. | 9186 |
| ESA Mezz 5 L.L.C.<br>f/k/a BRE/ESA Mezz 5 L.L.C. | 1006 |
| ESH/Homestead Mezz 6 L.L.C.<br>f/k/a BRE/Homestead Mezz 6 L.L.C. | 9667 |
| ESA P Mezz 6 L.L.C.<br>f/k/a BRE/ESA P Mezz 6 L.L.C. | 9247 |
| ESA Mezz 6 L.L.C.<br>f/k/a BRE/ESA Mezz 6 L.L.C. | 8995 |
| ESH/Homestead Mezz 7 L.L.C.<br>f/k/a BRE/Homestead Mezz 7 L.L.C. | 9722 |
| ESA P Mezz 7 L.L.C.<br>f/k/a BRE/ESA P Mezz 7 L.L.C. | 9349 |
| ESA Mezz 7 L.L.C.<br>f/k/a BRE/ESA Mezz 7 L.L.C. | 9065 |
| ESH/Homestead Mezz 8 L.L.C.<br>f/k/a BRE/Homestead Mezz 8 L.L.C. | 9779 |
| ESA P Mezz 8 L.L.C. | 9402 |

| Debtor | Last Four Digits of Federal Tax I.D. Number |
|---|---|
| ESA Mezz 8 L.L.C. f/k/a BRE/ESA Mezz 8 L.L.C. | 9117 |
| ESH/Homestead Mezz 9 L.L.C. f/k/a BRE/Homestead Mezz 9 L.L.C. | 1011 |
| ESA P Mezz 9 L.L.C. | 0281 |
| ESA Mezz 9 L.L.C. | 0923 |
| ESH/Homestead Mezz 10 L.L.C. f/k/a BRE/Homestead Mezz 10 L.L.C. | 1063 |
| ESA P Mezz 10 L.L.C. | 0224 |
| ESA Mezz 10 L.L.C. | 0175 |
| Homestead Village L.L.C. f/k/a BRE/Homestead Village L.L.C. | 8930 |
| ESA MD Beneficiary L.L.C. f/k/a BRE/ESA MD Beneficiary L.L.C. | 7038 |
| ESA P Portfolio MD Trust f/k/a BRE/ESA P Portfolio MD Trust | 8258 |
| ESA MD Properties Business Trust f/k/a BRE/ESA MD Properties Business Trust | 6992 |
| ESA P Portfolio MD Beneficiary L.L.C. f/k/a BRE/ESA P Portfolio MD Beneficiary L.L.C. | 8432 |
| ESA Canada Properties Trust f/k/a BRE/ESA Canada Properties Trust | 2314 |
| ESA Canada Trustee Inc. f/k/a BRE/ESA Canada Trustee Inc. | 2861 |
| ESA Canada Beneficiary Inc. f/k/a BRE/ESA Canada Beneficiary Inc. | 7543 |
| ESA UD Properties L.L.C. | 7075 |
| ESA 2007 Operating Lessee Inc. f/k/a BRE/ESA 2007 Operating Lessee Inc. | 9408 |
| ESA 2005 Operating Lessee Inc. f/k/a BRE/ESA 2005 Operating Lessee Inc. | 8471 |
| ESA Operating Lessee Inc. f/k/a BRE/ESA Operating Lessee Inc. | 4369 |
| ESA P Portfolio Operating Lessee Inc. f/k/a BRE/ESA P Portfolio Operating Lessee Inc. | 7433 |
| ESA Business Trust f/k/a BRE/ESA Business Trust | 8078 |
| ESA Management L.L.C. | 9101 |
| ESA P Portfolio Holdings L.L.C. f/k/a BRE/ESA P Portfolio Holdings L.L.C. | 8432 |
| ESA Canada Operating Lessee Inc. f/k/a BRE/ESA Canada Operating Lessee Inc. | 8838 |
| Extended Stay Hotels L.L.C. | 7438 |
| ESH/MSTX GP L.L.C. f/k/a BRE/MSTX GP L.L.C. | 5876 |

| Debtor | Last Four Digits of Federal Tax I.D. Number |
|---|---|
| ESH/TXGP L.L.C. f/k/a BRE/TXGP L.L.C. | 6936 |
| ESA TXGP L.L.C. f/k/a BRE/ESA TXGP L.L.C. | 1199 |
| ESA P Portfolio TXNC GP L.L.C. f/k/a BRE/ESA P Portfolio TXNC GP L.L.C. | 7210 |
| ESH/TN Member Inc. f/k/a BRE/TN Member Inc. | 8365 |

**<u>Exhibit B</u>**

**Bidding Procedures**

# BIDDING PROCEDURES

The following procedures (the "<u>Bidding Procedures</u>") will govern the competitive process run by Extended Stay Inc. and its debtor affiliates (Extended Stay, Inc. and its debtor affiliates, collectively, "<u>ESH</u>" or the "<u>Debtors</u>") to solicit proposals for the sponsorship and funding of a plan of reorganization for certain of the Debtors (the "<u>Investment</u>"), which includes the purchase of (i) all or a portion of the equity ownership interests of the Debtors, and (ii) related assets or ownership of interests in HVM Manager L.L.C. and HVM L.L.C. (collectively, the "<u>Acquired Assets</u>").

Following completion of the competitive process, the applicable Debtors will seek approval of their restructuring pursuant to the plan of reorganization (a "<u>Plan</u>").

The Bidding Procedures provided herein shall be the exclusive mechanism governing the Investment and Plan.

## The Existing Plan of Reorganization

On March 24, 2010, all of the Debtors, except Extended Stay Inc., filed a Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "<u>Third Amended Plan</u>"), which is supported by Starwood ESH, L.L.C. (the "<u>Starwood Investor</u>"), the indirect members of which are (a) Starwood Global Opportunity Fund VIII, L.P., Starwood U.S. Opportunity Fund VIII-1, L.P., Starwood U.S. Opportunity Fund VIII-2, L.P., Starwood Capital Hospitality Fund II Global, L.P. and Starwood Capital Hospitality Fund II U.S., L.P., (b) Five Mile Capital Partners II LP, FMCP II Principals LP and Five Mile Capital Partners II (AIV), LP and (c) TPG Partners V, L.P. and TPG Partners VI, L.P.

On March 29, 2010, the Debtors received an offer and proposal letter (the "<u>March 29 Letter</u>") from Centerbridge Partners, L.P. and Paulson & Co. Inc. (together, the "<u>C/P Investors</u>").  Pursuant to the March 29 Letter, the C/P Investors agreed to commit, pending an executed agreement in writing with the Debtors that was consistent with the March 29 Letter, to at least step into the shoes of the Starwood Investor and be bound by the terms of (i) the Commitment Letter, dated March 15, 2010, with the Starwood Investor, (ii) the Investment and Standby Purchase Agreement (which includes the Third Amended Plan), dated March 15, 2010, with the Starwood Investor, and (iii) the Membership Interest Purchase Agreement, dated March 15, 2010, pursuant to which David Lichtenstein has agreed to sell HVM Manager L.L.C. to the Starwood Investor (collectively, the "<u>Starwood Agreements</u>").

On April 2, 2010, the Debtors executed a commitment letter with the C/P Investors (the "<u>C/P Investors' Commitment Letter</u>"), which contemplates the C/P Investors sponsoring and funding a plan of reorganization based on the Starwood Agreements, as modified by the C/P Investors' Commitment Letter.  Pursuant to the C/P Investors' Commitment Letter, the Debtors will file the Fourth Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "<u>Existing Plan</u>") and the related Disclosure Statement on or before April 23, 2010 (the Existing Plan and the related Disclosure Statement together with the C/P Investors' Commitment Letter, the "<u>Existing Plan Related Agreements</u>").

The C/P Investors' Commitment Letter contemplated the commencement of an auction process pursuant to which the Debtors would solicit the highest or best proposals for the sponsorship and funding of a plan of reorganization.

**Bidding Process**

B. ***Preliminary Diligence***

The Debtors may afford any prospective acquirers and/or investors the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors, in their sole discretion.

The Debtors have reached out to certain parties who have either expressed an interest in making a proposal or who the Debtors believe may have an interest in making a proposal with a request for a non-binding written indication of interest to sponsor a plan of reorganization for the Debtors.

In addition, the Debtors have executed confidentiality agreements with interested parties who have requested further information. Upon the execution of an appropriate confidentiality agreement, those interested parties have been or shall be provided with access to certain information, through a virtual data room or otherwise.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access from interested parties. All due diligence requests by the interested parties shall be directed to Lazard Freres & Co. LLC, Attn: Phillip T. Summers, 30 Rockefeller Plaza, 63rd Floor, New York, New York 10020, Tel: (212) 632-6396, Email: Phillip.Summers@lazard.com.

C. ***Public Announcement of Auction and Funding of Deposits***

On or before April 28, 2010, the Debtors shall serve on all parties in interest and those parties who request notice, notice of an auction for the Acquired Assets (the "Auction") and all deadlines related thereto (the "Notice of Auction").

The Notice of Auction shall provide notice to all interested parties that in order to participate in the bidding process and the Auction and be deemed a Qualified Bidder (as defined below), each potential bidder (each, an "Interested Party") must provide a deposit in the amount of $150,000,000 (the "Deposit") on or before May 17, 2010, with the Escrow Agent (as defined below) pursuant to an Escrow Agreement (as defined below) to be provided by the Debtors to the Interested Parties.

D. ***Proposals***

Each Interested Party, other than the C/P Investors, must deliver a written and duly executed offer (a "Proposal"), **so as to be received by no later than 3:00 p.m. (Prevailing Eastern Time) on May 17, 2010** ("Proposal Deadline") to the following address (the "Proposal Notice Party"):

Attn: Phillip T. Summers
Lazard Freres & Co. LLC
30 Rockefeller Plaza, 63rd Floor
New York, New York 10020
Tel:  (212) 632-6296
Fax:  (212) 830-2680
Email: Phillip.Summers@lazard.com

The Debtors and their professionals will deliver the Proposals received no later than one (1) business day following receipt of the Proposal to (i) advisors to the official committee of unsecured creditors (the "Creditors' Committee"), (ii) advisors for TriMont Real Estate Advisors, Inc. (the "Special Servicer") and U.S. Bank National Association, as successor in interest to Wells Fargo Bank, N.A., as successor trustee in trust for the holders of Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2007-ESH (the "Trust," and the current trustee thereof, the "Successor Trustee," collectively with the Special Servicer, the "Mortgage Debt Parties") and (iii) advisors to the C/P Investors, as follows:

To the Creditors' Committee:

Hahn & Hessen LLP
488 Madison Avenue
New York, New York 10022
Attn: Mark T. Power, Esq., Mark T. Indelicato, Esq.
Tel: (212) 478-7200
Fax: (212) 478-7400
Email: mpower@hahnhessen.com; mindelicato@hahnhessen.com

To the Mortgage Debt Parties:

McKenna, Long & Aldridge LLP
230 Park Avenue, Suite 1700
New York, NY 10169
Attn: Christopher F. Graham, Esq.
Tel: (212) 905-8328
Fax: (212) 922-1819
Email: CGraham@mckennalong.com

