Olya Petukhova
FOLEY & LARDNER LLP
90 Park Avenue, 36th Floor
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329

Harold L. Kaplan
Mark F. Hebbeln (admitted *pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

*Attorneys for Manufacturers and Traders Trust Company,
as Indenture Trustee*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
In re:                                              :    Case No: 09-13764 (JMP)
                                                    :
**EXTENDED STAY, INC., <u>et al.</u>,**             :    Chapter 11
                                                    :
                                                    :    Jointly Administered
                                                    :
                          Debtor.                   :
                                                    :
---------------------------------------------------------------X

**OBJECTION OF MANUFACTURERS AND TRADERS TRUST COMPANY,
AS INDENTURE TRUSTEE, TO THE DEBTORS' MOTION PURSUANT TO
SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE APPROVING
BIDDING PROCEDURES AND NOTICE OF AUCTION RELATING
<u>THERETO AND GRANTING RELATED RELIEF</u>**

Manufacturers and Traders Trust Company ("M&T" or the "Indenture Trustee"), as Indenture Trustee for the 9 7/8% Senior Subordinated Notes due 2011 (the "Notes") of Extended Stay, Inc. ("ESI") issued in 2001, by its undersigned counsel, hereby submits this objection (the "Objection") to the Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Approving Bidding Procedures and Notice of Auction Relating Thereto and Granting

Related Relief [Docket No. 946] (the "Motion").[1]  The current Motion is the third motion by the Debtors in the last several weeks attempting to tee up a sale of the Debtors' businesses tied to a Plan that does not include ESI and, in fact, completely ignores and tramples on any rights and interests of ESI and its creditors.  M&T, as Indenture Trustee, has raised fundamental issues in its two previous objections to the Debtors' two prior motions (which were not heard) relating to the unfairness and non-confirmability of any Plan to be incorporated into any sale bid that ignores property interests of ESI, including significant causes of action, and, in fact, contemplates appropriating and/or releasing any such claims or interests.  Debtors again have not addressed (and have only repeated) those deficiencies, necessitating this further (third) objection.  In support of the Objection, the Indenture Trustee, respectfully states as follows:

## PRELIMINARY STATEMENT

1. M&T is listed as the largest unsecured creditor of Extended Stay, Inc., and M&T believes that its claim on behalf of the Noteholders represents a majority of the purely unsecured debt in this case.  Indeed, the list of "5 Largest Unsecured Claims" filed with the Debtors' petitions lists M&T as the largest general unsecured creditor with a claim of $8,542,538, along with only four other unsecured creditors whose claims total, on a combined basis, less than $300,000.

2. M&T understands that the Creditors' Committee (on which it sits) and other parties may object to the Motion.

3. While M&T does not object to the approval of appropriate bidding procedures, M&T files this Objection to raise certain concerns and objections with respect to the Motion which may be unique to ESI and its creditors, but which M&T believes need to be addressed

---

[1] All term not defined herein shall have the same meaning as in the Motion.

before the Court approves bidding procedures. In particular, M&T objects to the Motion to the extent that the bidding procedures do not protect ESI and its creditors, including the Noteholders, from (1) the sale and transfer free and clear of claims and liens of the assets of ESI, which should be used to pay off ESI creditors; and/or (2) any bid that dictates implementation of a Plan which includes and imposes nonconsensual releases of claims or causes of action of ESI and its creditors.

4. At minimum, the bidding procedures would need to be modified to recognize: (i) no proposed chapter 11 plan can or should transfer, release or adversely affect claims or property interests owned by ESI or its creditors, particularly without adequate consideration to ESI and its creditors, (ii) any bid submitted in connection with a plan that does not include a proposed settlement with fair treatment of ESI and its creditors needs to justify and explain why ESI and its creditors are not covered by such plan, and (iii) any plan that does not provide for a fair distribution and treatment of ESI and its creditors or that proposes to release or adversely affect claims that belong to ESI or its creditors without full, adequate consideration will likely be the subject of an objection based on such points.

## BACKGROUND

5. M&T is the Indenture Trustee for the Notes, which were issued in the original aggregate principal amount of $300 million. The current outstanding principal amount of the Notes is approximately $8.1 million, with an additional approximately $400,000 of pre-petition interest accrued. The Notes were issued in 2001,[2] before the convoluted buy-out transactions that were the subject of the Examiner's Report (as defined below), and which the Examiner's

---

[2] The Notes were initially issued by Extended Stay America, Inc., which, upon information and belief, was subsequently merged with and into ESI, with ESI being the surviving entity and assuming the obligations on the Notes.

Report found give rise to a multitude of causes of action and possible recoveries. M&T serves as a member of the Official Committee of Unsecured Creditors appointed in these cases filed on June 15, 2009.[3]

6. On September 28, 2009, Ralph R. Mabey was appointed examiner in these chapter 11 cases (the "Examiner"), and by order dated September 29, 2009, the Court approved the appointment of the Examiner to, among other things, examine the buy-out transactions which completely restructured ESI and its affiliates, including potential causes of action relating to those transactions. The Examiner has filed his report (the "Examiner's Report") with the Court [Dkt. No. 913]. The Examiner concluded, among other things, that the Debtors' estates may have viable claims against third parties, including fraudulent transfer claims related to the Acquisition (as defined in the Examiner's Report). See Examiner's Report, at p. 433. More than a few of these claims would seem to belong to the ESI estate and/or its creditors.

