Hahn & Hessen LLP
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400
Mark T. Power
Christopher A. Jarvinen

*Counsel for the Official
Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X
In re:                                                       :   Chapter 11
                                                             :
**EXTENDED STAY INC.**, *et al.,*                            :   Case No. 09-13764 (JMP)
                                                             :
      **Debtors**.              :   (Jointly Administered)
                                                             :
------------------------------------------------------------- X

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO DEBTORS' MOTION FOR ENTRY OF AN ORDER
PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE
APPROVING BIDDING PROCEDURES AND NOTICE OF THE
<u>AUCTION RELATING THERETO AND GRANTING RELATED RELIEF</u>**

  The Official Committee of Unsecured Creditors (the "<u>Committee</u>")[1] of the above-

captioned debtors and debtors-in-possession (the "<u>Debtors</u>"), by their undersigned counsel,

hereby submits this limited objection (the "<u>Limited Objection</u>") to the Debtors' Motion for Entry

of an Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Approving Bidding

Procedures and Notice of the Auction Relating Thereto and Granting Related Relief [Docket No.

---

[1]  Any term not specifically defined herein shall have the meaning ascribed to it in the Bid Procedures Motion.

946] (the "Bid Procedures Motion").  In support of this Limited Objection,[2] the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

For the past three months, the Committee has been seeking, and fully supports, an open and transparent sales process for the Debtors' business with Court-approved bid procedures and reasonable notice periods and deadlines.  As such, the Committee welcomed the filing of the Bid Procedures Motion on April 15, 2010 as representing a major step in moving the sale process related to the Debtors' business in the right direction.  The Bid Procedures Motion proposes certain bidding procedures (as revised, the "Bidding Procedures").[3]  The Committee believes that the Bidding Procedures, if further revised in the manner as set forth in this Limited Objection, will go a long way in creating a level playing field for all of the potential investors and will maximize the value of the Debtors' business during the sale and auction process as well as distributions to their creditors.

The version of the revised Bidding Procedures received by the Committee during the evening of April 20, 2010, although greatly improved compared with the original version filed with the Bid Procedures Motion, still contains a number of provisions that seek to rush the process and will chill the bidding.  As described in further detail herein, the Committee believes that the Bidding Procedures should be revised to: (i) expand the powers of the Examiner to oversee the sale and auction process; (ii) eliminate a new "Reimbursement of Expenses"

---

[2] To the extent consistent with this Limited Objection, the Committee joins in the other objections filed by any other party.

[3] During the evening of April 20, 2010, the Debtors forwarded to the Committee a revised set of Bidding Procedures.  The Debtors indicated to the Committee that the Debtors intended to file the revised Bidding Procedures with the Court during the morning of April 21, 2010.  Although the Debtors have not filed the revised Bidding Procedures with the Court by the time of the filing of this Limited Objection, in the interest of efficiency, the Committee has based this Limited Objection on what it believes will be the terms of the revised Bidding Procedures.

provision that provides, under certain circumstances, up to $30 million in expense reimbursements to the successful bidder at the auction; (iii) clarify the rights of the Committee with respect to the "Valuation Methodology" to be developed by the Debtors and will determine, among other things, whether a proposal shall be deemed a qualified proposal entitling an interested party to take part in the auction (as well as which qualified proposal at the auction will be chosen as the "highest and best" proposal at the auction); (iv) eliminate the newly added "credit bid" provision that grants the right to the Successor Trustee to credit bid all or any portion of the claims of the Mortgage Debt in the principal amount of $4.1 billion; and (v) delete the provision providing to only one of the presumptive qualified bidders, Centerbridge Partners, L.P. ("Centerbridge") and Paulson & Co. Inc. ("Paulson" and together with Centerbridge, "CB/P Investors"), copies of proposals submitted by other interested parties.

**ARGUMENT**

1. It is black letter law that debtors must act in a manner that maximizes the value of their estates for all parties-in-interest. *In re Northwest Airlines Corp.*, 349 B.R. 338, 369 (S.D.N.Y. 2006), *aff'd*, 483 F.3d 160 (2d Cir. 2007) (noting that debtor-in-possession is a fiduciary obligated to maximize the value of the estate and treat all parties of the case fairly); *In re Penick Pharm., Inc.*, 227 B.R. 229, 232 (Bankr. S.D.N.Y. 1998) (stating that there is a duty to maximize value of the estate). Here, the Bidding Procedures should be revised in order to create the best possible, level playing field for potential investors in order to maximize the results from the sale and auction process.

