**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                 :

In re                             :         **Chapter 11 Case No.**
                                 :

**EXTENDED STAY INC., et al.,**      :         **09-13764 (JMP)**
                                 :

          **Debtors.**              :         **(Jointly Administered)**
                                 :
------------------------------------------------------------------x

## ORDER PURSUANT TO SECTIONS 105(a), 363 AND 503(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004(h) APPROVING BIDDING PROCEDURES AND NOTICE OF THE AUCTION RELATING THERETO AND GRANTING RELATED RELIEF

Upon the motion, dated April 15, 2010 (the "Motion"), of Extended Stay Inc. and

its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"), pursuant to sections 105(a) and 363 of chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code"), seeking approval of the Bidding Procedures,[1] all as

more fully described in the Motion; and the Court having jurisdiction to consider the Motion and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York And All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided in accordance with the procedures set forth in

the order entered on July 17, 2009 governing case management and administrative procedures

for these cases [Docket No. 176] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Committee; (iii) the attorneys for the Special Servicer and the Successor Trustee; and (iv) all parties who have requested notice in these chapter 11 cases, and the Order to Show Cause to Shorten Notice Period to Consider Debtors' Motion for Entry of an Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Approving Bidding Procedures and Notice of the Auction Relating Thereto and Granting Related Relief, dated April 16, 2010 [Docket No. 948], and it appearing that no other or further notice need be provided; and the Debtors having filed with the Court revised Bidding Procedures (the "Revised Bidding Procedures") on April 21, 2010; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and the appearances of all interested parties having been noted in the record of the Hearing; and upon the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted and the Revised Bidding Procedures attached hereto as "Exhibit 1" are approved and are fully incorporated into this Order as if fully set forth herein; and it is further

ORDERED that the Debtors are authorized to conduct the Auction as set forth in the Revised Bidding Procedures; and it is further

ORDERED that the Notice of Auction, the form of which is attached hereto as "Exhibit 2," is hereby approved and the Debtors' publication of such Notice of Auction on or before April 28, 2010, with any modifications necessary for ease of publication, once in *The*

*Wall Street Journal* (National Edition) constitutes proper notice of the Auction and the relief provided for herein to all parties in interest; and it is further

ORDERED that as set forth in the Revised Bidding Procedures, any party that does not submit a Proposal by the Proposal Deadline of **May 17, 2010 at 3:00 p.m. (prevailing Eastern Time)**, except with respect to the Credit Bid as set forth in the Revised Bidding Procedures, will not be allowed to (1) participate in the Auction under any circumstance or (2) submit any offer after the Proposal Deadline; and it is further

ORDERED that, subject to the statements made by the Court on the record of the Hearing, the Debtors are authorized to pay the Expense Reimbursement to the Successful Bidder in the amount and subject to the occurrence of the events set forth in the Revised Bidding Procedures; and it is further

ORDERED that the Debtors' obligation to pay the Expense Reimbursement shall constitute an allowed administrative expense of the Debtors pursuant to section 503(b) of the Bankruptcy Code; and it is further

ORDERED that as set forth in the Revised Bidding Procedures, following the selection of the Successful Bid, (A) the Auction shall be closed, (B) the Debtors shall (i) immediately cease and cause to be terminated any ongoing solicitation, discussions and negotiations with respect to any other bids or proposals for their assets and (ii) not solicit any inquiries or proposals, or enter into any discussions, negotiations, understandings, arrangements or agreements, relating to any other bid or proposal, and (C) no additional bids or proposals will be accepted or considered by the Debtors, unless and until the earlier of (1) the termination of the applicable transaction documents with respect to the Successful Bid, by and among the Successful Bidder and the Debtors and (2) entry of an order of the Bankruptcy Court denying

confirmation of the plan sponsored by the Successful Bidder or denying approval of the related disclosure statement based on the non-confirmability of the Plan; and it is further

ORDERED that as set forth in the Revised Bidding Procedures, after the conclusion of the Auction until the Outside Date (as defined in the Revised Bidding Procedures): (a) the Successor Trustee's right to Credit Bid shall be suspended, and (b) the Successor Trustee forbears from the right to foreclose upon or exercise any other enforcement remedies with respect to its collateral; provided, however, that the Successor Trustee shall have the right to request that the Bankruptcy Court determine that its Credit Bid should have been the Successful Bid, until the disclosure statement relating to the Plan is approved by final order of the Bankruptcy Court; and it is further

ORDERED that the Debtors are authorized to execute and deliver all instruments and documents and take any other actions as may be necessary or appropriate to implement and effectuate the transactions contemplated by the Revised Bidding Procedures and this Order; and is it further

ORDERED that all objections to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or specifically addressed in this Order, are overruled in all respects; and it is further

ORDERED that nothing in this Order or the Revised Bidding Procedures shall modify the Final Order (A) Authorizing the Use of Cash Collateral, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay, dated July 23, 2009 (as amended through the date hereof, the "Cash Collateral Order"), except as expressly set forth in the Revised Bidding Procedures;

ORDERED that neither this Order nor the Revised Bidding Procedures shall be deemed to be an amendment, modification, waiver, or any similar action of or with respect to any term or provision of the Mortgage Loan Documents (as such term is defined in the Cash Collateral Order) or the Trust and Servicing Agreement (as such term is defined in the Cash Collateral Order);

ORDERED that the Mortgage Debt Parties (as such term is defined in the Cash Collateral Order) expressly reserve all of their rights and remedies under the Cash Collateral Order and the Mortgage Loan Documents, except as expressly set forth in the Revised Bidding Procedures;

ORDERED that notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry; and it is further

ORDERED that this Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order, including the Revised Bidding Procedures.

