**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
|  | : |  |
| **EXTENDED STAY INC.,** <u>et</u> <u>al.</u>, | : | **09-13764 (JMP)** |
|  | : |  |
| Debtors. | : | **(Jointly Administered)** |
|  | : |  |

------------------------------------------------------------------x

### ORDER CONFIRMING DEBTORS' FIFTH
### AMENDED JOINT PLAN OF REORGANIZATION UNDER
### <u>CHAPTER 11 OF THE BANKRUPTCY CODE, DATED JUNE 8, 2010, AS AMENDED</u>

ESA Properties L.L.C. and seventy-three of its debtor affiliates, as debtors and

debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>"),

having proposed and filed the Debtors' Fifth Amended Joint Plan of Reorganization Under

Chapter 11 of the Bankruptcy Code, dated June 8, 2010 [Docket No. 1027, 1157] (as amended,

the "<u>Plan</u>") with the United States Bankruptcy Court for the Southern District of New York (the

"<u>Bankruptcy Court</u>"); and the Bankruptcy Court having entered, after due notice and a hearing,

the Order (I) Pursuant to Sections 105 and 363(b) of the Bankruptcy Code Approving Investment

Agreement with Successful Bidder, (II) Approving Disclosure Statement Reflecting the

Successful Bid, (III) Establishing Solicitation and Voting Procedures, (IV) Scheduling A

Confirmation Hearing, and (V) Establishing Notice and Objection Procedures for Confirmation

of the Debtors' Proposed Plan of Reorganization, dated June 22, 2010 [Docket No. 1098] (the

"<u>Disclosure Statement Order</u>"); and the Disclosure Statement for Debtors' Fifth Amended Joint

Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated June 8, 2010 [Docket

No. 1028] (as amended, the "<u>Disclosure Statement</u>") having been approved by this Court and the

Plan and the Solicitation Package (as defined below) having been duly transmitted to holders of

Claims[1] entitled to vote thereon as provided in the Disclosure Statement Order; and due notice of (i) entry of the Disclosure Statement Order, (ii) the Confirmation Hearing, and (iii) the deadline for voting on, and/or objecting to the Plan having been provided to holders of Claims against and Equity Interests in the Debtors and other parties in interest, including holders of Mortgage Certificates, in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"); and such notice being sufficient under the circumstances and no other or further notice being required; and objections (the "Objections") to the Plan having been interposed; and the Debtors having filed the Plan Supplement (as defined below) on July 1, 2010 [Docket No. 1118], July 13, 2010 [Docket No. 1138], July 15, 2010 [Docket No. 1147] and July 19, 2010 [Docket No. 1164 and 1160] in accordance with the provisions of the Plan and such filing and notice thereof being sufficient under the circumstances and no further notice being required; and upon consideration of the (i) Memorandum of Law in Support of Confirmation of the Debtors' Fifth Amended Joint Plan Under Chapter 11 of the Bankruptcy Code (the "Confirmation Brief") [Docket No. 1162]; (ii) the Declaration of Gil Hopenstand Pursuant to Local Bankruptcy Rule 3018-1(A) Certifying the Methodology for the Tabulation of Votes and Results of Voting on the Debtors' Fifth Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated July 13, 2010 [Docket No. 1136] (describing the methodology for the tabulation and results of voting with respect to the Plan and evidencing that the Debtors have received the requisite acceptances of the Plan in both number and amount as required by section 1126 of the Bankruptcy Code) (the "First KCC Declaration"), (iii) Supplemental Declaration of Gil Hopenstand Pursuant to Local Bankruptcy

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Plan.

Rule 3018-1(A) Certifying the Methodology for the Tabulation of Votes and Results of Voting on the Debtors' Fifth Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated July 16, 2010 [Docket No. 1152] (together with the First KCC Declaration, the "KCC Declaration"); and (iv) Declaration of Ari Lefkovits in Support of Confirmation of the Debtors' Fifth Amended Joint Plan Under Chapter 11 of the Bankruptcy Code (the "Lefkovits Declaration," and together with the KCC Declaration, the "Declarations"); and the hearing to consider confirmation of the Plan having been held before the Bankruptcy Court on July 20, 2010 (the "Confirmation Hearing"); and the Bankruptcy Court having reviewed and considered the Plan, the Plan Supplement, the Disclosure Statement, the Disclosure Statement Order, the Confirmation Brief, the Declarations, each of the Objections which has not been withdrawn or otherwise mooted, the Response thereto and all related documents; and the appearance of all interested parties having been duly noted in the record of the Confirmation Hearing, including the Declarations filed and testimony therein and the exhibits admitted into evidence; and upon all of the proceedings had before the Bankruptcy Court and upon the entire record of the Confirmation Hearing; and the Bankruptcy Court having determined based upon all of the foregoing that the Plan should be confirmed, as reflected by the Bankruptcy Court's rulings made herein and on the record of the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED, AS FOLLOWS:

## FINDINGS OF FACT

A.  <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact

and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Jurisdiction.  The Court has jurisdiction over the Debtors' Chapter 11 Cases (as defined below), confirmation of the Plan and the Objections  pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Commencement and Joint Administration of the Debtors' Chapter 11 Cases.  On June 15, 2009 or February 18, 2010 (as applicable, the "Commencement Date") each of the above-captioned Debtors commenced a case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  By prior order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in these Chapter 11 Cases.

D.      Official Committee of Unsecured Creditors.  On June 19, 2009, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").  The Creditors' Committee was reconstituted on January 25, 2010 and March 3, 2010.

E.    Appointment of Examiner.  On September 24, 2009 the Bankruptcy Court ordered the U.S. Trustee to appoint an examiner to conduct an investigation regarding: (i) the structure, negotiation and closing of the acquisition of the Debtors and Extended Stay Inc. from the Blackstone Group, (ii) the financial circumstances that led to the filing of the Chapter 11 Cases of the Debtors and Extended Stay Inc., and (iii) whether the estates of the Debtors and Extended Stay Inc. have any claims against any person with respect to items (i) and (ii) of this paragraph.  [Docket No. 3110 ].  On September 28, 2009, the U.S. Trustee appointed Ralph R. Mabey, Esq. as examiner.  [Docket No. 312].

F.    Judicial Notice.  The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

G.    Burden of Proof.  The Debtors have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

H.    Resolution of Objections.  As presented at the Confirmation Hearing and as provided herein, the consensual resolutions of certain Objections satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interests of the Debtors and are hereby approved.  All Objections that were not resolved by agreement at the Confirmation Hearing are hereby overruled.

I.    Solicitation and Notice.  On June 22, 2010, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, approved the Disclosure Statement,

finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and established procedures for the Debtors' solicitation and tabulation of votes on the Plan. The (a) Notice of Confirmation Hearing, (b) Disclosure Statement (with a copy of the Plan attached thereto), (c) Disclosure Statement Order (without attachments), (d) letter from the Creditors' Committee, (e) notices of non-voting statuses, and (f) appropriate ballots for voting on the Plan (the "Ballots") (collectively, the "Solicitation Package") were served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order (the "Solicitation"). As described in the Disclosure Statement Order, and as set forth in the KCC Declaration, and the affidavits of service by Kurtzman Carson Consultants LLC ("KCC"), filed at Docket Nos. 1105 and 1110 respectively, (i) the service of the Solicitation Packages was adequate and sufficient under the circumstances of these Chapter 11 Cases, and (ii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings and matters described in the Disclosure Statement Order was timely provided in compliance with the Bankruptcy Rules and provided due process to all parties in interest. No other or further notice is required.

        J.      Voting. Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the KCC Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.

        K.      The Mezzanine Facilities Claim Ballot. The Debtors sent the Mezzanine Facilities Claim Ballot to the Special Servicer and to the holders of the Mezzanine Facilities Claims in Class 4B in accordance with the Disclosure Statement Order. The Special Servicer has

asserted that it has the right to vote the Mezzanine Facilities Claims pursuant to the Intercreditor Agreement.  The holders of Mezzanine Facilities Claims have asserted that they have the right to vote the Mezzanine Facilities Claims.  The Bankruptcy Court does not have to resolve the dispute between the Special Servicer and the holders of the Mezzanine Facilities Claims because, as reflected in the KCC Declaration, Class 4B has accepted the Plan whether the Ballots submitted by the Special Servicer or the Ballots submitted by the holders of the Mezzanine Facilities Claims are counted with respect to Class 4B.

        L.     <u>Plan Supplement</u>.  On July 1, 2010, the Debtors filed that certain supplement to the Plan [Docket No. 1118], which includes the following documents: (i) Schedule of Executory Contracts and Unexpired Leases to be Assumed Pursuant to Section 11.1 of the Plan; (ii) Schedule of Executory Contracts and Unexpired Leases to be Rejected Pursuant to Section 11.2 of the Plan; and (iii) a notice indicating that the Form of Litigation Trust Agreement would be filed in the future.  On July 13, 2010, the Debtors filed an update to the Plan Supplement [Docket No. 1138], which included the Litigation Trust Agreement.  On July 15, 2010, the Debtors filed a third supplement to the Plan [Docket No. 1147], which included Restructuring Transaction(s).  On July 19 2010, the Debtors filed a fourth supplement to the Plan [Docket No. 1164], which included (i) a list of members of the NewCo Board of Managers as of the Effective Date, and (ii) revisions to the Restructuring Transactions and a blackline showing such revisions.  On July 19, 2010, the Debtors filed the Declaration of Ari Lefkovits in Support of Debtors' Motion Pursuant to Bankruptcy Rule 9019 for Approval of a Settlement Agreement Between Extended Stay Inc. and Remaining Debtors [Docket No. 1160] (the "<u>Declaration in Support of the ESI Settlement</u>"), which included a copy of the revised Litigation Trust Agreement as Exhibit "2-A."  The Litigation Trust Agreement attached to the Declaration in

Support of the ESI Settlement and the supplements to the Plan contained at Docket No. 1118, Docket No. 1138, Docket No. 1147 and Docket No. 1164 constitute the "Plan Supplement").  All materials included in the Plan Supplement and the amendments thereto are integral to, part of and incorporated by reference into the Plan.  The Plan Supplement and the amendments thereto comply with the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order and no other or further notice is necessary.  The Debtors reserve their right to alter, amend, update or modify the Plan Supplement before the Effective Date to be consistent with the Plan.

## MODIFICATIONS TO THE PLAN

M.    Modification.  Subsequent to Solicitation, on July 18, 2010, the Debtors filed an amendment to the Plan which includes several modifications to the Plan that address objections raised by various parties (the "Modifications").  [Docket No. 1157].  Pursuant to section 1127(a) of the Bankruptcy Code, the Modifications are hereby made a part of the Plan.

N.    Notice of Modifications.  The filing and the description of the Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof under the circumstances of these Chapter 11 Cases.  The Plan, as modified by the Modifications, constitutes the "Plan."

O.    Deemed Acceptance of Plan as Modified.  The modifications to the Plan reflected by the Modifications are either (i) immaterial or do not adversely affect the treatment of any Claim against or Equity Interest in the Debtors under the Plan, or (ii) the adversely affected parties have consented to the Modifications.  Therefore, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan

or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan, as modified by the Modification. No holder of a Claim or Equity Interest that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Modification. The Modifications neither require additional disclosure under section 1125 of the Bankruptcy Code nor re-solicitation of votes on the Plan under section 1126 of the Bankruptcy Code.

P. <u>Compliance with 1127</u>. The Modifications incorporated into the Plan comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## <u>COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE</u>

Q. <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

R. <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. In addition to Administrative Expense Claims and Priority Tax Claims, which need not be classified, Article III of the Plan designates the following six Classes of Claims and ten Classes of Equity Interests: Class 1 (Priority Claims), Class 2 (Mortgage Facility Claim), Class 3 (ESA UD Mortgage Claim), Class 4A (Mortgage Facility Deficiency Claim), Class 4B (Mezzanine Facilities Claims), Class 5 (General Unsecured Claims), Class 6 (Existing Equity), Class 7 (ESA MD Properties Trust Certificate), Class 8 (ESA MD Borrower Interests), Class 9 (ESA P Portfolio MD Trust Certificate), Class 10 (ESA P Portfolio MD Borrower Interests), Class 11 (ESA Canada Properties Interests), Class 12 (ESA Canada Properties Borrower Interests), Class 13 (ESH/TN Properties L.L.C. Membership Interests), Class 14 (ESH/ESA General Partnership Interests), Class 15 (Other Existing Equity Interests), and Class 16 (Other Secured Claims). Each of the

Claims or Equity Interests, as the case may be, in each particular Class is substantially similar to the other Claims or Equity Interests in such Class. Valid business, legal and factual reasons exist for separately classifying the various Claims and Equity Interests pursuant to the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

S.    <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Article III of the Plan specifies that Class 1 (Priority Claims), Class 7 (ESA MD Properties Trust Certificate), Class 8 (ESA MD Borrower Interests), Class 9 (ESA P Portfolio MD Trust Certificate), Class 10 (ESA P Portfolio MD Borrower Interests), Class 11 (ESA Canada Properties Interests), Class 12 (ESA Canada Properties Borrower Interests), Class 13 (ESH/TN Properties L.L.C. Membership Interests), Class 14 (ESH/ESA General Partnership Interests) and Class 16 (Other Secured Claims) are unimpaired under the Plan, thereby complying with section 1123(a)(2) of the Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(2) of the Bankruptcy Code.

T.    <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  Article III of the Plan designates Class 2 (Mortgage Facility Claim), Class 3 (ESA UD Mortgage Claim), Class 4A (Mortgage Facility Deficiency Claim), Class 4B (Mezzanine Facilities Claims), Class 5 (General Unsecured Claims), Class 6 (Existing Equity) and Class 15 (Other Existing Equity Interests) as impaired, and Sections 4.2, 4.3, 4.4, 4.5, 4.6, 4.7 and 4.16 of the Plan specify the treatment of Claims and Equity Interests in such Classes, thereby complying with section 1123(a)(3) of the Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(3) of the Bankruptcy Code.

U.    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a

particular Claim or Equity Interest has agreed to a less favorable treatment on account of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code. The Plan therefore satisfies section 1123(a)(4) of the Bankruptcy Code.

V.      Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan as required by section 1123(a)(5) of the Bankruptcy Code. The Plan therefore satisfies section 1123(a)(5) of the Bankruptcy Code.

W.      Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)). The Plan provides for (i) 100% of the New Debtor Equity of the surviving Tier 1 Debtors to be issued to NewCo or a subsidiary of NewCo, (ii) the Equity Interests of each of the Tier 2 Debtors and the ESH/TN Properties Membership Interests to remain outstanding and Unimpaired, and (iii) the Equity Interests of each of the Tier 3 Debtors to be cancelled, extinguished and not re-issued. The Tier 3 Debtors are deemed to be liquidated and dissolved by the Debtors as provided for in the Plan. The Plan provides that (i) the NewCo Certificate of Formation will include, and (ii) the certificates of incorporation, limited liability company operating agreements or certificates of trust (as applicable) for the surviving Tier 1 Debtors and Tier 2 Debtors shall be amended to include, a provision prohibiting the issuance of non-voting equity securities in accordance with section 1123(a)(6) of the Bankruptcy Code. As such, the Plan does not provide for the issuance of nonvoting equity securities, and the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

X.      Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The identity and affiliation of any individuals proposed to serve, after confirmation of the Plan, as a member of the NewCo Board of Managers, and a director, officer or voting trustee of the

Debtors, or the Reorganized Debtors that will survive the Effective Date, or NewCo, have been disclosed in the Plan Supplement. The Plan Administrator has been selected by the Special Servicer (with the consent of the Operating Advisor). The Litigation Trustee has been selected by mutual agreement of the Special Servicer (with the consent of the Operating Advisor, such consent not to be unreasonably withheld) and the Creditors' Committee. Accordingly, the selection of Directors, Officers, the Plan Administrator and the Litigation Trustee is consistent with the interests of creditors, equity security holders, and public policy. As such, the Plan satisfies Section 1123(a)(7) of the Bankruptcy Code.

      Y.    <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code. The failure to specifically address a provision of the Bankruptcy Code in this Order shall not diminish or impair the effectiveness of this Order.

      Z.    <u>Impairment/Unimpairment of Classes of Claims and Equity Interests (§ 1123(b)(1))</u>. As contemplated by section 1123(b)(1) of the Bankruptcy Code, (a) Class 2 (Mortgage Facility Claim), Class 3 (ESA UD Mortgage Claim), Class 4A (Mortgage Facility Deficiency Claim), Class 4B (Mezzanine Facilities Claims), Class 5 (General Unsecured Claims), Class 6 (Existing Equity) and Class 15 (Other Existing Equity Interests) are impaired by the Plan.

      AA.    <u>Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))</u>. In accordance with section 1123(b)(2) of the Bankruptcy Code, Sections 11.1 and 11.2 of the Plan provide that, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtors and any person

or entity that is listed in the relevant Exhibit to the Plan Supplement or that have not been rejected by the Debtors with the approval of the Bankruptcy Court and that are not subject of pending motions to reject on the Confirmation Date, shall be deemed to have been assumed by the applicable Debtor and assigned to NewCo or its designee, as of the Effective Date. Any executory contracts or unexpired leases of any Debtor that are set forth in the relevant Exhibit to the Plan Supplement shall be deemed to have been rejected by the applicable Debtor. Accordingly, the Plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code.

BB. <u>Debtors Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including having complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan.

CC. <u>No Rejection Damages Associated with Rejected Executory Contracts and Unexpired Leases</u>. Pursuant to Section 11.2 of the Plan, the Debtors rejected a number of executory contracts and unexpired leases. There are no rejection damages arising from the rejection of the executory contracts and unexpired leases.

DD. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129 (a)(3))</u>. The Debtors are the proponents of the Plan. The Debtors have proposed the Plan (including all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby complying with section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the record of these Chapter 11 Cases, including the Declarations and the record of the hearing to approve the Disclosure Statement, the record of the Confirmation Hearing, and other proceedings held in these Chapter 11 Cases. The Plan is based upon extensive, arms'-length negotiations between and among the Debtors, the Investor, the Sponsors, the Special Servicer,

the Operating Advisor, the Creditors' Committee and other parties-in-interest, and represents the culmination of months of intensive negotiations and discussions among all parties in interest and the conclusion of a successful Auction. Moreover, the Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and effectuating a successful reorganization of the Debtors. The Plan accomplishes maximization of the Debtors' estates and equitable distribution of the Debtors' assets by providing the means through which the Debtors and the Litigation Trust may effectuate distributions to the Litigation Trust Beneficiaries. The Creditors' Committee, the Special Servicer, the Operating Advisor and Manufacturers and Traders Trust Company, in its capacity as indenture trustee for the Extended Stay Inc. 9-7/8% Senior Subordinated Notes due 2011 (the "Indenture Trustee") support the Plan. Further, the indemnification, exculpation, release, and injunction provisions of the Plan have been negotiated in good faith and at arms' length with, among other persons, representatives of the Debtors, the Creditors' Committee, the Investor, the Sponsors, the Special Servicer, the Operating Advisor, the Indenture Trustee, and their respective advisors, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary to the Debtors' successful emergence from chapter 11. Accordingly, the Plan and the related documents have been filed in good faith and the Debtors have satisfied their obligations under section 1129(a)(3) of the Bankruptcy Code.

      EE.   <u>Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4))</u>. Pursuant to the interim compensation procedures previously approved by this Court and established in these Chapter 11 Cases pursuant to section 331 of the Bankruptcy Code, all payments made or to be made by the Debtors for services or for costs and expenses in connection with these Chapter 11 Cases, or in connection with the Plan and incident to the chapter 11 case,

have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

FF.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliation of any individuals proposed to serve, after confirmation of the Plan, as a member of the NewCo Board of Managers, and a director, officer or voting trustee of the Debtors, or the Reorganized Debtors that will survive the Effective Date, or NewCo, have been disclosed in the Plan Supplement.  To the extent that the appointment of the Plan Administrator or the Litigation Trustee implicates section 1129(a)(5), the appointment of the Plan Administrator will be made by the Special Servicer (with the consent of the Operating Advisor, which consent shall not be unreasonably withheld) and the Litigation Trustee has been selected by mutual agreement of the Special Servicer (with the consent of the Operating Advisor) and the Creditors' Committee.  As such, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

GG.     No Rate Changes (11 U.S.C. § 1129(a)(6)).  No governmental regulatory commission has jurisdiction, after confirmation of the Plan, over the rates of the Debtors.  Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

HH.     Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).  As demonstrated by the Lefkovits Declaration, the KCC Declaration, and the liquidation analysis contained in the Disclosure Statement, which employed commonly accepted methodologies and reasonable assumptions, with respect to each impaired class of Claims against or Equity Interests in the Debtors, each holder of a Claim or Equity Interest in such Class has accepted the Plan or will receive or retain pursuant to the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive

or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

II.     <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Class 1 (Priority Claims), Class 7 (ESA MD Properties Trust Certificate), Class 8 (ESA MD Borrower Interests),Class 9 (ESA P Portfolio MD Trust Certificate), Class 10 (ESA P Portfolio MD Borrower Interests), Class 11 (ESA Canada Properties Interests), Class 12 (ESA Canada Properties Borrower Interests), Class 13 (ESH/TN Properties L.L.C. Membership Interests), Class 14 (ESH/ESA General Partnership Interests) and Class 16 (Other Secured Claims) are unimpaired under the Plan and are, therefore, conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Class 2 (Mortgage Facility Claim), Class 3 (ESA UD Mortgage Claim), Class 4A (Mortgage Facility Deficiency Claim), Class 4B (Mezzanine Facilities Claim) and Class 5 (General Unsecured Claims), which are impaired Classes of Claims eligible to vote, have affirmatively voted to accept the Plan. As such, section 1129(a)(8) is satisfied with respect to these Classes of Claims. Class 6 (Existing Equity) and Class 15 (Other Existing Equity Interests) are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, because they will not receive or retain any property on account of their interests in the Debtors. The Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Class 6 and Class 15.

JJ.     <u>Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Expense Claims and Priority Tax Claims pursuant to Article II of the Plan satisfies the requirements of sections 1129(a)(9)(A), (B), (C) and (D) of the Bankruptcy Code.

KK.     Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).  Classes 2, 3, 4A, 4B and 5, each of which is impaired under the Plan and entitled to vote, voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code. Specifically, as set forth in the KCC Declaration, 100% of the Creditors in Class 2, in number and in dollar amount, voted to accept the Plan.  The Creditor in Class 3 holding 100% in number and 100% in dollar amount voted to accept the Plan.  Creditors in Class 4A holding 100% in number and 100% in dollar amount voted to accept the Plan.  As to Class 4B, if the vote of the Special Servicer is dispositive, the creditors holding 100% in number and in dollar amount voted to accept the Plan.  If the Ballots cast by the holders of the Mezzanine Facilities Claims are dispositive, creditors holding 60.7% in number and 84.87% in dollar amount voted to accept the Plan.  As to Class 5, creditors holding 100% in number and dollar amount voted to accept the Plan.  Therefore, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

LL.     Feasibility (11 U.S.C. § 1129 (a)(11)).  The information in the Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing and in the Lefkovits Declaration:  (i) is persuasive and credible; (ii) has not been controverted by other evidence; and (iii) establishes that the Plan is feasible, there is a reasonable likelihood that the Reorganized Debtors will meet their financial obligations under the Plan in the ordinary course of business, and confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

MM.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  As required pursuant to Section 13.2 of the Plan, all fees payable under section 1930 of title 28 of the United States Code have been or will be paid on the Effective Date, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

NN.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Debtors have no obligations with respect to retiree benefits.  Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

OO.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

PP.    Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).  The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

QQ.    No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).  The Debtors are moneyed, business, or commercial corporations, and/or partnerships, as the case may be, and, accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

RR.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  The Debtors have satisfied the requirements of sections 1129(b)(1) and (b)(2) of the Bankruptcy Code with respect to Class 6 (Existing Equity) and Class 15 (Other Existing Equity Interests) (the "Rejecting Classes").  Based on the evidence proffered or adduced at the Confirmation Hearing and in the Lefkovits Declaration, the Plan does not discriminate unfairly and is fair and

equitable with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because the Rejecting Classes consist of certain Equity Interests in the Debtors, and no holders of similar Equity Interests are treated differently. Although the Plan preserves Equity Interests in Classes 7 through 14, such Equity Interests will be transferred, either through the transfer of the parent company holding the Equity Interest or through the transfer of an indirect parent company, to NewCo. As such, the Equity Interests in Classes 7 through 14 are not preserved for the benefit of holders of prepetition Equity Interests in any of the Debtors, and the preservation of such Equity Interests in the Plan does not constitute unfair discrimination in favor of the holders of the Equity Interests in Classes 7 through 14, or unfair discrimination against the holders of the Equity Interests in Classes 6 and 15. Therefore, no class of Claims or Equity Interests having similar legal rights is receiving different treatment under the Plan. The Plan is "fair and equitable" as to the Rejecting Classes because no interests junior to the interests of the Rejecting Classes will receive or retain any property under the Plan on account of such junior interests. Based on the foregoing, the requirements of section 1129(b) of the Bankruptcy Code are met with respect to the Rejecting Classes, and the Plan may be confirmed notwithstanding the deemed rejection by the Rejecting Classes.

SS.     Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan filed in these cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

TT.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

UU.     <u>Small Business Case (11 U.S.C. § 1129(e))</u>.  None of the Chapter 11

Cases are "small business case[s]," as that term is defined in the Bankruptcy Code, and,

accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**<u>Additional Findings</u>**

VV.     <u>Good-Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before

the Court in these Chapter 11 Cases and the KCC Declaration, the Debtors have solicited

acceptances of the Plan in good faith and in compliance with the applicable provisions of the

Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code,

and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure

in connection with such solicitation.

WW.     <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing,

the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy

Code.

XX.     <u>Implementation</u>.  All documents necessary to implement the Plan,

including, without limitation, those contained in the Plan Supplement, and all other relevant and

necessary documents have been negotiated in good faith and at arms' length and shall, upon

completion of documentation and execution, be valid, binding, and enforceable agreements and

not be in conflict with any federal or state law.

YY.     <u>Good Faith of the Debtors</u>.  The Debtors, and all of their respective

members, officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates,

and representatives (i) have acted in good faith in negotiating, formulating, and proposing the

Plan and agreements, compromises, settlements, transactions and transfers contemplated thereby,

and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the

agreements, compromises, settlements, transactions, and transfers contemplated thereby and (b) take the actions authorized and directed or contemplated by this Order.

ZZ.     <u>Good Faith of the Investor and the Sponsors</u>. The Investor and the Sponsors, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates, and representatives (i) have acted in good faith in negotiating, formulating, and proposing the Plan and agreements, compromises, settlements, transactions and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby and (b) take the actions authorized and directed or contemplated by this Order.

AAA.    <u>Good Faith of the Mortgage Debt Parties</u>.  The Mortgage Debt Parties, and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates, and representatives (i) have acted in good faith in negotiating, formulating, and proposing the Plan and agreements, compromises, settlements, transactions and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby and (b) take the actions authorized and directed or contemplated by this Order.

BBB.    <u>Executory Contracts and Unexpired Leases</u>.  The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assignment and rejection of executory contracts and unexpired leases pursuant to Sections 11.1, 11.2, 11.4, and 11.5 of the Plan.

CCC.  Transfers by Debtors.  All transfers of property and assets of the Debtors' estates, including, without limitation, the transfer and assignment of the Litigation Trust Assets to the Litigation Trust, shall be free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan, the Plan Supplement or this Order.

DDD.  Vesting of Assets.  Except as provided in the Plan, and in paragraph 72 of this Order, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors, including the Mortgage Properties, but excluding the Litigation Trust Assets, the Administrative/Priority Claims Reserve, and the Mortgage Parties Indemnification Fund, shall vest in the Reorganized Debtors or NewCo, as applicable, free and clear of all Claims, Liens, Liabilities, encumbrances, charges and other interests, including, without limitation, any and all claims, liens, encumbrances and any and all right, title, and interests related thereto of governmental entities relating to any tax liabilities or similar liabilities.  Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

EEE.  Deemed Sale of Mortgage Properties.  Notwithstanding the vesting and retention of title of the Mortgage Properties in the Reorganized Debtors, the transfer of 100% of the New Debtor Equity of the surviving Tier 1 Debtors to NewCo and the distribution of the Cash Distribution by the Reorganized Debtors to the holder of the Allowed Mortgage Facility Claim effected pursuant to this Plan shall be deemed the equivalent of a sale of the Mortgage Properties to NewCo after foreclosure or acceptance of a deed in lieu of foreclosure by the Trustee or the Special Servicer, free and clear of all Claims, Liens, Liabilities, encumbrances, charges and other interests.  On the Effective Date, all of the liens and security interests that secure and evidence the Mortgage Facility shall be terminated, cancelled and annulled (of record and otherwise).  Pursuant to Section 6.5 of the Plan, as of the Effective Date, all notes and any

obligations of the Debtors under the Mortgage Facility or the Mezzanine Facilities, and any guarantees thereof by the Debtors, shall be discharged and be of no further force or effect against the Debtors or the Mortgage Properties, and the holders thereof shall have no rights against the Debtors or the Mortgage Properties, except the right to receive the Distributions provided in the Plan. As of the Effective Date, the ESA UD Mortgage Claim and the General Unsecured Claims, and the rights of the holders thereof thereunder, shall be cancelled and deemed null and void and of no further force and effect, and the holders thereof shall have no rights, and such notes, agreements, certificates and securities shall evidence no rights, except the right to receive the Distributions provided in the Plan. It is understood, however, that (i) Section 6.5 of the Plan shall not affect any Guaranty Claims, other than a Guaranty Claim against a Debtor, or the pursuit of Litigation Trust Assets, and (ii) notwithstanding Section 6.11 of the Plan, the notes or certificates in respect of the Mortgage Facility and the Mezzanine Facilities shall not be surrendered and cancelled so as not to impair the pursuit of Litigation Trust Assets or any Guaranty Claims other than a Guaranty Claim against a Debtor. The Debtors, NewCo, the Reorganized Debtors, the Special Servicer, the Operating Advisor, all holders of Allowed Mortgage Facility Claims and the Debt Financing Lenders are authorized to execute and deliver all documents, and make all filings and recordings, necessary or deemed advisable to evidence such termination, cancellation and annulment.