303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308-3265
Attn: Gary Marsh, Esq.
Tel: (404) 527-4150
Fax: (404) 527-4198
Email: GMarsh@mckennalong.com

Latham & Watkins, LLP
885 Third Avenue
New York, NY 10167
Attn: Mitchell A. Seider, Esq.; Keith A. Simon, Esq.
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: mitchell.seider@lw.com; keith.simon@lw.com

To the C/P Investors:

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York  10004
Attn:  Brad Eric Scheler, Esq., Jennifer L. Rodburg, Esq.
Tel: (212) 859-8000
Fax: (212) 859-4000
Email: Brad.Eric.Scheler@friedfrank.com; Jennifer.Rodburg@friedfrank.com

*and*

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Attn: David M. Feldman, Esq.
Tel: (212) 351-4000
Fax: (212) 351-4035
Email: DFeldman@gibsondunn.com

Each Proposal must:

1. state that such Interested Party offers to purchase the Acquired Assets and fund a Plan upon the terms and conditions substantially as set forth in the Existing Plan Related Agreements or pursuant to an alternative structure;

2. state that such Interested Party's Proposal is not subject to any further due diligence and that such Interested Party has obtained all necessary financing and approvals, which financing and approvals are not subject to any conditions;

3. include evidence of authorization and approval from the Interested Party's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Proposal and transactions contemplated thereby, including evidence of a binding and unconditional commitment to provide financing;

4.     fully disclose the identity of each party that will be participating in connection with such Proposal, and the complete terms of any such participation;

5.     contain a detailed overview of the terms of the Interested Party's sponsorship of a Plan for the applicable ESH entities, which terms must include a detailed pro forma capitalization, ownership, amount of a new money investment and all sources of recovery to the Debtors' creditors and contain as much detail as possible on proposed structure, including a list of the relevant entities to be included in any alternative plan;

6.     not include (i) a right to request or entitlement to any commitment payment, break-up fee or similar type of payment other than the Liquidated Damages (as defined below) or (ii) reimbursement of fees and expenses other than (a) in connection with the implementation of the Proposal if the Interested Party is the Successful Bidder (as defined below), (b) in connection with the Liquidated Damages (as defined below) or (c) after the close of the Auction, by motion to the Bankruptcy Court based on substantial contribution to the Debtors' chapter 11 cases if the Interested Party is not the Successful Bidder;

7.     contain a description of the financial assumptions and any other assumptions utilized in each Interested Party's Proposal, including estimated transaction costs, and any major underwriting assumption(s) upon which each Interested Party may have based its Proposal, including working capital, capital expenditure requirements and impact of proposed structure;

8.     contain evidence of the source(s) of equity and/or debt financing for the Interested Party's Proposal, including the parties to provide financing, their contact information, and a description of each sponsor and any additional party or parties funding the Plan and such party's financial position;

9.     contain confirmation that the Proposal has received any necessary internal approvals to make a binding Proposal;

10.     state each Interested Party's and any other sponsor's experience in the lodging industry, including ownership and management of hospitality assets, as well as any other information that it thinks could be important to the Debtors in their decision-making process regarding the Proposal;

11.     state the specific person(s) whom the Debtors' financial advisors, Lazard Frères & Co. LLC, should contact in the event that the Debtors have any questions or wish to discuss the Proposal; and

12.     include a mark-up of the Existing Plan and a mark-up of the form of an investment and standby purchase agreement to be entered into by the

Debtors and an affiliate of the C/P Investors, which will be provided by the Debtors to the Interested Parties (such form, the "Investment Agreement"), as well as the other plan-related documents, including the HVM Manager Purchase Agreement and the BHAC Intellectual Property Transfer Agreement.

Each Interested Party providing a Proposal shall be deemed to acknowledge and represent that it has had an opportunity to conduct due diligence on the Debtors prior to making its Proposal; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its Proposal; and that it did not rely upon any written or oral statement, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtors, or the completeness of any information provided in connection therewith.

Within one (1) business day following entry by the Bankruptcy Court of an order approving the Bidding Procedures contained herein, the Debtors shall provide copies of all proposals or other indications of interest for the Acquired Assets received by the Debtors prior to entry of such order to the professionals for the Creditors' Committee, the Mortgage Debt Parties and the C/P Investors.

**FOR THE AVOIDANCE OF DOUBT, ANY AND ALL PARTIES SHOULD BE AWARE THAT ANY PARTY THAT DOES NOT SUBMIT A PROPOSAL BY THE PROPOSAL DEADLINE WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE PROPOSAL DEADLINE.**

E.    ***Deposits***

The submission of a Proposal by the Proposal Deadline shall and must be accompanied by the $150,000,000 Deposit with an escrow agent selected by the Debtors (the "Escrow Agent") pursuant to the escrow agreement to be provided by the Debtors to the Interested Parties (the "Escrow Agreement"). The submission of a Proposal and a Deposit by the Proposal Deadline shall constitute a binding and irrevocable offer and any Proposal shall not be subject to, and shall state that it is not subject to, financing, diligence, approvals or other conditions not set forth in the Investment Agreement.

F.    ***Review of Proposals***

The Debtors will review those Proposals timely submitted and engage in negotiations with those prospective acquirers and/or investors that submitted Proposals complying with the proceeding paragraphs and as they deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Proposal as well as other commercial and competitive considerations. Although the Debtors will provide copies of the Proposals to the Creditors' Committee, the Mortgage Debt Parties, and the C/P Investors, and will consult with the Creditors' Committee and the Mortgage Debt Parties, the Debtors retain the exclusive right to determine whether an Interested Party that submitted a Proposal may participate in the Auction.

The Debtors will select, in their business judgment, those Proposals qualifying to proceed in the process on or before **May 25, 2010**. In evaluating the Proposals, the Debtors will take into consideration, among other factors, the form of consideration, value and certainty of recovery provided to prepetition creditors and shareholders, transaction structure and execution risk, including conditions to closing, availability of financing and financial wherewithal to meet all commitments under the Proposal, approvals required, and the Interested Party's ability to manage the Debtors' business.

After review of the timely submitted Proposals, the Debtors shall determine if any such Interested Parties has submitted a Proposal that qualifies to participate in the Auction (each such party, a "<u>Qualified Bidder</u>" and a "<u>Qualified Proposal</u>," respectively). After determining that an Interested Party is a Qualified Bidder and qualifies to participate in the Auction in accordance with these Bid Procedures, the Debtors will notify the party in writing, on or before **May 25, 2010**, with a copy to the Creditors' Committee, the Mortgage Debt Parties, and the C/P Investors.

**Only those Proposals that (i) were submitted on or before the Proposal Deadline, (ii) provide incremental value to the Debtors' estates as compared to the Existing Plan Related Agreements, (iii) state that they are binding and irrevocable offers, not subject to financing, diligence, approvals or other conditions not set forth in the Investment Agreement, and (iv) are accompanied by a $150,000,000 Deposit that was submitted on or before May 17, 2010, may be deemed Qualified Proposals.**

**FOR THE AVOIDANCE OF DOUBT, ANY AND ALL PARTIES SHOULD BE AWARE THAT ANY PARTY THAT IS NOT DETERMINED TO BE A QUALIFIED BIDDER BY MAY 25, 2010 WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE PROPOSAL DEADLINE OR AFTER THE AUCTION.**

The Debtors reserve the right, after consultation with the Creditors' Committee and the Mortgage Debt Parties, to reject any Proposal if the Debtors determine that such Proposal does not constitute a Qualified Proposal or is otherwise inadequate or insufficient or is otherwise contrary to the best interests of the Debtors.

Notwithstanding anything in these Bidding Procedures, the C/P Investors are deemed Qualified Bidders, and the Existing Plan Related Agreements shall be deemed a Qualified Proposal for all applicable purposes under these Bidding Procedures with respect to the Auction and otherwise.

Between the date the Debtors notify an Interested Party that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate or seek clarification of any Qualified Proposal from a Qualified Bidder; <u>provided</u>, <u>however</u>, the Debtors shall consult with the Creditors' Committee and the Mortgage Debt Parties with respect to such actions. Without the written consent of the Debtors, a Qualified Bidder may not modify, amend or withdraw its Qualified Proposal, except for proposed amendments to increase the purchase price or otherwise

improve the terms of the Qualified Proposal for the Debtors, during the period that such Qualified Proposal remains binding as specified herein; provided, however, that any Qualified Proposal may be improved at the Auction as set forth herein. The determination of the Qualified Bidders shall become irrevocable and unreviewable once the Auction has commenced.

## The Auction

A.   *Notice of Auction*

If the Debtors determine that they have received a Qualified Proposal in addition to the Existing Plan Related Agreements by the C/P Investors, the Auction will be held **on May 27, 2010 at 10:00 a.m.** (prevailing Eastern Time) at the offices of Weil, Gotshal and Manges LLP, 767 Fifth Avenue, New York, New York 10153. **On or before May 25, 2010 at 5:00 p.m**. (prevailing Eastern Time), the Debtors shall provide each Qualified Bidder (including the C/P Investors), the Creditors' Committee and the Mortgage Debt Parties with the following: (1) written notice that the Auction is proceeding in accordance with the Notice of Auction previously published by the Debtors, (2) a copy of the Qualified Proposal the Debtors have determined constitutes the highest or otherwise best offer among the Qualified Proposals and with which they intend to commence the Auction (the "Pre-Auction Successful Proposal"), and (3) a copy of each of the Qualified Proposals.

The Auction may be adjourned as the Debtors deem appropriate, after consultation with the Creditors' Committee and the Mortgage Debt Parties. Reasonable notice of such adjournment and the time and place for resumption of the Auction shall be given to all of the Qualified Bidders.

B.   *Attendance and Participation in the Auction*

a.   In addition to the Debtors and their advisors, the only parties eligible to participate in the Auction shall be: (i) the C/P Investors and their representatives and advisors; (ii) representatives and advisors of the Creditors' Committee; (iii) representatives and advisors of the Mortgage Debt Parties; (iv) those Qualified Bidders who have submitted a Qualified Proposal to the Debtors (as well as such Qualified Bidder's advisors and representatives); and (v) the Office of the United States Trustee for the Southern District of New York. The C/P Investors and the Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

b.   Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Auction.

c.   Each Qualified Bidder shall have provided the Deposit.

C.    *The Auction Process*

The Auction shall run in accordance with the following procedures:

a.    The Debtors and their respective professionals shall direct and preside over the Auction.

b.    On or before **May 26, 2010**, each Qualified Bidder who has timely submitted a Qualified Proposal (as determined by the Company) must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder does not attend the Auction, such Qualified Bidder's Qualified Proposal shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bid (as defined below) at the conclusion of the Auction.

c.    All Qualified Bidders who have timely submitted Qualified Proposals will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.  All proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

d.    At the commencement of the Auction, the Debtors shall announce and describe the terms of the Pre-Auction Successful Bid, as determined by the Debtors.

e.    The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court, (ii) not inconsistent with the Existing Plan Related Agreements and (iii) disclosed to each Qualified Bidder at the Auction.

f.    Bidding at the Auction will begin with the Pre-Auction Successful Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid (a "Subsequent Bid") is submitted by a Qualified Bidder that the Debtors determine, (i) in the case of the first round, is a higher or otherwise

better bid than the Pre-Auction Successful Bid by an amount to be determined by the Debtors and (ii) in the case of subsequent rounds, is a higher or otherwise better bid by the minimum bid increment set by the Debtors for each such round than the best bid of the previous round. Each Qualified Bidder must submit a Subsequent Bid that satisfies the minimum bid increment in each round of bidding to continue participating in the Auction.

g.      The Debtors shall announce the material terms of each Subsequent Bid at the Auction, and shall disclose their valuation of the total consideration offered in each such Subsequent Bid (and the basis for its determination) in order to (a) confirm that each Subsequent Bid meets the minimum bid increment set by the Debtors for the round in which such Subsequent Bid was submitted and (b) to provide a floor for further Subsequent Bids.