7. In the Motion, the Debtors request Court approval of, among other things, certain bidding procedures related to an auction of the primary operating assets of certain of the Debtors, excluding ESI. Among those bidding procedures are a requirement that any bid include a markup of the "Existing Plan", which is defined as the yet-to-be-filed Fourth Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code. It seems implicit and clear that such Existing Plan will substantially mirror the Debtors' Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Third Amended Plan") [Dkt. No. 877],

---

[3] On June 15, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United State Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases are being jointly administered.

4

presumably including the exclusion of Extended Stay, Inc., the obligor on the Notes, and the overbroad releases.

8. In its objections [Dkt. Nos. 815 and 891] to the Debtors' motion and amended motion for approval of a certain investment and standby purchase agreement (the "ISPA"), which objections eventually became moot, M&T raised certain concerns with the chapter 11 plans contemplated by, and incorporated into, the ISPA, including the Third Amended Plan. In particular, M&T raised concerns with respect to the effect of those Plans on ESI and its creditors and the apparent attempt to inappropriately transfer in the sale and/or release claims and other property interests that belong to ESI and its creditors. To the extent relevant, M&T incorporates its previous Objections into this Objection.

**OBJECTION**

9. While M&T does not conceptually object to the approval of appropriate bidding procedures, it continues to be concerned about -- and would object to -- any proposed plan that (i) does not include an appropriate treatment of ESI and its creditors or (ii) proposes to transfer ESI assets and/or release or adversely effect in any way claims that ESI and its creditors may have against other parties without providing ESI and its creditors adequate consideration for their claims and/or such releases. Because the Third Amended Plan and presumably the yet-to-be-filed Fourth Amended Plan do not provide such protections, and oddly cover all but one of the Debtors -- ESI -- and because such features result in serious doubt as to the confirmability of such a plan, M&T believes, at minimum, that it is appropriate to supplement the proposed bidding procedure to include and disclose (and perhaps even address) M&T's concerns with respect to those points so that all bidders are aware of M&T's objections and their possible effect

on ultimate implementation of a binding transaction and Plan, as well as their ability to propose modifications in the Plan to accommodate such issues.

10. Further, to the extent the Debtors repeatedly in their Motion and other filings (including most recently its objection to the Committee's Cross-Motion currently before the Court), seem to blithely discount even the existence of assets at ESI and any possible recovery for ESI creditors like the Noteholders, M&T wishes to contradict the Debtor's position and notes that while the Debtors have admitted that they have not focused on or prioritized the issue, they have indicated they "believe that [ESI]s assets have minimal, if any, value." (Debtor's Motion to Extend Exclusivity at 5). They have also recently suggested that even if there is value at ESI, the Noteholders are diluted by or subordinated to any deficiency on the Mortgage Debt under a guaranty. However, M&T, from the information it has received from financial advisors and review of documents, including the claims docket, believes that (i) there should be adequate assets at ESI to satisfy, in whole or in part, the claims in the Debtors' schedules originally filed for ESI, whether from cash accounts, the proceeds of actions such as the Windows Litigation, or fraudulent conveyance and other recovery actions, including those which may have been the subject of the Examiner's investigation; and (ii) there were only a few (small) other claims filed against ESI as the primary obligor and none filed against ESI by the named beneficiaries of any guaranty, so that the Noteholder's claims would neither be appreciably diluted by nor subordinated to any other debt.

11. Thus, in sum, the proposed bidding procedures set forth in the Motion ought to be modified to make it clear and provide that (i) no proposed chapter 11 plan can appropriate ESI assets or release or adversely affect claims owned by ESI or its creditors, particularly without providing for adequate consideration to ESI and its creditors, (ii) a bidder may propose to amend

the Plan applicable to its bid to address such deficiency; and (iii) any plan that does not provide for treatment of ESI and its creditors or that proposes to release or adversely affect claims that belong to ESI or its creditors without adequate consideration will likely be the subject of an objection based on these points.

**WHEREFORE,** M&T respectfully requests that the Court enter an order denying the relief sought in the Motion unless the bidding procedures are amended as described above, and granting such other relief as the Court deems just, proper and equitable.

Dated: April 21, 2010  
       New York, NY

FOLEY & LARDNER LLP

/s/ Olya Petukhova_____

Olya Petukhova  
FOLEY & LARDNER LLP  
90 Park Avenue, 36th Floor  
New York, NY 10016  
Telephone: (212) 682-7474  
Facsimile: (212) 687-2329

Harold L. Kaplan  
Mark F. Hebbeln (admitted *pro hac vice*)  
FOLEY & LARDNER LLP  
321 North Clark Street, Suite 2800  
Chicago, IL 60654-5313  
Telephone: (312) 832-4500  
Facsimile: (312) 832-4700

*Attorneys for Manufacturers and Traders Trust Company, as Indenture Trustee*