2. As described more fully in its Reply,[4] the Committee continues to have serious concerns about inherent conflicts of interest embedded in the Debtors' ownership and control structure that have negatively impacted the sales process to date. The Committee submits that such serious conflicts of interests require the expansion of the Examiner's powers to oversee the Debtors' actions with respect to the formulation of bidding procedures, the conduct of the auction and the negotiation regarding a plan of reorganization with potential sponsors, the Committee, the Mortgage Debt Parties and other interested parties. Therefore, the Committee submits that the Bidding Procedures should be revised to incorporate an oversight function for the Examiner and, if appropriate, the timelines should be accommodated to give the Examiner sufficient time to become fully integrated into the sale process.

3. The Committee also objects to a new "Reimbursement of Expenses" provision that it has been informed will appear in the revised Bidding Procedures that will be filed today with the Court. Such provision replaces a so-called "Liquidated Damages" provision appearing in the original version of the Bidding Procedures filed with the Court on April 15, 2010 that would have rewarded, under certain circumstances, the successful bidder at the auction with a fee "in an amount equal to 10% of the total enterprise value" set forth in the successful bid and reimbursement of up to $10 million. For example, the successful bidder would be entitled to this enormous fee if, for whatever reason, the Court declines to confirm the proposed plan incorporating the successful bidder's proposal.

---

[4] Reply to Objections to the Cross-Motion of Official Committee of Unsecured Creditors for an Order (A) Authorizing Its Financial Advisors, Jefferies & Company, Inc., to Solicit Alternative Plan Proposals Using, Inter Alia, the Debtors' Confidential Information, and (B) Directing the Debtors to Provide Cooperation in Connection with Such Efforts, dated April 20, 2010 [Docket No. 954] (the "Reply"). The Committee incorporates the entirety of its Reply in this Limited Objection.

4. As there is no legal justification for a provision that penalizes the Debtors' estates where a party in interest exercises its legal rights as provided by the Bankruptcy Code, or for that matter, any economic justification for bestowing a fee totaling hundreds of millions of dollars on the successor bidder, the Committee argued in its Reply that the Liquidated Damages provision should be deleted

5. In the revised Bidding Procedures that the Debtors have advised will be filed later today with the Court, the Liquidated Damages provision has been replaced with a "Reimbursement of Expenses" provision. Pursuant to this provision, the successful bidder at the auction will be entitled to an "Expense Reimbursement" of up to $30 million in the event that the plan incorporating the successful bidder's proposal is not confirmed or consummated other than to a breach by the successful bidder. Compared with the Liquidated Damages provision which creates a risk that the estates will have to pay a multi-hundred million dollar fee, the Reimbursement of Expense provision is a definite improvement. However, it should nevertheless be removed from the Bidding Procedures as it is unreasonable and unnecessary.

6. It is clear that the Debtors bear the burden to demonstrate that any reimbursement of expenses is in the best interests of their estates and creditors. Far from showing broad deference to management's business judgment, courts carefully scrutinize the fees to ensure that they are in the best interests of all concerned in the Debtors' estates. *In re Hupp Industries, Inc.*, 140 B.R. 191, 195 (Bankr. N.D. Ohio 1992); *see also Calpine Corp.* v. *O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),* 181 F.3d 527, 535 (3d Cir. 1999); *In re S.N.A. Nut Company*, 186 B.R. 98, 105 (Bankr. N.D. Ill. 1995). Such careful scrutiny is all the more warranted in the Debtors' cases because the most recent reorganization plan filed by the Debtors reflects a depressed enterprise value that would wipe out the claims of essentially all of the

general unsecured creditors, but a spirited auction may result in meaningful distributions to these same creditors.