Dated:  April 23, 2010
           New York, New York

                                    _s/ James M. Peck_____
                                    THE HONORABLE JAMES M. PECK
                                    UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

# BIDDING PROCEDURES

The following procedures (the "Bidding Procedures") will govern the competitive process run by Extended Stay Inc. and its debtor affiliates (Extended Stay, Inc. and its debtor affiliates, collectively, "ESH" or the "Debtors") to solicit proposals for the sponsorship and funding of a plan of reorganization for certain of the Debtors (the "Investment"), which may include the purchase of (i) all or a portion of the Debtors' assets including, without limitation, the equity ownership interests of the Debtors, and (ii) none, a portion, or all of the related assets or ownership of interests in HVM Manager L.L.C., HVM L.L.C. and BHAC Capital IV, L.L.C. (collectively, the "Acquired Assets").

Following completion of the competitive process, the applicable Debtors will seek approval of their restructuring or sale pursuant to the plan of reorganization (the "Plan").

The Bidding Procedures provided herein shall be the exclusive mechanism governing the auction process related to the Investment and Plan.

## The Existing Plan of Reorganization

On March 24, 2010, all of the Debtors, except Extended Stay Inc., filed a Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Third Amended Plan"), which was supported by Starwood ESH, L.L.C. (the "Starwood Investor"), the indirect members of which are (a) Starwood Global Opportunity Fund VIII, L.P., Starwood U.S. Opportunity Fund VIII-1, L.P., Starwood U.S. Opportunity Fund VIII-2, L.P., Starwood Capital Hospitality Fund II Global, L.P. and Starwood Capital Hospitality Fund II U.S., L.P., (b) Five Mile Capital Partners II LP, FMCP II Principals LP and Five Mile Capital Partners II (AIV), LP and (c) TPG Partners V, L.P. and TPG Partners VI, L.P.

On March 29, 2010, the Debtors received an offer and proposal letter (the "March 29 Letter") from Centerbridge Partners, L.P. and Paulson & Co. Inc. (together, the "C/P Investors"). Pursuant to the March 29 Letter, the C/P Investors agreed to commit, pending an executed agreement in writing with the Debtors that was consistent with the March 29 Letter, to at least step into the shoes of the Starwood Investor and be bound by the terms of (i) the Commitment Letter, dated March 15, 2010, with the Starwood Investor, (ii) the Investment and Standby Purchase Agreement (which includes the Third Amended Plan), dated March 15, 2010, with the Starwood Investor, and (iii) the Membership Interest Purchase Agreement, dated March 15, 2010, pursuant to which David Lichtenstein has agreed to sell HVM Manager L.L.C. to the Starwood Investor (collectively, the "Starwood Agreements").

On April 2, 2010, the Debtors executed a commitment letter with the C/P Investors (the "C/P Investors' Commitment Letter"), which contemplates the C/P Investors sponsoring and funding a plan of reorganization based on the Starwood Agreements, as modified by the C/P Investors' Commitment Letter. Pursuant to the C/P Investors' Commitment Letter, the Debtors will file the Fourth Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Existing Plan") and the related Disclosure Statement on or before April

23, 2010 (the Existing Plan and the related Disclosure Statement together with the C/P Investors' Commitment Letter, the "Existing Plan Related Agreements").

The C/P Investors' Commitment Letter contemplated the commencement of an auction process pursuant to which the Debtors would solicit the highest or best proposals for the sponsorship and funding of a plan of reorganization.

**Bidding Process**

A. ***Due Diligence***

The Debtors may afford any prospective acquirers and/or investors the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors, in their reasonable discretion after consultation with the Creditors' Committee and the Mortgage Debt Parties (as each such term is defined below). Prospective acquirers and/or investors will be afforded the opportunity to conduct due diligence in a manner no less favorable than that provided to the C/P Investors.

The Debtors, the Creditors' Committee and the Special Servicer (as defined below) have reached out to certain parties who have either expressed an interest in making a proposal or who the Debtors believe may have an interest in making a proposal with a request for a non-binding written indication of interest to sponsor a plan of reorganization for the Debtors. The Debtors shall also contact such other parties as suggested by the Creditors' Committee and the Mortgage Debt Parties (as such term is defined below), provided the Debtors have not already contacted such parties.

In addition, the Debtors have executed confidentiality agreements with interested parties who have requested further information. Upon the execution of an appropriate confidentiality agreement, those interested parties have been or shall be provided with access to certain information, through a virtual data room or otherwise. Interested parties should contact Lazard Freres & Co. LLC if they want to discuss their due diligence or any Proposal (as defined below) that they are considering or will be making with the Creditors' Committee or the Mortgage Debt Parties, provided that the Debtors will make the necessary arrangements and may participate in any such discussions.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access from interested parties. All due diligence requests by the interested parties shall be directed to Lazard Freres & Co. LLC, Attn: Phillip T. Summers, 30 Rockefeller Plaza, 63rd Floor, New York, New York 10020, Tel: (212) 632-6396, Email: Phillip.Summers@lazard.com.