FFF.	<u>Good Faith Purchaser</u>.  The Investor and the Sponsors are each a good faith purchaser of NewCo, the Debtors, HVM Manager (the "<u>Company</u>") and the Company's assets and property and are entitled to the protections afforded good faith purchasers under the Bankruptcy Code.

GGG. <u>Debt Financing Arrangements Negotiated in Good Faith</u>. The Debt Financing Arrangements (including, without limitation, any and all terms, conditions and covenants thereof) have been negotiated in good faith and at arm's-length among the borrowers under the Debt Financing Arrangements and the Debt Financing Lenders, and any credit extended or loans made to the borrowers under the Debt Financing Arrangements by the Debt Financing Lenders has been extended, issued and made in good faith and for legitimate business purposes and the Debt Financing Lenders have acted in good faith in negotiating, formulating, and proposing the transactions contemplated by the Plan.

HHH. <u>Injunction, Exculpation, and Releases</u>. The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Article X of the Plan, because, *inter alia*, these provisions are an integral part of the Debtors' reorganization plan. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in Article X of the Plan if, as has been established here based upon the record in the Chapter 11 Cases, the Lefkovits Declaration, and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are important and necessary to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates and creditors, (iii) are fair and reasonable and (iv) are in the best interests of the Debtors, their estates, and parties in interest. Further, the release and exculpation provisions in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a final order by a court of competent jurisdiction to have constituted willful misconduct or gross negligence or the other exceptions set forth therein, do not release any Guaranty Claim other than a Guaranty Claim

against a Debtor, and do not release any claims constituting Litigation Trust Assets, including potential claims referenced in the Examiner's Report. Based upon the record of these Chapter 11 Cases and the evidence proffered or adduced at the Confirmation Hearing, this Court finds that the injunction, exculpation, and releases set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law.

III. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpations, and injunctions set forth in Article X of the Plan and implemented by this Order are fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors and their estates, creditors and equity holders. The failure to include such provisions would seriously impair the Debtors' ability to confirm a consensual Plan in these Chapter 11 Cases. Accordingly, this Court finds that the releases, exculpations, and injunctions set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law.

JJJ. <u>Compromise and Settlement</u>. Pursuant to Bankruptcy Rule 9019, in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan. All Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be final.

KKK. <u>Litigation Trust</u>. Entry into the Litigation Trust Agreement is in the best interests of the Debtors, the Debtors' Estates and creditors and holders of Equity Interests. The establishment of the Litigation Trust, the selection of Hobie Truesdell to serve as the Litigation Trustee, the form of the proposed Litigation Trust Agreement (as it may be modified or amended), is appropriate and in the best interests of creditors and holders of Equity Interests. The Litigation Trust Agreement, including Exhibit A thereto, shall, upon execution, be valid,

binding and enforceable in accordance with its terms. The holders of Claims in Class 4A (Mortgage Facility Deficiency Claims), Class 4B (Mezzanine Facility Claims), Class 5 (General Unsecured Claims) and the Indenture Trustee are beneficiaries of the Litigation Trust.

LLL. <u>Exemption from Securities Law</u>. Section 1145 of the Bankruptcy Code exempts from registration under section 5 of the Securities Act or other applicable securities laws the offer or sale, under a chapter 11 plan of reorganization, of a security of a debtor, of any affiliate participating in a joint plan with the debtor, or of a successor to a debtor under a plan, if such securities are offered or sold in exchange for a claim against, or an equity interest in, such debtor or affiliate. Such securities may be resold without registration under the Securities Act, unless the holder is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code.

MMM. To the extent the Litigation Trust Beneficiaries' interest in the Litigation Trust is deemed to be a security, section 1145 of the Bankruptcy Code applies to the distribution under the Plan of interests in the Litigation Trust. In addition, to the extent persons deemed to be "underwriters" receive interests in the Litigation Trust pursuant to the Plan, which interests are otherwise exempt from registration pursuant to section 1145 of the Bankruptcy Code, resales of such interests in the Litigation Trust would not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law.

NNN. <u>Mortgage Parties Indemnification Fund</u>. On the Effective Date, the Debtors shall transfer $20 million to the Mortgage Facility Trust, and the Mortgage Facility Trust or its assignee or designee shall hold such funds in the Mortgage Parties Indemnification Fund for the benefit of the Mortgage Debt Parties to satisfy any indemnification obligations of the Mortgage Facility Trust with respect to any post- Confirmation Date litigation commenced

against the Mortgage Debt Parties regarding the voting on the Plan, distributions under the Plan and any other actions taken by the Mortgage Debt Parties in connection with the Plan, including the implementation of the Plan, as further set forth in Section 6.16 of the Plan. The transfer of the $20 million to the Mortgage Parties Indemnification Fund is appropriate and in the best interests of the Debtors, their creditors, and all parties in interest.

OOO. <u>Preservation of Causes of Action</u>. It is in the best interests of the Debtors and their creditors and holders of Equity Interests that the Litigation Trust Assets, be transferred to the Litigation Trust, as set forth in Section 1.89 of the Plan.

PPP. The settlement reached with the Debtors, Special Servicer, the Creditors' Committee and the Indenture Trustee, as set forth on the record of the Confirmation Hearing and reflected in the Litigation Trust Agreement, including Exhibit A thereto (and the ESI Settlement Agreement) is approved. Except as expressly provided herein or in the Litigation Trust Agreement including Exhibit A thereto setting forth the priority of distributions from the Litigation Trust Agreement, nothing herein or in the Litigation Trust Agreement affects the rights and obligations of the Mortgage Facility Trust or holders of Mezzanine Facilities Claims under the Intercreditor Agreement, including, without limitation, provisions pertaining to Guaranty Claims. The Indenture Trustee shall be a Litigation Trust Beneficiary to the extent of provided in the Litigation Trust Agreement. As of the Effective Date, the Indenture Trustee shall transfer any interests or rights it has respecting the Litigation Trust Assets to the Litigation Trust.

QQQ. <u>NewCo, Reorganized Debtors, Investors, Sponsors and Debt Financing Lenders Not Successors of the Debtors</u>. Except with respect to administrative expense claims of the type specified in Section 1.7(c)(i) of the Plan as expressly provided for in Section 2.1 of the Plan, (i) NewCo shall not be a successor to any of the debtors in the Chapter 11 Cases by reason

of any theory of law or equity, (ii) except as provided in paragraph 72 of this Order, NewCo and the Reorganized Debtors shall not assume, incur or be responsible for any claims or liabilities of the Debtors or any of their affiliates, and (iii) neither the Reorganized Debtors, NewCo, the Investor, the Sponsors, nor the Debt Financing Lenders shall be successors or successors in interest of the Debtors or Extended Stay Inc. nor incur any successor or transferee Liability[2] of any kind, nature or character, including, without limitation, in relation to (a) any and all liabilities arising or resulting from or relating to the transactions contemplated by the Plan, (b) any and all Claims, Liens, Liabilities, encumbrances, charges and other interests arising from or relating to any conduct, liabilities, or obligations of the Debtors or Extended Stay Inc., and (c) except as provided in paragraph 72 of this Order, any and all Claims, Liens, Liabilities, encumbrances, charges and other interests and any and all right, title, and interests related thereto, of governmental entities relating to any tax or similar liabilities.

## CONCLUSIONS OF LAW

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    Confirmation.  All requirements for confirmation of the Plan have been satisfied.  Accordingly, the Plan in its entirety is CONFIRMED pursuant to section 1129 of the Bankruptcy Code.  A copy of the confirmed Plan is attached as "Exhibit A" to this Order.  The terms of the Plan and the Plan Supplement are incorporated by reference into, and are an integral part of, this Order.

---

[2] The Investment Agreement defines "Liability" as "any liability or obligation of whatever kind or nature (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due), including any liability for taxes, including, without limitation, taxes arising as a result of the transactions contemplated by this [Investment] Agreement or the Plan."

2.      Objections. All parties have had a full and fair opportunity to litigate all issues raised by the Objections, or which might have been raised, and the Objections have been fully and fairly litigated. All Objections, responses, statements, and comments in opposition to the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing and/or herein are overruled for the reasons stated on the record.

3.      Findings of Fact and Conclusions of Law. The findings of fact and the conclusions of law stated in the Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

4.      Plan Supplement.  The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Reorganized Debtors, are authorized and approved when they are finalized, executed and delivered, and are integral to, part of and are incorporated by reference into the Plan.  Without further order or authorization of this Court, the Debtors, and the Reorganized Debtors and their successors, in consultation with the Investor and each of the Sponsors and the Special Servicer (in consultation with the Operating Advisor), are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan.  Execution versions of the documents comprising

the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all liens and security interests purported to be created thereby.

5.        Solicitation and Notice.  Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  The solicitation of votes on the Plan and the Solicitation Materials complied with the solicitation procedures in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  Notice of the Plan Supplement, and all related documents, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

6.        Omission of Reference to Particular Plan Provisions.  The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

7.        Plan Classification Controlling.  The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classification set forth on the Ballots tendered or returned by the Debtors' creditors in connection with voting on the Plan:  (a) were set forth on the Ballots solely

for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors, the Reorganized Debtors, the Litigation Trust, creditors, or interest holders for purposes other than voting on the Plan.

8.    <u>Binding Effect</u>.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, upon entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind (i) any holder of a Claim against or Equity Interest in the Debtors and their respective successors and assigns, whether or not such Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan, (ii) any and all non-debtor parties to assumed executory contracts and unexpired leases with the Debtors, (iii) those parties who filed Objections to the Plan, (iv) the Mortgage Debt Parties, (v) the holders of the Mortgage Certificates, (vi) every other party in interest in these Chapter 11 Cases, and (vii) all parties receiving property under the Plan, and their respective heirs, executors, administrators, successors, or assigns.

9.    <u>Merger, Dissolution, or Consolidation of Corporate Entities</u>.  Pursuant to and in accordance with Section 6.7 of the Plan, on or as soon as practicable after the Effective Date, the Debtors and/or NewCo, as applicable, shall take such actions as may be or become necessary, without further action being required under applicable law, regulation, order or rule (including, without limitation, any action by the board of directors, stockholders, partners, members or managers of any Debtor or members of NewCo), and cause (i) 100% of the New Debtor Equity of the surviving Tier 1 Debtors to be issued to NewCo or a subsidiary of NewCo; (ii) the Equity Interests of each of the Tier 2 Debtors and the ESH/TN Properties Membership

Interests to remain outstanding and Unimpaired; (iii) the Equity Interests of each of the Tier 3 Debtors to be cancelled, extinguished and not re-issued; and (iv) the Restructuring Transactions to be implemented. Pursuant to, under and in accordance with the Plan, the Debtors, NewCo and/or the Reorganized Debtors may, without any further order of the Court, effectuate some, all or none of the Restructuring Transactions. Before, on, or as soon as practicable after the Effective Date, the Debtors, NewCo and/or the Reorganized Debtors may, without further order of the Court or the need to modify the Plan, effectuate other Restructuring Transactions not in the Plan Supplement that are similar in nature and involve Tier 1 Debtors and/or Tier 2 Debtors, all of which will be effectuated pursuant to, under and in accordance with the Plan. If additional material Restructuring Transactions not listed in the Plan Supplement are to be effectuated, a list thereof shall be filed with the Court on or before the Effective Date. All Restructuring Transactions are being taken pursuant to and in accordance with the Plan and shall be implemented pursuant to and in accordance with the Plan. The Tier 3 Debtors shall be deemed liquidated and dissolved by the Debtors for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith. In addition, as of the Effective Date or as soon as practicable thereafter and without the need for any further action by this Court or any other court or governmental unit, or by the board of directors, stockholders, partners, members or managers of any Reorganized Debtors, the Reorganized Debtors may, pursuant to and in accordance with the Plan, (i) cause any or all of the Reorganized Debtors to be merged into one or more of the Reorganized Debtors, dissolved or otherwise consolidated, (ii) cause the transfer of assets between or among the Reorganized Debtors, or (iii) engage in any other transaction in furtherance of the Plan. Any and all transfers, mergers, dissolutions or consolidations effected by the Debtors, NewCo and/or the Reorganized

Debtors as contemplated by the Plan, including the Restructuring Transactions, shall be deemed transfers, mergers, dissolutions and consolidations effected under and pursuant to the Plan, and pursuant to Section 1146(a) of the Bankruptcy Code, and the making or delivery of any instrument in connection therewith shall not be taxed under any law imposing any sales and use, stamp, real estate transfer, mortgage recording, or other similar tax.

10.     <u>Surrender and Cancellation of Instruments</u>.  Pursuant to Section 6.5 of the Plan, as of the Effective Date, all notes and any obligations of the Debtors under the Mortgage Facility or the Mezzanine Facilities shall be discharged and be of no further force or effect against the Debtors or the Mortgage Properties, and the holders thereof shall have no rights against the Debtors or the Mortgage Properties, except the right to receive the Distributions provided in the Plan.  As of the Effective Date, the ESA UD Mortgage Claim and the General Unsecured Claims, and the rights of the holders thereof thereunder, shall be cancelled and deemed null and void and of no further force and effect, and the holders thereof shall have no rights, and such notes, agreements, certificates and securities shall evidence no rights, except the right to receive the Distributions provided in the Plan.  It is understood, however, that (i) Section 6.5 of the Plan shall not affect any Guaranty Claims, other than a Guaranty Claim against a Debtor, or the pursuit of Litigation Trust Assets, and (ii) notwithstanding Section 6.11 of the Plan, the notes or certificates in respect of the Mortgage Facility and the Mezzanine Facilities shall not be surrendered and cancelled so as not to impair the pursuit of Litigation Trust Assets or any Guaranty Claims other than a Guaranty Claim against a Debtor.

11.     Subject to Section 6.5 of the Plan, each holder of an instrument evidencing a Claim shall surrender such instrument to the Reorganized Debtors.  At the option of the Reorganized Debtors or NewCo, as applicable (in their reasonable discretion), no Distribution

hereunder shall be made to or on behalf of any holder of such Claim unless and until such instrument is received or the unavailability of such instrument is reasonably established to the satisfaction of the Reorganized Debtors.  In accordance with section 1143 of the Bankruptcy Code, any such holder of such a Claim that fails to surrender or cause to be surrendered such instrument or to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Reorganized Debtors and, in the event that the Reorganized Debtors requests, fails to furnish a bond in form and substance (including, without limitation, amount) reasonably satisfactory to the Reorganized Debtors shall be deemed to have forfeited all rights, claims, and interests and shall not participate in any Distribution hereunder.

14.         12.     <u>Issuance of NewCo Common Interests</u>.  The Reorganized Debtors' issuance of 100% of the New Debtor Equity of the surviving Tier 1 Debtors to NewCo or a subsidiary of NewCo, to be issued pursuant to the Investment Agreement, is authorized without the need for any further corporate action and without any further action by holders of Claims or Equity Interests.

13.     <u>Transfer by NewCo</u>. On the Effective Date, NewCo shall pay over or distribute to, or at the direction of, the Plan Administrator the Investment to the extent necessary to make all cash distributions required under the Plan, other than the payment of the Excess Cash and the funding of the Administrative/Priority Claims Reserve.

14.     <u>Substantive Consolidation for Plan Purposes Only</u>.  Entry of this Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors solely for the purpose of voting, confirmation and distribution as provided in section 6.1 of the Plan.  On and after the Effective Date, (i) all assets and liabilities of the Debtors shall be treated for purposes of the Plan

as though they were merged, (ii) all guarantees of the Debtors of payment, performance or collection of obligations of any other of the Debtors shall be eliminated and cancelled, (iii) all joint obligations of two or more of the Debtors and all multiple Claims against such entities on account of such joint obligations, shall be considered a single Claim against the Debtors, (iv) all intercompany claims and obligations between one Debtor and any of the other Debtors, including as a result of the rejection of any executory contract or unexpired lease, shall be eliminated, extinguished and cancelled, except for such intercompany claims and obligations necessary to pursue Litigation Trust Assets, and (v) any Claim filed against any of the Debtors shall be deemed filed against the consolidated Debtors and shall be one Claim against and a single obligation of the consolidated Debtors.  Except as otherwise provided in paragraph 72 of this Order, the Plan or the Restructuring Transactions, (a) all property of each Debtor shall vest in each respective Reorganized Debtor, free and clear of all Claims, Liens, Liabilities, encumbrances, charges and other interests and (b) each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect before the Effective Date. The provisions of the Intercreditor Agreement shall remain in full force and effect notwithstanding any substantive consolidation of the Debtors pursuant to the Plan.

15.    The Litigation Trust.  On the Effective Date, the Debtors shall transfer the Litigation Trust Funding to the Litigation Trust and the Debtors and the Litigation Trustee shall execute the Litigation Trust Agreement and shall take all steps necessary to establish the

Litigation Trust in accordance with the Plan. On the Effective Date, the Debtors, and, to the extent provided in the Litigation Trust Agreement, ESI, shall be deemed to have automatically transferred to the Litigation Trust all of their right, title, and interest in and to all of the Litigation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Litigation Trust free and clear of all Claims, Liens, Liabilities, encumbrances, charges and other interests subject only to the Allowed Claims of the Litigation Trust Beneficiaries as set forth in the Plan and the Litigation Trust Agreement, and the expenses of the Litigation Trust as provided in the Litigation Trust Agreement. Thereupon, the Debtors, and the Reorganized Debtors shall have no interest in the Litigation Trust Assets or the Litigation Trust. In connection with the vesting and transfer of the Litigation Trust Assets, including rights and causes of action, any attorney-client, work-product protection or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Litigation Trust shall vest in the Litigation Trust. The Debtors, ESI and the Litigation Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, protections and immunities. In the event of any conflict between the terms of Section 6.17 of the Plan and the Litigation Trust Agreement, the terms of the Litigation Trust Agreement shall govern. Hobie Truesdell is hereby appointed as the Litigation Trustee.

16.     <u>Indenture Trustee and ESI Settlement</u>. As of the Effective Date, any interests or rights the Indenture Trustee has respecting the Litigation Trust Assets and the ESI Causes of Action (as such term is defined in the ESI Settlement Agreement) shall be deemed transferred to and vested in the Litigation Trust.

17.     <u>Distributions Under the Plan</u>. All distributions under the Plan shall be made in accordance with Article VIII of the Plan and such methods of distribution are approved.

18.     _Disputed Claims_.  The provisions of Article VII of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are found to be fair and reasonable and are approved.  In connection with distributions on account of Administrative Expense Claims, Priority Claims, General Unsecured Claims, and Mezzanine Facilities Claims, Distributions on account of such Disputed Claims shall be made in accordance with Section 7.2 of the Plan to the extent such Disputed Claims become Allowed.

19.     _Treatment is in Full Satisfaction_.  All distributions under the Plan shall be made in accordance with the Plan.  The treatment set forth in the Plan is in full satisfaction of the legal, contractual and equitable rights (including any liens) that each entity holding a Claim or Equity Interest may have in or against the Debtors, the Estates, or their respective property.  This treatment supersedes and replaces any agreements or rights those entities may have in or against the Debtors, the Estates, or their respective property.

20.     _Administrative Expense Objection Deadline_.  To assert an Administrative Expense Claim, other than an Administrative Expense Claim of the type specified in section 503(b)(1)(D) of the Bankruptcy Code, and other than an Administrative Expense Claim of a type specified in paragraph 70 of this Order, a claimant shall file a proof of claim (a "_Proof of Claim_") before 4:00 p.m. (Eastern Standard Time) on the first Business Day that is forty-five (45) days after the Confirmation Date, as such date may be extended from time to time by the Bankruptcy Court (the "_Administrative Claims Bar Date_").  Nothing in this Order shall extend or otherwise modify any deadline or requirement for filing claims set forth in previous Orders of this Court.  All Proofs of Claim shall comply with the following requirements:

i.      specify the name and case number of the Debtor or Debtors against which the claimant asserts its Proof of Claim;

ii.     conform to the proof of claim to Official Bankruptcy Form No. 10;

iii.    to the extent applicable, limit any claims pursuant to section 502(b)(6) of the Bankruptcy Code;

iv.    include any supporting documentation or, if voluminous, a summary or explanation as to why documentation is not available;

v.    be in the English language; and

vi.    be denominated in United States Currency.

21.    Proofs of Claim asserting Administrative Expense Claims must be received on or before the Administrative Claims Bar Date by KCC, the official claims agent in the Debtors' Chapter 11 Cases, at the following address:

> ESI Claims Processing
> c/o Kurtzman Carson Consultants LLC
> 2335 Alaska Avenue
> El Segundo, California 90245

22.    The Debtors and KCC shall not be required to accept a Proof of Claim sent by facsimile, telecopy, or electronic mail transmission.  Proofs of Claim will be deemed timely filed only if actually received by KCC on or before the Administrative Claims Bar Date. Any person or entity, other than an entity asserting a Claim of a type specified in section 503(b)(1)(D) of the Bankruptcy Code, that fails to timely file a Proof of Claim in accordance with this Order on or before the Administrative Claims Bar Date is **FOREVER BARRED**, **ESTOPPED**, and **ENJOINED** from asserting and enforcing such claim against the Debtors, the Reorganized Debtors, or any of their respective estates, assets, properties, or interests in property.

23.    <u>Assumption or Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>.  Pursuant to Sections 11.1 and 11.2 of the Plan, as of the Effective Date all executory contracts and unexpired leases that exist between the Debtors and any person or entity that are listed in the relevant Exhibit to the Plan Supplement or that have not been

rejected by the Debtors with the approval of the Bankruptcy Court and that are not subject of pending motions to reject on the Confirmation Date, shall be deemed to have been assumed by the applicable Debtor and assigned to NewCo or its designee, as of the Effective Date. Any executory contracts or unexpired leases of any Debtor that are set forth in the relevant Exhibit to the Plan Supplement shall be deemed to have been rejected by the applicable Debtor. The inclusion of an executory contract or unexpired lease in the Plan Supplement shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

24. <u>Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases</u>. Entry of the this Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption, assignment, or rejection of the executory contracts and unexpired leases pursuant to sections 11.1, 11.2, 11.4 or 11.5 of the Plan. The effect of confirmation of the Plan, the results thereof, and the transactions resulting therefrom or any other effect of these Chapter 11 Cases, including specifically the changes to the Debtors' boards of directors and equity interests, shall not be and are not a "change of control" and shall not trigger any such or similar provision of any of the executory contracts and unexpired leases assumed pursuant to the Plan.

25. <u>No Rejection Damages Associated with Rejected Executory Contracts and Unexpired Leases</u>. Pursuant to Section 11.2 of the Plan, the Debtors rejected a number of executory contracts and unexpired leases. There are no rejection damages arising from the rejection of the executory contracts and unexpired leases.

26.  <u>Inclusiveness</u>.  Unless otherwise specified in the Plan Supplement, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Plan Supplement.

27.  <u>Insurance Policies and Agreements</u>.  Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and will be assumed by the applicable Reorganized Debtor and assigned to NewCo or its designee, effective as of the Effective Date. Nothing contained in Section 11.4 of the Plan shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including without limitation, the insurer, under any of the Debtors' policies of insurance.

28.  <u>Management Agreements</u>.  As of the Effective Date, (i) all existing management agreements between any Debtor that is a TRS and HVM, and the G&A Reimbursement Agreements and Services Agreements will be assumed by such Debtors (or, in the case of Extended Stay Inc. and pursuant to the ESI Settlement Agreement, assumed by Extended Stay Inc and assigned to NewCo) and (ii) all existing management agreements between any Debtor that is not a TRS and HVM will be assumed by such Debtor and assigned to a Debtor that is a TRS (or a newly formed TRS, wholly owned either directly or indirectly by NewCo, that is designated by an existing Debtor that is a TRS).  Entry of this Order, subject to and upon the occurrence of the Effective Date, shall constitute the approval, pursuant to sections 365(a) and

1123 of the Bankruptcy Code, of the assumption or assumption and assignment, as applicable, of such agreements on the terms set forth in the Plan and Plan Supplement.

29.     Cure of Defaults.  Upon entry of this Order, the cure costs in connection with each executory contract and unexpired lease assumed pursuant to Section 11.1 of the Plan has been fixed at $0.00.  The applicable contract or lease counterparty is **BARRED** and **PERMANENTLY ENJOINED** from asserting against the applicable Debtor any default, claim or liability existing, accrued or arising, or relating to the applicable assumed contract or assumed lease for the period prior to the entry of this Order, except any obligations arising under such contract or lease from and after the Commencement Date but not yet due and payable under the terms of the applicable contract or lease.

30.     Bar Date for Filing Proofs of Claim Relating to Executory Contacts and Unexpired Leases Rejected Pursuant to the Plan.  Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in Section 11.2 of the Plan) or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors no later than thirty (30) days after (a) in the case of an executory contract or unexpired lease that was terminated or expired by its terms prior to the Confirmation Date, the Confirmation Date, (b) in the case of an executory contract or unexpired lease rejected by the Debtors, the entry of the order of the Bankruptcy Court authorizing such rejection, or (c) in the case of an executory contract or unexpired lease that is deemed rejected pursuant to Section 11.2 of the Plan, the Confirmation Date.  Any rejection claim for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtors, their assets, properties, or interests in property, or the

Reorganized Debtors or their estates, assets, properties, or interests in property.  Unless

otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided

herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the

provisions of Article VII of the Plan.

        31.    <u>Vesting of Assets</u>.  Pursuant to Section 10.1 of the Plan, upon the

Effective Date, all property and assets of the Debtors, including the Mortgage Properties, but

excluding the Litigation Trust Assets, the Administrative/Priority Claims Reserve, and the

Mortgage Parties Indemnification Fund, shall vest in the Reorganized Debtors and NewCo, as

applicable, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except

as provided in the Plan or paragraph 72 this Order, including, without limitation, any and all

Claims, Liens, Liabilities, encumbrances, charges and other interests and any and all right, title

and interests related thereto of governmental entities relating to any tax liabilities or similar

liabilities.  Such vesting does not constitute a voidable transfer under the Bankruptcy Code or

applicable nonbankruptcy law.   From and after the Effective Date, the Reorganized Debtors

and/or NewCo may operate the Debtors' business and may use, acquire, and dispose of property

free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if

there were no pending case under any chapter or provision of the Bankruptcy Code.

        32.    <u>Title to Assets</u>.  Except as otherwise provided in the Plan, on the Effective

Date, title to all assets and properties and interests in property dealt with by the Plan shall vest in

the Reorganized Debtors, NewCo, the Plan Administrator, the Administrative/Priority Claims

Reserve or the Litigation Trust, as provided in the Plan, free and clear of all Claims, Equity

Interests, Encumbrances, and other interests, and this Order shall be a judicial determination of

discharge of the liabilities of the Debtors arising prior to the Effective Date, except as may be otherwise provided in the Plan.

33.     Indemnification Obligations.  Notwithstanding anything to the contrary in the Plan, subject to the occurrence of the Effective Date, the obligations of the Debtors as provided in the Debtors' respective certificates of incorporation, bylaws, or other applicable organizational documents, other agreements or law as of the Commencement Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of officers who were officers or employees of such Debtors or their respective Affiliates at any time prior to the Effective Date, provided that such officers will continue to be officers of the Debtors or NewCo from and after the Effective Date, against any claims, causes of action or obligations whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Plan, remain unaffected thereby after the Effective Date and not be discharged, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation or limitation is owed in connection with an event occurring before or after the Commencement Date.

34.     As of the Effective Date, each Debtor's certificate of incorporation, bylaws or similar organizational documents or other agreement shall provide for the indemnification, defense, reimbursement, exculpation and/or limitation of liability of, and advancement of fees and expenses to, officers who were officers of such Debtor or any of its respective Affiliates at any time prior to the Effective Date and who will continue to be officers or employees of the Debtors or NewCo from and after the Effective Date at least to the same extent as the bylaws of such Debtor in effect on the Commencement Date, against any claims or

causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Debtors shall amend and/or restate its certificate of incorporation, bylaws or similar organizational document or other agreement before or after the Effective Date to terminate or materially adversely affect any of the Debtors' obligations or such officers' rights under Section 10.13(b) of the Plan.

35.     Any Claim based on NewCo's or the Debtors' obligations set forth in Section 10.13 of the Plan shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

36.     For avoidance of doubt, nothing in Section 10.13 of the Plan or this Order shall be construed as an indemnification for any Guaranty Claim.