D.      ***Identification of the Successful Bidder***

At the close of the Auction, the Debtors, in their sole discretion and in exercise of their business judgment after consultation with the Creditors' Committee and the Mortgage Debt Parties, shall identify which Qualified Bidder has the highest or otherwise best bid (the "Successful Bid," and such bidder, the "Successful Bidder"), which will be determined by considering, among other things:

1.      The number, type and nature of any changes to the Existing Plan and the Investment Agreement requested by each Qualified Bidder and whether such Qualified Proposal is on different terms than those set forth in the Existing Plan and the Investment Agreement; it being understood that certain modifications (including those that (a) increase the certainty of closing without delay, and (b) increase certainty with respect to liquidated damages for a buyer breach) may be viewed as improving the value of the bid.

2.      The extent to which any requested modifications to the Existing Plan and the Investment Agreement are likely to delay the closing, and the likely cost to the Debtors of any such modifications or delay.

3.      The total consideration to be received by the Debtors under the terms of each Qualified Proposal.

4.      Each Qualified Bidder's ability to timely close a transaction and make any deferred payments, if applicable.

5.      The net benefit to the Debtors' estates and the creditors of such estates and the likely timing and amount of distributions to the Debtors' creditors resulting from each proposal.

In announcing the Successful Bid, the Debtors shall announce the material terms of such bid, the basis for determining the total consideration offered and the resulting calculated benefit of such bid to the Debtors' estates. Upon the close of the Auction, the Debtors shall announce the Successful Bidder, and such Successful Bidder shall promptly thereafter submit fully executed revised documentation memorializing the terms of the Successful Bid.

If no Auction is held, then the proposal of the C/P Investors as represented by the Existing Plan shall be deemed to be the Successful Bid and the C/P Investors shall be deemed to be the Successful Bidder and the Debtors will proceed to effectuate the transactions as set forth in the Existing Plan Related Agreements; provided, however, that nothing in these Bidding Procedures in any way limits the ability of the Debtors and the C/P Investors to mutually agree on improvements in the terms of the Existing Plan Related Agreements.

## Return of Deposits

Any cash Deposits submitted by Qualified Bidders will be held in escrow by the Debtors' Escrow Agent. Each Deposit will be forfeited to the Debtors if (a) the applicable Qualified Bidder attempts to modify, amend or withdraw its Qualified Proposal, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Proposal for the Debtors, during the time the Qualified Proposal remains binding and irrevocable under these Bidding Procedures or (b) the Qualified Bidder is selected as the Successful Bidder and fails to consummate the Plan according to these Bidding Procedures and the terms of the Investment Agreement. The Escrow Agent shall release the Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) Business Days after the receipt by the Escrow Agent of a joint written notice by a Debtor Authorized Officer and the Qualified Bidder stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

The Debtors shall promptly return to the applicable Qualified Bidder any Deposit, plus any interest accrued thereon, accompanying (a) a Proposal that the Company determines not to be a Qualified Proposal, and (b) any Qualified Proposal that the Debtors do not select as the Successful Bid at the Auction, two (2) Business Days after the close of the Auction, but in no event later than seven (7) Business Days after the commencement of the Auction.

The Deposit of the Successful Bidder shall be applied against the cash investment of the Successful Bidder upon the consummation of the plan proposed in the Successful Bid.

The Debtors and the Qualified Bidder agree to execute an appropriate joint notice to the Escrow Agent for the release of the Qualified Bidder's Deposit, in accordance with the terms of these Bid Procedures. If either party fails to execute such written notice, the Deposit may be released by an order of the Bankruptcy Court.

## Plan Process

After selecting the Successful Bid, the Debtors, in consultation with the entity or entities which submitted the Successful Bid, will prepare and file a revised plan and related

disclosure statement with the United States Bankruptcy Court for the Southern District of New York to effectuate the terms of the Successful Bid. The hearing to consider the adequacy of the Disclosure Statement for the Successful Bid shall occur not later than June 17, 2010, unless otherwise agreed by the Debtors and the Successful Bidder.

## Liquidated Damages

The Successful Bidder shall be entitled to liquidated damages in an amount equal to 10% of the total enterprise value, as set forth in the Successful Bid, and reimbursement of reasonable out-of-pocket expenses up to $10,000,000 (collectively, the "Liquidated Damages"), in the event that (i) the revised Plan that reflects the Successful Bid is withdrawn or the Investment Agreement relating to such Plan is terminated because the Debtors have determined to pursue a Plan or other transaction based on an alternative bid or proposal for any of the Acquired Assets and the Successful Bidder is not in breach of any of its obligations under the Investment Agreement or (ii) the Special Servicer has exercised any rights or remedies it may have (other than its right to vote on such Plan) that render confirmation of the Plan sponsored by the Successful Bidder impracticable or impossible. In the case of clause (i), the expense reimbursement shall be paid upon such withdrawal or termination and the balance of the Liquidated Damages shall be paid upon consummation of an alternative bid or proposal. In the case of clause (ii), the Liquidated Damages shall be paid upon the Special Servicer's exercise of such rights or remedies. The Liquidated Damages shall be payable in cash or in equity.

## Reservation of Rights

The Debtors reserve the right, in their sole discretion and subject to the exercise of their business judgment, to alter or terminate these Bidding Procedures, to alter the assumptions set forth herein, and/or to terminate discussions with any and all prospective acquirers and investors at any time and without specifying the reasons therefore, to the extent not materially inconsistent with the Bidding Procedures set forth herein.

## End of Auction Process

Following the selection of the Successful Bid, (A) the Auction shall be closed, (B) the Debtors shall (i) immediately cease and cause to be terminated any ongoing solicitation, discussions and negotiations with respect to any other bids or proposals for the Acquired Assets and (ii) not solicit any inquiries or proposals, or enter into any discussions, negotiations, understandings, arrangements or agreements, relating to any other bid or proposal for the Acquired Assets, and (C) no additional bids or proposals for the Acquired Assets will be accepted or considered by the Debtors, unless and until the earlier of (1) the termination of the Investment Agreement by and among the Successful Bidder and the Debtors and (2) entry of an order of the Bankruptcy Court denying confirmation of the Plan sponsored by the Successful Bidder.

Dated: April [___], 2010

**Exhibit C**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                             **:**

In re                                   **:**          **Chapter 11 Case No.**

**EXTENDED STAY INC., et al.,**       **:**          **09-13764 (JMP)**
                                             **:**

            **Debtors.**               **:**          **(Jointly Administered)**
                                             **:**
-------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE APPROVING BIDDING PROCEDURES AND NOTICE OF THE AUCTION RELATING THERETO AND GRANTING RELATED RELIEF

Upon the motion, dated April 15, 2010 (the "Motion"), of Extended Stay Inc. and

its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"), pursuant to sections 105(a) and 363 of chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code"), seeking approval of the Bidding Procedures,[1] all as

more fully described in the Motion; and the Court having jurisdiction to consider the Motion and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York And All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided in accordance with the procedures set forth in

the order entered on July 17, 2009 governing case management and administrative procedures

for these cases [Docket No. 176] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the attorneys for the Special Servicer and the Successor Trustee; and (iv) all

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

parties who have requested notice in these chapter 11 cases, and the Order to Show Cause to Shorten Notice Period to Consider Debtors' Motion for Entry of an Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Approving Bidding Procedures and Notice of the Auction Relating Thereto and Granting Related Relief, dated April [___], 2010, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and the appearances of all interested parties having been noted in the record of the Hearing; and upon the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted and the Bidding Procedures attached hereto as "Exhibit 1" are approved; and it is further

ORDERED that the Debtors are authorized to conduct the Auction as set forth in the Bidding Procedures; and it is further

ORDERED that the Notice of Auction, the form of which is attached hereto as "Exhibit 2," is hereby approved and the Debtors' publication of such Notice of Auction on or before April 28, 2010, with any modifications necessary for ease of publication, once in *The Wall Street Journal* (National Edition) is proper notice to all parties in interest; and it is further

ORDERED that the Debtors are authorized to pay Liquidated Damages to the Successful Bidder in the amount and subject to the occurrence of the events set forth in the Bidding Procedures; and it is further

ORDERED that the Debtors' obligation to pay the Liquidated Damages shall constitute an allowed administrative expense of the Debtors pursuant to section 503(b) of the Bankruptcy Code; and it is further

ORDERED that pursuant to the Bidding Procedures, following the selection of the Successful Bid, (A) the Auction shall be closed, (B) the Debtors shall (i) immediately cease and cause to be terminated any ongoing solicitation, discussions and negotiations with respect to any other bids or proposals for their assets and (ii) not solicit any inquiries or proposals, or enter into any discussions, negotiations, understandings, arrangements or agreements, relating to any other bid or proposal, and (C) no additional bids or proposals will be accepted or considered by the Debtors, unless and until the earlier of (1) the termination of the Investment Agreement by and among the Successful Bidder and the Debtors and (2) entry of an order of the Bankruptcy Court denying confirmation of the plan sponsored by the Successful Bidder; and it is further

ORDERED that the Debtors are authorized to execute and deliver all instrument and documents and take any other actions as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order; and is it further

ORDERED that all objections to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or specifically addressed in this Order, are overruled in all respects; and it is further

ORDERED that notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry; and it is further

ORDERED that this Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.

Dated: April __, 2010
       New York, New York

_____
THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

# **Exhibit 1**

# BIDDING PROCEDURES

The following procedures (the "<u>Bidding Procedures</u>") will govern the competitive process run by Extended Stay Inc. and its debtor affiliates (Extended Stay, Inc. and its debtor affiliates, collectively, "<u>ESH</u>" or the "<u>Debtors</u>") to solicit proposals for the sponsorship and funding of a plan of reorganization for certain of the Debtors (the "<u>Investment</u>"), which includes the purchase of (i) all or a portion of the equity ownership interests of the Debtors, and (ii) related assets or ownership of interests in HVM Manager L.L.C. and HVM L.L.C. (collectively, the "<u>Acquired Assets</u>").

Following completion of the competitive process, the applicable Debtors will seek approval of their restructuring pursuant to the plan of reorganization (a "<u>Plan</u>").

The Bidding Procedures provided herein shall be the exclusive mechanism governing the Investment and Plan.