7. Although the Committee is cognizant of the inclusion of an expense reimbursement provision contained in the amended commitment letter dated April 2, 2010[5] in favor of the CB/P Investors, the Committee believes that there should be no expense reimbursement provision at all as a part of this sale process. Here, multiple, well-heeled suitors have been actively pursuing the purchase of the Debtors' multi-billion dollar business, including the CB/P Investors and Starwood ESH, L.L.C. and certain of its indirect members (collectively, the "Starwood Investor"). Given the existence of multiple parties that have begun to compete aggressively against one another to obtain ownership of the Debtors' business, the Committee submits that no economic justification exists to pay a successful bidder up to $30 million in Expense Reimbursements under any circumstances, particularly when the provision seeks to penalize creditors if they are successful in opposing confirmation of the plan.

8. The revised Bidding Procedures that the Debtors have advised they will file today with the Court provide that the Debtors shall determine, in the exercise of their business judgment, after consultation with the Creditors' Committee, the Mortgage Debt Parties and the CB/P Investors, the methodology (the "Valuation Methodology") to determine, among other things, which proposal(s) shall be deemed a qualified proposal(s) entitling an interested party to take part in the auction (as well as which qualified proposal at the auction will be chosen as the "highest and best" proposal at the auction). Although the Committee is not conceptually opposed to the concept of a methodology related to the sales process, the Committee has a number of concerns.

---

[5] Bid Procedures Motion, Exh. D, p. 2.

9. As an initial comment, the Bidding Procedures should be amended to delete the CB/P Investors as one of the parties with whom the Debtors will consult in developing the Valuation Methodology. The CB/P Investors are just one of what the Committee expects will be several qualified bidders. Permitting the CB/P Investors to influence the development of the Valuation Methodology will provide the CB/P Investors an unfair advantage vis-à-vis the other investors. Another concern that the Committee has with respect to the Valuation Methodology is that it should be as flexible as possible so that it maximizes, rather than inhibits, value creation in the sale and auction process. Accordingly, as with all aspects of the Bidding Procedures, the Committee reserves all of its rights to later object as to whether the Debtors have properly exercised their business judgment, including with respect to the development and usage of the Valuation Methodology.

10. The revised Bidding Procedures include a new "Credit Bid" provision permitting the Successor Trustee the right to credit bid all or any portion of the claims related to the Mortgage Debt in the principal amount of $4.1 billion and providing that the Successor Trustee is deemed to be a qualified bidder and the Credit Bid a qualified proposal, entitling the Successor Trustee to take part in the Auction. Although the Committee has not yet had the opportunity to evaluate this new concept and its impact on the sales and auction process, in an abundance of caution, the Committee objects to the "Credit Bid" provision because the Bankruptcy Code provides no legal entitlement for secured lenders to credit bid at an auction sale in connection with a reorganization plan. *In re Philadelphia Newspapers*, Nos. 09-4266, 09-4349, 2010 WL 1006647 at *12 (3d Cir. March 22, 2010). Moreover, the Committee believes that there exist material unencumbered assets in the Debtors' estates against which the Successor Trustee is not entitled to credit bid. In order to assure that there are sufficient funds available to satisfy these

claims, the Successor Trustee should be required to post a significant amount of cash as part of any credit bid its submits. Thus, the Credit Bid provision should be deleted from the Bidding Procedures.

11. Other provisions in the Bidding Procedures permit the CB/P Investors an unfair advantage over other interested investors by requiring the Debtors to provide the CB/P Investors with proposals submitted by other interested investors and permitting the CB/P Investors to review such proposals. Accordingly, these provisions should be eliminated or revised to provide similar rights to other qualified bidders.

## **RESERVATION OF RIGHTS**

12. The Committee has additional concerns regarding the relief requested in the Bid Procedures Motion and reserves the right to interpose any additional objections at the hearing.

## **CONCLUSION**

**WHEREFORE**, the Committee respectfully request that the Court enter an order denying the relief sought in the Bid Procedures Motion unless the modifications set forth herein are made to the Bidding Procedures, and granting such other relief as the Court deems just,

proper and equitable.

Dated: New York, New York
April 21, 2010

HAHN & HESSEN LLP

By: /s/ Mark T. Power
Mark T. Power
(mpower@hahnhessen.com)
(A Member of the Firm)

Christopher A. Jarvinen (cjarvinen@hahnhessen.com)
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Counsel for the Official Committee
of Unsecured Creditors of Extended Stay, Inc.. et al.*