The Debtors shall provide the Creditors' Committee and the Special Servicer with weekly updates regarding the due diligence efforts by interested parties.

B. ***Public Announcement of Auction and Funding of Deposits***

On or before April 28, 2010, the Debtors shall (i) issue a press release that contains a notice (the "Notice of Auction") of an auction for the Acquired Assets (the "Auction"), which Notice of Auction will include all deadlines related thereto and (ii) serve the Notice of Auction on all parties in interest and those parties who request notice.

The Notice of Auction shall provide notice to all interested parties that, other than with respect to a Credit Bid (as defined below), in order to participate in the bidding process and the Auction and be deemed a Qualified Bidder (as defined below), each potential bidder (each, an "Interested Party") must provide a deposit in the amount of $150,000,000 (the "Deposit") on or before May 17, 2010, with the Escrow Agent (as defined below) pursuant to an Escrow Agreement (as defined below) to be provided by the Debtors to the Interested Parties.

C. ***Proposals***

Each Interested Party, other than the C/P Investors, must deliver a written and duly executed offer (a "Proposal"), **so as to be received by no later than 3:00 p.m. (Prevailing Eastern Time) on May 17, 2010** ("Proposal Deadline") to the following address (the "Proposal Notice Party"):

Attn: Phillip T. Summers
Lazard Freres & Co. LLC
30 Rockefeller Plaza, 63rd Floor
New York, New York 10020
Tel:     (212) 632-6296
Fax:     (212) 830-2680
Email: Phillip.Summers@lazard.com

All forms of Proposals are permitted, whether as a plan sponsor/equity investor or as a purchaser of some or all of the Acquired Assets for cash or other consideration; provided, however, that each Proposal must be premised on confirmation of a Plan. Any Plan may contain provisions specifically applicable to the Proposal and need not necessarily require substantive consolidation of the Debtors' estates or provide for confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. The Debtors and their professionals will deliver the Proposals received no later than one (1) business day following receipt of the Proposal to (i) advisors to the official committee of unsecured creditors (the "Creditors' Committee"), (ii) advisors for TriMont Real Estate Advisors, Inc. (the "Special Servicer") and U.S. Bank National Association, as successor in interest to Wells Fargo Bank, N.A., as successor trustee in trust for the holders of Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2007-ESH (the "Trust," and the current trustee thereof, the "Successor Trustee,"), (iii) advisors for the operating advisor (the "Operating Advisor," collectively with the Trust, the Successor Trustee and the Special Servicer, the "Mortgage Debt Parties") appointed under the Trust and Servicing Agreement dated as of August 1, 2007 (the "Trust and Servicing Agreement") and (iv) advisors to the C/P Investors, as follows:

To the Creditors' Committee:

        Hahn & Hessen LLP
        488 Madison Avenue
        New York, New York  10022
        Attn: Mark T. Power, Esq., Christopher A. Jarvinen, Esq.
        Tel: (212) 478-7200
        Fax: (212) 478-7400
        Email: mpower@hahnhessen.com; cjarvinen@hahnhessen.com

To the Mortgage Debt Parties:

        McKenna, Long & Aldridge LLP
        230 Park Avenue, Suite 1700
        New York, NY 10169
        Attn: Christopher F. Graham, Esq.
        Tel: (212) 905-8328
        Fax: (212) 922-1819
        Email: cgraham@mckennalong.com

        303 Peachtree Street, NE
        Suite 5300
        Atlanta, GA 30308-3265
        Attn: Gary Marsh, Esq.; Patrick McGeehan, Esq.
        Tel: (404) 527-4150
        Fax: (404) 527-4198
        Email: gmarsh@mckennalong.com; pmcgeehan@mckennalong.com

        Latham & Watkins, LLP
        885 Third Avenue
        New York, NY 10167
        Attn: Mitchell A. Seider, Esq.; Keith A. Simon, Esq.
        Tel: (212) 906-1200
        Fax: (212) 751-4864
        Email: mitchell.seider@lw.com; keith.simon@lw.com

        Kaye Scholer LLP
        425 Park Avenue
        New York, NY 10022
        Attn: Margot B. Schonholtz, Esq.; Scott D. Talmadge, Esq.
        Tel: (212) 836-8000
        Fax: (212) 836-6540
        Email: mschonholtz@kayescholer.com; stalmadge@kayescholer.com

Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Attn: Adam Harris, Esq.
Tel: (212) 756-2253
Fax: (212) 593-5955
Email: adam.harris@srz.com

Henry H. Chung
Executive Director
UBS Securities LLC
480 Washington Boulevard
12th Floor
Jersey City, New Jersey 07310.
Tel: (212-713-1167
Fax: 212-821-2943
Email: henry.chung@ubs.com

To the C/P Investors:

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York  10004
Attn:  Brad Eric Scheler, Esq., Jennifer L. Rodburg, Esq.
Tel: (212) 859-8000
Fax: (212) 859-4000
Email: Brad.Eric.Scheler@friedfrank.com; Jennifer.Rodburg@friedfrank.com

*and*

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Attn: David M. Feldman, Esq.
Tel: (212) 351-4000
Fax: (212) 351-4035
Email: DFeldman@gibsondunn.com

Each Proposal must:

1.      state that such Interested Party offers to purchase the Acquired Assets and
        fund a Plan;