37.     <u>Discharge of Claims and Termination of Equity Interests</u>.  Except as provided in the Plan, in consideration of the rights afforded in the Plan and the payments and distributions to be made under the Plan, all existing debts, Claims, and Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties, shall be and hereby are discharged and terminated to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Existing Equity Interests and Other Existing Equity Interests in the Debtors shall be, and shall be deemed to be, and hereby are, discharged and terminated, and all holders of Claims and Existing Equity Interests and Other Existing Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, NewCo, their respective successors or assignees, or any of their respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or

other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date. Upon the Effective Date, all such persons shall be and hereby are forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors.

38. <u>Injunction</u>. Pursuant to Section 10.6 of the Plan, except as otherwise provided in the Plan, all Persons who have held, hold or may hold Claims or Equity Interests and all Persons who have held, hold or may hold claims or causes of action that have been released pursuant to Section 10.10 of the Plan or are subject to exculpation pursuant to Section 10.9 of the Plan, and all other parties in interest, including any participants in the Auction, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, or such released or exculpated claim or cause of action, against the Debtors, the Reorganized Debtors, NewCo or the Released Parties or any of their respective property or assets or any interest therein, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors, NewCo or the Released Parties or any of their respective property or assets or any interest therein, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors, NewCo or the Released Parties or any of their respective property or assets or any interest therein, or (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Reorganized Debtors,

NewCo, the Released Parties or against any of their respective property or assets, or any interest therein, with respect to any such Claim or Equity Interest, or such released or exculpated claim or cause of action. For the avoidance of doubt, nothing in Section 10.6 of the Plan or in this Order shall be construed as enjoining the prosecution of any Guaranty Claim other than a Guaranty Claim against a Debtor.

39. Notwithstanding anything to the contrary in the Plan or this Order, none of the rights or claims of TriMont Real Estate Advisors, Inc. ("TriMont") under and pursuant to the Trust and Servicing Agreement, including without limitation, all rights or claims of TriMont with respect to compensation under the Trust and Servicing Agreement relating to its portion of any 'Special Servicing Fees,' 'Work-Out Fee' or 'Liquidation Fee' (all as defined in the Trust and Servicing Agreement) that is or becomes payable under the Trust and Servicing Agreement shall be affected, discharged, released, exculpated or enjoined in any respect whatsoever by the Plan or this Order and all such rights and claims shall be expressly preserved and reserved.

40. Injunction Against Interference With Plan of Reorganization. Upon the entry of this Order, all holders of Claims and Equity Interests and other parties in interest, including the holders of Mortgage Certificates, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

41. Terms of Injunction. Unless otherwise provided in this Order, all injunctions or stays arising under or entered during these Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date, other than injunctions issued pursuant to the Plan (including injunctions under Section 10.6 of the

Plan) shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

42. Exculpation. As provided for in Section 10.9 of the Plan, notwithstanding anything herein to the contrary, as of the Effective Date, none of (a) the Debtors or the Reorganized Debtors, (b) NewCo, (c) the Creditors' Committee and any subcommittee thereof, (d) BHAC, (e) the accountants, financial advisors, investment bankers, agents and attorneys for the Debtors, (f) HVM, (g) HVM Manager, (h) the Special Servicer, (i) the Trustee, (j) the Operating Advisor, (k) the Controlling Holder, (l) HVM Manager Owner, (m) the Investor, (n) each Sponsor, (o) the Debt Financing Lenders and (p) any present or former director, manager, officer, member, equity holder (and their respective Affiliates), employee, agent, financial advisor, partner, Affiliate, attorney, other professional advisor or representative (and their respective Affiliates) of the persons or parties described in clauses (a) through (p) of Section 10.9 or of their respective Affiliates (but solely in their capacities as such) shall have or incur any liability for any claim, cause of action or other assertion of liability for any act taken or omitted to be taken since the Commencement Date in connection with, related to, or otherwise arising out of, the Chapter 11 Cases, the Auction, the formulation, negotiation, preparation, dissemination, implementation, confirmation, consummation, or administration of the Plan, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Trust and Servicing Agreement, the Mortgage Facility Trust, the Plan, the Disclosure Statement or, in each case, any contract, instrument, document or other agreement related thereto, including, without limitation, the Investment Agreement; provided, however, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a final order by a court

of competent jurisdiction to have constituted willful misconduct or gross negligence; <u>provided</u>, <u>further</u>, that each Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions or inactions; <u>provided</u>, <u>further</u>, that nothing in Section 10.9 of the Plan or this Order shall be construed as a release or exculpation for any Guaranty Claim other than a Guaranty Claim against a Debtor.

43.     <u>Releases</u>.  Pursuant to Section 10.10 of the Plan, as of the Effective Date, and in consideration of (a) the services provided by the present and former directors, managers, officers, employees, Affiliates, agents, financial advisors, attorneys, and representatives of the Debtors to the Debtors who acted in such capacities after the Commencement Date; (b) the services of the Creditors' Committee and their Affiliates; (c) the services provided by HVM; (d) the services provided by HVM Manager; (e) the services of, and assets contributed by, HVM Manager Owner; (f) the provision of the Debt Financing Arrangements by the Debt Financing Lenders; (g) the substantial contribution of the Investor, each of the Sponsors and their Affiliates; and (h) the substantial contribution of the Special Servicer, the Trustee, the Operating Advisor and the Controlling Holder: (i) the Debtors, the Reorganized Debtors or NewCo; (ii) each holder of a Claim or Equity Interest that votes to accept the Plan, or is deemed to accept the Plan, or abstains from voting on the Plan; and (iii) each holder of a Mortgage Certificate, shall release unconditionally and forever each Released Party from any and all Claims, demands, causes of action and the like, relating to the Debtors or their Affiliates existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date; <u>provided</u>, <u>however</u>, that nothing in Section 10.10 of the Plan or this Order shall be construed as a release of (i) any Guaranty Claim other than a Guaranty Claim

against a Debtor, (ii) any claims constituting Litigation Trust Assets, or (iii) any claims against any such Released Party resulting from an action or omission determined by a final order by a court of competent jurisdiction to have constituted willful misconduct or gross negligence, provided that each such Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions.

44. <u>Government Releases</u>.  Except with respect to the claims held by the United States Government or any of its agencies or any state and local authority, in their capacity as holder of either a Mortgage Certificate or a Mezzanine Facility Claim, nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties other than the Debtors, the Reorganized Debtors and NewCo, nor shall anything in the Plan or Confirmation Order enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties other than the Debtors, the Reorganized Debtors and NewCo for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Plan or this Order exculpate any of the Released Parties other than the Debtors, the Reorganized Debtors and NewCo from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state and local authority.

45. <u>Mortgage Facility Trust Claims</u>.  The Mortgage Debt Parties have acted in accordance with the Trust and Servicing Agreement and the Mortgage Facility Trust throughout the Chapter 11 Cases, including, without limitation, in connection with the Auction, the Plan (including voting thereon) and the Disclosure Statement, and they have made a substantial contribution to the Estate and the Chapter 11 Cases.  The rights and authority of and contributions made by the Mortgage Debt Parties under the Trust and Servicing Agreement and the Mortgage Facility Trust have been and are integral to the Plan.  Accordingly, from and after the Effective Date, all Persons, including the holders of Mortgage Certificates, shall be deemed to have released, and shall be enjoined from commencing any action or proceeding or asserting or pursuing, any claim or cause of action against the Mortgage Debt Parties for any act taken or omitted since the Commencement Date in connection with, related to, or otherwise arising out of the Chapter 11 Cases, the Auction, the formulation, negotiation, preparation, dissemination, implementation, confirmation, consummation, or administration of the Plan, or property to be distributed under the Plan; <u>provided</u>, <u>however</u>, that nothing in Section 10.12 of the Plan shall be construed as a release of any claims against any Mortgage Debt Party resulting from an act or omission determined by a final order of a court of competent jurisdiction to have constituted willful misconduct or gross negligence, provided that each such Mortgage Debt Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions.

46. <u>Limitations on Exculpation and Releases of Representatives</u>.  Nothing in Sections 10.9 or 10.10 of the Plan shall (a) be construed to release or exculpate any Person from, or require indemnification of any Person against losses arising from, the fraud, malpractice, criminal conduct, intentional unauthorized misuse of confidential information that causes

damages, or ultra vires acts of such Person, or (b) limit the liability of the professionals of the Debtors, the Reorganized Debtors, NewCo or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

47. Retention of Causes of Action/Reservation of Rights. Except as provided in Section 6.17 and Section 10.10 of the Plan, nothing contained in the Plan or this Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors, the Reorganized Debtors or NewCo may have or which NewCo or the Reorganized Debtors may choose to assert on behalf of the Debtors' estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, the Reorganized Debtors, NewCo, their officers, directors, managers or representatives and (ii) the turnover of any property of the Debtors' estates.

48. Nothing contained in the Plan or this Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Commencement Date, against or with respect to any Claim left Unimpaired by the Plan. NewCo or the Reorganized Debtors, as applicable, shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtors had immediately prior to the Commencement Date fully as if the Bankruptcy Cases had not been commenced, and all of the legal and equitable rights of NewCo or the Reorganized Debtors, as applicable, respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Bankruptcy Cases had not been commenced.

49. Nothing in the Plan or this Order shall be construed as a release of any Guaranty Claim other than a Guaranty Claim against a Debtor, and all rights and defenses thereto are expressly reserved.

50. Nothing in the Plan shall be construed as a modification, release or waiver of the provisions of the Intercreditor Agreement, and the provisions of the Intercreditor Agreement shall remain in full force and effect, and all rights thereunder are expressly reserved.

51. The settlement reached with the Debtors, Special Servicer, the Creditors' Committee and the Indenture Trustee, as set forth on the record of the Confirmation Hearing and reflected in the Litigation Trust Agreement, including Exhibit A thereto (and the ESI Settlement Agreement) is approved. Except as expressly provided herein or in the Litigation Trust Agreement including Exhibit A thereto setting forth the priority of distributions from the Litigation Trust Agreement, nothing herein or in the Litigation Trust Agreement affects the rights and obligations of the Mortgage Facility Trust or holders of Mezzanine Facilities Claims under the Intercreditor Agreement, including, without limitation, provisions pertaining to Guaranty Claims. The Indenture Trustee shall be a Litigation Trust Beneficiary to the extent provided in the Litigation Trust Agreement. As of the Effective Date, any interests or rights the Indenture Trustee has respecting the Litigation Trust Assets and the ESI Causes of Action (as such term is defined in the ESI Settlement Agreement) shall be deemed transferred to and vested in the Litigation Trust.

52. <u>Transfer Free and Clear of Liens</u>. Except with respect to the Litigation Trust Assets, the Administrative/Priority Claims Reserve, and the Mortgage Parties Indemnification Fund (each as defined in the Plan), and any Claims of governmental entities treated in paragraph 72 of this Order, all right, title and interest in and to any and all assets,

property, unexpired leases and executory contracts of every kind and nature to be sold, assigned, transferred or otherwise disposed of under the Plan shall be sold, assigned, transferred and disposed of free and clear of any and all Claims, Liens, Liabilities, encumbrances, charges and other interests of any entity (as such term is defined in section 101(15) of the Bankruptcy Code) including, without limitation, (a) any and all claims, liens, encumbrances and any and all right, title and interests related thereto of government  entities with respect to tax liabilities and (b) any and all claims, liens, encumbrances and any and all right, title and interests related thereto arising or resulting from or relating to the transactions contemplated hereby and by the Plan (including, without limitation, all Plan Documents).

53. <u>Good Faith Purchaser</u>.  The Investor and the Sponsors are each a good faith purchaser of the Company, and the Company's assets and property and are entitled to the protections afforded good faith purchasers under the Bankruptcy Code.

54. <u>NewCo, Reorganized Debtors, Investors, Sponsors, and Debt Financing Lenders Not Successors of the Debtors</u>.  Except with respect to administrative expense claims of the type specified in Section 1.7(c)(i) of the Plan as expressly provided for in Section 2.1 of the Plan, (i) NewCo shall not be a successor to any of the debtors in the Chapter 11 Cases by reason of any theory of law or equity, (ii) except as provided in paragraph 72 of this Order, NewCo and the Reorganized Debtors shall not assume, incur or be responsible for any claims or liabilities of the Debtors or any of their affiliates, and (iii) neither the Reorganized Debtors, NewCo, the Investor, the Sponsors, nor the Debt Financing Lenders shall be successors or successors in interest of the Debtors or Extended Stay Inc. nor incur any successor or transferee Liability of any kind, nature or character, including, without limitation, in relation to (a) any and all liabilities arising or resulting from or relating to the transactions contemplated by the Plan,

53

(b) any and all Claims, Liens, Liabilities, encumbrances, charges and other interests arising from or relating to any conduct, liabilities, or obligations of the Debtors or Extended Stay Inc., and (c) except as provided in paragraph 72 of this Order, any and all Claims, Liens, Liabilities, encumbrances, charges and other interests and any and all right, title, and interests related thereto, of governmental entities relating to any tax or similar liabilities.

55. <u>Authorization to Consummate Plan Transactions</u>. The Debtors and the Reorganized Debtors are all authorized to consummate the transactions contemplated in the Investment Agreement and in the Plan and to enter into, execute and deliver all necessary documents, including those required in connection with the Debt Financing Arrangements, including, without limitation, any such document necessary to effect the release and discharge of any mortgage, deed of trust, Lien, pledge, or other security interest on, in or against the Mortgage Properties.

56. <u>Debt Financing Arrangements Not a Fraudulent Transfer</u>. The guarantees, mortgages, pledges, liens and other security interests, and all other consideration granted pursuant to or in connection with the Debt Financing Arrangements are granted in good faith, for good and valuable consideration and for legitimate business purposes as an inducement to the Debt Financing Lenders to make the Debt Financing Arrangements, and do not constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance or re-characterization and the borrowers under the Debt Financing Arrangements and the Debt Financing Lenders are authorized to enter into the Debt Financing Arrangements.

57. <u>Successor or Transferee Liability and Debt Financing Arrangements</u>. Neither the Investor, the Sponsors, the Debt Financing Lenders, nor any borrower, guarantor, pledgor, loan party or owner, lessee or licensee of collateral under the Debt Financing

Arrangements that is not a Debtor shall have any successor or transferee liability of any kind, nature or character.

58. <u>Conditions to Effective Date</u>. The Plan shall not become effective unless and until the conditions set forth in Section 9.1 of the Plan have been satisfied or waived pursuant to Section 9.2 of the Plan.

59. <u>Retention of Jurisdiction</u>. Pursuant to Article XII of the Plan, this Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code and arising in or related to these Chapter 11 Cases or the Plan, to the fullest extent as is legally permissible.

60. <u>Effectuating Documents and Further Transactions</u>. On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with this Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Investor and each of the Sponsors as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Each of the officers of the Debtors, the Reorganized Debtors and NewCo is authorized, without the need for any further order or authority, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan. The Reorganized Debtors and NewCo are authorized to execute all documents and enter into all agreements as may be necessary and appropriate in connection with the Debt Financing Arrangements.

61. <u>The Plan Administrator</u>. The appointment of Capstone Advisory Group, LLC as the Plan Administrator is hereby approved.

62.     Compliance with Tax Requirements.  In connection with the Plan, the Debtors the Plan  Administrator and the Litigation Trustee will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions under the Plan shall be subject to such withholding and reporting requirements.

63.     Modifications.  Pursuant to Section 13.1 of the Plan, except with respect to the Restructuring Transactions as set forth in paragraph 9 hereof, the Plan may be altered, amended or modified by the Debtors, in consultation with the Investor, each of the Sponsors and the Special Servicer (in consultation with the Operating Advisor), after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code; provided, however, that no such alterations, amendments or modifications that are material shall be made without the consents of the Investor, each of the Sponsors and the Special Servicer (in consultation with the Operating Advisor), which consents shall not be unreasonably withheld.  The Plan, as altered, amended or modified must satisfy the conditions of sections 1122, 1123 and 1129 of the  Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  A holder of an Allowed Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended or modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

64. <u>Payment of Statutory Fees</u>. All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

65. <u>Post-Confirmation Date Professional Fees and Expenses</u>. From and after the Confirmation Date, the Plan Administrator and the Litigation Trustee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by them.

66. <u>Dissolution of Creditors' Committee</u>. On the Effective Date, the Creditors' Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Debtors' Chapter 11 Cases, and, except for the limited purpose of preparing and presenting its final applications for fees and expenses (including the final application for reimbursement of expenses of members of the Creditors' Committee) and the final resolution thereof; provided, however, (a) if the Effective Date occurs before the Confirmation Order becomes a Final Order, the Creditors' Committee may continue to exist and to serve for the purposes of any pending appeal of the Confirmation Order, and (b) the Creditors' Committee will continue to exist and to serve and have a right to be heard for the purposes of any issue relating to ESI.

67. <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer, merger or consolidation under, in furtherance of, or in connection with the Plan, shall not be subject to any sales and use, stamp, real estate transfer, mortgage recording, or other similar tax.

The Reorganized Debtors are hereby authorized to deliver a notice of this Confirmation Order, with the Plan annexed, to any state or local recording officer, and such officer is hereby directed to accept for filing the above documents or instruments without charging any sales and use, stamp, real estate transfer, mortgage recording, or other similar tax. Such notice (a) shall have the effect of an Order of this Court, (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers and (c) shall be a reasonable instrument notwithstanding any contrary provision of non-bankruptcy law. The Bankruptcy Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

68.     <u>Governmental Approvals Not Required</u>.  This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement and any amendments or modifications thereto (including, without limitation, in connection with the execution and delivery of the documents evidencing and securing the Debt Financing Arrangements and the documents evidencing the termination and cancellation of the Mortgage Facility and the release of Liens on the Mortgage Properties heretofore granted thereunder).

69.     <u>Securities Laws Exemption</u>.  To the extent the Litigation Trust Beneficiaries' interest in the Litigation Trust is deemed to be a security, the distribution under the Plan of interests in the Litigation Trust, shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code, as amended.

70.     _Professional Compensation and Reimbursement_.  Pursuant to Section 2.2 of the Plan, all entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under section 330 of the Bankruptcy Code or applications for allowance of Administrative Expenses arising under section 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred and applications for allowance of Administrative Expenses arising under section 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code by the first Business Day that is forty-five (45) days from and after the Effective Date.  The date to hear and determine such applications for final allowances of compensation or reimbursement of expenses under section 330 of the Bankruptcy Code or applications for allowance of Administrative Expense Claims arising under section 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code will be set by the Bankruptcy Court and will be within a reasonable time after the deadline to file such applications.

71.     The Allowed Amount of all Administrative Expense Claims arising under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code shall, in full satisfaction, settlement, discharge and release thereof, and in exchange therefore, be paid in full, in Cash, from the Administrative/Priority Claims Reserve (a) upon the later of (i) the Effective Date and (ii) the date upon which any such Administrative Expense Claim becomes Allowed or (b) at such later date or upon such other less favorable terms as may be mutually agreed upon between each such Administrative Expense Creditor and the Plan Administrator.

72.    With respect to the Objections filed or asserted by (i) the County of Denton, Midway Independent School District and the County of Williamson [Docket No. 1123], (ii) the Lewisville Independent School District and Carrollton-Farmers Branch Independent School District [Docket No. 1127], (iii) the Texas Comptroller of Public Accounts [Docket No. 1129], (iv) the Richardson ISD, Fort Worth ISD, Eagle Mountain-Saginaw ISD, Arlington ISD and Dallas Country Utility and Recreation District [Docket No. 1130], (v) Arlington ISD, Bexar County, Coppell ISD, Cypress-Fairbanks ISD, Dallas County, City of El Paso, Fort Bend County, Harris County, Irving ISD, Katy ISD and McLennan County, City of Memphis [Docket No. 1137] (vi) San Bernardino County Tax Collector, County of Riverside Tax Collector, and Treasurer of Douglas County [Docket Nos. 1099, 1100] (collectively, the "Tax Objectors"), to the extent that a Tax Objector has, by operation of state law, first priority statutory liens on the real and personal property of the Debtors relating to ad valorem taxes on such real and personal property of the Debtors assessed for the 2009 or 2010 tax year, each such Tax Objector shall retain its liens until the applicable taxes due and payable are paid in full.  The payment in full of such taxes will include any and all applicable state law amounts to the extent payable pursuant to the Bankruptcy Code and applicable state or federal law.

73.    With respect to all property taxes, real estate taxes, ad valorem taxes and similar taxes that relate to the period prior to the Effective Date, regardless of when such taxes are finally determined by the applicable taxing authority as due and payable, and that have not been paid as of the Effective Date, 50% of the amount of such taxes shall be for the account of and be the obligation of the Debtors and 50% of the amount of such taxes shall be for the account of and be the obligation of the Reorganized Debtors; provided, that the Reorganized Debtors shall pay all such property taxes, real estate taxes, ad valorem taxes and similar taxes as

well as occupancy taxes, sales taxes, use taxes and similar taxes for the year 2010 (to the extent not all ready paid as of the Effective Date) payable by the Debtors or the Reorganized Debtors after the Effective Date in the ordinary course of business as and when they become due and payable, regardless of whether the tax, or portions of the tax, relate to the period prior to the Effective Date.  On the Effective Date, the Debtors shall pay NewCo 50% of the amount of all property taxes, real estate taxes, ad valorem taxes and similar taxes payable by the Debtors which are accrued and unpaid and/or relate to the period prior to and as of the Effective Date, less 50% of the prepaid amount of any such taxes for periods after the Effective Date.

74.     <u>No Amendment, Modification or Waiver of Cash Collateral Order or Other Documents</u>.  Except as otherwise provided for in the Plan, nothing contained in the Plan shall be deemed to be an amendment, modification or waiver of any term or provision of the Trust and Servicing Agreement, the Mortgage Facility, or the Cash Collateral Order.

75.     Nothing in the Plan, this Order, the ESI Settlement or the ESI Settlement Order [Docket No. 1170] will have the effect of impairing, enhancing, or altering either (i) the rights, remedies or defenses (or the enforceability thereof) of any defendant with respect to any rights, remedies, claims, causes of action (or interests therein) that are transferred to the Litigation Trust, or (ii) the rights, remedies, claims or causes of action (or interests therein) of any Debtor or ESI that are so transferred; it being understood that the effect of the Plan, this Order, the ESI Settlement and the ESI Settlement Order is to be "litigation neutral" with respect to all such rights, remedies, defenses, claims and causes of action.

76.     With respect to the Objection filed by Five Mile Capital II SPE ESH LLC ("<u>Five Mile</u>") [Docket No. 1128], the release provided for in Article X of the Plan shall not apply to Five Mile with respect to the action commenced in New York State Court by Five Mile on

June 22, 2009, Index No. 601933/2009 (as removed and subsequently transferred to the

Bankruptcy Court by Notice of Removal dated July 14, 2009 [Case No. 09-01367, Docket No.

1], and as the same may be prosecuted in the Bankruptcy Court or remanded to the New York

State Court, the "Five Mile Action"), provided, however, upon receipt of payment in full of the

class "F" Mortgage Certificates beneficially owned by Five Mile in the amount of

$77,326,920.00 (plus all accrued and unpaid interest thereon to the date payment is made to Five

Mile to the extent due under, and calculated in the manner provided in, the Trust and Servicing

Agreement), the release provided for in Article X of the Plan shall apply to Five Mile and the

Five Mile Action, and Five Mile shall immediately file the necessary pleadings to dismiss, with

prejudice, the Five Mile Action and Five Mile shall not seek restoration of, or otherwise pursue,

any of the claims and causes of action relating to, or arising out of, directly or indirectly, the

claims and causes of action asserted in the Five Mile Action.

      77.    Notice of Entry of Confirmation Order.  Pursuant to Bankruptcy Rules

2002(f)(7), 2002(k), and 3020(c), the Reorganized Debtors or the Plan Administrator, as the case

may be, shall file and serve notice of entry of this Order in substantially the form annexed hereto

as "Exhibit B" (the "Notice of Confirmation Order") on all creditors and interest holders, the

United States Trustee for the Southern District of New York, the attorneys for the Creditors'

Committee, the attorneys for the Investor, and other parties in interest, by causing the Notice of

Confirmation Order to be delivered to such parties by first-Class mail, postage prepaid, within 10

business days after entry of this Order.  The Notice of Confirmation Order shall also be posted

on the website of the Debtors' Court-appointed voting and tabulation agent, KCC:

http://www.kccllc.net/extendedstay.  Such notice is adequate under the particular circumstances

and no other or further notice is necessary. The form of Notice of Confirmation Order substantially in the form annexed hereto as "Exhibit B" is approved.

78.    Notice of Effective Date. As soon as practicable after the occurrence of the Effective Date, the Reorganized Debtors or the Plan Administrator shall file notice of the occurrence of the Effective Date and shall serve a copy of same on all parties entitled to receive notice in these Chapter 11 Cases.

79.    Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

80.    Revocation or Withdrawal of the Plan of Reorganization. The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date, (i) with the consent of the Special Servicer and the Operating Advisor (such consent not to be unreasonably withheld), in their discretion, or at the direction of the Investor, in the event that the Investment Agreement is terminated in accordance with Section 13 thereof, and (ii) in all other circumstances with the consent of the Investor and each of the Sponsors, in their sole discretion, and the consent of the Special Servicer and the Operating Advisor (such consent not to be unreasonably withheld). If the Debtors take such action, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

81.    Reversal. If any of the provisions of this Order are hereafter reversed, modified or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such

order by the Debtors.  Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order, the Plan, all documents relating to the Plan and any amendments or modifications to any of the foregoing.

82.    <u>Conflicts Between Order and Plan</u>.  The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern and any provision of this Order shall be deemed a modification of the Plan and shall control and take precedence.  The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

83.    <u>Final Order; Waiver of Stay</u>.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.  Any stay of this Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)) is hereby waived, and this Order shall be effective and enforceable immediately upon its entry by the Court.