## The Existing Plan of Reorganization

On March 24, 2010, all of the Debtors, except Extended Stay Inc., filed a Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "<u>Third Amended Plan</u>"), which is supported by Starwood ESH, L.L.C. (the "<u>Starwood Investor</u>"), the indirect members of which are (a) Starwood Global Opportunity Fund VIII, L.P., Starwood U.S. Opportunity Fund VIII-1, L.P., Starwood U.S. Opportunity Fund VIII-2, L.P., Starwood Capital Hospitality Fund II Global, L.P. and Starwood Capital Hospitality Fund II U.S., L.P., (b) Five Mile Capital Partners II LP, FMCP II Principals LP and Five Mile Capital Partners II (AIV), LP and (c) TPG Partners V, L.P. and TPG Partners VI, L.P.

On March 29, 2010, the Debtors received an offer and proposal letter (the "<u>March 29 Letter</u>") from Centerbridge Partners, L.P. and Paulson & Co. Inc. (together, the "<u>C/P Investors</u>").  Pursuant to the March 29 Letter, the C/P Investors agreed to commit, pending an executed agreement in writing with the Debtors that was consistent with the March 29 Letter, to at least step into the shoes of the Starwood Investor and be bound by the terms of (i) the Commitment Letter, dated March 15, 2010, with the Starwood Investor, (ii) the Investment and Standby Purchase Agreement (which includes the Third Amended Plan), dated March 15, 2010, with the Starwood Investor, and (iii) the Membership Interest Purchase Agreement, dated March 15, 2010, pursuant to which David Lichtenstein has agreed to sell HVM Manager L.L.C. to the Starwood Investor (collectively, the "<u>Starwood Agreements</u>").

On April 2, 2010, the Debtors executed a commitment letter with the C/P Investors (the "<u>C/P Investors' Commitment Letter</u>"), which contemplates the C/P Investors sponsoring and funding a plan of reorganization based on the Starwood Agreements, as modified by the C/P Investors' Commitment Letter.  Pursuant to the C/P Investors' Commitment Letter, the Debtors will file the Fourth Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "<u>Existing Plan</u>") and the related Disclosure Statement on or before April 23, 2010 (the Existing Plan and the related Disclosure Statement together with the C/P Investors' Commitment Letter, the "<u>Existing Plan Related Agreements</u>").

The C/P Investors' Commitment Letter contemplated the commencement of an auction process pursuant to which the Debtors would solicit the highest or best proposals for the sponsorship and funding of a plan of reorganization.

**Bidding Process**

E.    ***Preliminary Diligence***

The Debtors may afford any prospective acquirers and/or investors the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors, in their sole discretion.

The Debtors have reached out to certain parties who have either expressed an interest in making a proposal or who the Debtors believe may have an interest in making a proposal with a request for a non-binding written indication of interest to sponsor a plan of reorganization for the Debtors.

In addition, the Debtors have executed confidentiality agreements with interested parties who have requested further information.  Upon the execution of an appropriate confidentiality agreement, those interested parties have been or shall be provided with access to certain information, through a virtual data room or otherwise.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access from interested parties.  All due diligence requests by the interested parties shall be directed to Lazard Freres & Co. LLC, Attn: Phillip T. Summers, 30 Rockefeller Plaza, 63rd Floor, New York, New York 10020, Tel: (212) 632-6396, Email: Phillip.Summers@lazard.com.

F.    ***Public Announcement of Auction and Funding of Deposits***

On or before April 28, 2010, the Debtors shall serve on all parties in interest and those parties who request notice, notice of an auction for the Acquired Assets (the "Auction") and all deadlines related thereto (the "Notice of Auction").

The Notice of Auction shall provide notice to all interested parties that in order to participate in the bidding process and the Auction and be deemed a Qualified Bidder (as defined below), each potential bidder (each, an "Interested Party") must provide a deposit in the amount of $150,000,000 (the "Deposit") on or before May 17, 2010, with the Escrow Agent (as defined below) pursuant to an Escrow Agreement (as defined below) to be provided by the Debtors to the Interested Parties.

G.    ***Proposals***

Each Interested Party, other than the C/P Investors, must deliver a written and duly executed offer (a "Proposal"), **so as to be received by no later than 3:00 p.m. (Prevailing Eastern Time) on May 17, 2010** ("Proposal Deadline") to the following address (the "Proposal Notice Party"):

Attn: Phillip T. Summers
Lazard Freres & Co. LLC
30 Rockefeller Plaza, 63rd Floor
New York, New York 10020
Tel:    (212) 632-6296
Fax:    (212) 830-2680
Email:  Phillip.Summers@lazard.com

The Debtors and their professionals will deliver the Proposals received no later than one (1) business day following receipt of the Proposal to (i) advisors to the official committee of unsecured creditors (the "Creditors' Committee"), (ii) advisors for TriMont Real Estate Advisors, Inc. (the "Special Servicer") and U.S. Bank National Association, as successor in interest to Wells Fargo Bank, N.A., as successor trustee in trust for the holders of Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2007-ESH (the "Trust," and the current trustee thereof, the "Successor Trustee," collectively with the Special Servicer, the "Mortgage Debt Parties") and (iii) advisors to the C/P Investors, as follows:

To the Creditors' Committee:

Hahn & Hessen LLP
488 Madison Avenue
New York, New York  10022
Attn: Mark T. Power, Esq., Mark T. Indelicato, Esq.
Tel: (212) 478-7200
Fax: (212) 478-7400
Email: mpower@hahnhessen.com; mindelicato@hahnhessen.com

To the Mortgage Debt Parties:

McKenna, Long & Aldridge LLP
230 Park Avenue, Suite 1700
New York, NY 10169
Attn: Christopher F. Graham, Esq.
Tel: (212) 905-8328
Fax: (212) 922-1819
Email: CGraham@mckennalong.com

303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308-3265
Attn: Gary Marsh, Esq.
Tel: (404) 527-4150
Fax: (404) 527-4198
Email: GMarsh@mckennalong.com

Latham & Watkins, LLP
885 Third Avenue
New York, NY 10167
Attn: Mitchell A. Seider, Esq.; Keith A. Simon, Esq.
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: mitchell.seider@lw.com; keith.simon@lw.com

To the C/P Investors:

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Attn: Brad Eric Scheler, Esq., Jennifer L. Rodburg, Esq.
Tel: (212) 859-8000
Fax: (212) 859-4000
Email: Brad.Eric.Scheler@friedfrank.com; Jennifer.Rodburg@friedfrank.com

*and*

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Attn: David M. Feldman, Esq.
Tel: (212) 351-4000
Fax: (212) 351-4035
Email: DFeldman@gibsondunn.com

Each Proposal must:

1.      state that such Interested Party offers to purchase the Acquired Assets and
        fund a Plan upon the terms and conditions substantially as set forth in the
        Existing Plan Related Agreements or pursuant to an alternative structure;

2.      state that such Interested Party's Proposal is not subject to any further due
        diligence and that such Interested Party has obtained all necessary
        financing and approvals, which financing and approvals are not subject to
        any conditions;

3.      include evidence of authorization and approval from the Interested Party's
        board of directors (or comparable governing body) with respect to the
        submission, execution, delivery and closing of the Proposal and
        transactions contemplated thereby, including evidence of a binding and
        unconditional commitment to provide financing;

4.      fully disclose the identity of each party that will be participating in connection with such Proposal, and the complete terms of any such participation;

5.      contain a detailed overview of the terms of the Interested Party's sponsorship of a Plan for the applicable ESH entities, which terms must include a detailed pro forma capitalization, ownership, amount of a new money investment and all sources of recovery to the Debtors' creditors and contain as much detail as possible on proposed structure, including a list of the relevant entities to be included in any alternative plan;

6.      not include (i) a right to request or entitlement to any commitment payment, break-up fee or similar type of payment other than the Liquidated Damages (as defined below) or (ii) reimbursement of fees and expenses other than (a) in connection with the implementation of the Proposal if the Interested Party is the Successful Bidder (as defined below), (b) in connection with the Liquidated Damages (as defined below) or (c) after the close of the Auction, by motion to the Bankruptcy Court based on substantial contribution to the Debtors' chapter 11 cases if the Interested Party is not the Successful Bidder;

7.      contain a description of the financial assumptions and any other assumptions utilized in each Interested Party's Proposal, including estimated transaction costs, and any major underwriting assumption(s) upon which each Interested Party may have based its Proposal, including working capital, capital expenditure requirements and impact of proposed structure;

8.      contain evidence of the source(s) of equity and/or debt financing for the Interested Party's Proposal, including the parties to provide financing, their contact information, and a description of each sponsor and any additional party or parties funding the Plan and such party's financial position;

9.      contain confirmation that the Proposal has received any necessary internal approvals to make a binding Proposal;

10.     state each Interested Party's and any other sponsor's experience in the lodging industry, including ownership and management of hospitality assets, as well as any other information that it thinks could be important to the Debtors in their decision-making process regarding the Proposal;

11.     state the specific person(s) whom the Debtors' financial advisors, Lazard Frères & Co. LLC, should contact in the event that the Debtors have any questions or wish to discuss the Proposal; and

12.     include a mark-up of the Existing Plan and a mark-up of the form of an investment and standby purchase agreement to be entered into by the

Debtors and an affiliate of the C/P Investors, which will be provided by the Debtors to the Interested Parties (such form, the "Investment Agreement"), as well as the other plan-related documents, including the HVM Manager Purchase Agreement and the BHAC Intellectual Property Transfer Agreement.

Each Interested Party providing a Proposal shall be deemed to acknowledge and represent that it has had an opportunity to conduct due diligence on the Debtors prior to making its Proposal; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its Proposal; and that it did not rely upon any written or oral statement, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtors, or the completeness of any information provided in connection therewith.

Within one (1) business day following entry by the Bankruptcy Court of an order approving the Bidding Procedures contained herein, the Debtors shall provide copies of all proposals or other indications of interest for the Acquired Assets received by the Debtors prior to entry of such order to the professionals for the Creditors' Committee, the Mortgage Debt Parties and the C/P Investors.

**FOR THE AVOIDANCE OF DOUBT, ANY AND ALL PARTIES SHOULD BE AWARE THAT ANY PARTY THAT DOES NOT SUBMIT A PROPOSAL BY THE PROPOSAL DEADLINE WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE PROPOSAL DEADLINE.**

H.    *__Deposits__*

The submission of a Proposal by the Proposal Deadline shall and must be accompanied by the $150,000,000 Deposit with an escrow agent selected by the Debtors (the "Escrow Agent") pursuant to the escrow agreement to be provided by the Debtors to the Interested Parties (the "Escrow Agreement"). The submission of a Proposal and a Deposit by the Proposal Deadline shall constitute a binding and irrevocable offer and any Proposal shall not be subject to, and shall state that it is not subject to, financing, diligence, approvals or other conditions not set forth in the Investment Agreement.

I.    *__Review of Proposals__*

The Debtors will review those Proposals timely submitted and engage in negotiations with those prospective acquirers and/or investors that submitted Proposals complying with the proceeding paragraphs and as they deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Proposal as well as other commercial and competitive considerations. Although the Debtors will provide copies of the Proposals to the Creditors' Committee, the Mortgage Debt Parties, and the C/P Investors, and will consult with the Creditors' Committee and the Mortgage Debt Parties, the Debtors retain the exclusive right to determine whether an Interested Party that submitted a Proposal may participate in the Auction.