2.      state that such Interested Party's Proposal is not subject to any further due
        diligence and that such Interested Party has obtained all necessary
        financing and approvals, and include evidence of authorization and
        approval from the Interested Party's board of directors (or comparable

governing body) with respect to the submission, execution, delivery and closing of the Proposal and transactions contemplated thereby, including evidence of a binding commitment to provide financing, subject only to customary conditions and conditions in the Form Investment Agreement (as defined below) (which shall not include diligence, credit approvals, or syndication);

3.     fully disclose the identity of each party that will be participating in connection with such Proposal, and the complete terms of any such participation and confirm that the Interested Party has not engaged in any collusion with respect to the bidding at or prior to the Auction;

4.     contain a detailed overview of the terms of the Interested Party's sponsorship of a Plan for the applicable ESH entities, which terms must include, to the extent applicable to the Interested Party's Proposal, a detailed pro forma capitalization, ownership, amount of a new money investment and all sources of recovery to the holder of the Mortgage Debt and the Debtors' other creditors and contain as much detail as possible on proposed structure, including a list of the relevant entities to be included in any alternative plan;

5.     not include (i) a right to request or entitlement to any commitment payment, break-up fee or similar type of payment or (ii) reimbursement of fees and expenses other than in connection with the implementation of the Proposal if the Interested Party is the Successful Bidder (as defined below);

6.     contain a description of the financial assumptions and any other assumptions utilized in each Interested Party's Proposal, including estimated transaction costs, and any major underwriting assumption(s) upon which each Interested Party may have based its Proposal, including working capital, capital expenditure requirements and impact of proposed structure;

7.     contain evidence of the source(s) of equity and/or debt financing for the Interested Party's Proposal, including the parties to provide financing, their contact information, and a description of each sponsor and any additional party or parties funding the Plan and such party's financial position;

8.     contain confirmation that the Proposal has received any necessary internal approvals to make a binding Proposal;

9.     state each Interested Party's and any other sponsor's experience in the lodging industry, including ownership and management of hospitality assets, as well as any other information that it thinks could be important to the Debtors in their decision-making process regarding the Proposal;

10.     state the specific person(s) whom the Debtors' financial advisors, Lazard Frères & Co. LLC, should contact in the event that the Debtors have any questions or wish to discuss the Proposal; and

11.     include a mark-up of the Existing Plan and, if applicable, a mark-up of the form of an investment and standby purchase agreement to be entered into by the Debtors and an affiliate of the C/P Investors, which will be filed with the Bankruptcy Court on or before April 23, 2010 and provided by the Debtors to the Interested Parties (such form, the "Form Investment Agreement"), as well as the other plan-related documents, including the HVM Manager Purchase Agreement and the BHAC Intellectual Property Transfer Agreement.

For the avoidance of doubt, the C/P Investors have already satisfied the conditions described in subparagraphs (1) to (11) of this paragraph C.

Each Interested Party providing a Proposal shall be deemed to acknowledge and represent that it has had an opportunity to conduct due diligence on the Debtors prior to making its Proposal; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its Proposal; and that it did not rely upon any written or oral statement, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtors, or the completeness of any information provided in connection therewith.

Within one (1) business day following entry by the Bankruptcy Court of an order approving the Bidding Procedures contained herein, the Debtors shall provide copies of all proposals or other indications of interest for the Acquired Assets received by the Debtors prior to entry of such order to the professionals for the Creditors' Committee, the Mortgage Debt Parties and the C/P Investors.

**FOR THE AVOIDANCE OF DOUBT, ANY AND ALL PARTIES SHOULD BE AWARE THAT ANY PARTY THAT DOES NOT SUBMIT A PROPOSAL BY THE PROPOSAL DEADLINE (EXCEPT WITH RESPECT TO THE CREDIT BID AS PROVIDED BELOW) WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE PROPOSAL DEADLINE OR THE AUCTION.**

D.      ***Deposits***

The submission of a Proposal by the Proposal Deadline shall and must be accompanied by the $150,000,000 cash Deposit with an escrow agent selected by the Debtors (the "Escrow Agent") pursuant to the escrow agreement to be provided by the Debtors to the Interested Parties (the "Escrow Agreement"). Alternatively, in the Debtors' discretion, the Deposit may be in the form of a letter of credit acceptable to the Debtors in the amount of $150,000,000, as determined by the Debtors in the exercise of their business judgment, after consultation with the Creditors' Committee and the Mortgage Debt Parties. The submission of a

Proposal and a Deposit by the Proposal Deadline shall constitute a binding and irrevocable offer. A Deposit shall not be required in respect of any Credit Bid.

E. ***Review of Proposals***

The Debtors will review those Proposals timely submitted and engage in negotiations with those prospective acquirers and/or investors that submitted Proposals complying with the preceding paragraphs and as they deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Proposal as well as other commercial and competitive considerations. The Debtors will provide copies of the Proposals within one (1) business day of the Proposal Deadline to the Creditors' Committee, the Mortgage Debt Parties, the C/P Investors, and each Interested Party that has submitted a Proposal and a Deposit, and will consult with the Creditors' Committee and the Mortgage Debt Parties in the Debtors' review and analysis of the Proposals. The Debtors retain the exclusive right, in the exercise of their business judgment, to determine whether an Interested Party that submitted a Proposal may participate in the Auction and will notify the Creditors' Committee, the Mortgage Debt Parties and the C/P Investors of their determination as to which Interested Parties may participate in the Auction on or before **May 21, 2010**. In the event that the Debtors determine that an Interested Party is not a Qualified Bidder, the Debtors shall notify the Creditors' Committee, the Mortgage Debt Parties and the C/P Investors of the reasons for excluding such Interested Party on or before **May 21, 2010**. If the Debtors determine that an Interested Party that submitted a Proposal may not participate in the Auction, the Creditors' Committee and the Mortgage Debt Parties retain the right to object to the Bankruptcy Court on an emergency basis regarding such determination.