Dated: New York, New York
      July 20, 2010

                                            *s/ James M. Peck*                   
                                           Honorable James M. Peck
                                           United States Bankruptcy Judge

# EXHIBIT A

## The Plan

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 Case No. |
|  | : |  |
| EXTENDED STAY INC., et al., | : | 09-13764 (JMP) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

------------------------------------------------------------------x

# DEBTORS' FIFTH AMENDED PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AS AMENDED

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Attorneys for Debtors
and Debtors in Possession

Dated: June 8, 2010

# TABLE OF CONTENTS

**Page**

ARTICLE I      DEFINITIONS ................................................................................................ 1

    A.      Defined Terms ............................................................................................... 1

    1.1      Acquisition ..................................................................................................... 1
    1.2      Administrative Expense Claim ...................................................................... 1
    1.3      Administrative Expense Creditor .................................................................. 1
    1.4      Administrative Expense Objection Deadline................................................. 1
    1.5      Administrative/Priority Claims Reserve........................................................ 1
    1.6      Affiliate .......................................................................................................... 1
    1.7      Allowed .......................................................................................................... 1
    1.8      Allowed Amount ............................................................................................ 2
    1.9      Auction ........................................................................................................... 3
    1.10     Ballot .............................................................................................................. 3
    1.11     Bankruptcy Code ........................................................................................... 3
    1.12     Bankruptcy Court ........................................................................................... 3
    1.13     Bankruptcy Rules ........................................................................................... 3
    1.14     BHAC .............................................................................................................. 3
    1.15     BHAC IP ......................................................................................................... 3
    1.16     [Intentionally Deleted].................................................................................. 3
    1.17     BHAC IP Transfer Agreement ...................................................................... 3
    1.18     Bidding Procedures Order ............................................................................. 3
    1.19     Business Day .................................................................................................. 3
    1.20     Cash ................................................................................................................ 3
    1.21     Cash Collateral Order .................................................................................... 3
    1.22     Cash Distribution ........................................................................................... 3
    1.23     Chapter 11 Cases ........................................................................................... 4
    1.24     Claim .............................................................................................................. 4
    1.25     Class ............................................................................................................... 4
    1.26     Commencement Date ..................................................................................... 4
    1.27     Confirmation Date ......................................................................................... 4
    1.27A Confirmation Hearing .................................................................................... 4
    1.28     Confirmation Order ....................................................................................... 4
    1.29     Contingent Claim........................................................................................... 4
    1.30     Controlling Holder......................................................................................... 4
    1.31     Creditor .......................................................................................................... 4
    1.32     Creditor Representative ................................................................................. 4
    1.33     Creditors' Committee ..................................................................................... 4
    1.34     Debtors ........................................................................................................... 4
    1.35     Debt Financing Arrangements....................................................................... 5
    1.36     Debt Financing Lenders ................................................................................ 5
    1.37     Debtor in Possession ..................................................................................... 5
    1.38     Disallowed Claim .......................................................................................... 5
    1.39     Disclosure Statement ..................................................................................... 5
    1.40     Disputed Claim .............................................................................................. 5
    1.41     Distribution.................................................................................................... 5
    1.42     Distribution Date ........................................................................................... 5

1.43   DL-DW ...................................................................................................... 5
1.44   Effective Date ............................................................................................ 5
1.45   Equity Interest ........................................................................................... 5
1.46   ESA Canada Properties Borrower Interests ............................................ 6
1.47   ESA Canada Properties Interests .............................................................. 6
1.48   ESA MD Borrower Interests ..................................................................... 6
1.49   ESA MD Properties Trust Certificate ...................................................... 6
1.50   ESA P Portfolio MD Borrower Interests .................................................. 6
1.51   ESA P Portfolio MD Trust Certificate ..................................................... 6
1.52   ESA UD ..................................................................................................... 6
1.53   ESA UD Mortgage Claim .......................................................................... 6
1.54   ESA UD Mortgage Facility ....................................................................... 6
1.55   ESH/ESA General Partnership Interests .................................................. 6
1.56   ESH/TN Properties Membership Interest ................................................ 6
1.57   ESI .............................................................................................................. 6
1.58   ESI Settlement ........................................................................................... 6
1.59   ESI Settlement Order ................................................................................ 7
1.60   Estate ......................................................................................................... 7
1.61   Estimated Amount ..................................................................................... 7
1.62   Examiner's Report ..................................................................................... 7
1.63   Excess Cash ............................................................................................... 7
1.64   Existing Equity .......................................................................................... 7
1.65   Existing Letters of Credit .......................................................................... 7
1.66   Final Distribution Date ............................................................................. 7
1.67   Final Order ................................................................................................ 7
1.68   G&A Reimbursement Agreements ........................................................... 7
1.69   General Unsecured Claims ........................................................................ 8
1.70   Guaranty .................................................................................................... 8
1.71   Guaranty Claim ......................................................................................... 8
1.72   Homestead ................................................................................................. 8
1.73   HVM .......................................................................................................... 8
1.74   HVM Manager ........................................................................................... 8
1.75   HVM Manager Owner ............................................................................... 8
1.76   Impaired ..................................................................................................... 8
1.77   Indemnified Litigation .............................................................................. 8
1.77A Indenture Trustee ...................................................................................... 8
1.78   Initial Distribution Date ............................................................................ 8
1.79   Intellectual Property .................................................................................. 8
1.80   Intercreditor Agreement ........................................................................... 8
1.81   Internal Revenue Code .............................................................................. 9
1.82   Investment ................................................................................................. 9
1.83   Investment Agreement ............................................................................... 9
1.84   Investor ...................................................................................................... 9
1.85   Investor Certificates .................................................................................. 9
1.86   IRS ............................................................................................................. 9
1.87   Litigation Trust .......................................................................................... 9

| | | |
|---|---|---|
| 1.88 | Litigation Trust Agreement | 9 |
| 1.89 | Litigation Trust Assets | 9 |
| 1.90 | Litigation Trust Beneficiaries | 9 |
| 1.91 | Litigation Trust Funding | 9 |
| 1.92 | Litigation Trust Funding Reimbursement | 10 |
| 1.93 | Litigation Trustee | 10 |
| 1.94 | Loan REMIC | 10 |
| 1.95 | Lower Tier REMIC | 10 |
| 1.96 | Master Servicer | 10 |
| 1.97 | Merrill Swap Agreement | 10 |
| 1.98 | Mezzanine Facilities | 10 |
| 1.99 | Mezzanine Facilities Claims | 10 |
| 1.100 | Mortgage Certificate | 10 |
| 1.101 | Mortgage Debt Parties | 10 |
| 1.102 | Mortgage Facility | 11 |
| 1.103 | Mortgage Facility Claim | 11 |
| 1.104 | Mortgage Facility Deficiency Claim | 11 |
| 1.105 | Mortgage Facility Trust | 11 |
| 1.106 | Mortgage Parties Indemnification Fund | 11 |
| 1.107 | Mortgage Properties | 11 |
| 1.108 | New Debtor Equity | 11 |
| 1.109 | New ESA UD Mortgage Facility | 11 |
| 1.110 | New ESA UD Mortgage Note | 11 |
| 1.111 | NewCo | 11 |
| 1.112 | NewCo Certificate of Formation | 11 |
| 1.113 | NewCo Common Interests | 11 |
| 1.114 | NewCo Manager | 11 |
| 1.115 | NewCo Management Incentive Plan | 12 |
| 1.116 | NewCo Operating Agreement | 12 |
| 1.117 | Operating Advisor | 12 |
| 1.118 | Other Existing Equity Interests | 12 |
| 1.118A | Other Secured Claims | 12 |
| 1.119 | Person | 12 |
| 1.120 | Plan | 12 |
| 1.121 | Plan Administrator | 12 |
| 1.122 | Plan Documents | 12 |
| 1.123 | Plan Supplement | 12 |
| 1.124 | Priority Claim | 12 |
| 1.125 | Priority Tax Claim | 13 |
| 1.126 | Pro Rata Share | 13 |
| 1.127 | Real Estate Investment Trust | 13 |
| 1.128 | Real Estate Mortgage Investment Conduit (or REMIC) | 13 |
| 1.129 | Record Date | 13 |
| 1.130 | Released Parties | 13 |
| 1.131 | Reorganized Debtors | 13 |
| 1.132 | Restructuring Transaction(s) | 13 |

| | | |
|---|---|---|
| 1.133 | Schedules | 13 |
| 1.134 | Secured Claim | 14 |
| 1.135 | Securities Act | 14 |
| 1.136 | Special Servicer | 14 |
| 1.137 | Sponsors | 14 |
| 1.138 | Successor Trustee | 14 |
| 1.139 | Swap Agreements | 14 |
| 1.140 | Tier 1 Debtors | 14 |
| 1.141 | Tier 2 Debtors | 14 |
| 1.142 | Tier 3 Debtors | 14 |
| 1.143 | Treasury Regulations | 14 |
| 1.144 | Trustee | 14 |
| 1.145 | Trust and Servicing Agreement | 14 |
| 1.146 | TRS | 14 |
| 1.147 | Upper Tier REMIC | 14 |
| 1.148 | Unimpaired | 14 |
| 1.149 | Unliquidated Claim | 15 |
| 1.150 | Voting Deadline | 15 |
| 1.151 | Wachovia Swap Agreement | 15 |
| B. | Other Terms | 15 |
| C. | Exhibits | 15 |
| ARTICLE II | PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS | 15 |
| 2.1 | Payment of Allowed Administrative Expense Claims | 15 |
| 2.2 | Compensation and Reimbursement Claims | 16 |
| 2.3 | Priority Tax Claims | 16 |
| ARTICLE III | CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS | 16 |
| 3.1 | Summary | 16 |
| ARTICLE IV | TREATMENT OF CLAIMS AND EQUITY INTERESTS | 17 |
| 4.1 | Class 1 | 17 |
| 4.2 | Class 2 | 17 |
| 4.3 | Class 3 | 18 |
| 4.4 | Class 4A | 18 |
| 4.5 | Class 4B | 18 |
| 4.6 | Class 5 | 19 |
| 4.7 | Class 6 | 20 |
| 4.8 | Class 7 | 20 |
| 4.9 | Class 8 | 20 |
| 4.10 | Class 9 | 20 |
| 4.11 | Class 10 | 20 |
| 4.12 | Class 11 | 21 |
| 4.13 | Class 12 | 21 |

| | | |
|---|---|---|
| 4.14 | Class 13 | 21 |
| 4.15 | Class 14 | 21 |
| 4.16 | Class 15 | 21 |
| 4.17 | Class 16 | 22 |
| **ARTICLE V** | **ACCEPTANCE, REJECTION, AND REVOCATION OR WITHDRAWAL OF THE PLAN** | 22 |
| 5.1 | Classes Entitled to Vote | 22 |
| 5.2 | Acceptance by Class of Claims | 22 |
| 5.3 | Nonconsensual Confirmation | 22 |
| 5.4 | Revocation or Withdrawal | 23 |
| 5.5 | Amendment of Plan Documents | 23 |
| 5.6 | Removal of Debtors | 23 |
| **ARTICLE VI** | **IMPLEMENTATION OF THE PLAN** | 23 |
| 6.1 | Substantive Consolidation | 23 |
| 6.2 | Deemed Sale of Mortgage Properties | 24 |
| 6.3 | Distributions to Holder of Allowed Mortgage Facility Claim | 24 |
| 6.4 | Creation of NewCo | 24 |
| 6.5 | Existing Debt Securities | 25 |
| 6.6 | NewCo Management Incentive Plan | 25 |
| 6.7 | Corporate Reorganization Actions | 25 |
| 6.8 | Investment | 26 |
| 6.9 | Effectuating Documents and Further Transactions | 27 |
| 6.10 | Allocation of Plan Distributions Between Principal and Interest | 27 |
| 6.11 | Surrender and Cancellation of Instruments | 27 |
| 6.12 | Letters of Credit | 27 |
| 6.13 | BHAC IP Transfer Agreement | 27 |
| 6.14 | Consistent Tax Reporting | 28 |
| 6.15 | Issuance of NewCo Common Interests to Investor or Sponsor Affiliates | 28 |
| 6.16 | Mortgage Parties Indemnification Fund | 29 |
| 6.17 | Litigation Trust | 29 |
| 6.18 | ESI Settlement | 32 |
| **ARTICLE VII** | **TREATMENT OF DISPUTED CLAIMS** | 32 |
| 7.1 | Objections to Claims; Prosecution of Disputed Claims | 32 |
| 7.2 | Distributions on Account of Disputed Claims | 33 |
| 7.3 | Settlement of Claims | 33 |
| **ARTICLE VIII** | **DISTRIBUTIONS** | 33 |
| 8.1 | Distributions under the Plan | 33 |
| 8.2 | Timing of Distributions under the Plan | 33 |
| 8.3 | Use of Cash Collateral | 34 |
| 8.4 | Plan Administrator | 34 |
| 8.5 | Record Date | 34 |
| 8.6 | Manner of Payment under the Plan | 34 |

8.7     Hart-Scott-Rodino Compliance ........................................................................ 34
8.8     Fractional Distributions. ................................................................................. 34
8.9     Distribution of Unclaimed Property ............................................................... 34
8.10    Administrative/Priority Claims Reserve.......................................................... 35

ARTICLE IX     CONDITIONS PRECEDENT ........................................................ 35

9.1     Conditions Precedent to the Effective Date.................................................... 36
9.2     Effect of Failure of Conditions to Effective Date........................................... 37

ARTICLE X     EFFECT OF CONFIRMATION ........................................................ 37

10.1    Vesting of Assets............................................................................................ 37
10.2    Title to Assets; Discharge of Liabilities ......................................................... 37
10.3    Binding Effect ................................................................................................ 37
10.4    Claims Extinguished....................................................................................... 38
10.5    Discharge of Claims and Termination of Equity Interests .............................. 38
10.6    Injunction....................................................................................................... 38
10.7    Term of Injunctions or Stays .......................................................................... 39
10.8    Injunction Against Interference With Plan of Reorganization ......................... 39
10.9    Exculpation .................................................................................................... 39
10.10   Releases .......................................................................................................... 39
10.11   Government Releases ...................................................................................... 40
10.12   Mortgage Facility Trust Claims...................................................................... 40
10.13   Indemnification Obligations ........................................................................... 41
10.14   Retention of Causes of Action/Reservation of Rights..................................... 41
10.15   Limitations on Exculpation and Releases of Representatives .......................... 42

ARTICLE XI     EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....................... 42

11.1    Assumption of Executory Contracts and Unexpired Leases ............................ 42
11.2    Rejection of Executory Contracts and Unexpired Leases ................................ 43
11.3    Claims Arising from Rejection, Termination or Expiration.............................. 43
11.4    Insurance Policies and Agreements................................................................. 43
11.5    Management Agreements ................................................................................ 43

ARTICLE XII   RETENTION OF JURISDICTION ..................................................... 44

ARTICLE XIII  MISCELLANEOUS PROVISIONS ...................................................... 45

13.1    Modification of the Plan................................................................................. 45
13.2    Payment of Statutory Fees.............................................................................. 45
13.3    Rights of Action ............................................................................................. 45
13.4    Swap Agreements........................................................................................... 46
13.5    Dissolution of Creditors' Committee .............................................................. 46
13.6    Notices............................................................................................................ 46
13.7    Headings ......................................................................................................... 47
13.8    Severability..................................................................................................... 47
13.9    Governing Law ............................................................................................... 48
13.10   Plan Supplement /Exhibits/Schedules ............................................................ 48
13.11   Compliance with Tax Requirements ............................................................... 48

## TABLE OF CONTENTS
### (continued)

13.12 Exemption from Transfer Taxes ................................................................ 48

13.13 Expedited Determination of Postpetition Taxes ................................................ 48

13.14 Sections 1125 and 1126 of the Bankruptcy Code .............................................. 48

13.15 Time ............................................................................................ 49

13.16 No Amendment, Modification or Waiver of Cash Collateral Order or
       Other Documents ............................................................................... 49

## EXHIBIT LIST

Exhibit A     –     Debtors

Exhibit B     –     [Intentionally Deleted]

Exhibit C     –     Tier 1 Debtors

Exhibit D     –     Tier 2 Debtors

Exhibit E     –     Tier 3 Debtors

Exhibit F     –     Existing Letters of Credit

Exhibit G     –     Mezzanine Facilities

**DEBTORS' FIFTH AMENDED PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AS AMENDED**

ESA Properties L.L.C. and its affiliated debtors set forth on Exhibit A annexed hereto (the "<u>Debtors</u>") hereby propose the following chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code:

## ARTICLE I

## DEFINITIONS

**A.    Defined Terms.**

As used herein, the following terms shall have the respective meanings specified below:

1.1    ***Acquisition*** means the acquisition by DL-DW of the Debtors from BHAC IV, L.L.C. and BRE/HV Holdings L.L.C.

1.2    ***Administrative Expense Claim*** means any Claim constituting a cost or expense of administration in the Debtors' Chapter 11 Cases under section 503 of the Bankruptcy Code, including, without express or implied limitation, any actual and necessary costs and expenses of preserving the Estate of any Debtor, any expenses of professionals under sections 330 and 331 of the Bankruptcy Code, any actual and necessary costs and expenses of operating the businesses of any Debtor, any indebtedness or obligations incurred or assumed by any Debtor, as Debtor in Possession, in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services, any allowed compensation or reimbursement of expenses under section 503(b)(2)-(6) of the Bankruptcy Code, any Claim of the Mortgage Debt Parties arising in respect of adequate protection payments under or in connection with the Cash Collateral Order, and any fees or charges assessed against any Estate under section 1930, chapter 123, title 28, United States Code.

1.3    ***Administrative Expense Creditor*** means any Creditor entitled to payment of an Administrative Expense Claim.

1.4    ***Administrative Expense Objection Deadline*** means the first Business Day that is thirty (30) days after the Effective Date, as such date may be extended from time to time by order of the Bankruptcy Court.

1.5    ***Administrative/Priority Claims Reserve*** means the reserve established pursuant to Section 8.10 of the Plan.

1.6    ***Affiliate*** means, as to any Person, any other Person which, directly or indirectly, controls, or is controlled by, or is under common control with, such Person (for this purpose "control" (including, with its correlative meanings, "controlled by" and "under common control with") shall mean the possession, directly or indirectly, of the power to direct or cause the direction of management or policies of a Person, whether through the ownership of securities or partnership or other ownership interests, by contract or otherwise).

1.7    ***Allowed*** means:

(a)     With respect to any Claim (other than an Administrative Expense Claim), proof of which was filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court, (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, such Claim to the extent asserted in the proof of such Claim, or (ii) as to which an objection has been interposed, such Claim to the extent that it has been allowed in whole or in part by a Final Order.

(b)     With respect to any Claim (other than an Administrative Expense Claim), as to which no proof of claim was filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, such Claim to the extent that it has been listed in the Schedules as liquidated in amount and not disputed or contingent.

(c)     With respect to any Claim that is asserted to constitute an Administrative Expense Claim:

(i)     that represents an actual or necessary expense of preserving the Estate or operating the business of any Debtor, including for payment of goods, services, wages, or benefits or for credit extended to any Debtor, as a Debtor in Possession, any such Claim to the extent that such claim is reflected as a postpetition liability of any Debtor on such Debtor's books and records maintained in the ordinary course of business as of the Effective Date;

(ii)     in an action against any Debtor pending as of the Confirmation Date, any such Claim to the extent (x) it is allowed by a final order of a court of competent jurisdiction or by agreement between NewCo and the holder of such Administrative Expense Claim, and (y) if any Debtor disputes that such claim is a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code, to the extent the Bankruptcy Court determines by a Final Order that it constitutes a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(iii)     any such Claim filed to the extent (x) no objection is interposed by the Administrative Expense Objection Deadline or (y) if an objection is interposed by the Administrative Expense Objection Deadline, is allowed in whole or in part by a Final Order and only to the extent that such allowed portion is deemed, pursuant to a Final Order, to constitute a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code; or

(iv)     that represents a Claim of a professional person employed under section 327, 328 or 1103 of the Bankruptcy Code that is required to apply to the Bankruptcy Court for the allowance of compensation and reimbursement of expenses pursuant to section 330 of the Bankruptcy Code or an Administrative Expense Claim arising under section 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code, such Claim to the extent it is allowed by a Final Order.

1.8     ***Allowed Amount*** means the lesser of (a) the dollar amount of an Allowed Claim or (b) the Estimated Amount of such Claim.  Unless otherwise specified herein or by Final Order, the Allowed Amount of an Allowed Claim shall not include interest accruing on such Allowed Claim from and after the Commencement Date.

1.9 **Auction** has the meaning set forth in the Bidding Procedures Order.

1.10 **Ballot** means the form or forms distributed to holders of Impaired Claims on which the acceptance or rejection of the Plan is to be indicated.

1.11 **Bankruptcy Code** means the Bankruptcy Reform Act of 1978, as amended, and as codified in title 11 of the United States Code, as applicable to the Chapter 11 Cases.

1.12 **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code, the unit of such District Court constituted pursuant to section 151 of title 28 of the United States Code.

1.13 **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

1.14 **BHAC** means BHAC Capital IV, L.L.C., a Delaware limited liability company.

1.15 **BHAC IP** means the Intellectual Property owned or controlled by BHAC.

1.16 **[Intentionally Deleted]** .

1.17 **BHAC IP Transfer Agreement** shall have the meaning set forth in Section 6.13 hereof.

1.18 **Bidding Procedures Order** means that certain Order Pursuant to Sections 105(a), 363 and 503(b) of the Bankruptcy Code and Bankruptcy Rule 6004(h) Approving Bidding Procedures and Notice of the Auction Relating Thereto and Granting Related Relief, dated as of April 23, 2010 (Docket No. 975).

1.19 **Business Day** means any day other than a Saturday, a Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.20 **Cash** means lawful currency of the United States of America.

1.21 **Cash Collateral Order** means that certain Final Order (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay, dated as of July 23, 2009 (Docket No. 205), including any and all modifications or amendments thereto.

1.22 **Cash Distribution** means the sum of (a) the Excess Cash, if any, and (b) the balance of the Investor Payment and the proceeds of the Debt Financing, each as defined in the Investment Agreement, after payment of (i) to the extent Excess Cash is a negative number, amounts, if any, required to fund the Administrative/Priority Claims Reserve, (ii) the Mortgage Parties Indemnification Fund, (iii) the Litigation Trust Funding, (iv) $750,000, which amount shall be used by the Debtors to fund the wind-down of ESI, (v) $40,000,000, which is the price to be paid for the purchase of control of HVM pursuant to the terms of the agreement dated June 4, 2010 with HVM Manager Owner, (vi) Other Secured Claims, and (vii) Cash paid in connection with the acquisition of HVM or its assets, subject to agreement on the amount by the Investors and the Special Servicer (with

the consent of the Operating Advisor).  For the avoidance of doubt, to the extent that the amount referred to in clause (i) is a positive number, or any amount remains after the payment of any of the items referred to in clauses (ii) to (vii) hereof, such amount shall be added to the Cash Distribution.

1.23    ***Chapter 11 Cases*** means the cases under chapter 11 of the Bankruptcy Code commenced by ESI, the Debtors and certain of their Affiliates on June 15, 2009 and February 18, 2010 pending in the Bankruptcy Court as In re Extended Stay Inc., et al., Case No. 09-13764 (JMP) (Jointly Administered).

1.24    ***Claim*** means a "claim," as defined in section 101(5) of the Bankruptcy Code, against any Debtor.

1.25    ***Class*** means any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

1.26    ***Commencement Date*** means June 15, 2009 or February 18, 2010, as applicable to the particular Debtor.

1.27    ***Confirmation Date*** means the date on which the Confirmation Order has been entered on the docket by the Clerk of the Bankruptcy Court.

1.27A   ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court in respect of the confirmation of the Plan.

1.28    ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.29    ***Contingent Claim*** means any Claim, the liability for which attaches or is dependent upon the occurrence or happening, or is triggered by, an event, which event has not yet occurred, happened, or been triggered, as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

1.30    ***Controlling Holder*** means Banc of America Securities LLC, Blue Ridge Investments, L.L.C., UBS Securities LLC, and BAWAG P.S.K. Bank für Arbeit und Wirtschaft und Österreichische Postsparkasse AG, in their capacity as the Controlling Holder under the Trust and Servicing Agreement, or any successor thereto.

1.31    ***Creditor*** means any Person that holds an Allowed Claim.

1.32    ***Creditor Representative*** means the member of the Creditors' Committee or other Person selected by the Creditors' Committee to participate in the management of the Litigation Trust.

1.33    ***Creditors' Committee*** means the Official Committee of Unsecured Creditors appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

1.34    ***Debtors*** has the meaning set forth in the preamble hereof.

1.35    ***Debt Financing Arrangements*** means the new debt financing to be provided to NewCo and the Reorganized Debtors on the Effective Date pursuant to that certain Commitment Letter dated May 27, 2010 among the Sponsors and the Debt Financing Lenders for a new senior secured loan on terms and conditions set forth therein, including the term sheet attached as Exhibit A thereto.

1.36    ***Debt Financing Lenders*** means JP Morgan Chase Bank, N.A. and Deutsche Bank Securities, Inc., together with their successors and assigns pursuant to assignments made in accordance with the applicable terms of the Debt Financing Arrangements, individually or collectively as the context may require, solely in their capacity as such.

1.37    ***Debtor in Possession*** means each Debtor in its capacity as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

1.38    ***Disallowed Claim*** means a Claim or a portion of a Claim that is disallowed by an order of the Bankruptcy Court or such other court of competent jurisdiction.

1.39    ***Disclosure Statement*** means the disclosure statement related to the Plan filed with and approved by the Bankruptcy Court, as such disclosure statement may be amended, modified or supplemented.

1.40    ***Disputed Claim*** means any Claim (including any Administrative Expense Claim) against any Debtor, proof of which was timely and properly filed, which is disputed under the Plan or as to which the Debtors have interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed.  A Claim that is disputed by the Debtors as to its amount only shall be deemed Allowed in the amount the Debtors admit owing, if any, and disputed as to the excess.

1.41    ***Distribution*** means the payment or distribution under the Plan of property or interests in property to the holders of Allowed Claims.

1.42    ***Distribution Date*** means each of (a) the Initial Distribution Date, (b) the first Business Day after the end of the months of March and September, commencing with the first such date to occur after the Effective Date, and (c) the Final Distribution Date.

1.43    ***DL-DW*** means DL-DW Holdings, LLC.

1.44    ***Effective Date*** means a Business Day on or after the Confirmation Date selected by the Debtors, the Investor and each of the Sponsors on which (a) all of the conditions precedent to the effectiveness of the Plan specified in Section 9.1 have been satisfied or waived and (b) no stay of the Confirmation Order is in effect.

1.45    ***Equity Interest*** means the interests of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common stock or preferred stock, or any membership interest, partnership interest or other instrument evidencing a present ownership interest in any of the Debtors, including any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.46    ***ESA Canada Properties Borrower Interests*** means the limited liability company interests of ESA Canada Properties Borrower L.L.C., authorized pursuant to its limited liability company agreement, as in effect immediately prior to the Effective Date.

1.47    ***ESA Canada Properties Interests*** means the shares of beneficial interest of ESA Canada Properties Trust, authorized pursuant to its trust agreement, as in effect immediately prior to the Effective Date.

1.48    ***ESA MD Borrower Interests*** means the limited liability company interests of ESA MD Borrower L.L.C., authorized pursuant to its limited liability company agreement, as in effect immediately prior to the Effective Date.

1.49    ***ESA MD Properties Trust Certificate*** means the certificate of ESA MD Properties Business Trust, authorized pursuant to its trust agreement, as in effect immediately prior to the Effective Date.

1.50    ***ESA P Portfolio MD Borrower Interests*** means the limited liability company interests of ESA P Portfolio MD Borrower L.L.C., authorized pursuant to its limited liability company agreement, as in effect immediately prior to the Effective Date.

1.51    ***ESA P Portfolio MD Trust Certificate*** means the certificate of ESA P Portfolio MD Trust, authorized pursuant to its trust agreement, as in effect immediately prior to the Effective Date.

1.52    ***ESA UD*** means ESA UD Properties L.L.C., a Delaware limited liability company.

1.53    ***ESA UD Mortgage Claim*** means the Claim of Bank of America, N.A. under the ESA UD Mortgage Facility.

1.54    ***ESA UD Mortgage Facility*** means the Loan Agreement, dated February 14, 2008, among ESA UD, ESA 2007 Operating Lessee Inc. and Bank of America, N.A.

1.55    ***ESH/ESA General Partnership Interests*** means the 1% general partnership interests in ESH/MSTX Property L.P., ESH/TX Properties L.P., ESA TX Properties L.P., and ESA P Portfolio TXNC Properties L.P., held by ESH/MSTX GP L.L.C., ESH/TXGP L.L.C., ESA TXGP L.L.C., and ESA P Portfolio TXNC GP L.L.C. respectively, as authorized pursuant to the limited partnership agreements of ESH/MSTX Property L.P., ESH/TX Properties L.P., ESA TX Properties L.P., and ESA P Portfolio TXNC Properties L.P., as in effect immediately prior to the Effective Date.

1.56    ***ESH/TN Properties Membership Interest*** means the 1% membership interest in ESH/TN Properties L.L.C. held by ESH/TN Member Inc., authorized pursuant to the limited liability company agreement of ESH/TN Properties L.L.C., as in effect immediately prior to the Effective Date.

1.57    ***ESI*** means Extended Stay Inc., a Delaware corporation.

1.58    ***ESI Settlement*** has the meaning set forth in Section 6.18 hereof.

1.59    ***ESI Settlement Order*** means the order of the Bankruptcy Court approving the ESI Settlement.

1.60    ***Estate*** means the estate of each Debtor as created under section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

1.61    ***Estimated Amount*** means the estimated dollar value of an Unliquidated Claim, Disputed Claim or Contingent Claim pursuant to section 502(c) of the Bankruptcy Code or as otherwise agreed to between the holder of such Claim and the applicable Debtor or NewCo, or as otherwise determined by the Bankruptcy Court.

1.62    ***Examiner's Report***  means the report of Ralph R. Mabey, examiner in the Chapter 11 Cases, filed on April 8, 2010 [Docket No. 913].

1.63    ***Excess Cash***  means all cash and cash equivalents on the balance sheet of the Debtors as of the Effective Date but immediately prior to the Investment by the Investor, less (i) amounts necessary to fund the Administrative/Priority Claims Reserve, and (ii) the tax payments to be made to NewCo pursuant to paragraph 73 of the Confirmation Order.

1.64    ***Existing Equity*** means the Equity Interest of each of the Debtors, other than the Tier 2 Debtors, authorized pursuant to its certificate of incorporation or other organizational documents, as in effect immediately prior to the Effective Date.

1.65    ***Existing Letters of Credit*** means, collectively, the letters of credit described on Exhibit F annexed hereto, all as amended or modified from time to time, and all documents entered into in connection therewith.

1.66    ***Final Distribution Date*** means a date on or after the Initial Distribution Date and after all Disputed Claims have become either Allowed Claims or Disallowed Claims that is selected by NewCo in its discretion but, in any event, is no later than thirty (30) days thereafter, or such later date as the Bankruptcy Court may establish, upon request by NewCo, for cause shown.

1.67    ***Final Order*** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, which has not been reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order not to be a Final Order.

1.68    ***G&A Reimbursement Agreements*** means the G&A Reimbursement Agreements entered into between HVM and one or more of the Debtors, as the same have been amended from time to time.

1.69 **General Unsecured Claims** means any Claim other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Claim, a Secured Claim, the Mortgage Facility Deficiency Claim or a Mezzanine Facilities Claim.

1.70 **Guaranty** means the Guaranty Agreement, dated as of June 11, 2007, by Lightstone Holdings LLC, HVM Manager Owner, ESI and Homestead in respect of the obligations of the borrowers under the Mortgage Facility and the Mezzanine Facilities.

1.71 **Guaranty Claim** means any rights to the payment of damages, claims, causes of action, charges, suits, demands, defaults, rights of recovery, assessments, rights of set-off or rights of recoupment arising under or relating to the Guaranty (whether relating to the Mortgage Facility or the Mezzanine Facilities and whether paid prior to or following the Effective Date) as a result of the commencement of any of the Chapter 11 Cases.

1.72 **Homestead** means Homestead Village L.L.C., a Delaware limited liability company.

1.73 **HVM** means HVM L.L.C., a Delaware limited liability company.

1.74 **HVM Manager** means HVM Manager L.L.C., a Delaware limited liability company and the manager of HVM.