The Debtors will select, in their business judgment, those Proposals qualifying to proceed in the process on or before **May 25, 2010**. In evaluating the Proposals, the Debtors will take into consideration, among other factors, the form of consideration, value and certainty of recovery provided to prepetition creditors and shareholders, transaction structure and execution risk, including conditions to closing, availability of financing and financial wherewithal to meet all commitments under the Proposal, approvals required, and the Interested Party's ability to manage the Debtors' business.

After review of the timely submitted Proposals, the Debtors shall determine if any such Interested Parties has submitted a Proposal that qualifies to participate in the Auction (each such party, a "<u>Qualified Bidder</u>" and a "<u>Qualified Proposal</u>," respectively). After determining that an Interested Party is a Qualified Bidder and qualifies to participate in the Auction in accordance with these Bid Procedures, the Debtors will notify the party in writing, on or before **May 25, 2010**, with a copy to the Creditors' Committee, the Mortgage Debt Parties, and the C/P Investors.

**Only those Proposals that (i) were submitted on or before the Proposal Deadline, (ii) provide incremental value to the Debtors' estates as compared to the Existing Plan Related Agreements, (iii) state that they are binding and irrevocable offers, not subject to financing, diligence, approvals or other conditions not set forth in the Investment Agreement, and (iv) are accompanied by a $150,000,000 Deposit that was submitted on or before May 17, 2010, may be deemed Qualified Proposals.**

**FOR THE AVOIDANCE OF DOUBT, ANY AND ALL PARTIES SHOULD BE AWARE THAT ANY PARTY THAT IS NOT DETERMINED TO BE A QUALIFIED BIDDER BY MAY 25, 2010 WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE PROPOSAL DEADLINE OR AFTER THE AUCTION.**

The Debtors reserve the right, after consultation with the Creditors' Committee and the Mortgage Debt Parties, to reject any Proposal if the Debtors determine that such Proposal does not constitute a Qualified Proposal or is otherwise inadequate or insufficient or is otherwise contrary to the best interests of the Debtors.

Notwithstanding anything in these Bidding Procedures, the C/P Investors are deemed Qualified Bidders, and the Existing Plan Related Agreements shall be deemed a Qualified Proposal for all applicable purposes under these Bidding Procedures with respect to the Auction and otherwise.

Between the date the Debtors notify an Interested Party that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate or seek clarification of any Qualified Proposal from a Qualified Bidder; <u>provided</u>, <u>however</u>, the Debtors shall consult with the Creditors' Committee and the Mortgage Debt Parties with respect to such actions. Without the written consent of the Debtors, a Qualified Bidder may not modify, amend or withdraw its Qualified Proposal, except for proposed amendments to increase the purchase price or otherwise

improve the terms of the Qualified Proposal for the Debtors, during the period that such Qualified Proposal remains binding as specified herein; provided, however, that any Qualified Proposal may be improved at the Auction as set forth herein. The determination of the Qualified Bidders shall become irrevocable and unreviewable once the Auction has commenced.

**The Auction**

J. ***Notice of Auction***

If the Debtors determine that they have received a Qualified Proposal in addition to the Existing Plan Related Agreements by the C/P Investors, the Auction will be held **on May 27, 2010 at 10:00 a.m.** (prevailing Eastern Time) at the offices of Weil, Gotshal and Manges LLP, 767 Fifth Avenue, New York, New York 10153. **On or before May 25, 2010 at 5:00 p.m.** (prevailing Eastern Time), the Debtors shall provide each Qualified Bidder (including the C/P Investors), the Creditors' Committee and the Mortgage Debt Parties with the following: (1) written notice that the Auction is proceeding in accordance with the Notice of Auction previously published by the Debtors, (2) a copy of the Qualified Proposal the Debtors have determined constitutes the highest or otherwise best offer among the Qualified Proposals and with which they intend to commence the Auction (the "Pre-Auction Successful Proposal"), and (3) a copy of each of the Qualified Proposals.

The Auction may be adjourned as the Debtors deem appropriate, after consultation with the Creditors' Committee and the Mortgage Debt Parties. Reasonable notice of such adjournment and the time and place for resumption of the Auction shall be given to all of the Qualified Bidders.

K. ***Attendance and Participation in the Auction***

a. In addition to the Debtors and their advisors, the only parties eligible to participate in the Auction shall be: (i) the C/P Investors and their representatives and advisors; (ii) representatives and advisors of the Creditors' Committee; (iii) representatives and advisors of the Mortgage Debt Parties; (iv) those Qualified Bidders who have submitted a Qualified Proposal to the Debtors (as well as such Qualified Bidder's advisors and representatives); and (v) the Office of the United States Trustee for the Southern District of New York. The C/P Investors and the Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

b. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Auction.

c. Each Qualified Bidder shall have provided the Deposit.

L.    ***The Auction Process***

The Auction shall run in accordance with the following procedures:

a.    The Debtors and their respective professionals shall direct and preside over the Auction.

b.    On or before **May 26, 2010**, each Qualified Bidder who has timely submitted a Qualified Proposal (as determined by the Company) must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder does not attend the Auction, such Qualified Bidder's Qualified Proposal shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bid (as defined below) at the conclusion of the Auction.

c.    All Qualified Bidders who have timely submitted Qualified Proposals will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.  All proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

d.    At the commencement of the Auction, the Debtors shall announce and describe the terms of the Pre-Auction Successful Bid, as determined by the Debtors.

e.    The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court, (ii) not inconsistent with the Existing Plan Related Agreements and (iii) disclosed to each Qualified Bidder at the Auction.

f.    Bidding at the Auction will begin with the Pre-Auction Successful Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid (a "Subsequent Bid") is submitted by a Qualified Bidder that the Debtors determine, (i) in the case of the first round, is a higher or otherwise

better bid than the Pre-Auction Successful Bid by an amount to be determined by the Debtors and (ii) in the case of subsequent rounds, is a higher or otherwise better bid by the minimum bid increment set by the Debtors for each such round than the best bid of the previous round. Each Qualified Bidder must submit a Subsequent Bid that satisfies the minimum bid increment in each round of bidding to continue participating in the Auction.

g. The Debtors shall announce the material terms of each Subsequent Bid at the Auction, and shall disclose their valuation of the total consideration offered in each such Subsequent Bid (and the basis for its determination) in order to (a) confirm that each Subsequent Bid meets the minimum bid increment set by the Debtors for the round in which such Subsequent Bid was submitted and (b) to provide a floor for further Subsequent Bids.

M. ***Identification of the Successful Bidder***

At the close of the Auction, the Debtors, in their sole discretion and in exercise of their business judgment after consultation with the Creditors' Committee and the Mortgage Debt Parties, shall identify which Qualified Bidder has the highest or otherwise best bid (the "Successful Bid," and such bidder, the "Successful Bidder"), which will be determined by considering, among other things:

1. The number, type and nature of any changes to the Existing Plan and the Investment Agreement requested by each Qualified Bidder and whether such Qualified Proposal is on different terms than those set forth in the Existing Plan and the Investment Agreement; it being understood that certain modifications (including those that (a) increase the certainty of closing without delay, and (b) increase certainty with respect to liquidated damages for a buyer breach) may be viewed as improving the value of the bid.

2. The extent to which any requested modifications to the Existing Plan and the Investment Agreement are likely to delay the closing, and the likely cost to the Debtors of any such modifications or delay.

3. The total consideration to be received by the Debtors under the terms of each Qualified Proposal.

4. Each Qualified Bidder's ability to timely close a transaction and make any deferred payments, if applicable.

5. The net benefit to the Debtors' estates and the creditors of such estates and the likely timing and amount of distributions to the Debtors' creditors resulting from each proposal.

In announcing the Successful Bid, the Debtors shall announce the material terms of such bid, the basis for determining the total consideration offered and the resulting calculated benefit of such bid to the Debtors' estates. Upon the close of the Auction, the Debtors shall announce the Successful Bidder, and such Successful Bidder shall promptly thereafter submit fully executed revised documentation memorializing the terms of the Successful Bid.

If no Auction is held, then the proposal of the C/P Investors as represented by the Existing Plan shall be deemed to be the Successful Bid and the C/P Investors shall be deemed to be the Successful Bidder and the Debtors will proceed to effectuate the transactions as set forth in the Existing Plan Related Agreements; provided, however, that nothing in these Bidding Procedures in any way limits the ability of the Debtors and the C/P Investors to mutually agree on improvements in the terms of the Existing Plan Related Agreements.

### Return of Deposits

Any cash Deposits submitted by Qualified Bidders will be held in escrow by the Debtors' Escrow Agent. Each Deposit will be forfeited to the Debtors if (a) the applicable Qualified Bidder attempts to modify, amend or withdraw its Qualified Proposal, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Proposal for the Debtors, during the time the Qualified Proposal remains binding and irrevocable under these Bidding Procedures or (b) the Qualified Bidder is selected as the Successful Bidder and fails to consummate the Plan according to these Bidding Procedures and the terms of the Investment Agreement. The Escrow Agent shall release the Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) Business Days after the receipt by the Escrow Agent of a joint written notice by a Debtor Authorized Officer and the Qualified Bidder stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

The Debtors shall promptly return to the applicable Qualified Bidder any Deposit, plus any interest accrued thereon, accompanying (a) a Proposal that the Company determines not to be a Qualified Proposal, and (b) any Qualified Proposal that the Debtors do not select as the Successful Bid at the Auction, two (2) Business Days after the close of the Auction, but in no event later than seven (7) Business Days after the commencement of the Auction.

The Deposit of the Successful Bidder shall be applied against the cash investment of the Successful Bidder upon the consummation of the plan proposed in the Successful Bid.

The Debtors and the Qualified Bidder agree to execute an appropriate joint notice to the Escrow Agent for the release of the Qualified Bidder's Deposit, in accordance with the terms of these Bid Procedures. If either party fails to execute such written notice, the Deposit may be released by an order of the Bankruptcy Court.

### Plan Process

After selecting the Successful Bid, the Debtors, in consultation with the entity or entities which submitted the Successful Bid, will prepare and file a revised plan and related

disclosure statement with the United States Bankruptcy Court for the Southern District of New York to effectuate the terms of the Successful Bid. The hearing to consider the adequacy of the Disclosure Statement for the Successful Bid shall occur not later than June 17, 2010, unless otherwise agreed by the Debtors and the Successful Bidder.

## Liquidated Damages

The Successful Bidder shall be entitled to liquidated damages in an amount equal to 10% of the total enterprise value, as set forth in the Successful Bid, and reimbursement of reasonable out-of-pocket expenses up to $10,000,000 (collectively, the "Liquidated Damages"), in the event that (i) the revised Plan that reflects the Successful Bid is withdrawn or the Investment Agreement relating to such Plan is terminated because the Debtors have determined to pursue a Plan or other transaction based on an alternative bid or proposal for any of the Acquired Assets and the Successful Bidder is not in breach of any of its obligations under the Investment Agreement or (ii) the Special Servicer has exercised any rights or remedies it may have (other than its right to vote on such Plan) that render confirmation of the Plan sponsored by the Successful Bidder impracticable or impossible. In the case of clause (i), the expense reimbursement shall be paid upon such withdrawal or termination and the balance of the Liquidated Damages shall be paid upon consummation of an alternative bid or proposal. In the case of clause (ii), the Liquidated Damages shall be paid upon the Special Servicer's exercise of such rights or remedies. The Liquidated Damages shall be payable in cash or in equity.