The Debtors will select, in the exercise of their business judgment, after consultation with the Creditors' Committee and the Mortgage Debt Parties, those Proposals qualifying to proceed in the process on or before **May 24, 2010**. In evaluating the Proposals, the Debtors will take into consideration, among other factors, the form of consideration, value and certainty of recovery provided to the holder of the Mortgage Debt and the Debtors' other creditors, transaction structure and execution risk, including conditions to closing, availability of financing and financial wherewithal to meet all commitments under the Proposal, approvals required, and the Interested Party's ability to manage the Debtors' business. On or before **May 24, 2010**, the Debtors shall provide the Creditors' Committee and the Mortgage Debt Parties with an oral presentation of their analysis of all of the Proposals and their rationale for determining that any Proposal either qualified or did not qualify to participate in the Auction.

On or prior to May 21, 2010, the Debtors shall determine, in the exercise of their business judgment, after consultation with the Creditors' Committee, the Mortgage Debt Parties, the C/P Investors, and all other Interested Parties who request the right to participate, the methodology (the "Valuation Methodology") to be used by the Debtors in connection with valuing all Proposals, Qualified Proposals (as such term is defined below) and Subsequent Bids (as such term is defined below), submitted prior to and at the Auction, including the valuation methodology to be used for valuing total consideration and for converting any non-cash portion of any such Proposals, Qualified Proposals and Subsequent Bids to a cash equivalent and shall notify the Creditors' Committee, the Mortgage Debt Parties and the Qualified Bidders of such Valuation Methodology and the basis for its formulation. The Debtors shall determine which

Qualified Proposal is highest or best based on the Valuation Methodology, subject, however, to taking into account the provisions of the second sentence of the second paragraph in this subsection E of the Bidding Procedures, but only to the extent such items are not already contemplated by the Valuation Methodology.  For the avoidance of doubt, a Credit Bid (as defined below) shall be valued as a cash bid in the amount of such Credit Bid.

After review of the timely submitted Proposals, the Debtors shall determine in the exercise of their business judgment, after consultation with the Creditors' Committee and the Mortgage Debt Parties, if any such Interested Parties has submitted a Proposal that qualifies to participate in the Auction (each such party, a "Qualified Bidder" and a "Qualified Proposal," respectively).  After determining that an Interested Party is a Qualified Bidder and qualifies to participate in the Auction in accordance with these Bid Procedures, the Debtors will notify the party in writing, on or before **May 25, 2010**, with a copy to the Creditors' Committee, the Mortgage Debt Parties, and the C/P Investors.

**Only those Proposals that (i) were submitted on or before the Proposal Deadline, (ii) provide incremental value to the holder of the Mortgage Debt and creditors as compared to the Existing Plan Related Agreements, (iii) state that they are binding and irrevocable offers and (iv) are accompanied by a $150,000,000 Deposit that was submitted on or before May 17, 2010 (other than in respect of a Credit Bid), may be deemed Qualified Proposals.**

**FOR THE AVOIDANCE OF DOUBT, ANY AND ALL PARTIES SHOULD BE AWARE THAT ANY PARTY THAT IS NOT DETERMINED TO BE A QUALIFIED BIDDER BY MAY 25, 2010 (EXCEPT WITH RESPECT TO THE CREDIT BID AS PROVIDED BELOW) WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE PROPOSAL DEADLINE.**

The Debtors reserve the right, in the exercise of their business judgment, after consultation with the Creditors' Committee and the Mortgage Debt Parties, to reject any Proposal if the Debtors determine that such Proposal does not constitute a Qualified Proposal or is otherwise inadequate or insufficient or is otherwise contrary to the best interests of the Debtors.

Notwithstanding anything in these Bidding Procedures, (i) the C/P Investors are deemed Qualified Bidders, and the Existing Plan Related Agreements shall be deemed a Qualified Proposal for all applicable purposes under these Bidding Procedures with respect to the Auction and otherwise and (ii) the Successor Trustee, subject to applicable terms and conditions of the Trust and Servicing Agreement, shall have the right to credit bid all or any portion of the claims (the "Mortgage Debt") held by the Successor Trustee (the "Credit Bid") at the Auction and the Successor Trustee is deemed a Qualified Bidder and the Credit Bid shall be deemed a Qualified Proposal.