1.75 **HVM Manager Owner** means David Lichtenstein.

1.76 **Impaired** means, with respect to any Class of Claims or Equity Interests, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.77 **Indemnified Litigation** has the meaning set forth in Section 6.16 hereof.

1.77A **Indenture Trustee** means Manufacturers and Traders Trust Company, in its capacity as indenture trustee for the Extended Stay Inc. 9-7/8% Senior Subordinated Notes due 2011.

1.78 **Initial Distribution Date** means a date after the Effective Date that is selected by NewCo in its discretion but, in any event, is no later than five (5) days after the Effective Date, or such later date as the Bankruptcy Court may establish upon request by NewCo, for cause shown.

1.79 **Intellectual Property** means, collectively, patents, patent applications, trademarks, service marks, trade names, trademark registrations, service mark registrations, domain names, copyrights, licenses and know-how (including, without limitation, trade secrets and other unpatented and/or unpatentable proprietary or confidential information, systems or procedures as well as other inventions, works of authorship, confidential information, technology, software and documentation, data and databases and websites) and any registrations or applications to register the foregoing.

1.80 **Intercreditor Agreement** means the Intercreditor Agreement dated as of June 11, 2007, by and among Wachovia Bank, N.A., Bear Stearns Commercial Mortgage, Inc. and Bank of America, N.A., and the holders of the Mezzanine Facilities Claims.

1.81    ***Internal Revenue Code*** means the Internal Revenue Code of 1986, as amended from time to time, and any applicable rulings, Treasury Regulations, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

1.82    ***Investment*** means the investment that is to be made by the Investor as further described in Section 6.8 hereof.

1.83    ***Investment Agreement*** means the agreement dated June 4, 2010 by and among the Debtors, HVM Manager, HVM and the Investor.

1.84    ***Investor*** means CP ESH Investors, LLC, a newly formed entity wholly owned by the Sponsors.

1.85    ***Investor Certificates*** means those Mortgage Certificates in the aggregate principal amount (inclusive of estimated interest that would accrue through August 15, 2010) of $309,244,555.72 in Classes B, CFX, CFL, D, E, G, H and J beneficially owned by the Investor or its members or Affiliates, the actual amount of such Mortgage Certificates to be calculated as provided in Section 1.2 of the Investment Agreement.

1.86    ***IRS*** means the United States Internal Revenue Service.

1.87    ***Litigation Trust*** means the trust established on the Effective Date in accordance with the Plan and the Litigation Trust Agreement, for the benefit of the Litigation Trust Beneficiaries.

1.88    ***Litigation Trust Agreement*** means the trust agreement that, among other things, establishes the Litigation Trust, and describes the powers, duties and responsibilities of the Litigation Trustee, the Creditor Representative and the Special Servicer, which trust agreement shall be substantially in the form filed in the Plan Supplement and shall be reasonably acceptable to the Creditors' Committee and the Special Servicer (in consultation with the Operating Advisor).

1.89    ***Litigation Trust Assets*** means (i) all claims and causes of action of the Debtors or the Debtors in Possession under sections 502(d), 542 through 551, and 553 of the Bankruptcy Code, and (ii) any other potential claims, causes of actions, charges, suits or rights of recovery referenced in the Examiner's Report; provided, however, that the "Litigation Trust Assets" shall not include (a) the Windows Litigation (as such term is defined in the Investment Agreement), and (b) any claims, causes of action, suits or rights of recovery against the Debtors, the Reorganized Debtors, NewCo, HVM, the Operating Advisor, the Controlling Holder, the Trustee, the Successor Trustee, the Mortgage Facility Trust, the holders of Mortgage Certificates (solely in such capacity), or the Special Servicer.

1.90    ***Litigation Trust Beneficiaries*** means certain Persons that are entitled to the proceeds of the Litigation Trust Assets as set forth in the Litigation Trust Agreement, and are limited solely to the following, (i) the Mortgage Facility Trust, (ii) the holders of the Mezzanine Facilities Claims, (iii) the Indenture Trustee, and (iv) the holders of the General Unsecured Claims.

1.91    ***Litigation Trust Funding*** means the sum of $5,000,000 to be provided by the Debtors on the Effective Date, to provide the initial funding for the Litigation Trust described in Section 6.17 hereof.

1.92     ***Litigation Trust Funding Reimbursement*** means the amount to be paid to the Special Servicer in cash from the first proceeds of the Litigation Trust Assets, as set forth in the Litigation Trust Agreement.

1.93     ***Litigation Trustee*** means the Person selected by mutual agreement of the Special Servicer (with the consent of the Operating Advisor, such consent not to be unreasonably withheld) and the Creditors' Committee, as designated in the Plan Supplement, or, after the Effective Date, such other Person appointed by the mutual agreement of the Special Servicer and the Creditor Representative, or as otherwise determined by the Bankruptcy Court.

1.94     ***Loan REMIC*** has the meaning that is set forth in the Trust and Servicing Agreement.

1.95     ***Lower Tier REMIC*** has the meaning that is set forth in the Trust and Servicing Agreement.

1.96     ***Master Servicer*** means Wachovia Bank, National Association.

1.97     ***Merrill Swap Agreement*** means the Master Agreement, dated August 28, 2007, by and among Merrill Lynch Capital Services, Inc. and Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass Through Certificates, Series 2007-ESH Trust, and all Schedules thereto, including the Elections and Variables to the 1994 ISDA Credit Support Annex.

1.98     ***Mezzanine Facilities*** means, collectively, the mezzanine loan facilities described on Exhibit G annexed hereto, all as amended or modified from time to time, and all documents entered into in connection therewith.

1.99     ***Mezzanine Facilities Claims*** means, collectively, the Claims arising under the Mezzanine Facilities.

1.100     ***Mortgage Certificate*** means a mortgage certificate that was issued in connection with the Mortgage Facility.

1.101     ***Mortgage Debt Parties*** means, collectively, (i) the Successor Trustee, (ii) the Trustee, (iii) the Special Servicer, (iv) the Master Servicer, (v) the Operating Advisor, (vi) the Controlling Holder, and (vii) the Mortgage Facility Trust, and with respect to any of the foregoing, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members), partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity, and any Person claiming by or through any of them, but excluding any insurer of any of the Debtors. For the avoidance of doubt, this definition of "Mortgage Debt Parties" does not include TriMont Real Estate Advisors Inc. and any of its present and former Affiliates (whether by operation of law or otherwise), subsidiaries, current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members), partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity.

1.102 **Mortgage Facility** means the Mortgage Loan Agreement, dated as of June 11, 2007, by and among the Borrowers listed on Schedule 1.1(a) thereto and Wachovia Bank, National Association, Bear Stearns Commercial Mortgage, Inc. and Bank of America, N.A., as Lenders, as amended or modified from time to time and all documents entered into in connection therewith.

1.103 **Mortgage Facility Claim** means the Secured Claim of the Trustee under the Mortgage Facility.

1.104 **Mortgage Facility Deficiency Claim** means the Claim of the Trustee in respect of the Mortgage Facility, other than the Mortgage Facility Claim.

1.105 **Mortgage Facility Trust** means the trust created under the Trust and Servicing Agreement for the benefit of the holders of the Mortgage Certificates.

1.106 **Mortgage Parties Indemnification Fund** has the meaning set forth in Section 6.16 hereof.

1.107 **Mortgage Properties** means the collateral securing the Mortgage Facility.

1.108 **New Debtor Equity** means the common stock, preferred stock, limited liability company interests or limited or general partnership interests, as the case may be, of each of the Tier 1 Debtors, which is to be authorized and issued pursuant to the Plan.

1.109 **New ESA UD Mortgage Facility** means the new mortgage facility, in the principal amount of six million, two hundred fifty thousand dollars ($6,250,000) memorialized in loan documents, substantially in the form to be agreed upon by and among ESA UD, as borrower, and the lender thereunder prior to the Effective Date.

1.110 **New ESA UD Mortgage Note** means the note to be issued to ESA UD pursuant to the New ESA UD Mortgage Facility in the principal amount of six million, two hundred fifty thousand dollars ($6,250,000), bearing interest at the rate of LIBOR plus 4.0% per annum (with a LIBOR floor of 1.0% per annum), amortized on a 25 year amortization schedule, and due and payable in full 4 years from the Effective Date.

1.111 **NewCo** means a newly formed limited liability company, or such alternate corporate or other organizational entity that may be selected by the Investor and each of the Sponsors, to be organized as of the Effective Date in accordance with Section 6.7 hereof, or any successors in interest thereto, from and after the Effective Date.

1.112 **NewCo Certificate of Formation** means the Certificate of Formation of NewCo.

1.113 **NewCo Common Interests** means the membership interests or, as applicable, other common equity interests, in NewCo, having a stated value of one-thousand dollars ($1,000) per membership interest, which are to be authorized and issued pursuant to the Plan.

1.114 **NewCo Manager** means a newly formed limited liability company owned and controlled by Persons affiliated with or designated by the Investor and appointed as the successor manager of HVM, which may be a third party.

1.115 ***NewCo Management Incentive Plan*** means the NewCo Management Incentive Plan.

1.116 ***NewCo Operating Agreement*** means the Operating Agreement of NewCo.

1.117 ***Operating Advisor*** means Banc of America Securities LLC, UBS Securities LLC and Cerberus Capital Management, L.P., in their capacity as the Operating Advisor appointed under the Trust and Servicing Agreement, and not individually, or any successor thereto.

1.118 ***Other Existing Equity Interests*** means the Equity Interests in ESH/MSTX Property L.P., ESH/TX Properties L.P., ESA TX Properties L.P., ESA P Portfolio TXNC Properties L.P. and ESH/TN Properties L.L.C., other than the ESH/ESA General Partnership Interests and the ESH/TN Properties Membership Interest.

1.118A ***Other Secured Claims*** means any Secured Claims, except that the Mortgage Facility Claim, the Mezzanine Facilities Claims and the ESA UD Mortgage Claim shall not be treated as Other Secured Claims.

1.119 ***Person*** means an individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or any other entity (as defined in section 101(5) of the Bankruptcy Code) or group.

1.120 ***Plan*** means this plan of reorganization under chapter 11 of the Bankruptcy Code, including the Plan Documents, the Plan Supplement, and the Exhibits to the Plan annexed hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms of this Plan, which amendments shall be reasonably acceptable to the Investor, each of the Sponsors and the Special Servicer (with the consent of the Operating Advisor, such consent not to be unreasonably withheld).

1.121 ***Plan Administrator*** means the Person selected by the Special Servicer (with the consent of the Operating Advisor, which consent shall not be unreasonably withheld), to make the Distributions required to be made by the Debtors or the Reorganized Debtors under the Plan, to file objections to Claims, to the extent provided in Section 7.1(b) of the Plan, and to deal with administrative and other matters pertaining to the closing of the Chapter 11 Cases.

1.122 ***Plan Documents*** means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date.

1.123 ***Plan Supplement*** means the compilation of documents and forms of documents, schedules and exhibits, each in form and substance reasonably acceptable to the Investor and each of the Sponsors, to be filed on or before the date that is six (6) days prior to the last day on which votes to accept or reject the plan are accepted and which may be amended from time to time until the Confirmation Date.

1.124 ***Priority Claim*** means any Claim to the extent such claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or Priority Tax Claim.

1.125 **_Priority Tax Claim_** means an unsecured Claim of a governmental unit of a kind specified in section 507(a)(8) of the Bankruptcy Code.

1.126 **_Pro Rata Share_** means with respect to Allowed Claims, the ratio (expressed as a percentage) of the amount of an Allowed Claim in a Class to the aggregate amount of all Allowed Claims in the same Class (or applicable Classes).

1.127 **_Real Estate Investment Trust_** means a real estate investment trust within the meaning of Section 856 of the Internal Revenue Code.

1.128 **_Real Estate Mortgage Investment Conduit (or REMIC)_** means a real estate mortgage investment conduit, within the meaning of Section 860D of the Internal Revenue Code, that directly or indirectly holds the Mortgage Facility.

1.129 **_Record Date_** means the date to be established by the Bankruptcy Court for purposes of determining those holders of allowed claims that are entitled to vote to accept or reject this Plan.

1.130 **_Released Parties_** means (a) the Debtors, (b) NewCo, (c) each member of the Creditors' Committee, but solely in its capacity as such, and not individually, (d) the Investor, (e) each Sponsor, (f) the Debt Financing Lenders, (g) BHAC (provided that BHAC has entered into the BHAC IP Transfer Agreement as provided in Section 6.13 herein), (h) HVM, (i) HVM Manager, (j) HVM Manager Owner, (k) the Special Servicer, (l) the Mortgage Debt Parties, (m) the Mortgage Facility Trust, (n) the Master Servicer, (o) the Trustee, (p) the Successor Trustee, (q) the Operating Advisor, (r) the Controlling Holder, (s) Lightstone Holdings LLC, (t) the Indenture Trustee, (u) any present or former director, manager, officer, member, equity holder (and their respective Affiliates), employee, agent, financial advisor, partner, Affiliate, attorney, other professional advisor or representative (and their respective Affiliates) of the persons or parties described in clauses (a) through (u) hereof or of any Affiliate thereof, and (v) ESI and any of ESI's Affiliates or present or former directors or officers.

1.131 **_Reorganized Debtors_** means the Debtors, as reorganized as of the Effective Date in accordance with this Plan, and their successors.

1.132 **_Restructuring Transaction(s)_** means the creation or establishment or formation of an Affiliate of NewCo or a Reorganized Debtor, a dissolution or winding up of the corporate existence of a Debtor or the consolidation, merger, contribution of assets, or other transaction in which a Reorganized Debtor or non-Debtor Affiliate of a Debtor merges with or transfers some or substantially all of its assets and liabilities to NewCo or a Reorganized Debtor or its current or newly formed Affiliates, or any transaction related to the foregoing, on or following the Effective Date, which shall be filed no later than five (5) days prior to the Confirmation Hearing as an update to the Plan Supplement.

1.133 **_Schedules_** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors with the Bankruptcy Court on September 28, 2009 and on March 4, 2010, as required by section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been and may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009.

1.134　**Secured Claim** means any Claim to the extent reflected in the Schedules or a proof of claim as a secured Claim, which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.135　**Securities Act** means the Securities Act of 1933, as amended.

1.136　**Special Servicer** means CWCapital Asset Management LLC, and any successor thereto, in its capacity as special servicer of the Successor Trustee.

1.137　**Sponsors** means Centerbridge Partners, L.P. and Paulson & Co. Inc, each on behalf of various investment funds and accounts managed by them, and Blackstone Real Estate Partners VI L.P. on behalf of itself and its parallel funds and related alternative vehicles, solely in their capacity as such.

1.138　**Successor Trustee** means U.S. Bank National Association, as successor in interest to Wells Fargo Bank, N.A., as Successor Trustee in Trust for holders of Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2007-ESH.

1.139　**Swap Agreements** means, collectively, (a) the Merrill Swap Agreement, and (b) the Wachovia Swap Agreement.

1.140　**Tier 1 Debtors** means the Debtors set forth on Exhibit C hereof.

1.141　**Tier 2 Debtors** means the Debtors set forth on Exhibit D hereof.

1.142　**Tier 3 Debtors** means the Debtors set forth on Exhibit E hereof, which shall be liquidated and dissolved pursuant to this Plan.

1.143　**Treasury Regulations** means regulations (including temporary and proposed) promulgated under the Internal Revenue Code of 1986, as amended from time to time.

1.144　**Trustee** means Wells Fargo Bank, N.A., as Trustee in Trust for holders of Mortgage Certificates.

1.145　**Trust and Servicing Agreement** means the Trust and Servicing Agreement, dated as of August 1, 2007 (as amended or modified), originally entered into by and among Wachovia Large Loan, Inc., as Depositor, Wachovia Bank, National Association, as Servicer and Special Servicer, and Wells Fargo Bank, N.A., as Trustee relating to the issuance of the Mortgage Certificates and the servicing of the Mortgage Loan.

1.146　**TRS** means a taxable real estate investment trust subsidiary (within the meaning of Section 856(l) of the Internal Revenue Code) of the Debtors or the Reorganized Debtors.

1.147　**Upper Tier REMIC** has the meaning set forth in the Trust and Servicing Agreement.

1.148　**Unimpaired** means, with respect to a Class of Claims, a Claim that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.149  ***Unliquidated Claim*** means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.150  ***Voting Deadline*** means the deadline for voting on the Plan fixed by the Bankruptcy Court, or such later date fixed by the Debtors with the approval of the Investor and each of the Sponsors, such approval not to be unreasonably withheld.

1.151  ***Wachovia Swap Agreement*** means the Master Agreement, dated August 28, 2007, by and among Wachovia Bank, National Association, and Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass Through Certificates, Series 2007-ESH Trust, and all Schedules thereto, including the Elections and Variables to the 1994 ISDA Credit Support Annex.

## B.  Other Terms.

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.

## C.  Exhibits.

All exhibits to the Plan are annexed hereto.  All Plan Documents to be included in exhibits to the Plan Supplement shall be contained in a separate Plan Supplement exhibit volume, which shall be filed with the Clerk of the Bankruptcy Court not later than the date that is ten (10) days prior to the last date on which votes to accept or reject the Plan are accepted.  Such Plan Supplement exhibit volume may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Such Plan Supplement exhibit volume shall also be available for download from the following website: http://www.kccllc.net/extendedstay.  Holders of Claims may also obtain a copy of such Plan Supplement exhibit volume, once filed, from the Debtors by a written request sent to the following address:

c/o HVM L.L.C.
100 Dunbar Street,
Spartanburg, South Carolina 29306
Attn: Gary A. DeLapp, Esq.

## ARTICLE II

## PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS
## AND PRIORITY TAX CLAIMS

2.1  ***Payment of Allowed Administrative Expense Claims.***  The Allowed Amount of each Administrative Expense Claim that is Allowed as of the Effective Date shall be paid in full, in Cash, on the Effective Date from the Administrative/Priority Claims Reserve; provided, however, that (a) claims of the type specified in Section 1.7(c)(i) of the Plan, (b) any payments relating to Change in Control Agreements referred to in the Investment Agreement arising as a result of the occurrence of

the Effective Date, and (c) any severance payments that the Investor consents to or directs the Debtors to pay prior to the Effective Date, shall be assumed and paid by the Reorganized Debtors or NewCo, as applicable, in accordance with the terms and conditions of the particular transactions and any agreements relating thereto. Each holder of an Administrative Expense Claim of the type specified in Section 1.7(c)(ii) or Section 1.7(c)(iii) hereof shall be paid the Allowed Amount of such Administrative Expense Claim in full, in Cash, as soon as practicable after such Administrative Expense Claim is Allowed from the Administrative/Priority Claims Reserve. In the event that there is any dispute as to whether an Allowed Administrative Expense Claim should be paid from the Administrative/Priority Claims Reserve or by the Reorganized Debtors or NewCo, as applicable, such dispute shall be resolved by the Bankruptcy Court.

2.2     ***Compensation and Reimbursement Claims.*** The Bankruptcy Court shall fix in the Confirmation Order a date for the filing of, and a date to hear and determine, all applications for final allowances of compensation or reimbursement of expenses under section 330 of the Bankruptcy Code or applications for allowance of Administrative Expense Claims arising under section 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code. The Allowed Amount of all Administrative Expense Claims arising under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code shall, in full satisfaction, settlement, discharge and release thereof, and in exchange therefore, be paid in full, in Cash, from the Administrative/Priority Claims Reserve (a) upon the later of (i) the Effective Date and (ii) the date upon which any such Administrative Expense Claim becomes Allowed or (b) at such later date or upon such other less favorable terms as may be mutually agreed upon between each such Administrative Expense Creditor and the Plan Administrator.

2.3     ***Priority Tax Claims.*** Each holder of an Allowed Priority Tax Claim shall, in full satisfaction, settlement, discharge and release thereof, and in exchange therefore, be paid the Allowed Amount of its Allowed Priority Tax Claim from the Administrative/Priority Claims Reserve either (a) in full, in Cash, on the latest of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law or (b) upon such other terms as may be mutually agreed upon between each holder of a Priority Tax Claim and the Plan Administrator.

# ARTICLE III

# CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

3.1     ***Summary.*** The following table designates the Classes of Claims against and Equity Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan and (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

| CLASS | DESIGNATION | STATUS | ENTITLED TO VOTE? |
|---|---|---|---|
| Class 1 | Priority Claims | Unimpaired | No |
| Class 2 | Mortgage Facility Claim | Impaired | Yes |
| Class 3 | ESA UD Mortgage Claim | Impaired | Yes |
| Class 4A | Mortgage Facility Deficiency Claim | Impaired | Yes |
| Class 4B | Mezzanine Facilities Claims | Impaired | Yes |

| Class 5 | General Unsecured Claims | Impaired | Yes |
|---------|--------------------------|----------|-----|
| Class 6 | Existing Equity | Impaired | No |
| Class 7 | ESA MD Properties Trust Certificate | Unimpaired | No |
| Class 8 | ESA MD Borrower Interests | Unimpaired | No |
| Class 9 | ESA P Portfolio MD Trust Certificate | Unimpaired | No |
| Class 10 | ESA P Portfolio MD Borrower Interests | Unimpaired | No |
| Class 11 | ESA Canada Properties Interests | Unimpaired | No |
| Class 12 | ESA Canada Properties Borrower Interests | Unimpaired | No |
| Class 13 | ESH/TN Properties L.L.C. Membership Interests | Unimpaired | No |
| Class 14 | ESH/ESA General Partnership Interests | Unimpaired | No |
| Class 15 | Other Existing Equity Interests | Impaired | No |
| Class 16 | Other Secured Claims | Unimpaired | No |

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1     *Class 1.*  Priority Claims.

(a)     *Classification*:  Class 1 consists of the Allowed Priority Claims.

(b)     *Treatment*:  Each holder of an Allowed Priority Claim shall be paid the Allowed Amount of its Allowed Priority Claim from the Administrative/Priority Claims Reserve, in full, in Cash, on the later of the Effective Date and as soon as practicable after the date such Priority Claim becomes Allowed.

(c)     *Voting*:  Class 1 is Unimpaired.  The holders of the Claims in Class 1 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.2     *Class 2.*  Mortgage Facility Claim.

(a)     *Classification and Allowance*:  Class 2 consists of the Allowed Mortgage Facility Claim which, together with the Mortgage Facility Deficiency Claim, shall be an Allowed Claim of at least $4,100,000,000.

(b)     *Treatment*:   The holder of the Allowed Mortgage Facility Claim shall receive 100% of the Cash Distribution and the Investor Certificates on the Effective Date, with such Cash Distribution to be distributed in accordance with Section 6.3 hereof and the Investor Certificates will be cancelled without any distributions on account thereof.

(c)     *Non-Consensual Confirmation*:  In the event that Class 2 rejects the Plan, the Debtors reserve the right to seek to confirm the Plan under section 1129(b) of the Bankruptcy Code, and, in such event, the Debtors reserve the right, pursuant to Sections 5.3 and 13.1 hereof, to alter, amend or modify the Plan, with the consent of the Investor and each of the Sponsors, such consents not to be unreasonably withheld, to offer different treatment to Class 2, to the extent that the Debtors

determine that such modifications are necessary to comply with the requirements of section 1129(b) of the Bankruptcy Code.

(d)     *Adequate Protection Payments*:  Nothing in this Plan shall affect the rights of the Mortgage Debt Parties to retain payments made by the Debtors in accordance with the Cash Collateral Order.

(e)     *Voting*:  Class 2 is Impaired.  The holder of the Claim in Class 2 is entitled to vote to accept or reject the Plan.

### 4.3     *Class 3.*  ESA UD Mortgage Claim.

(a)     *Classification*:  Class 3 consists of the Allowed ESA UD Mortgage Claim.

(b)     *Treatment*:  The holder of the Allowed ESA UD Mortgage Claim shall receive on the Distribution Date the New ESA UD Mortgage Note in full settlement, satisfaction, release and discharge of the Allowed ESA UD Mortgage Claim.

(c)     *Interest*:  Interest shall neither accrue nor be payable from and after the Commencement Date with respect to the Allowed ESA UD Mortgage Claim.

(d)     *Voting*:  Class 3 is Impaired.  The holder of the Claim in Class 3 is entitled to vote to accept or reject the Plan.

### 4.4     *Class 4A.*  Mortgage Facility Deficiency Claim.

(a)     *Classification and Allowance*:  Class 4A consists of the Mortgage Facility Deficiency Claim which, together with the Mortgage Facility Claim, shall be an Allowed Claim of at least $4,100,000,000.

(b)     *Treatment*:  The holder of the Allowed Mortgage Facility Deficiency Claim shall receive an interest in the Litigation Trust to the extent that it is a Litigation Trust Beneficiary, which shall be distributed pursuant to Section 6.3 hereof, subject to the terms of the Intercreditor Agreement.

(c)     *Non-Consensual Confirmation*:  In the event that Class 4A rejects the Plan, the Debtors reserve the right to seek to confirm the Plan under section 1129(b) of the Bankruptcy Code, and, in such event, the Debtors reserve the right, pursuant to Sections 5.3 and 13.1 hereof, to alter, amend or modify the Plan, with the consent of the Investor and each of the Sponsors, such consents not to be unreasonably withheld, to offer different treatment to Class 4A, to the extent that the Debtors determine that such modifications are necessary to comply with the requirements of section 1129(b) of the Bankruptcy Code.

(d)     *Interest*:  Interest shall neither accrue nor be payable from and after the Commencement Date with respect to the Allowed Mortgage Facility Deficiency Claim.

(e)     *Voting*:  Class 4A is Impaired.  The holder of the Claim in Class 4A is entitled to vote to accept or reject the Plan.

### 4.5     *Class 4B.*  Mezzanine Facilities Claims.

(a)    *Classification*:  Class 4B consists of the Mezzanine Facilities Claims, which shall be Allowed Claims in the aggregate amount of at least $3,300,000,000.

(b)    *Treatment*:  The holders of the Allowed Mezzanine Facilities Claims shall receive interests in the Litigation Trust to the extent that they are Litigation Trust Beneficiaries, which shall be distributed pursuant to Section 6.3 hereof, subject to the terms of the Intercreditor Agreement.

(c)    *Non-Consensual Confirmation*:  In the event that Class 4B rejects the Plan, the Debtors reserve the right to seek to confirm the Plan under section 1129(b) of the Bankruptcy Code, and, in such event, the Debtors reserve the right, pursuant to Sections 5.3 and 13.1 hereof, to alter, amend or modify the Plan, with the consent of the Investor, each of the Sponsors and the Special Servicer (in consultation with the Operating Advisor), such consents not to be unreasonably withheld, to offer different treatment to Class 4B, to the extent that the Debtors determine that such modifications are necessary to comply with the requirements of section 1129(b) of the Bankruptcy Code.

(d)    *Interest*:  Interest shall neither accrue nor be payable from and after the Commencement Date with respect to the Allowed Mezzanine Facilities Claims.

(e)    *Voting*:  Class 4B is Impaired.  The holders of the Claim in Class 4B are entitled to vote to accept or reject the Plan.

4.6    ***Class 5.***  General Unsecured Claims.

(a)    *Classification*:  Class 5 consists of the General Unsecured Claims.

(b)    *Treatment*:  On the Effective Date, the holders of the General Unsecured Claims shall be paid 80% of their Allowed General Unsecured Claims up to a maximum aggregate amount of $450,000, with such amount to be gifted by the Special Servicer.  If 80% of the Allowed General Unsecured Claims would exceed $450,000 in the aggregate, the holders of the General Unsecured Claims shall receive their pro rata share of $450,000, with such amount to be gifted by the Special Servicer.  The holders of the General Unsecured Claims shall receive an interest in the Litigation Trust with respect to the balance of their Allowed General Unsecured Claims in accordance with the terms of the Litigation Trust Agreement.

(c)    *Interest*:  Interest shall neither accrue nor be payable from and after the Commencement Date with respect to Allowed General Unsecured Claims.

(d)    *Non-Consensual Confirmation:*  In the event that Class 5 rejects the Plan, the Debtors reserve the right to seek to confirm the Plan under section 1129(b) of the Bankruptcy Code, and, in such event, the Debtors reserve the right, pursuant to Sections 5.3 and 13.1 hereof, to alter, amend or modify the Plan, with the consent of the Investor, each of the Sponsors and the Special Servicer (in consultation with the Operating Advisor), such consents not to be unreasonably withheld, to offer different treatment to Class 5, to the extent that the Debtors determine that such modifications are necessary to comply with the requirements of section 1129(b) of the Bankruptcy Code.

(e)    *Voting*:  Class 5 is Impaired.  The holders of the Claims in Class 5 are entitled to vote to accept or reject the Plan.

4.7     ***Class 6.*** Existing Equity.

(a)     *Classification*: Class 6 consists of the Existing Equity.

(b)     *Treatment*:  No distribution shall be made under the Plan from the Estates in respect of the Existing Equity.  On the Effective Date, the certificates that previously evidenced ownership of Existing Equity shall be cancelled and shall be null and void, the holder(s) thereof shall no longer have any rights in respect of the Existing Equity, and such certificates shall not evidence any rights under the Plan.

(c)     *Voting*: Class 6 is Impaired.  The holders of Existing Equity in Class 6 are deemed to reject the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.8     ***Class 7.*** ESA MD Properties Trust Certificate.