## Reservation of Rights

The Debtors reserve the right, in their sole discretion and subject to the exercise of their business judgment, to alter or terminate these Bidding Procedures, to alter the assumptions set forth herein, and/or to terminate discussions with any and all prospective acquirers and investors at any time and without specifying the reasons therefore, to the extent not materially inconsistent with the Bidding Procedures set forth herein.

## End of Auction Process

Following the selection of the Successful Bid, (A) the Auction shall be closed, (B) the Debtors shall (i) immediately cease and cause to be terminated any ongoing solicitation, discussions and negotiations with respect to any other bids or proposals for the Acquired Assets and (ii) not solicit any inquiries or proposals, or enter into any discussions, negotiations, understandings, arrangements or agreements, relating to any other bid or proposal for the Acquired Assets, and (C) no additional bids or proposals for the Acquired Assets will be accepted or considered by the Debtors, unless and until the earlier of (1) the termination of the Investment Agreement by and among the Successful Bidder and the Debtors and (2) entry of an order of the Bankruptcy Court denying confirmation of the Plan sponsored by the Successful Bidder.

Dated: April [___], 2010

**Exhibit 2**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Marcia L. Goldstein
Jacqueline Marcus

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                     :

**In re**                              :       **Chapter 11 Case No.**
                                     :

**EXTENDED STAY INC., et al.,**     :       **09-13764 (JMP)**
                                     :

         **Debtors.**              :       **(Jointly Administered)**
                                     :

---------------------------------------------------------------x

## NOTICE OF AUCTION

       **PLEASE TAKE NOTICE** that on April [__], 2010, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. __] (the "Bidding Procedures Order") authorizing Extended Stay Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors") to conduct an auction (the "Auction") to select an investor to sponsor the Debtors' proposed plan of reorganization, such Auction to be governed by approved bidding procedures (the "Bidding Procedures"). Copies of the Bidding Procedures Order can be accessed on Kurtzman Carson Consultant LLC's website at http://www.kccllc.net/extendedstay. Copies of the Bidding Procedures may be obtained by contacting Lazard Freres & Co. LLC at the email address or telephone number set forth below.

       **PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **May 27, 2010 at 10:00 a.m.**, at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153.

       **PLEASE TAKE FURTHER NOTICE** that any person or entity who wishes to participate in the Auction must submit a binding and committed proposal in writing (the "Proposal"), with a $150,000,000 deposit (the "Deposit"), on or before **May 17, 2010 at 3:00 p.m. (Eastern Time)** (the "Proposal Deadline"), as set forth in the Bidding Procedures, in writing to:

Attn: Phillip T. Summers
Lazard Freres & Co. LLC
30 Rockefeller Plaza, 63rd Floor
New York, New York 10020
Tel:     (212) 632-6296
Fax:     (212) 830-2680
Email: Phillip.Summers@lazard.com

**PLEASE TAKE FURTHER NOTICE** that the submission of a Proposal and a Deposit by the Proposal Deadline shall constitute binding and irrevocable offers and any Proposal shall not be subject to, and shall state that it is not subject to, financing, diligence, approvals or other conditions not set forth in the form of an investment and standby purchase agreement provided by the Debtors. The Debtors reserve the right, in their sole discretion and subject to the exercise of their business judgment, to alter or terminate the Bidding Procedures, to alter the assumptions set forth in the Bidding Procedures, and/or to terminate discussions with any and all prospective acquirers and investors at any time and without specifying the reasons therefore, to the extent not materially inconsistent with the Bidding Procedures.

Dates:  April [___], 2010
        New York, New York

**Exhibit D**

**C/P Amended Commitment Letter**

**Execution Version**

April 2, 2010

To the Debtors that are parties hereto
Attention:     Messrs. David Lichtenstein and Joe Teichman

> Re:     Establishment of Process for Sponsoring a Plan of Reorganization and Related
>         Commitment

Gentlemen:

Reference is made to the jointly administered chapter 11 bankruptcy cases, lead case no. 09-13764 (the "Chapter 11 Cases"), currently pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), in which Extended Stay Inc. and certain of its affiliates and subsidiaries are debtors and debtors in possession (collectively, the "Debtors"). Reference is also made to (i) that certain Investment and Standby Purchase Agreement, dated March 15, 2010, by and among Starwood ESH L.L.C. (the "Starwood Investor"), and the Debtors, HVM L.L.C., and HVM Manager L.L.C. (the "Starwood Investment Agreement")[1], (ii) that certain Membership Interest Purchase Agreement, dated March 15, 2010, by and among the Starwood Investor, the Debtors and David Lichtenstein (the "HVM Purchase Agreement"), (iii) the Debtors' Third Amended Plan of Reorganization, Case No. 09-13764 [Docket No. 877], dated March 24, 2010 (the "Starwood Plan") and (iv) the Commitment Letter (the "Starwood Commitment Letter") entered into in connection with the Starwood Investment Agreement, dated March 15, 2010, by and among the Debtors, the Starwood Investor and each of the Sponsors (as such term is defined in the Starwood Commitment Letter).

As you know, Centerbridge Partners, L.P. and Paulson & Co. Inc., each on behalf of certain investment funds and accounts managed by of them (collectively, the "Investors"), have been engaged in discussions with the Debtors who are party hereto and certain other parties in interest regarding an equity investment in a newly formed parent company of the Debtors ("NewCo") and a standby purchase commitment for a rights offering of equity securities of NewCo that would be implemented pursuant to a plan of reorganization. In connection with such efforts, we hereby submit this letter (this "Commitment Letter"), which sets forth the several, and not joint, commitment of each Investor (based on their respective commitments set forth on **Schedule 1** hereto) to engage in the negotiation of, and participate in, a bidding and plan process (the "Process"), which will include an auction (the "Auction") of the Debtors' assets, on substantially the terms set forth below.

In connection with the Process, including the Auction, each Investor hereby agrees, subject to the terms and conditions set forth in this Commitment Letter, severally, and not jointly,

---

[1]     Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the Starwood Investment Agreement.

1

to be bound by the terms of the Starwood Investment Agreement and the HVM Purchase Agreement as if they were parties thereto and assume the rights and obligations of the Sponsors and the Starwood Investor thereunder and under the Starwood Commitment Letter, including the obligations of the Sponsors and the Starwood Investor to (A) make a new money investment of four hundred fifty million dollars ($450,000,000) in the aggregate in NewCo, (B) backstop an offering of up to two hundred million dollars ($200,000,000) in the aggregate, of the new equity securities of NewCo and (C) invest up to two hundred fifty five million four hundred thousand dollars ($255,400,000) in the aggregate to purchase rollover equity securities of NewCo held by B through H class Certificate holders, at a 30% discount to the accreted amount thereof estimated as of June 30, 2010, directly from the holders of B through H class Certificates who elect to receive cash in lieu of rollover equity securities of NewCo in exchange for B through H class Certificates held by such holders, pursuant to and to be effectuated through the Starwood Plan, in each case subject to modifications described in this Commitment Letter. The Investors will effectuate the transactions through a newly formed affiliated entity designated and funded by the Investors that will step in to the shoes of the Starwood Investor under the Starwood Investment Agreement and the HVM Purchase Agreement, as provided for in this Commitment Letter.

Each of the Investors agrees to severally, and not jointly, be bound by the obligations of the Sponsors and the Starwood Investor under the Starwood Investment Agreement and the HVM Purchase Agreement, and to contribute cash to fund the Starwood Plan up to the maximum dollar amount set forth opposite each Investors' name on **Schedule 1** hereto, all upon the terms and expressly subject to the conditions contained in this Commitment Letter, the Starwood Investment Agreement and the HVM Purchase Agreement; provided, that the Starwood Investment Agreement, the HVM Purchase Agreement, the Starwood Plan and the Starwood Commitment Letter are amended and modified as follows (each as amended and modified hereunder, the "Modified Starwood Investment Agreement", the "Modified HVM Purchase Agreement", the "Modified Starwood Plan" and the "Modified Starwood Commitment Letter", and collectively, the "Modified Starwood Documents"):

- Removing the obligations relating to the Commitment Payment and Cash Election Commitment Payment described in Sections 5.1 and 15.7 of the Starwood Investment Agreement and all related references thereto;

- Modifying Section 5.2 of the Starwood Investment Agreement to provide for the reimbursement of the Expenses incurred by the Investors only, including the fees and expenses of Fried, Frank, Harris, Shriver & Jacobson LLP, Houlihan, Lokey, Howard & Zukin, Inc. and Gibson, Dunn & Crutcher LLP; provided, however, that the reimbursement of the Expenses shall be subject to the entry of the Disclosure Statement Approval and Solicitation Order (as defined herein) and the Investors having the winning bid at the Auction; and, provided, further that the maximum amount of the Expenses payable by the Company shall be ten million dollars ($10,000,000) in the event that the Modified Starwood Plan is not consummated, other than due to a breach of the Modified Starwood Documents by the Investors;

- Deleting Sections 5.3, 8.1, 8.16 and 15.3(b), (e) and (g) of the Starwood Investment Agreement in their entirety;

- Revising section 15.3(a) of the Starwood Investment Agreement in its entirety to provide as follows: "the Investors shall not have received from the Company, prior to 8:00 p.m. (Eastern Time) on April 2, 2010 (or such later time if extended in writing by the Investors), written confirmation that the Debtors have withdrawn the New Approval Motion;"

- Revising Section 15.3(c) of the Starwood Investment Agreement in its entirety to provide as follows: "the motion seeking approval of the Disclosure Statement, in a form and substance reasonably acceptable to the Investors, is not filed with the Bankruptcy Court by the Debtors prior to 5:00 p.m. (Eastern Time) on April 30, 2010 (or such later time if extended in writing by the Investors), seeking entry of, among other things, the Solicitation Order, in form and substance reasonably acceptable to the Investors, authorizing and approving, among other things (A) the Disclosure Statement and the solicitation of acceptances with respect to the Plan, (B) the Debtors' execution of the Agreement and the transactions contemplated in the Agreement, (C) the Expenses and all other consideration and fees contemplated under the Agreement and (D) the indemnification provisions set forth in the Agreement;"

- Extending the deadline in Sections 15.3(d) and (f) of the Starwood Investment Agreement to April 23, 2010;

- Extending the deadline in Section 15.3(h) of the Starwood Investment Agreement to June 17, 2010;

- Extending the deadline in Section 15.3(j) of the Starwood Investment Agreement to July 22, 2010;

- Modifying Exhibits I and J of the Starwood Plan by deleting all references to the SCG Incentive Comp and making corresponding conforming revisions to the waterfalls that are set forth therein; and

- Such other modifications as may be agreed upon by the Debtors and the Investors.

As a condition to the Investors' obligations and commitment contained in this Commitment Letter, the Debtors shall implement the bidding and plan Process on the following terms:

- Consistent with the Process, the Debtors shall withdraw the New Approval Motion by no later than April 2, 2010.

- In lieu of seeking approval of the Starwood Investment Agreement and the break-up and bid protections contained therein, the Debtors shall advise the Bankruptcy Court that they are to hold the Auction where all interested parties, including the Starwood Investor and the Investors, will have the opportunity to submit their highest or best bid for the Debtors.