It is understood, however, that after the conclusion of the Auction until the Outside Date (as defined below): (a) the Successor Trustee's right to Credit Bid shall be

suspended, and (b) the Successor Trustee forbears from the right to foreclose upon or exercise any other enforcement remedies with respect to its collateral; provided, however, that the Successor Trustee shall have the right to request that the Bankruptcy Court determine that its Credit Bid should have been the Successful Bid, until the disclosure statement relating to the Plan is approved by final order of the Bankruptcy Court.  As used herein, the term "Outside Date" means the earliest to occur of any of the following: (i) the termination of the applicable transaction documents with respect to the Successful Bid by and among the Successful Bidder and the Debtors; (ii) the entry of an order of the Bankruptcy Court denying confirmation of the Plan sponsored by the Successful Bidder or denying approval of the related disclosure statement based on the non-confirmability of the Plan; (iii) the occurrence and continuance beyond any applicable cure period of an Event of Default under the Final Cash Collateral Order; (iv) the termination or expiration of the Debtors' exclusive periods under section 1121(d) of the Bankruptcy Code, or (v) September 30, 2010.

Any Proposal of the Successor Trustee must qualify as a Qualified Proposal in accordance with these Bidding Procedures, except that the Successor Trustee (1) does not have to post a Deposit, (2) does not have to set forth the amount of the Credit Bid prior to the Auction, (3) does not have to provide its Proposal to the Debtors until **May 25, 2010 at 3:00 p.m.** (prevailing Eastern Time), and (4) does not have to provide the information set forth in subsections (4), (6), and (9) of the list of requirements for all Proposals.  Nothing contained in these Bidding Procedures (or the making of, or failure to make, any Proposal by the Successor Trustee) shall affect or impair the Successor Trustee's right to make an election under section 1111(b) of the Bankruptcy Code, if applicable, or any right of the Successor Trustee with respect to the approval of the disclosure statement, or voting on or confirmation of the Plan (or the making of any Credit Bid or exercise of any other rights or remedies after the Outside Date).

Between the date the Debtors notify an Interested Party that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate or seek clarification of any Qualified Proposal from a Qualified Bidder; provided, however, the Debtors shall consult with the Creditors' Committee and the Mortgage Debt Parties with respect to such actions.  Without the written consent of the Debtors, a Qualified Bidder may not modify, amend or withdraw its Qualified Proposal, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Proposal for the Debtors, during the period that such Qualified Proposal remains binding as specified herein; provided, however, that any Qualified Proposal may be improved at the Auction as set forth herein.  The determination of the Qualified Bidders shall become irrevocable and unreviewable once the Auction has commenced.

## The Auction

A.    ***Notice of Auction***

If the Debtors determine in the exercise of their business judgment, after consultation with the Creditors' Committee and the Mortgage Debt Parties, that they have received a Qualified Proposal in addition to the Existing Plan Related Agreements by the C/P Investors, the Auction will be held **on May 27, 2010 at 10:00 a.m.** (prevailing Eastern Time) at the offices of Weil, Gotshal and Manges LLP, 767 Fifth Avenue, New York, New York 10153. **On or before May 25, 2010 at 5:00 p.m**. (prevailing Eastern Time), the Debtors shall provide

each Qualified Bidder (including the C/P Investors), the Creditors' Committee and the Mortgage Debt Parties with the following: (1) written notice that the Auction is proceeding in accordance with the Notice of Auction previously published by the Debtors, (2) a copy of the Qualified Proposal the Debtors have determined constitutes the highest or otherwise best offer among the Qualified Proposals and with which they intend to commence the Auction (the "<u>Pre-Auction Successful Bid</u>"), (3) the Valuation Methodology, and (4) a copy of each of the Qualified Proposals, including any Proposal submitted by the Successor Trustee (including a proposal premised on a Credit Bid).

The Auction may be adjourned as the Debtors deem appropriate, in the exercise of their business judgment, after consultation with the Creditors' Committee and the Mortgage Debt Parties. Reasonable notice of such adjournment and the time and place for resumption of the Auction shall be given to all of the Qualified Bidders.

B. ***Attendance and Participation in the Auction***

    a.     In addition to the Debtors and their advisors, the only parties eligible to participate in the Auction shall be: (i) the C/P Investors and their representatives and advisors; (ii) representatives and advisors of the Creditors' Committee; (iii) representatives and advisors of the Mortgage Debt Parties; (iv) those Qualified Bidders who have submitted a Qualified Proposal to the Debtors (as well as such Qualified Bidder's advisors and representatives); and (v) the Office of the United States Trustee for the Southern District of New York. The C/P Investors and the Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

    b.     Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Auction.

    c.     Each Qualified Bidder shall have provided the Deposit (other than in respect of a Credit Bid).

C. ***The Auction Process***

The Auction shall run in accordance with the following procedures:

    a.     The Debtors and their respective professionals shall direct and preside over the Auction, provided that the Debtors shall consult with the Creditors' Committee and the Mortgage Debt Parties during the Auction.

    b.     On or before **May 26, 2010**, each Qualified Bidder who has timely submitted a Qualified Proposal (as determined by the Debtors in accordance with these Bidding Procedures) must inform the

Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder does not attend the Auction, such Qualified Bidder's Qualified Proposal shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bid (as defined below) at the conclusion of the Auction. The Debtors shall promptly inform the Creditors' Committee and the Mortgage Debt Parties of the names of the Qualified Bidders who have informed the Debtors that they will be attending the Auction.

c.      All Qualified Bidders who have timely submitted Qualified Proposals will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person. All proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

d.      At the commencement of the Auction, the Debtors shall announce and describe the terms of the Pre-Auction Successful Bid, previously identified by the Debtors on **May 25, 2010**, as determined by the Debtors in accordance with these Bidding Procedures.