(a)     *Classification*: Class 7 consists of the ESA MD Properties Trust Certificate.

(b)     *Treatment*:  The holder of the ESA MD Properties Trust Certificate shall retain the ESA MD Properties Trust Certificate.

(c)     *Voting*: Class 7 is Unimpaired.  The holder of the Equity Interests in Class 7 is deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.9     ***Class 8.*** ESA MD Borrower Interests.

(a)     *Classification*: Class 8 consists of the ESA MD Borrower Interests.

(b)     *Treatment*:  Each holder of ESA MD Borrower Interests shall retain its ESA MD Borrower Interests.

(c)     *Voting*: Class 8 is Unimpaired.  The holders of the Equity Interests in Class 8 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.10    ***Class 9.*** ESA P Portfolio MD Trust Certificate

(a)     *Classification*: Class 9 consists of the ESA P MD Portfolio Trust Certificate.

(b)     *Treatment*:  The holder of the ESA P MD Portfolio Trust Certificate shall retain the ESA P Portfolio Trust Certificate.

(c)     *Voting*: Class 9 is Unimpaired.  The holder of the Equity Interests in Class 9 is deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.11    ***Class 10.*** ESA P Portfolio MD Borrower Interests

(a)     *Classification*:  Class 10 consists of the ESA P Portfolio MD Borrower Interests.

(b)     *Treatment*:  Each holder of ESA P Portfolio MD Borrower Interests shall retain its ESA P Portfolio MD Borrower Interests.

(c)     *Voting*:  Class 10 is Unimpaired.  The holders of the Equity Interests in Class 10 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.12    **Class 11.**  ESA Canada Properties Interests.

(a)     *Classification*:  Class 11 consists of the ESA Canada Properties Interests.

(b)     *Treatment*:  Each holder of ESA Canada Properties Interests shall retain its ESA Canada Properties Interests.

(c)     *Voting*:  Class 11 is Unimpaired.  The holders of the Equity Interests in Class 11 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.13    **Class 12.**  ESA Canada Properties Borrower Interests.

(a)     *Classification*:  Class 12 consists of the ESA Canada Properties Borrower Interests.

(b)     *Treatment*:  Each holder of ESA Canada Properties Borrower Interests shall retain its ESA Canada Properties Borrower Interests.

(c)     *Voting*:  Class 12 is Unimpaired.  The holders of the Equity Interests in Class 12 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.14    **Class 13.**  ESH/TN Properties Membership Interest.

(a)     *Classification*:  Class 13 consists of the ESH/TN Properties Membership Interest.

(b)     *Treatment*:  The holder of the ESH/TN Properties Membership Interest shall retain its ESH/TN Properties Membership Interest.

(c)     *Voting*:  Class 13 is Unimpaired.  The holder of the Equity Interest in Class 13 is deemed to accept the Plan and, accordingly, is not entitled to vote to accept or reject the Plan.

4.15    **Class 14.**  ESH/ESA General Partnership Interests.

(a)     *Classification*:  Class 14 consists of the ESH/ESA General Partnership Interests.

(b)     *Treatment*:  Each holder of ESH/ESA General Partnership Interests shall retain its ESH/ESA General Partnership Interests.

(c)     *Voting*:  Class 14 is Unimpaired.  The holders of the Equity Interests in Class 14 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.16    **Class 15.**  Other Existing Equity Interests.

(a)     *Classification*:  Class 15 consists of the Other Existing Equity Interests.

(b)     *Treatment*:  No distribution shall be made under the Plan from the Estates in respect of the Other Existing Equity Interests.  On the Effective Date, the certificates that previously evidenced ownership of the Other Existing Equity Interests shall be cancelled and shall be null and void, the holders thereof shall no longer have any rights in respect of the Other Existing Equity Interests, and such certificates shall not evidence any rights under the Plan.

(c)     *Voting*:  Class 15 is Impaired.  The holders of the Other Existing Equity Interests in Class 15 are deemed to reject the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.17     **Class 16.**  Other Secured Claims.

(a)     *Classification*:  Class 16 consists of the Other Secured Claims.

(b)     *Treatment*:  On the Effective Date, or as soon thereafter as practicable, each holder of an Allowed Other Secured Claim shall receive, on account of its Claim against the Debtors, one of the following distributions: (i) the payment of such holder's Allowed Other Secured Claim in full in cash; (ii) the sale or disposition proceeds of the property securing any Allowed Other Secured Claim to the extent of the value of its interest in such property; (iii) the surrender to the holder of any Allowed Other Secured Claim of the property securing such Claim; or (iv) such other distributions as shall be necessary to satisfy the requirements of chapter 11 of the Bankruptcy Code.  The manner and treatment of each Allowed Other Secured Claim shall be determined by the Debtors with the Investor's consent and transmitted in writing to the holder of such Other Secured Claim prior to the Effective Date of the Plan.

(c)     *Voting*:  Class 16 is Unimpaired.  The holders of Other Secured Claims in Class 16 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

## ARTICLE V

## ACCEPTANCE, REJECTION, AND REVOCATION
## OR WITHDRAWAL OF THE PLAN

5.1     **Classes Entitled to Vote.**  Each holder of a Claim, as of the Record Date, in an Impaired Class, other than those Classes that are deemed to reject the Plan, shall be entitled to vote to accept or reject the Plan, in its sole and absolute discretion, subject to applicable law.

5.2     **Acceptance by Class of Claims.**  An Impaired Class of Claims shall be deemed to accept the Plan if (a) holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

5.3     **Nonconsensual Confirmation.**  In the event that any Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority required by section 1129(a) of the Bankruptcy Code, the Debtors, with the consent of the Investor and each of the Sponsors, reserve the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute

a motion for such relief, or (b) alter, amend or modify the Plan in accordance with Section 13.1 hereof. At the request of the Investor and each of the Sponsors, the Debtors shall exercise the right to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code in the manner reasonably requested by the Investor and each of the Sponsors, provided that the value of the Investment contemplated by Section 6.8 hereof, in the event that Class 2 rejects the Plan, shall not be reduced without the Debtors' prior written consent.

5.4 **Revocation or Withdrawal.**

(a) *Right to Revoke or Withdraw.* The Plan may be revoked or withdrawn prior to the Confirmation Date (i) by the Debtors (with the consent of the Special Servicer and the Operating Advisor, such consent not to be unreasonably withheld), in their discretion or at the direction of the Investor, in the event that the Investment Agreement is terminated in accordance with Section 13 thereof, and (ii) in all other circumstances, by the Debtors (with the consent of the Special Servicer and the Operating Advisor, such consent not to be unreasonably withheld), with the consent of the Investor and each of the Sponsors, in their sole discretion.

(b) *Effect of Withdrawal or Revocation.* If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or defenses or any admission or statement against interest by any Debtor, the Creditors' Committee, the Investor, any Sponsor or any other Person or to prejudice in any manner the rights of the Debtors, the Creditors' Committee, the Investor, any Sponsor or any Person in any further proceedings involving any Debtor.

5.5 **Amendment of Plan Documents.** From and after the Effective Date, the authority to amend, modify, or supplement the Plan Supplement, the Exhibits to the Plan Supplement and the Exhibits to the Plan and any documents attached to such Plan Supplement, Exhibits to the Plan Supplement and Exhibits to the Plan shall be as provided in such Plan Supplement, Exhibits to the Plan Supplement and Exhibits to the Plan and their respective attachments.

5.6 **Removal of Debtors.** At the option of the Investor and each of the Sponsors, with the consent of the Debtors and the consent of the Special Servicer and the Operating Advisor, which consents shall not be unreasonably withheld, a Debtor may be removed from this Plan. In such event, the Plan will omit any treatment of the assets and liabilities of such Debtor, unless otherwise agreed. The removal of any Debtor from this Plan will not affect this Plan with respect to any other Debtor.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

6.1 **Substantive Consolidation.** The Plan is premised upon the substantive consolidation of the Debtors solely for purposes of voting, confirmation and distribution. On and after the Effective Date (i) all assets and liabilities of the Debtors shall be treated for purposes of the Plan as though they were merged, (ii) all guarantees of the Debtors of payment, performance or collection of obligations of any other of the Debtors shall be eliminated and cancelled, (iii) all joint obligations of two or more of the Debtors and all multiple Claims against such entities on account of such joint obligations, shall be considered a single Claim against the Debtors, (iv) all intercompany claims and obligations between one Debtor and any of the other Debtors, including as a result of the rejection of any executory contract or unexpired lease, shall be eliminated, extinguished and

cancelled, except for such intercompany claims and obligations necessary to pursue Litigation Trust Assets, and (v) any Claim filed against any of the Debtors shall be deemed filed against the consolidated Debtors and shall be one Claim against and a single obligation of the consolidated Debtors. Except as otherwise provided in the Plan or the Restructuring Transactions (a) all property of each Debtor shall vest in each respective Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges or other interests and (b) each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect before the Effective Date. The provisions of the Intercreditor Agreement shall remain in full force and effect notwithstanding any substantive consolidation of the Debtors pursuant to the Plan.

6.2 ***Deemed Sale of Mortgage Properties.*** Notwithstanding the vesting and retention of title of the Mortgage Properties in the Reorganized Debtors, the transfer of 100% of the New Debtor Equity of the Tier 1 Debtors to NewCo and the distribution of the Cash Distribution by the Reorganized Debtors to the holder of the Allowed Mortgage Facility Claim effected pursuant to this Plan shall be deemed the equivalent of a sale of the Mortgage Properties to NewCo after foreclosure or acceptance of a deed in lieu of foreclosure by the Trustee or the Special Servicer, free and clear of all liens, claims, encumbrances and obligations.

6.3 ***Distributions to Holder of Allowed Mortgage Facility Claim.*** The Cash Distribution shall be distributed by the Plan Administrator to the holder of the Allowed Mortgage Facility Claim on the Effective Date in accordance with Section 8.2 which shall then distribute the Cash Distribution to the holders of Mortgage Certificates in accordance with the priority set forth in the Trust and Servicing Agreement. The Investor Certificates shall be distributed by the Plan Administrator to the holder of the Allowed Mortgage Facility Claim on the Effective Date in accordance with Section 8.2, which shall then cancel the Investor Certificates in accordance with the provisions of the Trust and Servicing Agreement without any Distribution to be made on account of such Investor Certificates.

6.4 ***Creation of NewCo.***

(a) *NewCo Certificate of Formation.* The NewCo Certificate of Formation shall be filed with the applicable Secretary of State on or before the Effective Date and shall, inter alia, include a provision prohibiting the issuance of non-voting equity securities in accordance with section 1123(a)(6) of the Bankruptcy Code. Pursuant to the Plan:

(i) NewCo Common Interests comprising 100% of the total issued NewCo Common Interests as of the Effective Date shall be issued to the Investor and its members or Affiliates designated pursuant to Section 2.3 of the Investment Agreement on the Effective Date; and

(ii) Additional NewCo Common Interests, in an amount agreed upon by the Debtors, the Investor and each of the Sponsors, shall be reserved for issuance under the NewCo Management Incentive Plan.

If the Investor and the Sponsors determine, subject to the terms of the Investment Agreement and the Plan, that an alternate corporate or organizational structure, form or identity is

appropriate, this Section 6.4(a) shall be changed to the extent necessary to effectuate any such alternate structure, form or identity.

(b) *NewCo Operating Agreement.* The NewCo Operating Agreement shall be deemed to become valid, binding and enforceable in accordance with its terms on the Effective Date.

(c) *Amendments to Debtors' Organizational Documents.* The certificates of incorporation, limited liability company operating agreements or certificates of trust (as applicable) for the surviving Tier 1 Debtors and Tier 2 Debtors shall be amended to include a provision prohibiting the issuance of non-voting equity securities in accordance with section 1123(a)(6) of the Bankruptcy Code.

6.5 **Existing Debt Securities.** As of the Effective Date, all notes and any obligations of the Debtors under the Mortgage Facility or the Mezzanine Facilities shall be discharged and be of no further force or effect against the Debtors or the Mortgage Properties, and the holders thereof shall have no rights against the Debtors or the Mortgage Properties, except the right to receive the Distributions provided herein. As of the Effective Date, the EA UD Mortgage Claim and the General Unsecured Claims, and the rights of the holders thereof thereunder, shall be cancelled and deemed null and void and of no further force and effect, and the holders thereof shall have no rights, and such notes, agreements, certificates and securities shall evidence no rights, except the right to receive the Distributions provided herein. It is understood, however, that (i) this Section 6.5 shall not affect any Guaranty Claims, other than a Guaranty Claim against a Debtor, or the pursuit of Litigation Trust Assets, and (ii) notwithstanding Section 6.11 hereof, the notes or certificates in respect of the Mortgage Facility and the Mezzanine Facilities shall not be surrendered and cancelled so as not to impair the pursuit of Litigation Trust Assets or any Guaranty Claims other than a Guaranty Claim against a Debtor.

6.6 **NewCo Management Incentive Plan.** On or after the Effective Date, NewCo shall implement the NewCo Management Incentive Plan, in form and substance reasonably acceptable to the Investor, with NewCo Common Interests being available for issuance thereunder, through a combination of the award of restricted membership interests and the granting of equity based awards, including, without limitation, restricted membership interests, deferred membership interests and options. The NewCo Management Incentive Plan will be designed to provide additional compensation to HVM pursuant to and in connection with the management agreements between the TRSs of NewCo that are parties to such management agreements and HVM that are being assumed by, or assumed and assigned to, the TRSs (or one or more newly formed TRSs, wholly owned either directly or indirectly by NewCo, or designated by an existing Debtor that is a TRS) and modified on the Effective Date pursuant to Section 11.5 hereof to provide for, among other things, such issuance of the NewCo Common Interests as part of HVM's compensation thereunder. HVM shall allocate the benefit of the NewCo Management Incentive Plan to the executive officers and senior management of HVM for their management services. The identity of recipients, amount of grants and other terms including, without limitation, vesting, will be determined by the manager of HVM.

6.7 **Corporate Reorganization Actions.** On or as soon as practicable after the Effective Date, the Debtors and/or NewCo, as applicable, shall take such actions as may be or become necessary to effectuate the following, all of which shall be authorized and approved in all respects, in each case without further action being required under applicable law, regulation, order, or rule (including, without limitation, any action by the board of directors, stockholders, partners or members of any Debtor or members of NewCo):

(a) the NewCo Certificate of Formation will be filed with the applicable Secretary of State effecting the formation of NewCo. At the option of the Investor and each of the Sponsors, the Debtors or NewCo may form additional subsidiaries owned in whole, or in part, by NewCo in order to effectuate the transactions contemplated hereunder;

(b) 100% of the New Debtor Equity of the Tier 1 Debtors shall be issued to NewCo or a subsidiary of NewCo;

(c) the Equity Interests of each of the Tier 2 Debtors, the ESH/ESA General Partnership Interests and the ESH/TN Properties Membership Interests shall remain outstanding and Unimpaired;

(d) the Equity Interests of each of the Tier 3 Debtors shall be cancelled, extinguished and not re-issued. The Tier 3 Debtors shall be deemed liquidated and dissolved by the Debtors for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; provided that, in its sole discretion, the Debtors may (but shall not be required to) file with the Office of the Secretary of State for the applicable state a certificate of dissolution; and

(e) the Restructuring Transactions shall be implemented.

If the Investor and the Sponsors determine, subject to the terms and conditions of the Investment Agreement and the Plan, that NewCo shall have an alternate corporate or organizational structure, form or identity, this Section 6.7 shall be changed to the extent necessary to effectuate any such alternate structure, form or identity.

6.8 **Investment.**

As consideration for the NewCo Common Interests to be issued pursuant to the Investment Agreement and the purchase of the business, assets and properties of the Debtors and to fund the distributions contemplated by the Plan, the Investor shall (i) cause NewCo to be provided with Cash in the aggregate amount of $3,615,755,444.28 (subject to adjustment as provided in this Section 6.8), comprised of (a) a $1,815,755,444.28 (subject to adjustment as provided in this Section 6.8) investment by the Investor, and (b) $1,800,000,000 from the proceeds of the Debt Financing Arrangements, and (ii) contribute to the Debtors the Investor Certificates (and waive the right to receive or retain any distribution on account of such Investor Certificates pursuant to the Plan) (collectively, the "Investment"). The amount of the Investor Certificates shall be calculated as of the Effective Date, and shall include the actual interest which would be payable on the Investor Certificates to the Effective Date that would have been payable absent the contribution and waiver provided herein. To the extent that the amount of the Investor Certificates differs from the amount set forth on Schedule 1.2 of the Investment Agreement as a result of the calculation of interest, the Cash portion of the Investment (and the aggregate Cash amount to be provided to NewCo by the Investor) shall be adjusted up or down accordingly on a dollar for dollar basis. The NewCo Common Interests that the Investor shall receive on the Effective Date as a result of the Investment will comprise 100% of the total issued and outstanding NewCo Common Interests as of the Effective Date.

On the Effective Date, the Investor will also contribute Cash to NewCo in the amount of the Reserve, as such term is defined in the Investment Agreement.

If the Investor and the Sponsors determine, subject to the terms and conditions of the Investment Agreement and Plan, that NewCo shall have an alternate corporate or organizational structure, form or identity, the structure of the Investment contemplated in this Section 6.8 shall be changed to the extent necessary to effectuate any such alternate structure, form or identity.

6.9     ***Effectuating Documents and Further Transactions.***  On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Investor and each of the Sponsors as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Each of the officers of the Debtors, the Reorganized Debtors and NewCo is authorized, without the need for any further order or authority, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.  The Reorganized Debtors are authorized to execute all documents and enter into all agreements as may be necessary and appropriate in connection with the Debt Financing Arrangements.

6.10    ***Allocation of Plan Distributions Between Principal and Interest.***  To the extent that any Allowed Mortgage Deficiency Facility Claim, Allowed Mezzanine Facility Claim, or Allowed General Unsecured Claim scheduled to receive a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim (as determined for federal income tax purposes) first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

6.11    ***Surrender and Cancellation of Instruments.***  Subject to Section 6.5 hereof, each holder of an instrument evidencing a Claim shall surrender such instrument to the Reorganized Debtors.  At the option of the Reorganized Debtors or NewCo, as applicable (in their reasonable discretion), no Distribution hereunder shall be made to or on behalf of any holder of such Claim unless and until such instrument is received or the unavailability of such instrument is reasonably established to the satisfaction of the Reorganized Debtors.  In accordance with section 1143 of the Bankruptcy Code, any such holder of such a Claim that fails to surrender or cause to be surrendered such instrument or to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Reorganized Debtors and, in the event that the Reorganized Debtors requests, fails to furnish a bond in form and substance (including, without limitation, amount) reasonably satisfactory to the Reorganized Debtors shall be deemed to have forfeited all rights, claims, and interests and shall not participate in any Distribution hereunder.

6.12    ***Letters of Credit.***  At or prior to the Effective Date, in the Debtors' discretion, with the consent of the Investor and each of the Sponsors, (a) the Existing Letters of Credit shall be terminated and any cash collateral provided thereunder shall be released to the entity that posted such collateral; and (b) the Reorganized Debtors shall provide any and all letters of credit and related cash collateral necessary to obtain and maintain in effect on or after the Effective Date all such forms of insurance as are customary to operate a business of the size and type of the Debtors; provided, however, that on or after the Effective Date the Investor shall reimburse the Reorganized Debtors for any cash collateral referred to in clause (b) without any impact on the Cash Distribution.

6.13    ***BHAC IP Transfer Agreement.***  Pursuant to the intellectual property transfer agreement (the "<u>BHAC IP Transfer Agreement</u>") with BHAC, on the Effective Date, BHAC shall transfer to NewCo or its designee, which may be a third party, the BHAC IP.  In the event the Debtors

and BHAC have not executed the BHAC IP Transfer Agreement prior to June 17, 2010 (unless otherwise agreed by the Investor), the Special Servicer shall commence proceedings to foreclose on the BHAC IP and on the Effective Date shall assign and transfer the BHAC IP to NewCo or its designee, which may be a third party, or at the Investor's option, the Debtors, for a portion of the consideration provided on account of the Mortgage Facility Claim as set forth herein. Upon the receipt of the BHAC IP from BHAC or the Special Servicer, as applicable, the Reorganized Debtors shall transfer the BHAC IP to NewCo or its designee, which may be a third party.

### 6.14 *Consistent Tax Reporting.*

(a)      For federal income tax purposes, (i) the distributions described in Section 4.2 shall be treated as a distribution to the holders of Mortgage Certificates following a sale of the Mortgage Properties (and all other assets deemed to be transferred to NewCo), (ii) the distribution described in Section 4.3 shall be treated as a distribution of undivided interests in the assets of NewCo to the holder of the Allowed ESA UD Mortgage Claim followed by a sale of such assets for the New ESA UD Mortgage Note, and (iii) the distributions described in Sections 4.4, 4.5 and 4.6 shall be treated as described in Section 6.17(c). All parties will be required to report for all federal income tax purposes in a manner consistent with the characterization of the distributions described above.

(b)      As soon as possible after the Effective Date, and to the extent required by Section 1060 of the Internal Revenue Code, NewCo shall determine the aggregate value of the underlying assets of NewCo as of the Effective Date and the portions of such value that are allocable, respectively, to the New ESA UD Mortgage Note and the Investment. Such allocation will take into account the relative fair market values of the New ESA UD Mortgage Note and the Investment. NewCo will apprise, in writing, all parties of such aggregate valuation and allocation. The aggregate valuation and allocation shall be used consistently by all parties for all federal income tax purposes.

### 6.15 *Issuance of NewCo Common Interests to Investor or Sponsor Affiliates.*

(a)      The Investor, the Sponsors or their Affiliates, in their respective sole discretion, may deliver a written schedule to the Debtors within ten (10) days after entry of the Confirmation Order to designate that some or all of the NewCo Common Interests to be issued to the Investor, the Sponsors or their Affiliates under the Plan be issued in the name of, and delivered to, one or more of their managed funds and/or respective affiliates, so long as such issuance and delivery is in compliance with federal and state securities laws and does not require NewCo to register as an "investment company" or an entity "controlled" by an "investment company" within the meaning of the Investment Company Act of 1940, as amended and the rules and regulations of the Securities and Exchange Commission thereunder.

(b)      In the event that the Investor, the Sponsors or their Affiliates make the designation pursuant to Section 6.15(a) above, the funds managed by the Investor, the Sponsors and/or their respective affiliates that are so designated shall have the rights, entitlements and benefit that would otherwise inure to the Investor, the Sponsors or their Affiliates in their capacity as a holder of the NewCo Common Interest as provided in the Plan, including those rights, entitlements and benefits of the Investor, the Sponsor or the Affiliate specified in Section 6.4(a)(i) above.

(c)      Each of the Loan REMIC, the Upper Tier REMIC, and the Lower Tier REMIC shall adopt a plan of liquidation immediately prior to the Effective Date (provided, however, that notwithstanding the liquidation of the Loan REMIC, the Lower Tier REMIC and the Upper Tier

REMIC, the Mortgage Facility Trust shall not liquidate and shall remain in full force and effect until the termination of the Mortgage Parties Indemnification Fund.

### 6.16 *Mortgage Parties Indemnification Fund.*

(a)     On the Effective Date, the Debtors shall transfer $20 million to the Special Servicer which shall hold such funds in a cash collateral account (the "Mortgage Parties Indemnification Fund") for the benefit of the Mortgage Debt Parties to satisfy any indemnification obligations of the Mortgage Facility Trust with respect to any post-Confirmation Date litigation commenced against the Mortgage Debt Parties regarding the voting on the Plan, distributions under the Plan and any other actions taken by the Mortgage Debt Parties in connection with the Plan, including the implementation thereof (the "Indemnified Litigation"). Unless the funds maintained in the Mortgage Parties Indemnification Fund are paid to the Mortgage Debt Parties in connection with any Indemnified Litigation, the Special Servicer (or such Person designated by the Special Servicer or the Successor Trustee) shall hold the Mortgage Parties Indemnification Fund in a cash collateral account for a period of six (6) years from the Effective Date of the Plan. Upon the later of termination of the six-year period or entry of a final, non-appealable judgment in any then-pending Indemnified Litigation, any and all cash remaining in the Mortgage Parties Indemnification Fund shall be distributed to the holder of the Allowed Mortgage Facility Claim, for distribution to the first tranche of Mortgage Certificates that are held by holders that have not received payment in full under this Plan and, to the extent that there are sufficient funds remaining after payment in full of such tranche of Mortgage Certificate holders, to other Mortgage Certificate holders in accordance with the priorities set forth in the Trust and Servicing Agreement. Each Mortgage Debt Party may receive reimbursement for any fees that such Mortgage Debt Party has incurred in connection with any Indemnified Litigation by submitting invoices (with appropriate redactions for privilege) to the Special Servicer (or such Person designated by the Special Servicer), which shall pay such invoices from the funds maintained in the Mortgage Parties Indemnification Fund reasonably promptly after receipt of such invoices. In addition, the Special Servicer shall be entitled to reasonably prompt reimbursement for any fees that the Special Servicer incurs in connection with any Indemnified Litigation from the funds maintained in the Mortgage Parties Indemnification Fund.

(b)     *Federal Income Tax Treatment.* For all United States federal income tax purposes, all parties shall treat the transfer of Cash to the Mortgage Parties Indemnification Fund as (1) a transfer of Cash (subject to any obligations relating to those assets) directly to the holders of Mortgage Certificates (in accordance with the priorities set forth in the Trust and Servicing Agreement), followed by (2) the transfer by the holders of Mortgage Certificates otherwise entitled to receive such Cash to the Mortgage Parties Indemnification Fund. Accordingly, the holders of Mortgage Certificates otherwise entitled to receive such Cash shall be treated for United States federal income tax purposes as the direct owners of their respective share of the Cash in the Mortgage Parties Indemnification Fund. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. The Special Servicer shall send annually to each holder of Mortgage Certificates that is treated as a direct owner of any portion of the Mortgage Parties Indemnification Fund a separate statement setting forth any income earned with respect to, or any expenditure made out of, such portion of the Mortgage Parties Indemnification Fund as may be relevant for United States federal income tax purposes.

### 6.17 *Litigation Trust*.

(a)     *Creation of Litigation Trust.* On the Effective Date, the Debtors shall transfer the Litigation Trust Funding to the Litigation Trust and the Debtors and the Litigation Trustee shall

execute the Litigation Trust Agreement and shall take all steps necessary to establish the Litigation Trust in accordance with the Plan. On the Effective Date, the Debtors and ESI shall be deemed to have automatically transferred to the Litigation Trust all of their right, title, and interest in and to all of the Litigation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Litigation Trust free and clear of all Claims and Liens, subject only to the Allowed Claims of the Litigation Trust Beneficiaries as set forth in the Plan and the expenses of the Litigation Trust as provided in the Litigation Trust Agreement. Thereupon, the Debtors and ESI shall have no interest in the Litigation Trust Assets or the Litigation Trust. In connection with the vesting and transfer of the Litigation Trust Assets, including rights and causes of action, any attorney-client, work-product protection or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Litigation Trust shall vest in the Litigation Trust. The Debtors, ESI, and the Litigation Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, protections and immunities. In the event of any conflict between the terms of this Section 6.17 and the Litigation Trust Agreement, the terms of the Litigation Trust Agreement shall govern. To the extent any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the Debtors, and the Litigation Trustee shall be deemed to have been designated as a representative of the Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of the Debtors. Notwithstanding the foregoing, all net proceeds of such Litigation Trust Assets shall be transferred to the Litigation Trust to be distributed to holders of the Litigation Trust Interests consistent with the Plan and the Litigation Trust Agreement.

(b)     *Purpose of the Litigation Trust.* The Litigation Trust shall be established for the sole purpose of liquidating and distributing the Litigation Trust Assets contributed to the Litigation Trust in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(c)     *Federal Income Tax Treatment of Litigation Trust.* For all United States federal income tax purposes, all parties shall treat the transfer of the Litigation Trust Assets to the Litigation Trust as (1) a transfer of the Litigation Trust Assets directly to the Litigation Trust Beneficiaries, followed by (2) the transfer by such beneficiaries to the Litigation Trust of the Litigation Trust Assets in exchange for an interest in the Litigation Trust; provided, however, that the Litigation Trust Assets will be subject to any post-Effective Date obligations incurred by the Litigation Trust relating to the pursuit of Litigation Trust Assets. Accordingly, the Litigation Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Litigation Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(d)     *Tax Reporting.*

(i)     The Litigation Trustee shall file tax returns for the Litigation Trust treating the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(ii)     The Litigation Trustee also shall annually send to each holder of an interest in the Litigation Trust a separate statement regarding the receipts and expenditures of the Litigation Trust as relevant for United States federal income tax

purposes and will instruct all such holders to use such information in preparing their United States federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their United States federal income tax returns.

(iii)     As soon as reasonably practicable after the Litigation Trust Assets are transferred to the Litigation Trust, the Litigation Trustee shall make a good faith valuation of the Litigation Trust Assets.  Such valuation shall be made available from time to time to all parties to the Litigation Trust, to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(iv)     Allocations of Litigation Trust taxable income or loss of the Litigation Trust shall be allocated by reference to the manner in which an economic gain or loss would be borne immediately after a hypothetical liquidating distribution of the remaining Litigation Trust Assets.  The tax book value of the Litigation Trust Assets for purpose of this paragraph shall equal their fair market value on the date the Litigation Trust Assets are transferred to the Litigation Trust, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(v)     The Litigation Trustee shall be responsible for payment, out of the Litigation Trust Assets, of any taxes imposed on the Litigation Trust or its assets.