- Within twenty-one (21) days of the withdrawal of the New Approval Motion, the Debtors shall file an amended plan (the "Amended Plan") and related amended disclosure statement (the "Amended Disclosure Statement") that shall be based on the Modified Starwood Documents, and consistent with this Commitment Letter. The Amended Plan and Amended Disclosure Statement shall be expressly subject to modification and amendment based on the results of the Auction to be held as described herein.

- No later than April 30, 2010, the Debtors shall file a motion (the "Disclosure Statement Approval and Solicitation Motion"), in form and substance reasonably acceptable to the Investors, fixing June 17, 2010 as the date for the hearing on the approval of the Amended Disclosure Statement (the "Disclosure Statement Hearing"), and seeking, among other things, (i) entry of an order (the "Disclosure Statement Approval and Solicitation Order") authorizing and approving the Disclosure Statement, and (ii) approving the solicitation of acceptances with respect to the Amended Plan.

- The Disclosure Statement Approval and Solicitation Motion shall include as an exhibit, the form of written notice of the Auction, together with the deadlines relating thereto (the "Notice of Auction"), in substance reasonably acceptable to the Investors. The Notice of Auction will be published and served on all parties in interest, as part of the Disclosure Statement Approval and Solicitation Motion.

- On May 27, 2010 (the "Auction Date"), the Debtors, in consultation with the Official Committee of Unsecured Creditors (the "Creditors' Committee"), shall conduct the Auction to select the highest or best bid that will provide the basis for the Amended Plan. The Auction shall be open to all interested parties including, without limitation, the Starwood Investor and the Investors. In connection with the Auction, the Debtors shall establish certain bidding requirements reasonably acceptable to the Investors that will include, among other things, the deposit requirement described herein, a minimum over bid requirement and other usual and customary auction protocols, procedures and qualifying requirements.

- Potential bidders shall be required to provide at least a one hundred and fifty million dollar ($150,000,000) good faith deposit (the "Deposit") no later than ten (10) days prior to the Auction Date. Parties that do not provide such Deposit shall not be eligible to submit bids or participate at the Auction. The amount of the Deposit shall be the same for each bidder at the Auction. Each Deposit shall be made by wire transfer of immediately available funds into a separate escrow account established for the Auction. The successful bidder at the Auction shall have its Deposit, and any interest accrued thereon, credited against the cash component of such winning bid. Deposits provided by any unsuccessful bidders shall be returned, with any interest accrued thereon, to the proper parties within four (4) Business Days following the conclusion of the Auction by wire transfer to accounts designated by such parties.

- No later than twenty (20) days prior to the date of the Auction, the Debtors shall issue a public announcement regarding the Auction, including the final date on which parties may submit bids and the requirements relating thereto, including the Deposit, and the Investors' commitment with respect thereto as set forth in this Commitment Letter, either through a filing with the Bankruptcy Court or otherwise.

- Immediately after the Auction, the terms of the winning bid, determined to be the highest or best at the Auction, shall be incorporated in the Amended Disclosure Statement and Amended Plan and the Amended Disclosure Statement shall be the subject of Bankruptcy Court approval at the Disclosure Statement Hearing to be held on June 17, 2010.

- Upon the approval of the Amended Disclosure Statement pursuant to the Disclosure Statement Approval and Solicitation Order, the Debtors shall commence the solicitation process for the Amended Plan, which will reflect the winning bid. To the extent it is determined at the Auction, and subject to such determination, that the Investors have the winning bid, the Disclosure Statement Approval and Solicitation Order shall approve and authorize, among other things, (A) the Debtors' execution of an investment and standby purchase agreement reflecting such winning bid and the transactions contemplated thereby, (B) the Expenses and all other consideration and fees contemplated under such investment and standby purchase agreement and (C) the indemnification provisions set forth in the such investment and standby purchase agreement.

- During the period commencing on the date the New Approval Motion is withdrawn and ending on the date of the Auction, the Debtors shall continue to undertake reasonable efforts and utilize reasonable resources to attract other bidders and solicit competing bids for the Auction. Following the conclusion of the Auction and the selection of the winning bid, the Debtors shall immediately (A) cease and cause to be terminated any ongoing solicitation, discussions and negotiations with respect to any Alternate Transaction and (B) not solicit any inquiries or proposals, or enter into any discussions, negotiations, understandings, arrangements or agreements, relating to an Alternate Transaction, unless the board of directors of the Debtors receives a proposal not solicited by the Debtors and, acting in good faith, after consulting with legal counsel, determines that such proposed Alternate Transaction would reasonably be expected to result in a superior transaction than that provided for in the Amended Plan and that failure to enter into such Alternate Transaction would result in a breach of the board of directors' fiduciary duties.

Without limiting the obligations and commitments of the Investors set forth above, the Investors commit to submit, and expressly reserve the right to submit, a bid at the Auction, which may or may not be on the terms of the Modified Starwood Documents and may include bid protections including, but not limited to break-up or other fees. If the Investors do not have the winning bid at the conclusion of the Auction, the Investors expressly reserve the right to seek

reimbursement of their Expenses incurred in making a substantial contribution to the Debtors' chapter 11 cases.

The several, not joint, obligations and commitment of the Investors set forth in this Commitment Letter to effectuate and implement the Modified Starwood Documents shall be subject to and specifically conditioned on (a) there being no competitive bidding at the Auction and no qualified bids being submitted at the Auction, (b) there being competitive bidding at the Auction but no qualified bid being submitted at the Auction that is determined to be higher or better than the Modified Starwood Documents, or (c) the Investors do not submit a bid at the Auction that is determined to be higher or better than the Modified Starwood Documents. If, however, the Investors do submit a higher or better bid at the Auction and such bid is determined to be the highest or best bid, the Modified Starwood Documents shall be revised to reflect such higher or better bid.

As a gesture of good faith, within two (2) Business Days following the withdrawal of the New Approval Motion, the Investors agree to provide the Debtors with a Deposit of one hundred and fifty million dollars ($150,000,000), subject to the terms and conditions set forth herein, which shall be made by wire transfer of immediately available funds to an escrow account created specifically to (a) carry out the terms of this Commitment Letter, (b) implement the Process and (c) consummate the transactions contemplated herein. The funds in the escrow account shall be invested and disbursed in accordance with an escrow agreement to be entered into among the Debtors, the Investors and the escrow agent on terms consistent with this Commitment Letter and reasonably acceptable to the parties hereto.

In the event that at the Auction (a) there is no competitive bidding and no qualified bid is submitted that is determined to be higher or better than the Modified Starwood Documents, (b) there is competitive bidding but no qualified bid is submitted that is determined to be higher or better than the Modified Starwood Documents, or (c) the Investors do not submit a bid at the Auction that is determined to be higher or better than the Modified Starwood Documents and the Investors' bid as reflected in the Modified Starwood Documents is determined to be the highest or best bid at the Auction, the Debtors and the Investors hereby agree that, within three (3) days after the close of the Auction the parties shall enter into an amended investment and standby purchase agreement consistent with the terms of the Modified Starwood Documents. In this event, the Deposit provided by the Investors as described above, plus any interest accrued thereon, shall be credited against the Investors' cash payment under such amended investment and standby purchase agreement upon the consummation of the transaction thereunder.

The several, not joint, obligations and commitment of the Investors set forth in this Commitment Letter are subject to and specifically conditioned on (a) the Investors' receipt from the Company, not later than 8:00 p.m. (Eastern Time) on April 2, 2010, of written confirmation that the Debtors have withdrawn the New Approval Motion; (b) the implementation of the Process and the Auction on the terms and subject to the conditions set forth above and any other terms and conditions being reasonably acceptable to the Investors; (c) the Auction occurring on or before May 27, 2010; (d) the Disclosure Statement Hearing taking place on or before June 17, 2010; (e) the Confirmation Hearing taking place on or before July 22, 2010; and (f) the Confirmation Order being entered on or before July 28, 2010 (the milestones specified in this

sentence being hereinafter referred to as the "Revocation Conditions", any of which may be waived or extended in writing by the Investors).

This Commitment Letter shall be immediately and automatically withdrawn and revoked and can no longer be accepted, and the obligations and commitment of the Investors under this Commitment Letter shall terminate automatically, in each case without any further action on the part of the Investors, if (i) any of the Revocation Conditions shall have failed to be satisfied or become impossible to satisfy (unless such Revocation Condition(s) shall have been waived or extended by each of the Investors in writing) or (ii) the Debtors shall have approved or recommended, or proposed publicly to approve or recommend, or directly or indirectly executed or entered into, or allowed any of its affiliates to directly or indirectly execute or enter into, any Alternate Agreement with respect to an Alternate Transaction. Without in any way limiting the foregoing, this Commitment Letter may be terminated by the Investors in writing to the Debtors if the Debtors shall breach or fail to satisfy any of their obligations or undertakings under this Commitment Letter and such breach is not cured within three (3) Business Days after receipt of written notice thereof to the Debtors.

With respect to the one hundred and fifty million dollar ($150,000,000) Deposit to be provided by the Investors as described above, the Deposit shall not be considered property of the Debtors' estates and shall not be available to the Debtors except in connection with the funding and consummation of a chapter 11 plan sponsored by the Investors. The Deposit shall be held in such escrow account until the earlier of (i) the effective date of a chapter 11 plan sponsored by the Investors, (ii) the withdrawal or termination of this Commitment Letter by the Investors in accordance with its terms, or (iii) the termination of this Commitment Letter by the Debtors other than as a result of a breach by the Investors of the terms hereof. In the event that the Investors are selected as the winning bidders at the Auction, the full amount of the Deposit, plus interest accrued thereon through the effective date of a chapter 11 plan sponsored by the Investors, shall be credited against the cash component of the winning bid. At all times, the full amount of the Deposit, plus interest accrued thereon, shall be immediately returned to the Investors following the earlier of (i) the selection by the Debtors of another bidder other than the Investors as the successful bidder at the Auction, (ii) the failure or impossibility of any of the Revocation Conditions to be satisfied, (iii) without in any way limiting section (ii) of this paragraph, the withdrawal or termination of this Commitment Letter by the Investors in accordance with its terms and not in breach of this Commitment Letter, or (iv) the termination of this Commitment Letter by the Debtors other than as a result of a breach by the Investors of the terms hereof.

This Commitment Letter is (a) not assignable by the Debtors without the prior written consent of the Investors (and any purported assignment without such consent shall be null and void), and (b) intended to be, and is, solely for the benefit of the parties hereto and is not intended (and nothing set forth in this Commitment Letter or otherwise shall confer or give or shall be construed) to confer or give to any Person other than the parties hereto any rights or remedies against any Person other than the parties hereto to the extent expressly set forth herein. Notwithstanding the foregoing, the Investors may assign all or any portion of their several, not joint, obligations hereunder without obtaining the consent of the Debtors provided such assignment is to one or more of (i) a commercial bank having total assets in excess of $5,000,000,000, or (ii) a finance company, insurance company, investment fund or any other

financial institution having a net worth, determined in accordance with GAAP, in excess of $250,000,000.