e.      The Debtors may employ and announce at the Auction in the exercise of their business judgment, after consultation with the Creditors' Committee and the Mortgage Debt Parties, additional procedural rules that are reasonable under the circumstances to obtain the highest or best Successful Bid (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, provided that such rules are (i) not materially inconsistent with these Bidding Procedures, or inconsistent with the Bankruptcy Code or any order of the Bankruptcy Court, and (ii) disclosed to each Qualified Bidder at the Auction.

f.      Bidding at the Auction will begin with the Pre-Auction Successful Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid (a "Subsequent Bid") is submitted by a Qualified Bidder that the Debtors determine, in the exercise of their business judgment, after consultation with the Creditors' Committee and the Mortgage Debt

12

Parties, (i) in the case of the first round, is a higher or otherwise better bid than the Pre-Auction Successful Bid by an amount to be determined by the Debtors and (ii) in the case of subsequent rounds, is a higher or otherwise better bid by the minimum bid increment set by the Debtors for each such round than the best bid of the previous round. Each Qualified Bidder must submit a Subsequent Bid that satisfies the minimum bid increment in each round of bidding to continue participating in the Auction. Qualified Bidders shall not be allowed to skip rounds; provided, however, the Successor Trustee is allowed to skip rounds with respect to the Credit Bid.

g. The Debtors shall announce the material terms of each Subsequent Bid at the Auction, and shall disclose their valuation of the total consideration offered in each such Subsequent Bid (and the basis for its determination) in order to (a) confirm that each Subsequent Bid meets the minimum bid increment set by the Debtors for the round in which such Subsequent Bid was submitted and (b) to provide a floor for further Subsequent Bids.

D. ***Identification of the Successful Bidder***

At the close of the Auction, the Debtors, in their reasonable discretion and in exercise of their business judgment after consultation with the Creditors' Committee and the Mortgage Debt Parties, shall identify which Qualified Bidder has the highest or otherwise best bid (the "Successful Bid," and such bidder, the "Successful Bidder"), which will be determined by considering, among other things:

1. The Qualified Proposal that is preferred by the Creditors' Committee and the Mortgage Debt Parties, other than with respect to the Credit Bid.

2. The extent to which any requested modifications to the Existing Plan and the Form Investment Agreement are likely to impact (either positively or negatively) the likelihood of confirmation of the Plan and/or expected date for the closing, and the likely cost or cost savings to the Debtors of any such modifications.

3. The total consideration (as valued based upon the Valuation Methodology) to be received by the holder of the Mortgage Debt and the Debtors' other creditors under the terms of each Qualified Proposal.

4. Each Qualified Bidder's ability to timely close a transaction and make any deferred payments, if applicable.

5. The net benefit to the holder of the Mortgage Debt and the Debtors' other creditors and the likely timing and amount of distributions to the holder of

the Mortgage Debt and the Debtors' other creditors resulting from each proposal.

In announcing the Successful Bid, the Debtors shall announce the material terms of such bid, the basis for determining the total consideration offered pursuant to the Valuation Methodology and the resulting calculated benefit of such bid to the holder of the Mortgage Debt and the Debtors' other creditors. Upon the close of the Auction, the Debtors shall announce the Successful Bidder, and such Successful Bidder shall promptly thereafter submit fully executed revised documentation memorializing the terms of the Successful Bid to the Debtors, the Creditors' Committee and the Mortgage Debt Parties. The Successful Bid may not be assigned to any party without the consent of the Debtors, after consultation with the Creditors' Committee and the Mortgage Debt Parties.

If no Auction is held, then the proposal of the C/P Investors as represented by the Existing Plan shall be deemed to be the Successful Bid and the C/P Investors shall be deemed to be the Successful Bidder and the Debtors will proceed to effectuate the transactions as set forth in the Existing Plan Related Agreements; provided, however, that nothing in these Bidding Procedures in any way limits the ability of the Debtors and the C/P Investors to mutually agree on improvements, after consultation with the Creditors' Committee and the Mortgage Debt Parties, in the terms of the Existing Plan Related Agreements.

**Return of Deposits**

Any Deposits submitted by Qualified Bidders will be held in escrow by the Debtors' Escrow Agent. Each Deposit will be forfeited to the Debtors if (a) the applicable Qualified Bidder attempts to modify, amend or withdraw its Qualified Proposal, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Proposal for the Debtors, during the time the Qualified Proposal remains binding and irrevocable under these Bidding Procedures or (b) the Qualified Bidder is selected as the Successful Bidder and fails to consummate the Plan according to these Bidding Procedures and the terms of its applicable transaction documents with respect to the Successful Bid. The Escrow Agent shall release the Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) Business Days after the receipt by the Escrow Agent of a joint written notice by a Debtor Authorized Officer and the Qualified Bidder stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

The Debtors shall promptly return to the applicable Qualified Bidder any Deposit, plus any interest accrued thereon, accompanying (a) a Proposal that the Debtors determine in accordance with these Bidding Procedures not to be a Qualified Proposal, and (b) any Qualified Proposal that the Debtors do not select as the Successful Bid at the Auction, two (2) Business Days after the close of the Auction, but in no event later than seven (7) Business Days after the commencement of the Auction.

The Deposit of the Successful Bidder shall be applied against the cash investment of the Successful Bidder upon the consummation of the plan proposed in the Successful Bid.