(e)     *Litigation Trust Assets.* The Litigation Trustee, on behalf of the Litigation Trust, shall have the exclusive right, authority and discretion to institute, prosecute, abandon, settle or compromise any and all causes of action that constitute Litigation Trust Assets without the consent or approval of any third party and without any further order of the Bankruptcy Court, except as otherwise provided herein or in the Litigation Trust Agreement.  From and after the Effective Date, the Litigation Trustee, in accordance with section 1123(b)(3) of the Bankruptcy Code, and on behalf of the Litigation Trust, shall serve as a representative of the Debtors' Estates and shall retain and possess the sole and exclusive right to commence, pursue, settle, compromise or abandon, as appropriate, any and all causes of action, whether arising before of after the Petition Date, in any court or other tribunal.

(f)     *Litigation Trust Fees and Expenses.* From and after the Effective Date, the Litigation Trustee, on behalf of the Litigation Trust, shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Litigation Trust, and any professionals retained by the Litigation Trust, except as otherwise provided in the Litigation Trust Agreement.  The Litigation Trustee shall (i) pay to the holder of the Allowed Mortgage Facility Claim the Litigation Trust Funding Reimbursement out of the proceeds of the Litigation Trust Assets, and (ii) reimburse NewCo, the Reorganized Debtors, HVM and their officers, directors and managers for all reasonable costs and expenses incurred as a third party in connection with any cause of action or proceeding pursued by or otherwise involving the Litigation Trust and the Litigation Trust Assets or as a defendant in relation to a claim that has been released pursuant to this Plan.

(g)    *Cash Investments*. The Litigation Trustee may invest Cash (including any earnings thereon or proceeds therefrom); provided, however, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

(h)    *Distribution of Litigation Trust Interests.* The Litigation Trustee is required to distribute to the Litigation Trust Beneficiaries on account of their interests in the Litigation Trust, at least annually, all unrestricted Cash on hand, less such amounts paid pursuant to Section 6.17(f).

6.18    ***ESI Settlement.***  The Mortgage Facility Trust holds a Guaranty Claim against ESI.  ESI and the Special Servicer (subject to the consent of the Operating Advisor) shall enter into a settlement agreement (the "ESI Settlement"), subject to reasonable approval of the Investor and each of the Sponsors and Bankruptcy Court approval, pursuant to which ESI shall consent to and grant the releases set forth in Section 10.10 of the Plan in exchange for a release of the Guaranty Claim and other consideration as more fully set forth in the ESI Settlement.  ESI and the Debtors shall obtain Bankruptcy Court approval of the ESI Settlement at or prior to the Confirmation Date.

# ARTICLE VII

# TREATMENT OF DISPUTED CLAIMS

7.1    ***Objections to Claims; Prosecution of Disputed Claims.***

(a)    *NewCo or the Reorganized Debtors.*  NewCo or the Reorganized Debtors shall object to the allowance of Claims filed with the Bankruptcy Court with respect to which NewCo or the Reorganized Debtors, as applicable, dispute liability in whole or in part and for which they are responsible for payment as provided in Article II.  All objections that are filed and prosecuted by NewCo or the Reorganized Debtors as provided herein shall be litigated to Final Order by NewCo or the Reorganized Debtors or settled by NewCo or the Reorganized Debtors.  Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by NewCo or the Reorganized Debtors to Claims shall be served and filed no later than ninety (90) days after the Effective Date.

(b)    *The Plan Administrator.*  The Plan Administrator shall object to the allowance of Administrative Expense Claims or Priority Claims filed with the Bankruptcy Court with respect to which, on behalf of the Debtors, the Plan Administrator disputes liability in whole or in part and which is to be paid from the Administrative/Priority Claims Reserve as provided in Section 2.1. All objections that are filed and prosecuted by the Plan Administrator as provided herein shall be litigated to Final Order by the Plan Administrator or settled by the Plan Administrator.  Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Plan Administrator to Administrative Expense Claims and Priority Claims shall be served and filed no later than sixty (60) days after the Effective Date.

(c)    *The Litigation Trustee*.  The Litigation Trustee shall object to the allowance of General Unsecured Claims and Mezzanine Facilities Claims filed with the Bankruptcy Court with respect to which the Litigation Trustee disputes liability in whole or in part.  All objections that are filed and prosecuted by the Litigation Trustee as provided herein shall be litigated to Final Order by the Litigation Trustee or settled by the Litigation Trustee.  Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Litigation Trustee to General Unsecured

Claims and Mezzanine Facilities Claims shall be served and filed no later than ninety (90) days after the Effective Date

      7.2    ***Distributions on Account of Disputed Claims.***  Notwithstanding Article II and Article IV hereof, a Distribution shall only be made by NewCo or the Reorganized Debtors, the Plan Administrator, or the Litigation Trustee, as applicable, to the holder of a Disputed Claim when, and to the extent that, such Disputed Claim becomes Allowed.  No interest shall be paid on account of Disputed Claims that later become Allowed except to the extent that payment of interest is required under section 506(b) of the Bankruptcy Code.  No Distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof in the manner prescribed by Section 7.1 hereof.  From time to time after the Effective Date, on each Distribution Date after a Disputed Claim becomes an Allowed Claim, NewCo or the Reorganized Debtors, the Plan Administrator, or the Litigation Trustee, as applicable, shall distribute to such holder the amount distributable to such Claim in accordance with the applicable sections of the Plan.  To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed.  To the extent that any funds remain reserved by NewCo or the Reorganized Debtors for payment of Allowed Claims after the final resolution of all Disputed Claims that are Administrative Expense Claims or Priority Claims (and all such Disputed Claims that are Administrative Expense Claims or Priority Claims that are subsequently Allowed are fully satisfied in accordance with the terms of the Plan), such funds shall revert to and be fully vested in NewCo or the Reorganized Debtors, as applicable.  To the extent that any funds remain in the Administrative/Priority Claims Reserve after the final resolution of all Administrative Expense Claims or Priority Claims that are Disputed Claims (and all such Disputed Claims that are subsequently Allowed are fully satisfied in accordance with the terms of the Plan), such funds shall be paid to the holder of the Mortgage Facility Claim, for distribution to holders of Mortgage Certificates in accordance with Section 6.3 of the Plan.  To the extent that any funds remain in the Litigation Trust after the final resolution of all General Unsecured Claims and Mezzanine Facilities Claims that are Disputed Claims (and all such Disputed Claims that are subsequently Allowed are fully satisfied in accordance with the terms of the Plan), such funds shall be paid to the Litigation Trust Beneficiaries.

      7.3    ***Settlement of Claims.***  At any time after the Confirmation Date and before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtors may settle any or all of the Claims with the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.  After the Effective Date, NewCo or the Reorganized Debtors may, and shall have the exclusive right to, compromise and settle any Claims against them that they have agreed to pay or are required to pay pursuant to Section 2.1 and claims they have against another Person or Entity, excluding the Litigation Trust Assets, without notice to or approval from the Bankruptcy Court.

## ARTICLE VIII

## DISTRIBUTIONS

      8.1    ***Distributions under the Plan.***  Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

      8.2    ***Timing of Distributions under the Plan.***  Except for Distributions made on the Initial Distribution Date, any Distribution to be made by any Debtor or the Plan Administrator,

NewCo or the Reorganized Debtors pursuant to the Plan shall be deemed to have been timely made if made within ten (10) days after the time therefore specified in the Plan. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the Effective Date.

8.3     **Use of Cash Collateral.**  The Debtors will be entitled to use cash collateral consistent with the terms of the Cash Collateral Order through the Effective Date including, without limitation, the obligations to make adequate protection payments as provided in the Cash Collateral Order.

8.4     **Plan Administrator.**  Unless otherwise provided in the Plan, all distributions under the Plan shall be made by the Plan Administrator.  All reasonable costs and expenses incurred by the Plan Administrator in carrying out its duties under the Plan shall be paid from the funds in the Administrative/Priority Claims Reserve, provided, however, that the Plan Administrator shall provide copies of its statements for services rendered to the Special Servicer.  Any dispute regarding the payment of the fees and expenses of the Plan Administrator shall be determined by the Bankruptcy Court.  The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that the Plan Administrator is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be paid from the funds in the Administrative/Priority Claims Reserve.

8.5     **Record Date.**  As of the close of business on the Record Date, the various transfer and claims registers for each of the Classes of Claims as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims.  The Debtors, the Plan Administrator, NewCo, and the Reorganized Debtors shall have no obligation to recognize any transfer of the Claims occurring after the close of business on the Record Date.  The Debtors and the Plan Administrator shall be entitled to recognize and deal hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Record Date, to the extent applicable.

8.6     **Manner of Payment under the Plan.**  Unless the Person receiving a payment agrees otherwise, any payment in Cash to be made by the Plan Administrator, or NewCo or the Reorganized Debtors shall be made, at the election of the Plan Administrator, or NewCo or the Reorganized Debtors (as the case may be), by check drawn on a domestic bank or by wire transfer from a domestic bank, provided that payments to the holder of the Allowed Mortgage Facility Claim shall be paid by wire transfer .

8.7     **Hart-Scott-Rodino Compliance.**  Any NewCo Common Interests to be distributed under the Plan to any Person required to file a Premerger Notification and Report Form under the Hart-Scott-Rodino Antitrust Improvement Act of 1976, as amended, shall not be distributed until the notification and waiting periods applicable under such Act to such Person shall have expired or been terminated.

8.8     **Fractional Distributions.**  Fractional dollars shall be rounded down to the nearest whole dollar.

8.9     **Distribution of Unclaimed Property.**  Any Distribution under the Plan that is unclaimed after one hundred eighty (180) days following the date such property is distributed shall be deemed not to have been made and shall be transferred to the Litigation Trust, free and clear of any claims or interests of any Entities, including, without express or implied limitation, any claims or

interests of any governmental unit under escheat principles. Nothing contained herein shall affect the discharge of the Claim with respect to which such Distribution was made, and the holder of such Claim shall be forever barred from enforcing such Claim against NewCo, the Reorganized Debtors or the Debtors, or the assets, estate, properties, or interests in property of the Debtors, NewCo or the Reorganized Debtors.

8.10    *Administrative/Priority Claims Reserve.*

(a)    *Establishment and Amount.*  On the Effective Date, the Plan Administrator shall establish the Administrative/Priority Claims Reserve.  The amount of the Administrative/Priority Claims Reserve shall be determined by the Debtors, subject to the reasonable consent of the Plan Administrator and the Special Servicer (with the consent of the Operating Advisor, such consent not to be unreasonably withheld), and shall be the sum of (a) estimated accrued and unpaid Administrative Expense Claims (excluding items of the type referred to in clause (c)(i) of the definition of "Allowed" and any payments relating to Change in Control Agreements referred to in the Investment Agreement arising as a result of the occurrence of the Effective Date, and any severance payments that the Investor consents to or directs the Debtors to pay prior to the Effective Date), including, without limitation, amounts due to professionals as compensation or reimbursement of expenses, (b) the estimated Priority Claims, and (c) the estimated costs and expenses of the Plan Administrator.  For purposes of determining the estimated accrued and unpaid Administrative Expense Claims, the Debtors shall include 110% of the amount reflected on the Debtors' books and records as being due and owing as Administrative Expenses (other than amounts owed to professionals and Priority Claims which shall be estimated at 100% of such amount).  The Administrative/Priority Claims Reserve shall be the sole source for payment of Administrative Expense Claims and Priority Claims, other than items of the type referred to in clause (c)(i) of the definition of "Allowed", any payments relating to Change in Control Agreements referred to in the Investment Agreement arising as a result of the occurrence of the Effective Date, and any severance payments that the Investor consents to or directs the Debtors to pay prior to the Effective Date.

(b)    *Release of Funds from Administrative/Priority Claims Reserve*.  On the date that is seventy-five (75) days after the Effective Date, the Plan Administrator shall distribute to the holder of the Mortgage Facility Claim all funds remaining in the Administrative/Priority Claims Reserve other than (i) any amounts required to be reserved in connection with Administrative Expense Claims or Priority Claims that are Disputed Claims at such time, and (ii) a reasonable amount to be retained for payment of the fees and expenses of the Plan Administrator and the reasonable post-Effective Date fees and expenses of the Debtors' professionals in an amount to be agreed by the Special Servicer (with the reasonable consent of the Operating Advisor). Notwithstanding the release of the funds from the Administrative/Priority Claims Reserve or any provisions of this Plan, NewCo and the Reorganized Debtors shall incur no liability for and shall have no responsibility to pay any Administrative Expense Claim or Priority Claim, excluding the claims of the type specified in Section 1.7(c)(i) of the Plan and any payments relating to Change of Control Agreements referred to in the Investment Agreement arising as a result of the occurrence of the Effective Date, and any severance payments that the Investor consents to or directs the Debtors to pay prior to the Effective Date, in accordance with Section 2.1 of the Plan.

## ARTICLE IX

## CONDITIONS PRECEDENT

9.1     ***Conditions Precedent to the Effective Date.***  The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)     the Bankruptcy Court shall have entered a Confirmation Order with respect to the Plan in form and substance approved by the Investor, each of the Sponsors and the Special Servicer (with the consent of the Operating Advisor), and such Confirmation Order shall be non-appealable, shall not have been appealed within fourteen (14) calendar days of entry or, if such Confirmation Order is appealed, shall not have been stayed pending appeal, and there shall not have been entered by any court of competent jurisdiction any reversal, modification or vacation, in whole or in part, of such Confirmation Order;

(b)     all actions, documents, and agreements necessary to implement the Plan, including, without limitation, all actions, documents, and agreements necessary to implement the corporate reorganization described in Section 6.7, and the Investment described in Section 6.8, shall have been effected or executed;

(c)     the Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are determined by the Debtors to be necessary to implement the Plan and that are required by law, regulation, or order;

(d)     the NewCo Certificate of Formation (and any certificates of formation for newly formed subsidiaries of NewCo, if any) shall have been filed with the applicable Secretary of State, and the NewCo Operating Agreement (and any operating agreements for newly formed subsidiaries of NewCo, if any) shall be in place;

(e)     the Mortgage Parties Indemnification Fund shall have been established and funded;

(f)     the Litigation Trust shall have been established and funded;

(g)     notice of the Plan and Disclosure Statement shall have been distributed to all known holders of Mortgage Certificates and publicly advertised in such a way as to provide fair and adequate notice to individual holders of Mortgage Certificates;

(h)     the Bankruptcy Court shall have approved the ESI Settlement at or prior to the Confirmation Date;

(i)     the transfer of the BHAC IP to NewCo or its designee, or at the Investor's option, the Debtors, shall have occurred; and

(j)     all of the conditions to closing that are contained in Section 11.1 of the Investment Agreement shall have been satisfied or waived.

The conditions precedent specified above, with the exception of Section 9.1(a), may be waived in whole or in part by the Debtors, with the prior consent of the Investor and each of the Sponsors, and with respect to Sections 9.1(e), 9.1(f), 9.1(g), and 9.1(h) only, the Special Servicer.  Subject to the foregoing, any such written waiver of a condition precedent set forth in this Section 9.1 may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such

action shall be deemed to have occurred prior to the taking of any other such action. If the Debtors decide that one of the foregoing conditions cannot be satisfied, and the occurrence of such condition is not waived in writing by the Debtors with the prior consent of the Investor, each of the Sponsors and if applicable, the Special Servicer, then the Debtors shall file a notice of the failure of the Effective Date with the Bankruptcy Court, at which time the Plan and the Confirmation Order shall be deemed null and void.

9.2     ***Effect of Failure of Conditions to Effective Date.***  If all the conditions to effectiveness and the occurrence of the Effective Date have not been satisfied or duly waived on or before the first Business Day that is more than 120 days after the Confirmation Date, or by such later date as is proposed by the Debtors (with the consent of the Investor and each of the Sponsors, which shall not be unreasonably withheld), then upon motion by the Debtors (after consultation with the Investor, each of the Sponsors and the Special Servicer) made before the time that all of the conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order will not be vacated if each of the conditions to consummation is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section 9.2, this Plan will be null and void in all respects, and (i) no distributions under the Plan shall be made, (ii) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, (iii) the obligations of the Investor and the Sponsors under the Investment Agreement will terminate, and (iv) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors.

# ARTICLE X

# EFFECT OF CONFIRMATION

10.1     ***Vesting of Assets.***  Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors, including the Mortgage Properties, shall vest in the Reorganized Debtors and/or NewCo free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan. From and after the Effective Date, the Reorganized Debtors and/or NewCo may operate the Debtors' business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code.

10.2     ***Title to Assets; Discharge of Liabilities.***  Except as otherwise provided in the Plan, on the Effective Date, title to all assets and properties and interests in property dealt with by the Plan shall vest in the Reorganized Debtors, NewCo, the Plan Administrator, the Administrative/Priority Claims Reserve, or the Litigation Trust, as provided in the Plan, free and clear of all Claims, Equity Interests, Encumbrances, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors arising prior to the Effective Date, except as may be otherwise provided in the Plan.

10.3     ***Binding Effect.***  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtors, the Reorganized Debtors, the Mortgage Debt Parties, the holders of the Mortgage Certificates, and any holder of a Claim

against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

10.4 **Claims Extinguished.** As of the Effective Date, any and all alter-ego or derivative claims accruing to the Debtors or Debtors in Possession against present or former officers, managers and directors of the Debtors who were officers, managers or directors of the Debtors at any time during the Chapter 11 Cases shall be extinguished whether or not then pending; provided, that nothing in this Section 10.4 shall be construed as a release for any claims constituting Litigation Trust Assets.

10.5 **Discharge of Claims and Termination of Equity Interests.** Except as provided herein, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and shall terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided herein, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, NewCo, their respective successors or assignees, or any of their respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors.

10.6 **Injunction. Except as otherwise expressly provided in the Plan, all Persons who have held, hold or may hold Claims or Equity Interests and all Persons who have held, hold or may hold claims or causes of action that have been released pursuant to Section 10.10 hereof or are subject to exculpation pursuant to Section 10.9 hereof, and all other parties in interest, including any participants in the Auction, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, or such released or exculpated claim or cause of action, against the Debtors, the Reorganized Debtors, NewCo or the Released Parties or any of their respective property or assets or any interest therein, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors, NewCo or the Released Parties or any of their respective property or assets or any interest therein, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors, NewCo or the Released Parties or any of their respective property or assets or any interest therein, or (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Reorganized Debtors, NewCo, the Released Parties or against any of their respective property or assets, or any interest therein, with respect to any such Claim or Equity Interest, or such released or exculpated claim or cause of action. Such injunction shall be included in the Confirmation Order and shall extend to any successors of the Debtors, the Reorganized Debtors, NewCo and the Released Parties and their respective properties and interest in**

**properties; <u>provided</u>, <u>however</u>, that nothing in this Section 10.6 or in the Confirmation Order shall be construed as enjoining the prosecution of any Guaranty Claim other than a Guaranty Claim against a Debtor.**

  10.7 ***Term of Injunctions or Stays.*** Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, other than injunctions issued pursuant to this Plan (including injunctions under Section 10.6), shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

  10.8 ***Injunction Against Interference With Plan of Reorganization.*** **Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, including the holders of Mortgage Certificates, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.**

  10.9 ***Exculpation.*** Notwithstanding anything herein to the contrary, as of the Effective Date, none of (a) the Debtors or the Reorganized Debtors, (b) NewCo, (c) the Creditors' Committee and any subcommittee thereof, (d) BHAC (provided that BHAC has entered into the BHAC IP Transfer Agreement as provided in Section 6.13 hereof), (e) the accountants, financial advisors, investment bankers, agents and attorneys for the Debtors, (f) HVM, (g) HVM Manager, (h) the Special Servicer, (i) the Trustee, (j) the Successor Trustee, (k) the Operating Advisor, (l) the Controlling Holder, (m) HVM Manager Owner, (n) the Investor, (o) each Sponsor, (p) the Debt Financing Lenders and (q) any present or former director, manager, officer, member, equity holder (and their respective Affiliates), employee, agent, financial advisor, partner, Affiliate, attorney, other professional advisor or representative (and their respective Affiliates) of the persons or parties described in clauses (a) through (q) of this Section 10.9 or of their respective Affiliates (but solely in their capacities as such) shall have or incur any liability for any claim, cause of action or other assertion of liability for any act taken or omitted to be taken since the Commencement Date in connection with, related to, or otherwise arising out of, the Chapter 11 Cases, the Auction, the formulation, negotiation, preparation, dissemination, implementation, confirmation, consummation, or administration of the Plan, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Trust and Servicing Agreement, the Mortgage Facility Trust, the Plan, the Disclosure Statement or, in each case, any contract, instrument, document or other agreement related thereto, including, without limitation, the Investment Agreement; <u>provided</u>, <u>however</u>, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a final order of a court of competent jurisdiction to have constituted willful misconduct or gross negligence; <u>provided</u>, <u>further</u>, that each Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions or inactions; <u>provided, further</u>, that nothing in this Section 10.9 shall be construed as a release or exculpation for any Guaranty Claim other than a Guaranty Claim against a Debtor.

  10.10 ***Releases.*** As of the Effective Date, and in consideration of (a) the services provided by the present and former directors, managers, officers, employees, Affiliates, agents, financial advisors, attorneys, and representatives of the Debtors to the Debtors who acted in such capacities after the Commencement Date; (b) the services of the Creditors' Committee and their Affiliates; (c) the services provided by HVM; (d) the services provided by HVM Manager; (e) the

services of, and assets contributed by, HVM Manager Owner; (f) the provision of the Debt Financing Arrangements by the Debt Financing Lenders; (g) the substantial contribution of the Investor, each of the Sponsors and their Affiliates; and (h) the substantial contribution of the Special Servicer, the Trustee, the Operating Advisor and the Controlling Holder: (i) the Debtors, the Reorganized Debtors or NewCo; (ii) each holder of a Claim or Equity Interest that votes to accept the Plan, or is deemed to accept the Plan, or abstains from voting on the Plan; and (iii) each holder of a Mortgage Certificate, shall release unconditionally and forever each Released Party from any and all Claims, demands, causes of action and the like, relating to the Debtors or their Affiliates existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date; provided, however, that nothing in this Section 10.10 shall be construed as a release of (i) any Guaranty Claim other than a Guaranty Claim against a Debtor; (ii) any claims constituting Litigation Trust Assets; or (iii) any claims against any such Released Party resulting from an act or omission determined by a final order of a court of competent jurisdiction to have constituted willful misconduct or gross negligence, provided that each such Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions.

10.11   **Government Releases**.  Except with respect to the claims held by the United States Government or any of its agencies or any state and local authority, in their capacity as holder of either a Mortgage Certificate or a Mezzanine Facility Claim, nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties other than the Debtors, the Reorganized Debtors and NewCo, nor shall anything in the Plan or Confirmation Order enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties other than the Debtors, the Reorganized Debtors and NewCo for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Plan or Confirmation Order exculpate any of the Released Parties other than the Debtors, the Reorganized Debtors and NewCo from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state and local authority.

10.12   **Mortgage Facility Trust Claims**.  The Mortgage Debt Parties have acted in accordance with the Trust and Servicing Agreement and the Mortgage Facility Trust throughout the Chapter 11 Cases, including, without limitation, in connection with the Auction, the Plan (including voting thereon) and the Disclosure Statement, and they have made a substantial contribution to the Estate and the Chapter 11 Cases.  The rights and authority of and contributions made by the Mortgage Debt Parties under the Trust and Servicing Agreement and the Mortgage Facility Trust have been and are integral to the Plan.  Accordingly, from and after the Effective Date, all Persons, including the holders of Mortgage Certificates, shall be deemed to have released, and shall be enjoined from commencing any action or proceeding or asserting or pursuing, any claim or cause of action against the Mortgage Debt Parties for any act taken or omitted since the Commencement Date in connection with, related to, or otherwise arising out of the Chapter 11 Cases, the Auction, the formulation, negotiation, preparation, dissemination, implementation, confirmation, consummation, or administration of the Plan, or property to be distributed under the Plan provided, however, that nothing in this Section 10.12 shall be construed as a release of any claims against any Mortgage Debt

Party resulting from an act or omission determined by a final order of a court of competent jurisdiction to have constituted willful misconduct or gross negligence, provided that each such Mortgage Debt Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions.

### 10.13 *Indemnification Obligations.*

(a)     Notwithstanding anything to the contrary herein, subject to the occurrence of the Effective Date, the obligations of the Debtors as provided in the Debtors' respective certificates of incorporation, bylaws, or other applicable organizational documents, other agreements or law as of the Commencement Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of officers who were officers or employees of such Debtors or their respective Affiliates at any time prior to the Effective Date, and who will be officers of the Debtors or NewCo from and after the Effective Date, against any claims, causes of action or obligations whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Plan, remain unaffected thereby after the Effective Date and not be discharged, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation or limitation is owed in connection with an event occurring before or after the Commencement Date.

(b)     As of the Effective Date, each Debtor's certificate of incorporation, bylaws or similar organizational documents or other agreement shall provide for the indemnification, defense, reimbursement, exculpation and/or limitation of liability of, and advancement of fees and expenses to, officers who were officers of such Debtor or any of its respective Affiliates at any time prior to the Effective Date and who will continue to be officers or employees of the Debtors or NewCo from and after the Effective Date at least to the same extent as the bylaws of such Debtor in effect on the Commencement Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Debtors shall amend and/or restate its certificate of incorporation, bylaws or similar organizational document or other agreement before or after the Effective Date to terminate or materially adversely affect any of the Debtors' obligations or such officers' rights under this Section 10.13(b).

(c)     Any Claim based on NewCo's or the Debtors' obligations set forth in this Section 10.13 shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

(d)     For avoidance of doubt, nothing in this Section 10.13 shall be construed as an indemnification for any Guaranty Claim.

### 10.14 *Retention of Causes of Action/Reservation of Rights.*

(a)     Except as provided in Section 6.17 and Section 10.10 hereof, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors, the Reorganized Debtors or NewCo may have or which NewCo or the Reorganized Debtors may choose to assert on behalf of the Debtors' estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the

Debtors, the Reorganized Debtors, NewCo, their officers, directors, managers or representatives and (ii) the turnover of any property of the Debtors' estates.

(b)     Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Commencement Date, against or with respect to any Claim left Unimpaired by the Plan.  NewCo or the Reorganized Debtors, as applicable, shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtors had immediately prior to the Commencement Date fully as if the Bankruptcy Cases had not been commenced, and all of the legal and equitable rights of NewCo or the Reorganized Debtors, as applicable, respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Bankruptcy Cases had not been commenced.

(c)     Nothing in this Plan or in the Confirmation Order shall be construed as a release of, or an injunction against bringing, any Guaranty Claim other than a Guaranty Claim against a Debtor, and all rights and defenses thereto are expressly reserved.

(d)     Nothing in this Plan shall be construed as a modification, release or waiver of the provisions of the Intercreditor Agreement, and the provisions of the Intercreditor Agreement shall remain in full force and effect, and all rights thereunder are expressly reserved.

10.15   *Limitations on Exculpation and Releases of Representatives.*  Nothing in Section 10.9 or Section 10.10 hereof shall (a) be construed to release or exculpate any Person from, or require indemnification of any Person against losses arising from, the fraud, malpractice, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or ultra vires acts of such Person, or (b) limit the liability of the professionals of the Debtors, the Reorganized Debtors, NewCo or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

## ARTICLE XI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1   *Assumption of Executory Contracts and Unexpired Leases.*  Any executory contracts or unexpired leases listed in the relevant Exhibit to the Plan Supplement (which Exhibit shall contain those contracts or unexpired leases identified by the Investor, in its sole discretion) or that have not been rejected by the Debtors with the approval of the Bankruptcy Court and that are not the subject of pending motions to reject on the Confirmation Date, shall be deemed to have been assumed by the applicable Debtor and assigned to NewCo or its designee, at Investor's option, as of the Effective Date, and the Plan shall constitute a motion to assume and assign such executory contracts and unexpired leases.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions and assignments pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption and assignment is in the best interest of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.  With respect to each such executory contract or unexpired lease assumed and assigned to NewCo, if applicable, unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, the dollar amount required to cure any defaults of the applicable Debtor existing as of the Confirmation Date shall be conclusively presumed to be the amount set forth in an Exhibit to

the Plan Supplement with respect to such executory contract or unexpired lease. Subject to the occurrence of the Effective Date, any such cure amount shall be treated as an Allowed Administrative Expense Claim under the Plan, and, upon payment of such Allowed Administrative Expense Claim, all defaults of the applicable Debtor existing as of the Confirmation Date with respect to such executory contract or unexpired lease shall be deemed cured.

11.2     ***Rejection of Executory Contracts and Unexpired Leases.***  Any executory contracts or unexpired leases of any Debtor that are set forth in the relevant Exhibit to the Plan Supplement (which Exhibit shall contain those contracts and unexpired leases identified by the Investor, in its sole discretion) shall be deemed to have been rejected by the applicable Debtor, and the Plan shall constitute a motion to reject such executory contracts and unexpired leases, and NewCo and the Reorganized Debtors shall have no liability thereunder except as is specifically provided in the Plan.  Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interest of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.