Each Investor hereby represents and warrants, as to itself only, that, as of the date hereof, it has, and upon the date of consummation of the Modified Starwood Plan, it will have, sufficient internal funds available to pay its portion of the amounts committed hereunder to fund the Modified Starwood Plan as set forth on Schedule 1 hereto and any expenses incurred by it in connection with the transactions contemplated by this Commitment Letter.

Anything in this Commitment Letter to the contrary notwithstanding, in the event that the Debtors or any of their affiliates, or any Person claiming by, through or for the benefit of any of them (including, without limitation, through the enforcement of any equitable rights or remedies the Debtors or any of their affiliates may have), asserts that any Investor or its respective affiliates or assignees is liable in excess of or to a greater extent than such Investor's respective commitment as set forth on **Schedule 1** hereto under any theory of liability against any of the Investors or their respective affiliates or assignees with respect to the Commitment Letter, the Modified Starwood Documents or the transactions contemplated hereby or thereby, then (i) the obligations of the Investors under this Commitment Letter shall terminate *ab initio* and be null and void, (ii) if any Investor has made any payments under this Commitment Letter, each such Investor shall be entitled to recover such payments and (iii) the Investors and their affiliates shall not have any liability to the Debtors or any of its affiliates with respect to the transactions contemplated hereby or thereby. No party hereto shall assert, and each party shall cause its respective affiliates not to assert, that this Commitment Letter or any part hereof is invalid, illegal or unenforceable. Notwithstanding any provisions of this Commitment Letter or otherwise, in no event shall the Investors, jointly or severally, be liable for any special, indirect, consequential, punitive or multiple damages under or in connection with this Commitment Letter, the Modified Starwood Documents, any documents or instruments delivered in connection herewith or therewith or the transactions contemplated hereby or thereby, whether based on contract, tort, statute or other source of law.

This Commitment Letter is part of a proposed settlement of matters that could otherwise be the subject of litigation among certain of the parties hereto. Nothing herein shall be deemed an admission of any kind. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this Commitment Letter and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce or implement the terms of this Commitment Letter.

This Commitment Letter, the rights of the parties under and in connection herewith, and all actions arising in whole or part or under or in connection herewith will be governed by and construed in accordance with the laws of the State of New York.

The Investors are prepared to enter into a transaction on the terms set forth herein. Upon receipt of a fully executed counterpart to this Commitment Letter, all parties agree to negotiate in good faith regarding the implementation Process contemplated in this Commitment Letter, including engaging in the preparation and negotiation of any necessary documents. This Commitment Letter shall be considered withdrawn if the Investors have not received from the

Debtors fully executed counterparts to this Commitment Letter on or before **April 2, 2010 at 8:00 p.m. (Eastern Time)**, unless such deadline is extended in writing by the Investors.

This Commitment Letter constitutes the entire agreement among the parties hereto with respect to the matters described herein and supersede any and all prior discussions, negotiations, proposals, undertakings, understandings and agreements, whether written or oral, between the Debtors or any of its affiliates on the one hand, and the Investors or any of their affiliates on the other hand. No modification or waiver of any provision hereof shall be enforceable unless approved by the Debtors and each Investor in writing; provided, however, that the Investors may waive satisfaction of any of the timing conditions precedent contained in this Commitment Letter to the several, not joint, obligations of the Investors to proceed with the transactions contemplated by this Commitment Letter without the approval of the Debtors. Neither the Debtors or their affiliates on the one hand, nor the Investors on the other hand are relying upon any statement or representation made by or on behalf of the other except as expressly provided in this Commitment Letter.

This Commitment Letter may be executed in one or more counterparts, and by the different parties hereto in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.

## [SIGNATURE PAGE FOLLOWS]

We look forward to moving forward with the Process and the transactions contemplated by this Commitment Letter on the terms set forth herein.

Very truly yours,

CENTERBRIDGE PARTNERS, L.P., on behalf of certain of its investment funds and accounts managed by it

By: _____
Name: WILLIAM D. RAHM
Title: PRINCIPAL

PAULSON & CO. INC., on behalf of certain of its investment funds and accounts managed by it

By: _____
Name:
Title:

We look forward to moving forward with the Process and the transactions contemplated by this Commitment Letter on the terms set forth herein.

Very truly yours,

CENTERBRIDGE PARTNERS, L.P., on behalf of certain of its investment funds and accounts managed by it

By: _____
     Name:
     Title:

PAULSON & CO. INC., on behalf of certain of its investment funds and accounts managed by it

By: _____
     Name: Michael Waldorf
     Title: Managing Director

Acknowledged and Agreed:

ESA PROPERTIES LLC
ESA 2005 PORTFOLIO LLC
ESA 2005- SAN JOSE LLC
ESA 2005- WALTHAM LLC
ESA ACQUISITION PROPERTIES LLC
ESA ALASKA LLC
ESA CANADA PROPERTIES BORROWER LLC
ESA FL PROPERTIES LLC
ESA MD BORROWER LLC
ESA MN PROPERTIES LLC
ESA P PORTFOLIO LLC
ESA P PORTFOLIO MD BORROWER LLC
ESA P PORTFOLIO PA PROPERTIES LLC
ESA P PORTFOLIO TXNC PROPERTIES LP
ESA PA PROPERTIES LLC
ESA TX PROPERTIES LP
ESA BUSINESS TRUST
ESA MANAGEMENT L.L.C.
ESA MD BENEFICIARY LLC
ESA MD PROPERTIES BUSINESS TRUST
ESA MEZZ L.L.C.
ESA MEZZ 2 L.L.C.
ESA MEZZ 3 L.L.C.
ESA MEZZ 4 L.L.C.
ESA MEZZ 5 L.L.C.
ESA MEZZ 6 L.L.C.
ESA MEZZ 7 L.L.C.
ESA MEZZ 8 L.L.C.
ESA MEZZ 9 L.L.C.
ESA MEZZ 10 L.L.C.
ESA P MEZZ L.L.C.
ESA P MEZZ 2 L.L.C.
ESA P MEZZ 3 L.L.C.
ESA P MEZZ 4 L.L.C.
ESA P MEZZ 5 L.L.C.
ESA P MEZZ 6 L.L.C.
ESA P MEZZ 7 L.L.C.
ESA P MEZZ 8 L.L.C.
ESA P MEZZ 9 L.L.C.
ESA P MEZZ 10 L.L.C.
ESA P PORTFOLIO MD BENEFICIARY LLC
ESA P PORTFOLIO MD TRUST
ESA CANADA PROPERTIES TRUST
ESA CANADA TRUSTEE INC.

ESA CANADA BENEFICIARY INC.
ESA UD PROPERTIES LLC
ESA 2007 OPERATING LESSEE, INC.
ESA 2005 OPERATING LESSEE INC.
ESA OPERATING LESSEE INC.
ESA P PORTFOLIO HOLDINGS L.L.C.
ESA P PORTFOLIO OPERATING LESSEE INC.
ESA CANADA OPERATING LESSEE INC.
ESA P PORTFOLIO TXNC GP L.L.C.
ESA TXGP L.L.C.
ESH/HOMESTEAD MEZZ L.L.C.
ESH/HOMESTEAD MEZZ 2 L.L.C.
ESH/HOMESTEAD MEZZ 3 L.L.C.
ESH/HOMESTEAD MEZZ 4 L.L.C.
ESH/HOMESTEAD MEZZ 5 L.L.C.
ESH/HOMESTEAD MEZZ 6 L.L.C.
ESH/HOMESTEAD MEZZ 7 L.L.C.
ESH/HOMESTEAD MEZZ 8 L.L.C.
ESH/HOMESTEAD MEZZ 9 L.L.C.
ESH/HOMESTEAD MEZZ 10 L.L.C.
ESH/HOMESTEAD PORTFOLIO LLC
ESH/HV PROPERTIES LLC
ESH/MSTX PROPERTY LP
ESH/TN PROPERTIES LLC
ESH/TX PROPERTIES LP
ESH/MSTX GP L.L.C.
ESH/TXGP L.L.C.
ESH/TN MEMBER INC.
EXTENDED STAY HOTELS L.L.C.
HOMESTEAD VILLAGE L.L.C.

By: _____
    Name: David Lichtenstein
    Title:

HVM MANAGER L.L.C.
By: _____
    Name: David Lichtenstein
    Title:

**Execution Version**

HVM L.L.C., by its manager HVM
MANAGER L.L.C.

By: _____
        Name: David Lichtenstein
        Title:

---

The undersigned hereby agrees to enter into the Modified HVM Purchase Agreement in
accordance with the terms of this Commitment Letter:

_____
Name: David Lichtenstein

**Exhibit E**

**Notice of Auction**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Marcia L. Goldstein
Jacqueline Marcus

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
In re                                                        :          **Chapter 11 Case No.**
                                                             :
**EXTENDED STAY INC., et al.,**                              :          **09-13764 (JMP)**
                                                             :
             **Debtors.**                                    :          **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

<u>NOTICE OF AUCTION</u>

   **PLEASE TAKE NOTICE** that on April [__], 2010, the United States
Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") entered an order [Docket
No. __] (the "<u>Bidding Procedures Order</u>") authorizing Extended Stay Inc. and its debtor
affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (the
"<u>Debtors</u>") to conduct an auction (the "<u>Auction</u>") to select an investor to sponsor the Debtors'
proposed plan of reorganization, such Auction to be governed by approved bidding procedures
(the "<u>Bidding Procedures</u>").  Copies of the Bidding Procedures Order can be accessed on
Kurtzman Carson Consultant LLC's website at http://www.kccllc.net/extendedstay.  Copies of
the Bidding Procedures may be obtained by contacting Lazard Freres & Co. LLC at the email
address or telephone number set forth below.

   **PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the
Auction, at which they will consider proposals submitted to the Debtors and their professionals,
by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **May
27, 2010 at 10:00 a.m.**, at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New
York, New York 10153.

   **PLEASE TAKE FURTHER NOTICE** that any person or entity who wishes to
participate in the Auction must submit a binding and committed proposal in writing (the
"<u>Proposal</u>"), with a $150,000,000 deposit (the "<u>Deposit</u>"), on or before **May 17, 2010 at 3:00
p.m. (Eastern Time)** (the "<u>Proposal Deadline</u>"), as set forth in the Bidding Procedures, in
writing to:

Attn: Phillip T. Summers
Lazard Freres & Co. LLC
30 Rockefeller Plaza, 63rd Floor
New York, New York 10020
Tel:     (212) 632-6296
Fax:     (212) 830-2680
Email: Phillip.Summers@lazard.com

**PLEASE TAKE FURTHER NOTICE that the submission of a Proposal and a Deposit by the Proposal Deadline shall constitute binding and irrevocable offers and any Proposal shall not be subject to, and shall state that it is not subject to, financing, diligence, approvals or other conditions not set forth in the form of an investment and standby purchase agreement provided by the Debtors.** The Debtors reserve the right, in their sole discretion and subject to the exercise of their business judgment, to alter or terminate the Bidding Procedures, to alter the assumptions set forth in the Bidding Procedures, and/or to terminate discussions with any and all prospective acquirers and investors at any time and without specifying the reasons therefore, to the extent not materially inconsistent with the Bidding Procedures.

Dates:  April [__], 2010
        New York, New York