The Debtors and the Qualified Bidder agree to execute an appropriate joint notice to the Escrow Agent for the release of the Qualified Bidder's Deposit, in accordance with the terms of these Bidding Procedures. If either party fails to execute such written notice, the Deposit may be released by an order of the Bankruptcy Court.

## Plan Process

After selecting the Successful Bid, the Debtors, in consultation with the entity or entities which submitted the Successful Bid, and with the Creditors' Committee and the Mortgage Debt Parties, will prepare and file a revised plan and related disclosure statement with the United States Bankruptcy Court for the Southern District of New York to effectuate the terms of the Successful Bid. The hearing to consider the adequacy of the Disclosure Statement for the Successful Bid shall occur not later than June 17, 2010, unless otherwise agreed by the Debtors and the Successful Bidder.

## Reimbursement of Expenses

The Successful Bidder shall be entitled to reimbursement of reasonable, actual out-of-pocket expenses, including without limitation, financing costs and fees, paid by or due and payable by the Successful Bidder up to $20,000,000 (collectively, the "Expense Reimbursement"), in the event that the disclosure statement relating to the Plan is approved, but the Plan is not confirmed or consummated other than due to a breach by the Successful Bidder; provided, however, that if the Bankruptcy Court determines that another Qualified Bidder is the Successful Bidder, this provision shall only apply to the Successful Bidder as determined by final order of the Bankruptcy Court.

## Reservation of Rights

The Debtors reserve the right, in their reasonable discretion and subject to the exercise of their business judgment, and after consultation with the Creditors' Committee and the Mortgage Debt Parties, to alter or terminate these Bidding Procedures, to alter the assumptions set forth herein, and/or to terminate discussions with any and all prospective acquirers and investors at any time and without specifying the reasons therefore, to the extent not materially inconsistent with the Bidding Procedures set forth herein.

## End of Auction Process

Following the selection of the Successful Bid, (A) the Auction shall be closed, (B) the Debtors shall (i) immediately cease and cause to be terminated any ongoing solicitation, discussions and negotiations with respect to any other bids or proposals for the Acquired Assets and (ii) not solicit any inquiries or proposals, or enter into any discussions, negotiations, understandings, arrangements or agreements, relating to any other bid or proposal for the Acquired Assets, and (C) no additional bids or proposals for the Acquired Assets will be accepted or considered by the Debtors, unless and until the earlier of (1) the termination of the applicable transaction documents with respect to the Successful Bid by and among the Successful Bidder and the Debtors and (2) entry of an order of the Bankruptcy Court denying

confirmation of the Plan sponsored by the Successful Bidder or denying approval of the related disclosure statement based on the non-confirmability of the Plan.

Dated: April __, 2010

**Exhibit 2**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Marcia L. Goldstein
Jacqueline Marcus

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                            :
In re                                                       :       **Chapter 11 Case No.**
                                                            :
**EXTENDED STAY INC., et al.,**                             :       **09-13764 (JMP)**
                                                            :
            **Debtors.**                                    :       **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

<u>NOTICE OF AUCTION</u>

   **PLEASE TAKE NOTICE** that on April [__], 2010, the United States
Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") entered an order [Docket
No. __] (the "<u>Bidding Procedures Order</u>") authorizing Extended Stay Inc. and its debtor
affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (the
"<u>Debtors</u>") to conduct an auction (the "<u>Auction</u>") to select an investor to sponsor the Debtors'
proposed plan of reorganization, such Auction to be governed by approved bidding procedures
(the "<u>Bidding Procedures</u>"). Copies of the Bidding Procedures Order can be accessed on
Kurtzman Carson Consultant LLC's website at http://www.kccllc.net/extendedstay. Copies of
the Bidding Procedures may be obtained by contacting Lazard Freres & Co. LLC at the email
address or telephone number set forth below.

   **PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the
Auction, at which they will consider proposals submitted to the Debtors and their professionals,
by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **May
27, 2010 at 10:00 a.m.**, at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New
York, New York 10153.

   **PLEASE TAKE FURTHER NOTICE** that any person or entity who wishes to
participate in the Auction must submit a binding and committed proposal in writing (the
"<u>Proposal</u>"), with a $150,000,000 deposit (the "<u>Deposit</u>"), on or before **May 17, 2010 at 3:00
p.m. (Eastern Time)** (the "<u>Proposal Deadline</u>"), as set forth in the Bidding Procedures, in
writing to:

Attn: Phillip T. Summers
Lazard Freres & Co. LLC
30 Rockefeller Plaza, 63rd Floor
New York, New York 10020
Tel:      (212) 632-6296
Fax:      (212) 830-2680
Email: Phillip.Summers@lazard.com

**PLEASE TAKE FURTHER NOTICE that the submission of a Proposal and a Deposit by the Proposal Deadline shall constitute binding and irrevocable offers.** The Debtors reserve the right, in their reasonable discretion and subject to the exercise of their business judgment, and after consultation with the Creditors' Committee and the Mortgage Debt Parties, to alter or terminate the Bidding Procedures, to alter the assumptions set forth in the Bidding Procedures, and/or to terminate discussions with any and all prospective acquirers and investors at any time and without specifying the reasons therefore, to the extent not materially inconsistent with the Bidding Procedures.

Dates:  April [__], 2010
        New York, New York