11.3     ***Claims Arising from Rejection, Termination or Expiration.***  Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in Section 11.2 hereof) or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors no later than thirty (30) days after (a) in the case of an executory contract or unexpired lease that was terminated or expired by its terms prior to the Confirmation Date, the Confirmation Date, (b) in the case of an executory contract or unexpired lease rejected by the Debtors, the entry of the order of the Bankruptcy Court authorizing such rejection, or (c) in the case of an executory contract or unexpired lease that is deemed rejected pursuant to Section 11.2 hereof, the Confirmation Date.  Any rejection claim for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtors, their assets, properties, or interests in property, or the Reorganized Debtors or its estate, assets, properties, or interests in property.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article VII of the Plan.

11.4     ***Insurance Policies and Agreements.***  Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan of Reorganization and will be assumed by the applicable Reorganized Debtor and assigned to NewCo, at Investor's option, effective as of the Effective Date. Nothing contained in this Section 11.4 shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

11.5     ***Management Agreements.***  As of the Effective Date, (i) all existing management agreements between any Debtor that is a TRS and HVM, including any related administrative services agreements or G&A Reimbursement Agreements, will be assumed by such Debtors and (ii) all existing management agreements between any Debtor that is not a TRS and HVM will be assumed by such Debtor and assigned to a Debtor that is a TRS (or a newly formed TRS, wholly owned either directly or indirectly by NewCo, that is designated by an existing Debtor that is a TRS); provided that such management agreements to be assumed or assumed and assigned (a) shall

be modified or amended by modified agreements, which terms shall be acceptable to Investor, each Sponsor and HVM and (b) shall be assumed or assumed and assigned as modified or amended. Entry of the Confirmation Order, subject to and upon the occurrence of the Effective Date, shall constitute the approval, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, of the assumption or assumption and assignment, as applicable, of such agreements on the terms set forth in the Plan and Plan Supplement.

## ARTICLE XII

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan, or (c) to perform any of the following actions:

12.1    To hear and determine any and all motions or applications pending on the Confirmation Date for the assumption and/or assignment or rejection of executory contracts or unexpired leases to which any Debtor is a party or with respect to which any Debtor may be liable, and to hear and determine any and all Claims resulting therefrom or from the expiration or termination prior to the Confirmation Date of any executory contract or unexpired lease;

12.2    To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by NewCo or the Reorganized Debtors after the Effective Date, including, without express or implied limitation, any claims to avoid any preferences, fraudulent transfers, or other voidable transfers, or otherwise to recover assets for the benefit of the Debtors' estates;

12.3    To hear and determine any objections to the allowance of Claims arising prior to the Effective Date, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow or disallow any Disputed Claim in whole or in part;

12.4    To hear and determine any disputes relating to the distributions to holders of Allowed Claims as provided herein.

12.5    To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

12.6    To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without express or implied limitation, the Confirmation Order;

12.7    To hear and determine all applications for allowances of compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under the Plan;

12.8    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan (and all Exhibits to the Plan Supplement and Exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

12.9    To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or cause of action by or against any Debtor's Estate;

12.10    To determine such other matters that may be set forth in the Plan or the Confirmation Order, or that may arise in connection with the Plan, the Disclosure Statement or the Confirmation Order;

12.11    To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors, as Debtors or Debtors in Possession, may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any request for expedited determination under section 505(b)(2) of the Bankruptcy Code);

12.12    To hear and determine all questions and disputes arising out of or relating to the Investment Agreement, the BHAC IP Transfer Agreement, the Debt Financing Arrangements or any foreclosure proceedings pursuant to Section 6.13 hereof;

12.13    To hear and determine all disputes arising under the Trust and Servicing Agreement or relating to the implementation of this Plan by the Trustee, the Special Servicer, the Operating Advisor and the Controlling Holder; and

12.14    To enter an order or final decree closing the Chapter 11 Cases.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1    ***Modification of the Plan.***  This Plan may be altered, amended or modified by the Debtors, in consultation with the Investor, each of the Sponsors and the Special Servicer (in consultation with the Operating Advisor), before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code; provided, however, that no such alterations, amendments or modifications that are material shall be made without the consents of the Investor, each of the Sponsors and the Special Servicer (in consultation with the Operating Advisor), which consents shall not be unreasonably withheld.  A holder of an Allowed Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

13.2    ***Payment of Statutory Fees.***  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

13.3    ***Rights of Action.***  Any rights, claims, or causes of action accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, other than the Litigation Trust Assets or rights, claims or causes of action released pursuant to Section 10.10, and (except as provided in Article VIII hereof) any rights to, claims or causes of action for recovery under any policies of insurance issued to or on behalf of the Debtors shall remain assets of the Debtors' estates and, on the Effective Date, shall be transferred to the Reorganized Debtors.  NewCo shall be deemed the appointed representative to, and may, pursue, litigate, and compromise and settle any such rights, claims, or causes of action, as appropriate, in accordance with what is in the best interests of and for the benefit of the Reorganized Debtors.

13.4    ***Swap Agreements.***  The distributions that are to be made pursuant to Article IV hereof shall be deemed to satisfy fully any rights that each Class may have in respect of the Swap Agreements.

13.5    ***Dissolution of Creditors' Committee.***  On the Effective Date, the Creditors' Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Debtors' Chapter 11 Cases, and, except for the limited purpose of preparing and presenting its final applications for fees and expenses (including the final application for reimbursement of expenses of members of the Creditors' Committee) and the final resolution thereof, the Creditors' Committee shall be deemed dissolved; provided, however, (a) if the Effective Date occurs before the Confirmation Order becomes a Final Order, the Creditors' Committee may continue to exist and to serve for the purposes of any pending appeal of the Confirmation Order, and (b) the Creditors' Committee will continue to exist and to serve and have a right to be heard for the purpose of any issue relating to ESI.

13.6    ***Notices.***  Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:                          c/o HVM L.L.C.
                                            100 Dunbar Street,
                                            Spartanburg, South Carolina  29306
                                            Attn: Gary A. DeLapp
                                            Tel: (864) 573-1600
                                            Fax: (864) 573-1665

                                            *and*

                                            Weil, Gotshal & Manges LLP
                                            767 Fifth Avenue
                                            New York, New York  10153
                                            Attn: Marcia L. Goldstein, Esq., Jacqueline Marcus, Esq.
                                            Tel: (212) 310-8000
                                            Fax: (212) 310-8007

If to the Creditors' Committee:             Hahn & Hessen LLP
                                            488 Madison Avenue
                                            New York, New York  10022
                                            Attn: Mark T. Power, Esq., Mark T. Indelicato, Esq.,
                                            Christopher Jarvinen, Esq.
                                            Tel: (212) 478-7200
                                            Fax: (212) 478-7400

If to the Investor or the Sponsors:         Fried, Frank, Harris, Shriver & Jacobson LLP
                                            One New York Plaza
                                            New York, New York 10004
                                            Attn: Brad Eric Scheler, Esq., Jennifer L. Rodburg, Esq.

Tel: (212) 859-8000
Fax: (212) 859-4000

*and*

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Attn: David M. Feldman, Esq.
Tel: (212) 351-4000
Fax: (212) 351-4035

*and*

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954
Attn: Mark Thompson, Esq.
Tel: (212) 455-7355
Fax: (212) 455-2502


If to the Special Servicer:    CWCapital Asset Management LLC
701 13th Street, NW, Suite 1000
Washington, D.C. 20005
Attn: Stephen Abelman
Tel: (202) 715-9660
Fax: (202) 715-9699

*and*

Venable LLC
750 East Pratt Street, Suite 900
Baltimore, MD 21202
Attn: Gregory A. Cross
Tel: (410) 244-7725
Fax: (410) 244-7742


   13.7  ***Headings.*** The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

   13.8  ***Severability.*** If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors with the written consent of the Investor and each of the Sponsors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid void or unenforceable, and such term or provision shall then be applicable

as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, unless agreed otherwise by the Debtors with the written consent of the Investor or each of the Sponsors, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.9 **_Governing Law._** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or by Delaware corporate, partnership or limited liability company law, the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

13.10 **_Plan Supplement /Exhibits/Schedules._** All exhibits and schedules to the Plan, including the Plan Supplement and the Exhibits to the Plan Supplement, are incorporated into and are a part of the Plan as set forth in full herein.

13.11 **_Compliance with Tax Requirements._** In connection with the Plan, the Debtors and the Plan Administrator will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

13.12 **_Exemption from Transfer Taxes._** Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any sales and use, stamp, real estate transfer, mortgage recording, or other similar tax.

13.13 **_Expedited Determination of Postpetition Taxes._** The Debtors and the Reorganized Debtors are authorized (but not required) to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for all taxable periods (or portions thereof) from the Commencement Date through (and including) the Effective Date.

13.14 **_Sections 1125 and 1126 of the Bankruptcy Code._** As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors, the members of the Creditors' Committee, the Investor, each Sponsor and each of their respective Affiliates, agents, directors, managers, officers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

13.15    ***Time.***  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 as amended effective December 1, 2009 shall apply.

13.16    ***No Amendment, Modification or Waiver of Cash Collateral Order or Other Documents.***  Nothing contained in this Plan shall be deemed to be an amendment, modification or waiver of any term or provision of the Trust and Servicing Agreement, the Mortgage Facility, or the Cash Collateral Order.

Dated: New York, New York
      June 8, 2010

Respectfully submitted,

ESA PROPERTIES L.L.C.
ESA 2005 PORTFOLIO L.L.C.
ESA 2005- SAN JOSE L.L.C.
ESA 2005- WALTHAM L.L.C.
ESA ACQUISITION PROPERTIES L.L.C.
ESA ALASKA L.L.C.
ESA CANADA PROPERTIES BORROWER
L.L.C.
ESA FL PROPERTIES L.L.C.
ESA MD BORROWER L.L.C.
ESA MN PROPERTIES L.L.C.
ESA P PORTFOLIO L.L.C.
ESA P PORTFOLIO MD BORROWER L.L.C.
ESA P PORTFOLIO PA PROPERTIES L.L.C.
ESA P PORTFOLIO TXNC PROPERTIES L.P.
ESA PA PROPERTIES L.L.C.
ESA TX PROPERTIES L.P.
ESH/HOMESTEAD PORTFOLIO L.L.C.
ESH/HV PROPERTIES L.L.C.
ESH/MSTX PROPERTY L.P.
ESH/TN PROPERTIES L.L.C.
ESH/TX PROPERTIES L.P.
ESA MD BENEFICIARY L.L.C.
ESA MD PROPERTIES BUSINESS TRUST
ESA P PORTFOLIO MD BENEFICIARY L.L.C.
ESA P PORTFOLIO MD TRUST
ESA CANADA PROPERTIES TRUST
ESA CANADA TRUSTEE INC.
ESA CANADA BENEFICIARY INC.
ESA UD PROPERTIES L.L.C.
ESA 2007 OPERATING LESSEE, INC.
ESA 2005 OPERATING LESSEE INC.
ESA OPERATING LESSEE INC.
ESA P PORTFOLIO OPERATING LESSEE INC.
ESA CANADA OPERATING LESSEE INC.
ESA P PORTFOLIO TXNC GP L.L.C.
ESA TXGP L.L.C.
ESH/MSTX GP L.L.C.
ESH/TXGP L.L.C.
ESH/TN MEMBER INC.
ESH/HOMESTEAD MEZZ L.L.C.
ESH/HOMESTEAD MEZZ 2 L.L.C.
ESH/HOMESTEAD MEZZ 3 L.L.C.
ESH/HOMESTEAD MEZZ 4 L.L.C.

ESH/HOMESTEAD MEZZ 5 L.L.C.
ESH/HOMESTEAD MEZZ 6 L.L.C.
ESH/HOMESTEAD MEZZ 7 L.L.C.
ESH/HOMESTEAD MEZZ 8 L.L.C.
ESH/HOMESTEAD MEZZ 9 L.L.C.
ESH/HOMESTEAD MEZZ 10 L.L.C.
ESA MEZZ L.L.C.
ESA MEZZ 2 L.L.C.
ESA MEZZ 3 L.L.C.
ESA MEZZ 4 L.L.C.
ESA MEZZ 5 L.L.C.
ESA MEZZ 6 L.L.C.
ESA MEZZ 7 L.L.C.
ESA MEZZ 8 L.L.C.
ESA MEZZ 9 L.L.C.
ESA MEZZ 10 L.L.C.
ESA P MEZZ L.L.C.
ESA P MEZZ 2 L.L.C.
ESA P MEZZ 3 L.L.C.
ESA P MEZZ 4 L.L.C.
ESA P MEZZ 5 L.L.C.
ESA P MEZZ 6 L.L.C.
ESA P MEZZ 7 L.L.C.
ESA P MEZZ 8 L.L.C.
ESA P MEZZ 9 L.L.C.
ESA P MEZZ 10 L.L.C.
HOMESTEAD VILLAGE L.L.C.
EXTENDED STAY HOTELS L.L.C.
ESA P PORTFOLIO HOLDINGS L.L.C.
ESA MANAGEMENT L.L.C.
ESA BUSINESS TRUST

By:     /s/ David Lichtenstein
        Name:   David Lichtenstein
        Title:    President

WEIL, GOTSHAL & MANGES LLP
Attorneys for Debtors and
Debtors in Possession
767 Fifth Avenue
New York, New York  10153
(212) 310-8000

## Exhibit A

### Debtors

| | **Entity** | **State of Organization** |
|---|---|---|
| 1 | ESA Properties L.L.C. | Delaware |
| 2 | ESA 2005 Portfolio L.L.C. | Delaware |
| 3 | ESA 2005- San Jose L.L.C. | Delaware |
| 4 | ESA 2005- Waltham L.L.C. | Delaware |
| 5 | ESA Acquisition Properties L.L.C. | Delaware |
| 6 | ESA Alaska L.L.C. | Delaware |
| 7 | ESA Canada Properties Borrower L.L.C. | Delaware |
| 8 | ESA FL Properties L.L.C. | Delaware |
| 9 | ESA MD Borrower L.L.C. | Delaware |
| 10 | ESA MN Properties L.L.C. | Delaware |
| 11 | ESA P Portfolio L.L.C. | Delaware |
| 12 | ESA P Portfolio MD Borrower L.L.C. | Delaware |
| 13 | ESA P Portfolio PA Properties L.L.C. | Delaware |
| 14 | ESA P Portfolio TXNC Properties L.P. | Delaware |
| 15 | ESA PA Properties L.L.C. | Delaware |
| 16 | ESA TX Properties L.P. | Delaware |
| 17 | ESH/Homestead Portfolio L.L.C. | Delaware |
| 18 | ESH/HV Properties L.L.C. | Delaware |
| 19 | ESH/MSTX Property L.P. | Delaware |
| 20 | ESH/TN Properties L.L.C. | Delaware |
| 21 | ESH/TX Properties L.P. | Delaware |
| 22 | ESA MD Beneficiary L.L.C. | Delaware |

| | Entity | State of Organization |
|------|---------------------------------------------------|------------------|
| 23 | ESA MD Properties Business Trust | Delaware |
| 24 | ESA P Portfolio MD Beneficiary L.L.C. | Delaware |
| 25 | ESA P Portfolio MD Trust | Delaware |
| 26 | ESA Canada Properties Trust | Delaware |
| 27 | ESA Canada Trustee Inc. | Delaware |
| 28 | ESA Canada Beneficiary Inc. | Delaware |
| 29 | ESA UD Properties L.L.C. | Delaware |
| 30 | ESA 2007 Operating Lessee, Inc. | Delaware |
| 31 | ESA 2005 Operating Lessee Inc. | Delaware |
| 32 | ESA Operating Lessee Inc. | Delaware |
| 33 | ESA P Portfolio Operating Lessee Inc. | Delaware |
| 34 | ESA Canada Operating Lessee Inc. [Ontario Corp.] | Ontario, Canada |
| 35 | ESA P Portfolio TXNC GP L.L.C. | Delaware |
| 36 | ESA TXGP L.L.C. | Delaware |
| 37 | ESH/MSTX GP L.L.C. | Delaware |
| 38 | ESH/TXGP L.L.C. | Delaware |
| 39 | ESH/TN Member Inc. | Delaware |
| 40 | ESH/Homestead Mezz L.L.C. | Delaware |
| 41 | ESH/Homestead Mezz 2 L.L.C. | Delaware |
| 42 | ESH/Homestead Mezz 3 L.L.C. | Delaware |
| 43 | ESH/Homestead Mezz 4 L.L.C. | Delaware |
| 44 | ESH/Homestead Mezz 5 L.L.C. | Delaware |
| 45 | ESH/Homestead Mezz 6 L.L.C. | Delaware |
| 46 | ESH/Homestead Mezz 7 L.L.C. | Delaware |

| | Entity | State of Organization |
|---|---|---|
| 47 | ESH/Homestead Mezz 8 L.L.C. | Delaware |
| 48 | ESH/Homestead Mezz 9 L.L.C. | Delaware |
| 49 | ESH/Homestead Mezz 10 L.L.C. | Delaware |
| 50 | ESA Mezz L.L.C. | Delaware |
| 51 | ESA Mezz 2 L.L.C. | Delaware |
| 52 | ESA Mezz 3 L.L.C. | Delaware |
| 53 | ESA Mezz 4 L.L.C. | Delaware |
| 54 | ESA Mezz 5 L.L.C. | Delaware |
| 55 | ESA Mezz 6 L.L.C. | Delaware |
| 56 | ESA Mezz 7 L.L.C. | Delaware |
| 57 | ESA Mezz 8 L.L.C. | Delaware |
| 58 | ESA Mezz 9 L.L.C. | Delaware |
| 59 | ESA Mezz 10 L.L.C. | Delaware |
| 60 | ESA P Mezz L.L.C. | Delaware |
| 61 | ESA P Mezz 2 L.L.C. | Delaware |
| 62 | ESA P Mezz 3 L.L.C. | Delaware |
| 63 | ESA P Mezz 4 L.L.C. | Delaware |
| 64 | ESA P Mezz 5 L.L.C. | Delaware |
| 65 | ESA P Mezz 6 L.L.C. | Delaware |
| 66 | ESA P Mezz 7 L.L.C. | Delaware |
| 67 | ESA P Mezz 8 L.L.C. | Delaware |
| 68 | ESA P Mezz 9 L.L.C. | Delaware |
| 69 | ESA P Mezz 10 L.L.C. | Delaware |
| 70 | Homestead Village L.L.C. | Delaware |

| | Entity | State of Organization |
|---|---|---|
| 71 | Extended Stay Hotels L.L.C. | Delaware |
| 72 | ESA P Portfolio Holdings L.L.P. | Delaware |
| 73 | ESA Management L.L.C. | Delaware |
| 74 | ESA Business Trust | Delaware |

**Exhibit B**

**[Intentionally Deleted]**

**<u>Exhibit C</u>**

**Tier 1 Debtors**

ESA Properties L.L.C.

ESA 2005 Portfolio L.L.C.

ESA 2005- San Jose L.L.C.

ESA 2005- Waltham L.L.C.

ESA Acquisition Properties L.L.C.

ESA Alaska L.L.C.

ESA FL Properties L.L.C.

ESA MN Properties L.L.C.

ESA P Portfolio L.L.C.

ESA P Portfolio PA Properties L.L.C.

ESA PA Properties L.L.C.

ESH/Homestead Portfolio L.L.C.

ESH/HV Properties L.L.C.

ESA MD Beneficiary L.L.C.

ESA P Portfolio MD Beneficiary L.L.C.

ESA Canada Trustee Inc.

ESA Canada Beneficiary Inc.

ESA UD Properties L.L.C.

ESA 2007 Operating Lessee, Inc.

ESA 2005 Operating Lessee Inc.

ESA Operating Lessee Inc.

ESA P Portfolio Operating Lessee Inc.

ESA Canada Operating Lessee Inc.

ESA P Portfolio TXNC GP L.L.C.

ESA TXGP L.L.C.

ESH/MSTX GP L.L.C.

ESH/TXGP L.L.C.

ESH/TN Member Inc.

ESA P Portfolio TXNC Properties L.P.

ESA TX Properties L.P.

ESH/TN Properties L.L.C.

ESH/TX Properties L.P.

ESH/MSTX Property L.P.

## Exhibit D

### Tier 2 Debtors

ESA Canada Properties Borrower L.L.C.

ESA Canada Properties Trust

ESA P Portfolio MD Borrower L.L.C.

ESA P Portfolio MD Trust

ESA MD Borrower L.L.C.

ESA MD Properties Business Trust

**Exhibit E**

**Tier 3 Debtors**

ESH/Homestead Mezz L.L.C.

ESH/Homestead Mezz 2 L.L.C.

ESH/Homestead Mezz 3 L.L.C.

ESH/Homestead Mezz 4 L.L.C.

ESH/Homestead Mezz 5 L.L.C.

ESH/Homestead Mezz 6 L.L.C.

ESH/Homestead Mezz 7 L.L.C.

ESH/Homestead Mezz 8 L.L.C.

ESH/Homestead Mezz 9 L.L.C.

ESH/Homestead Mezz 10 L.L.C.

ESA Mezz L.L.C.

ESA Mezz 2 L.L.C.

ESA Mezz 3 L.L.C.

ESA Mezz 4 L.L.C.

ESA Mezz 5 L.L.C.

ESA Mezz 6 L.L.C.

ESA Mezz 7 L.L.C.

ESA Mezz 8 L.L.C.

ESA Mezz 9 L.L.C.

ESA Mezz 10 L.L.C.

ESA P Mezz L.L.C.

ESA P Mezz 2 L.L.C.

ESA P Mezz 3 L.L.C.

ESA P Mezz 4 L.L.C.

ESA P Mezz 5 L.L.C.

ESA P Mezz 6 L.L.C.

ESA P Mezz 7 L.L.C.

ESA P Mezz 8 L.L.C.

ESA P Mezz 9 L.L.C.

ESA P Mezz 10 L.L.C.

Homestead Village L.L.C.

Extended Stay Hotels L.L.C.

ESA P Portfolio Holdings L.L.C.

ESA Management L.L.C.

ESA Business Trust

**<u>Exhibit F</u>**

**Existing Letters of Credit**

Irrevocable Letter of Credit Number S-17551, dated June 11, 2007, issued by Deutsche Bank to Zurich American Insurance Company, as beneficiary, in the amount of $1,100,000

Irrevocable Letter of Credit Number S-17552, dated June 11, 2007, issued by Deutsche Bank to Zurich American Insurance Company, as beneficiary, in the amount of $16,375,000

**<u>Exhibit G</u>**

**Mezzanine Facilities**

Mezzanine A Loan Agreement, dated as of June 11, 2007, by and among ESH/Homestead Mezz L.L.C., ESA P Mezz L.L.C., and ESA Mezz L.L.C., as Borrowers, and Wachovia Bank, National Association, Bear Stearns Commercial Mortgage, Inc., Bank of America, N.A., and Ebury Finance Limited, as Lenders

Mezzanine B Loan Agreement, dated as of June 11, 2007, by and among ESH/Homestead Mezz 2 L.L.C., ESA P Mezz 2 L.L.C., and ESA Mezz 2 L.L.C., as Borrowers, and Wachovia Bank, National Association, Bear Stearns Commercial Mortgage, Inc., Bank of America, N.A., and Ebury Finance Limited, as Lenders

Mezzanine C Loan Agreement, dated as of June 11, 2007, by and among ESH/Homestead Mezz 3 L.L.C., ESA P Mezz 3 L.L.C., and ESA Mezz 3 L.L.C., as Borrowers, and Wachovia Bank, National Association, Bear Stearns Commercial Mortgage, Inc., Bank of America, N.A., and Ebury Finance Limited, as Lenders

Mezzanine D Loan Agreement, dated as of June 11, 2007, by and among ESH/Homestead Mezz 4 L.L.C., ESA P Mezz 4 L.L.C., and ESA Mezz 4 L.L.C., as Borrowers, and Wachovia Bank, National Association, Bear Stearns Commercial Mortgage, Inc., Bank of America, N.A., and Ebury Finance Limited, as Lenders

Mezzanine E Loan Agreement, dated as of June 11, 2007, by and among ESH/Homestead Mezz 5 L.L.C., ESA P Mezz 5 L.L.C., and ESA Mezz 5 L.L.C., as Borrowers, and Wachovia Bank, National Association, Bear Stearns Commercial Mortgage, Inc., Bank of America, N.A., and Ebury Finance Limited, as Lenders

Mezzanine F Loan Agreement, dated as of June 11, 2007, by and among ESH/Homestead Mezz 6 L.L.C., ESA P Mezz 6 L.L.C., and ESA Mezz 6 L.L.C., as Borrowers, and Wachovia Bank, National Association, Bear Stearns Commercial Mortgage, Inc., Bank of America, N.A., and Ebury Finance Limited, as Lenders

Mezzanine G Loan Agreement, dated as of June 11, 2007, by and among ESH/Homestead Mezz 7 L.L.C., ESA P Mezz 7 L.L.C., and ESA Mezz 7 L.L.C., as Borrowers, and Wachovia Bank, National Association, Bear Stearns Commercial Mortgage, Inc., Bank of America, N.A., and Ebury Finance Limited, as Lenders

Mezzanine H Loan Agreement, dated as of June 11, 2007, by and among ESH/Homestead Mezz 8 L.L.C., ESA P Mezz 8 L.L.C., and ESA Mezz 8 L.L.C., as Borrowers, and Wachovia Bank, National Association, Bear Stearns Commercial Mortgage, Inc., Bank of America, N.A., and Ebury Finance Limited, as Lenders

Mezzanine I Loan Agreement, dated as of June 11, 2007, by and among ESH/Homestead Mezz 9 L.L.C., ESA P Mezz 9 L.L.C., and ESA Mezz 9 L.L.C., as Borrowers, and Wachovia Bank, National Association, Bear Stearns Commercial Mortgage, Inc., Bank of America, N.A., and Ebury Finance Limited, as Lenders

Mezzanine J Loan Agreement, dated as of June 11, 2007, by and among ESH/Homestead Mezz 10 L.L.C., ESA P Mezz 10 L.L.C., and ESA Mezz 10 L.L.C., as Borrowers, and Wachovia Bank, National Association, Bear Stearns Commercial Mortgage, Inc., Bank of America, N.A., and Ebury Finance Limited, as Lenders

## EXHIBIT B

## Notice of Confirmation Order

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Marcia L. Goldstein
Jacqueline Marcus

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                    :

**In re**                              :        **Chapter 11 Case No.**
                                      :

**EXTENDED STAY INC., et al.,**      :        **09-13764 (JMP)**
                                      :

              **Debtors.**             :        **(Jointly Administered)**
                                      :

-------------------------------------------------------------x

**NOTICE OF ENTRY OF ORDER CONFIRMING DEBTORS' FIFTH**
**AMENDED JOINT PLAN OF REORGANIZATION UNDER**
**CHAPTER 11 OF THE BANKRUPTCY CODE, DATED JUNE 8, 2010, AS AMENDED**

**TO ALL CREDITORS, INTEREST HOLDERS, AND PARTIES IN INTEREST:**

        PLEASE TAKE NOTICE that an order (the **"Confirmation Order"**) confirming the Debtors' Fifth Amended Joint Plan Of Reorganization Under Chapter 11 of the Bankruptcy Code, as Amended, for ESA Properties LLC and seventy-three of its debtor affiliates, as debtors and debtors in possession (as amended the **"Plan"**), **[Docket No. 1027]**, was entered in the above-captioned cases by the Honorable James Peck, United States Bankruptcy Judge, and docketed by the Clerk of the Bankruptcy Court for the Southern District of New York (the **"Bankruptcy Court"**) on July __, 2010.  Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

        PLEASE TAKE FURTHER NOTICE that the Confirmation Order and Plan establish certain deadlines by which holders of Claims must take certain actions.

        PLEASE TAKE FURTHER NOTICE that copies of the Confirmation Order, the Plan, and related documents are available for inspection in the office of the Clerk of the Bankruptcy Court at the Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, or can be viewed for free at the Debtors' claims agent's website at www.kccllc.net/extendedstay or for a fee on the Court's website at www.nysb.uscourts.gov.  To access documents on the Court's website, you will need a PACER password and login, which can be obtained at

http://www.pacer.psc.uscourts.gov.  To obtain a hard copy of the Confirmation Order or the Plan, please contact the Debtors' claims agent, Kurtzman Carson Consultants LLC, at **(310) 823-9000**.

PLEASE TAKE FURTHER NOTICE that the Plan and its provisions are binding on the Debtors, the Reorganized Debtors, any holder of a Claim against or Equity Interest in the Debtors, including all governmental entities, and such holder's successors and assigns (whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has voted to accept the Plan), any and all non-debtor parties to assumed executory contracts and unexpired leases with the Debtors, the parties who filed objections to the Plan, the Mortgage Debt Parties, the holders of the Mortgage Certificates, all parties receiving property under the Plan, and their respective heirs, executors, administrators, successors, or assigns, and every other party in interest in the Debtors' Chapter 11 Cases.

Dated:  July __, 2010
 New York, New York

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for the Debtors
 and Debtors in Possession