| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | NOT FOR PUBLICATION |
| ------------------------------------------------------------: | |
| In re:  :<br>    :<br>EXTENDED STAY, INC., *et al.*,  :<br>    :<br>         Debtors.  :<br>    :<br>------------------------------------------------------------: | Chapter 11<br><br>Case No. 09-13764 (JMP)<br><br>(Jointly Administered) |

## MEMORANDUM DECISION REGARDING COMPANION MOTIONS TO APPROVE REPLACEMENT OF LITIGATION TRUSTEE AND AMEND LITIGATION TRUST AGREEMENT

**VENABLE LLP**
*Attorneys for CWCapital Asset Management LLC,*
*Solely in its Capacity as Special Servicer*
Rockefeller Center, 24th Floor
1270 Avenue of the Americas
New York, New York 10020

    Carollynn H.G. Callari, Esq.

750 East Pratt Street, Suite 900
Baltimore, Maryland 21202

    Gregory A. Cross, Esq.

**HAHN & HESSEN LLP**
*Attorneys for Official Committee of Unsecured Creditors*
488 Madison Avenue
New York, New York 10022

    Mark Power, Esq.
    Joseph Orbach, Esq.

BAKER & HOSTETLER LLP
*Attorneys for Litigation Trustee Walker, Truesdell,*
*Roth & Associates and Hobart G. Truesdell*
45 Rockefeller Plaza
New York, New York 10111

 Marc D. Powers, Esq.
 Matthew R. Goldman, Esq.

FORMAN, HOLT, ELIADES RAVIN & YOUNGMAN, LLC
*Attorneys for Litigation Trustee Walker, Truesdell,*
*Roth & Associates and Hobart G. Truesdell*
80 Route 4 East, Suite 290
Paramus, New Jersey 07652

 Michael J. Connolly, Esq.
 Andrew Karas, Esq.

BUCHANAN INGERSOLL & ROONEY PC
*Attorneys for KeyBank National Association*
1290 Avenue of the Americas, 30th Floor
New York, New York 10104

 William H. Schorling, Esq.

1000 West Street, Suite 1410
Wilmington, Delaware 19801

 Mary F. Caloway, Esq.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
*Attorneys for the Maiden Lane Parties*
One Liberty Plaza
New York, New York 10006

 Lindsee P. Granfield, Esq.
 Neil P. Forrest, Esq.

2

HAYNES AND BOONE LLP
*Attorneys for Archon Group, L.P. on behalf of itself and as*
*Servicer for the Holder of Certain Mezzanine H Facility Debt*
30 Rockefeller Plaza, 26th Floor
New York, New York 10112

    Judith Elkin, Esq.

GREENBERG TRAURIG LLP
*Attorneys for Square Mile Capital Management LLC,*
*ESH Owner LLC, Starwood Capital Group Global, L.P.,*
*Debt-U ESH, L.P., and Debt-II ESH, L.P.*
MetLife Building
200 Park Avenue
New York, New York 10166

    Gary D. Ticoll, Esq.

Davis Polk & Wardwell LLP
*Attorneys for The Bank of America Parties, the JPMorgan Parties, and Ebury Finance Limited*
450 Lexington Avenue
New York, New York 10017

    Benjamin S. Kaminetzky, Esq.
    Marshall S. Huebner, Esq.
    Jonathan D. Martin, Esq.

NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A.
*Attorney for Line Trust Corporation and Deuce Properties Ltd*
One South Street, 27th Floor
Baltimore, Maryland 21202

    Deborah H. Devan, Esq.

DECHERT LLP

*Attorneys for Defendants Arbor ESH II, LLC, Arbor Commercial Mortgage, LLC, Atmar Associates, LLC, Glida One LLC, Ron Invest LLC, ABT-ESI LLC, Guy Milone, Jr., Joseph Chetrit, and Joseph Martello*
1095 Avenue of the Americas
New York, New York 10036-6797

    Gary J. Mennitt, Esq.
    Shmuel Vasser, Esq.
    Janet Bollinger, Esq.

MORRISON & FOERSTER LLP

*Attorneys for Wells Fargo Bank, N.A. and Wachovia Bank, N.A.*
1290 Avenue of the Americas
New York, New York 10104

    Brett H. Miller, Esq.

**JAMES M. PECK**
**United States Bankruptcy Judge**

## *Introduction*

The two companion motions before the Court have been structured to resolve issues in the troubled relationship between the current trustee[1] (the "Initial Trustee") of the Extended Stay Litigation Trust (the "Litigation Trust") and the beneficiaries of the Litigation Trust (the "Trust Beneficiaries"). The parties have concluded that this relationship is marked by unproductive and costly conflict and that change is needed. The Court agrees.

The proposed remedy is to replace the trustee with another trustee who knows the case well (he currently serves as Plan Administrator for these Debtors) and will be better able to carry out the purposes of the Litigation Trust in a manner more closely aligned with the expectations

---

[1] Hobart Truesdell and Walker, Truesdell, Roth & Assocs.

4

of the Trust Beneficiaries. A controlling majority of the Trust Beneficiaries already has predetermined that the new trustee will discontinue pending litigation brought by the Initial Trustee against certain mezzanine lender defendants who are also Trust Beneficiaries (the "Mezzanine Lenders"). No beneficiary opposes these motions, although one affiliated group of co-defendants with the Mezzanine Lenders (the "Arbor Parties" as defined below in the section on Factual Background and Procedural History) has objected that certain of the relief requested would amount to an improper plan amendment. That objection is overruled for the reasons stated.

Nonetheless, the solution proposed by the moving parties, while both permissible from the point of view of the controlling documents and a pragmatic approach to achieving predictability as to future activities of the Litigation Trust, is not yet entirely satisfactory to the Court based on the current record. What is happening here – notably the purposeful curtailing of the authority of the new trustee – does not look right given the procedural history of these bankruptcy cases, and appearances do matter. As the Second Circuit Court of Appeals has observed, "[t]he conduct of bankruptcy proceedings not only should be right but must seem right." *In re Ira Haupt & Co.*, 361 F.2d 164, 168 (2d Cir. 1966) (Friendly, J.). While limiting the scope of authority of the proposed new trustee (the "Replacement Trustee") is an understandable transactional response to the perceived litigation excesses of the Initial Trustee, the arrangement, as documented, also is susceptible to the negative perception that the Litigation Trust is being deliberately rigged to protect a particular class of Trust Beneficiaries. A more complete record is needed before this arrangement can be blessed.

The Court will require additional showings by the proponents of the two motions demonstrating that limiting the duties of the Replacement Trustee is both fair under the

circumstances and fully consistent with the expectations of the parties when the Debtors' Fifth Amended Joint Plan of Reorganization, as amended (the "Plan") was proposed and confirmed. *See* ECF Nos. 1027, 1157.  The Court also wants to hear directly from Mr. Finbarr O'Connor, the Replacement Trustee, with respect to his own evaluation of the pending litigation against the Mezzanine Lenders, his independent judgment regarding the utility of pursuing these or other causes of action against the Mezzanine Lenders and any reservations that he may have about taking over the reins as Replacement Trustee with curtailed fiduciary responsibilities.  Presumably, the Replacement Trustee discussed these and other issues with representatives of the Trust Beneficiaries when he negotiated the terms of his engagement, but the Court has not been told anything about such discussions.

The Court recognizes that the changes described in the two pending motions are desirable from the perspective of the Mezzanine Lenders and the other Trust Beneficiaries and provide a basis to move forward more productively with the work of the Litigation Trust.  Principally for that reason, the Court anticipates that the motions will be approved once the record has been supplemented at an evidentiary hearing to be scheduled promptly.  However, given the sensitive and confidential nature of some of the information and opinions to be presented, the Court will also allow the parties to discuss their respective views as to the merits of the pending litigation in a chambers conference.

The combination of evidence at the hearing and representations made during such a chambers conference likely will lead to approval of the joint motion to approve the separation agreement and the joint motion approving appointment of successor trustee and to amend the

6

Litigation Trust Agreement (defined below)[2]. The outcome depends upon the record presented by the proponents of the motions.

### *Overview of Joint Motion to Approve Separation Agreement and Joint Motion to Approve Appointment of Successor Trustee and Amend Litigation Trust Agreement*

The two pending motions, taken together, seek authority to remove and release all claims against the Initial Trustee, to retain Mr. O'Connor as the hand-picked Replacement Trustee and to amend the agreement governing the Litigation Trust (the "Litigation Trust Agreement") so that it more explicitly provides that the Replacement Trustee has no duty to pursue causes of action against the Mezzanine Lenders. The predicate for the relief sought in the motions is that the litigation has been prosecuted by the Initial Trustee in good faith, but with insufficient attention to the relative costs and benefits of the effort and with only marginal, if any, prospects of realizing any material benefits to the Trust Beneficiaries.

The goal is a simple one, although the means of implementation are a bit cumbersome: The Trust Beneficiaries want to bring to an end what they view as wasteful litigation pending against the Mezzanine Lenders and to provide certainty that litigation of this sort will be effectively foreclosed and not pursued again in the name of the Litigation Trust. In an unconventional approach to managing the burdens of litigation brought by the Initial Trustee, the parties have proposed what they euphemistically describe as a "parting of the ways": rather than having the Court decide whether the litigation should be dismissed based on fully briefed motions to dismiss,[3] the Trust Beneficiaries are looking to achieve a predictable and final

---

[2] If that record turns out to be insufficient, however, these motions may be denied with the suggestion that the documentation be modified to allow the Replacement Trustee to exercise his unfettered discretion in pursuing all litigation claims for the benefit of the Trust Beneficiaries. He would then have the ability, but not the obligation, to discontinue the litigation against the Mezzanine Lenders.

[3] A hearing on these motions is now listed for oral argument in late September. One of the many issues presented is whether the Litigation Trust has the legal right to pursue any claims against the Mezzanine Lenders. Dismissal is sought on the basis of language in the Plan that gives these defendants an allowed claim in the amount of $3.3

7

litigation outcome by indirect transactional means by dismissing not the complaint but the Initial Trustee himself and then clarifying (although some might say redefining) the prosecutorial discretion that the Replacement Trustee may exercise.  In effect, the defendants and other Trust Beneficiaries are removing the plaintiff and replacing him with someone new who, as a result of language added to the Litigation Trust Agreement, will be authorized without risk to simply discontinue the litigation as to the Mezzanine Lenders.

The Initial Trustee and his counsel are willing to cooperate with this well-choreographed simultaneous exit of one trustee, entrance of another trustee and revisionist description of the causes of action that the Litigation Trust permissibly may pursue provided that they are given releases from all liability arising out of their services to the Litigation Trust.  Given the conflicting points of view that have been expressed regarding the merits of the litigation brought by the Initial Trustee against the Mezzanine Lenders, that is an entirely understandable and acceptable condition.  Any effective succession of authority for the Litigation Trust, at least in this instance, must include a release of all claims.

It is interesting to note that despite the bitter disagreements that have characterized the relationships since the creation of the Litigation Trust, no party having an economic stake in the Litigation Trust Assets (defined below) opposes any of the integrated terms of this orderly, structured transition from one regime of trust administration to the next.  That is a significant factor weighing in favor of granting these related motions.  Nonetheless, the Court needs the comfort of a fully-developed record that supports a finding that an unbiased fiduciary for the

---

billion.  They submit that the Initial Trustee is precluded from doing anything in derogation of the Plan's allowance of this claim and that the authority to pursue claims against the Mezzanine Lenders was never transferred to and did not become an asset of the Litigation Trust.  The Court is not addressing the substance of this argument in this decision, although presumably the argument is one of the factors underlying the proposed amendment of the Litigation Trust Agreement.  Should that amendment ultimately be approved, the Court will not be called upon to decide any of the arguments made in the Mezzanine Lenders' motions to dismiss.

Litigation Trust, with knowledge of the findings of the Examiner's Report (defined below) and exercising sound judgment, would choose not to prosecute causes of action against the Mezzanine Lenders.

Assuming that such a supplemental record is provided to the Court's satisfaction, both motions can then be granted and the parties can proceed to implement their related agreements and achieve a clean break. The Initial Trustee will exit the scene with a release of all claims.[4] The Replacement Trustee will take over with no duty to prosecute the pending litigation against the Mezzanine Lenders and will be able to focus attention on the prudent pursuit of colorable causes of action. The Litigation Trust should then be better positioned to serve the economic interests of the Trust Beneficiaries. The only thing missing is a more complete and compelling showing in support of the conclusion that amending the Litigation Trust Agreement in the manner proposed is appropriate under the circumstances.

*Factual Background and Procedural History*

Extended Stay, Inc. and affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on June 15, 2009 and February 18, 2010 commencing chapter 11 cases (the "Chapter 11 Cases").

On September 29, 2009, Ralph R. Mabey was appointed as the examiner (the "Examiner") in the Chapter 11 Cases. *See* ECF No. 455. The Examiner filed his report on April 10, 2010 (the "Examiner's Report"). *See* ECF No. 913. Among other things, the Examiner's Report identifies potential causes of action arising out of prepetition leveraged buyout transactions involving the Debtors.

---

[4] Since the date of argument in this matter, the scope of the releases to be provided to the Initial Trustee and the other Releasees, as defined in the Separation Agreement (defined below) has been made somewhat narrower. *See* Affidavit of Hobart G. Truesdell ¶ 22, ECF No. 1664.

The Debtors' Plan provided for the creation of the Litigation Trust and contemplated the execution of the Litigation Trust Agreement. *See* Plan §§ 1.87, 6.17. As defined in the Plan, the beneficiaries of the Litigation Trust include (i) the Mortgage Facility Trust, (ii) the holders of the Mezzanine Facilities Claims, (iii) the Indenture Trustee, and (iv) the holders of the General Unsecured Claims. *See* Plan §§ 1.87, 1.90.

The Litigation Trust was established for the purpose of liquidating and distributing the Litigation Trust Assets, as defined in section 1.89 of the Plan. *See* Plan §6.17(b). As described in the Plan, "Litigation Trust Assets" include "(i) all claims and causes of action of the Debtors or the Debtors in Possession under sections 502(d), 542 through 551, and 553 of the Bankruptcy Code, and (ii) any other potential claims, causes of action, charges, suits or rights of recovery referenced in the Examiner's Report" with certain exceptions (the "Litigation Trust Assets"). *See* Plan § 1.89.

Certain documents that implemented and supplemented the Plan (the "Plan Supplement") were filed within the weeks prior to confirmation of the Plan. The Litigation Trust Agreement was one of the documents that comprised the Plan Supplement. The Plan was confirmed by an order entered on July 20, 2010 (the "Confirmation Order"). *See* ECF No. 1172. The terms of the Plan and Plan Supplement were incorporated by reference into, and became an integral part of, the Confirmation Order. *See* Confirmation Order ¶ 1.

In accordance with the Plan, CWCapital Asset Management LLC, as special servicer (the "Special Servicer") for holders of certain commercial mortgage pass-through certificates and the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Creditors' Committee") selected Walker, Truesdell, Roth & Associates, Inc. and Hobart G. Truesdell as the

Initial Trustee.  *See* Plan § 1.93.  The Litigation Trust Agreement later was signed by the Debtors, the Creditors' Committee, the Special Servicer and the Initial Trustee.[5]

On June 14 and 15, 2011, the Initial Trustee commenced five separate actions seeking damages in relation to the change in control of Extended Stay Hotels that occurred in June 2007 – four complaints were filed as adversary proceedings in this Court,[6] and the fifth was filed in the New York State Supreme Court, before being removed.[7]  On November 1, 2011, the defendants in the adversary proceedings filed motions to dismiss that have been adjourned on several occasions and are scheduled for hearing on September 25, 2012.

On July 5, 2012, the Special Servicer, the Creditors' Committee and the Initial Trustee filed the Joint Motion for Approval of Separation Agreement (the "Separation Motion"), which seeks approval of a Separation Agreement, dated June 29, 2012 (the "Separation Agreement"), among (i) the Initial Trustee, (ii) the Litigation Trust, (iii) the Creditors' Committee, (iv) the Special Servicer, and (v) counsel to the Initial Trustee, Baker & Hostetler LLP and Forman Holt Eliades & Ravin LLC.  *See* Separation Mot. 2-3, ECF No. 1634.  Simultaneously, the Special Servicer and the Creditors' Committee also filed their Joint Motion for Approval of Appointment of Successor Litigation Trustee and Amendment to Litigation Trust Agreement, dated July 5,

---

[5] The executed version of the Litigation Trust Agreement is attached as Exhibit C to the Joint Motion of the Special Servicer, the Creditors' Committee, and Initial Litigation Trustee for Approval of Separation Agreement, dated July 5, 2012, ECF No. 1634 and as Exhibit A to the Joint Motion of the Special Servicer and the Creditors' Committee for Approval of Appointment of Successor Litigation Trustee and Amendment to Litigation Trust Agreement, dated July 5, 2012, ECF No. 1636.

[6] *See Walker, Truesdell, Roth & Assocs., et al. v. The Blackstone Group, L.P., et al. (In re Extended Stay Inc.)*, Adv. Pro. No. 11-02254 (JMP), ECF No. 1; *see Walker, Truesdell, Roth & Assocs., et al. v. The Blackstone Group, L.P., et al. (In re Extended Stay Inc.)*, Adv. Pro. No. 11-02255 (JMP), ECF No. 1; *see Walker, Truesdell, Roth & Assocs., et al. v. Lightstone Holdings, LLC, et al. (In re Extended Stay Inc.)*, Adv. Pro. No. 11-02256 (JMP), ECF No. 1; *see Walker, Truesdell, Roth & Assocs., et al. v. Archon Group, L.P., et al. (In re Extended Stay Inc.)*, Adv. Pro. No. 11-02259 (JMP), ECF No. 1.

[7] *See Walker, Truesdell, Roth & Assocs., et al. v. The Blackstone Group, L.P., et al. (In re Extended Stay Inc.)*, Adv. Pro. No. 11-02398 (JMP), ECF No. 1.

2012 (the "Replacement/Amendment Motion"). *See* Replacement/Amendment Mot., ECF No. 1636. The Replacement/Amendment Motion seeks approval of (i) Finbarr O'Connor of Capstone Advisory Group LLC as Successor Litigation Trustee and (ii) a proposed Amendment to the Litigation Trust Agreement (the "Litigation Trust Agreement Amendment").

A number of Trust Beneficiaries have filed statements or joinders requesting that the Court approve the two motions.[8] On July 17, 2012, Arbor ESH II, LLC, Arbor Commercial Mortgage, LLC, Atmar Associates, LLC, Gilda One LLC, Ron Invest LLC, ABT-ESI LLC, Mericash Funding LLC, Princeton ESH LLC, Guy R. Milone, Jr., Joseph Chetrit and Joseph Martello (the "Arbor Parties") filed an objection to the Replacement/Amendment Motion (the "Arbor Objection"). *See* ECF No. 1651. The Special Servicer and the Creditors' Committee thereafter filed a Joint Reply in Further Support of the Replacement/Amendment Motion (the "Reply"). *See* ECF No. 1660.

A hearing regarding the two motions took place on July 24, 2012 (the "Hearing"). Subsequent to the Hearing, the Court requested supplemental declarations on the issue of good faith. The Initial Trustee submitted such a declaration containing verified statements of Mr. Truesdell that are sufficient to support a finding of good faith and noting certain changes in the scope of releases to be exchanged upon approval of the proposed substitution of trustees.[9]

---

[8] *See* Joinder of Keybank National Association to Replacement/Amendment Motion and Response to Separation Motion, dated July 17, 2012, ECF No. 1647 (the "Keybank Joinder"); Statement of Position and Joinder of the Maiden Lane Parties in Certain Arguments Made by Keybank National Association in the Keybank Joinder, dated July 17, 2012, ECF No. 1648; Joinder of Archon Group L.P. in Keybank Joinder, dated July 17, 2012, ECF No. 1649; Joinder of Square Mile Capital Management LLC, ESH Owner LLC, Starwood Capital Group Global, L.P., Debt-U ESH, L.P. and Debt-II ESH, L.P. to Keybank Joinder, dated July 17, 2012, ECF No. 1650; Statement of the Bank of America Parties, the JPMorgan Parties, and Ebury Finance Limited in Support of the Keybank Joinder, dated July 17, 2012, ECF No. 1653; Joinder of Line Trust Corporation and Deuce Properties, LTD in Certain Arguments Made by Keybank National Association in the Keybank Joinder, dated July 17, 2012, ECF No. 1654.

[9] In response to the Court's request for additional evidence to support a finding that the parties have been acting in good faith in connection with the matters described in the motions, Hobart Truesdell submitted a supplemental affidavit on August 6, 2012 that sets forth his recollection of the facts and circumstances of his stewardship as Initial Trustee of the Litigation Trust, including the process that he followed in retaining legal counsel and his decision,

12

*Discussion*

*The Proposed Amendments to the Litigation Trust Agreement Are Permissible*

The proposed amendments to the Litigation Trust Agreement are permitted by the plain language of the Plan.  Section 5.5 of the Plan contemplates that the Plan Supplement together with the exhibits to the Plan Supplement may be amended after the effective date of the Plan and states that the authority to amend such documents "shall be as provided in such Plan Supplement … ."  Plan §5.5.  The Litigation Trust Agreement provides that "[a]ny substantive provision … may be amended or waived by the Litigation Trustee, subject to prior approval of the holders of a majority of the Class A Interests and holders of the majority of the Class B Interests, with the approval of the Bankruptcy Court upon notice and an opportunity for a hearing … ."  Litigation Trust Agreement § 11.1(b).  The Class A Interests are the interests in the Litigation Trust distributed to the Special Servicer and the Class B Interests are all other interests in the Litigation Trust, including those held by certain Mezzanine Lenders.  *See* Litigation Trust Agreement § 2.1; Reply ¶ 5.  A majority of the Class A Interests and Class B Interests have approved the amendments.  *See* Reply ¶ 5.

In the Arbor Objection, the Arbor Parties argue that proposed section 1.2(d) of the Litigation Trust Agreement Amendment is an impermissible modification of the Plan that seeks to change the Plan's definition of Litigation Trust Assets.  Arbor Obj. ¶ 11.  Proposed section 1.2(d) provides that "Notwithstanding anything else contained in the Plan, the Confirmation

---

with the advice of counsel, to prosecute certain litigation claims against the Mezzanine Lenders. *See* Affidavit of Hobart G. Truesdell, ECF No. 1664.  Based on the declaration from Mr. Truesdell, the Court believes that an adequate showing has been made that the Initial Trustee has acted throughout his tenure in good faith and should be entitled to a release of potential claims for any acts and omissions during that tenure.  It is also clear, however, that the Mezzanine Lenders have reason to quarrel with certain judgments made by the Initial Trustee.  This declaration by Mr. Truesdell is naturally limited to the role of the Initial Trustee and does not offer any guidance regarding the wisdom and utility of continuing to pursue the pending litigation against the Mezzanine Lenders nor does it address the decision of the Trust Beneficiaries to amend the Litigation Trust Agreement to preclude such litigation.  As noted in this decision, these topics will be the subject of future hearings.

Order or this Litigation Trust Agreement, the Litigation Trust Assets, as defined in section 1.89 of the Plan, shall not include … the Mezzanine Lenders Adversary Proceedings."[10] Litigation Trust Agreement Amendment ¶ 4. This amendment effectively removes causes of action against the Mezzanine Lenders from the definition of Litigation Trust Assets.

That change is consistent with the structure of the Plan and does not amend the Plan (although it does amend the Litigation Trust Agreement). Section 6.17 of the Plan specifies that, "[t]he Litigation Trustee, on behalf of the Litigation Trust, shall have the exclusive right, authority and discretion to institute, prosecute, abandon, settle or compromise any and all causes of action that constitute Litigation Trust Assets without the consent or approval of any third party and without any further order of the Bankruptcy Court, *except as otherwise provided herein or in the Litigation Trust Agreement*." Plan § 6.17(e) (emphasis added).

The Plan also states that "[i]n the event of any conflict between the terms of this Section 6.17 and the Litigation Trust Agreement, the terms of the Litigation Trust Agreement shall govern." Plan §6.17(a). Accordingly, the Plan by its terms specifically gives priority to the Litigation Trust Agreement and anticipates that authority and discretion of the trustee of the Litigation Trust with respect to the Litigation Trust Assets will be governed by language of the Litigation Trust Agreement. The Plan provides that this language operates independently and may be amended in accordance with its own terms. *See* Plan §§ 5.5 and 6.17(e).

As expressed by counsel to the Special Servicer at the Hearing, the Litigation Trust is unusual in not having an advisory committee of any kind. *See* Litigation Trust Agreement § 1.1(c); *see also* 7/24/12 Hr'g Tr. 52:11-18. In place of an advisory committee, the Special Servicer and the other Trust Beneficiaries have protection pursuant to section 3.5(c) of the

---

[10] The Mezzanine Lender Adversary Proceedings are defined in the Litigation Trust Agreement Amendment as Adv. Proc. Case Nos. 11-02256 (JMP) and 11-02259 (JMP).

14

Litigation Trust Agreement, which provides that the [Initial] Trustee and any subsequent Litigation Trustee (as defined therein) may be removed for cause by the affirmative vote of the Class A and Class B Interests[11]. *See* Litigation Trust Agreement § 3.5(c). The Litigation Trust Agreement also includes a mechanism to modify substantive provisions of the Litigation Trust Agreement, provided that such change would not adversely affect the distributions to be made to the Trust Beneficiaries. *See* Litigation Trust Agreement § 11.1(b).

The appointment of a Replacement Trustee and the addition of proposed § 1.2(d) to the Litigation Trust Agreement impacting the scope of authority of the Replacement Trustee to prosecute certain claims as Litigation Trust Assets under the Plan (i) is a permissible amendment to a Plan Supplement document in accordance with section 5.5 of the Plan, (ii) is a permissible amendment pursuant to section 11.1(b) of the Litigation Trust Agreement and (iii) otherwise is consistent with section 6.17 of the Plan. This flexibility to adjust the Litigation Trust Agreement also functions as a means to protect the interests of Trust Beneficiaries under a structure that does not include an advisory committee to interact with and help guide the trustee.

In giving consideration to the Arbor Objection, the Court has taken note of the fact that the Arbor Parties are not themselves beneficiaries of the Litigation Trust, and, in that sense, their position may be entitled to less weight than the objection of a beneficiary. The impact on the Arbor Parties is at best indirect and may represent the loss of other potentially responsible parties that one day might be willing to offer something to settle the litigation. But the standing and motivation of the Arbor Parties have not been factors in the Court's determination that the Litigation Trust Agreement may be amended independently of the Plan itself.

---

[11] The Initial Trustee disputes the position of the Trust Beneficiaries that cause exists for removal under this provision.

Such an amendment would still be permissible even if an objection comparable to the Arbor Objection had been interposed by one of the Trust Beneficiaries.  In addition to the reasons already noted as to separate provisions in the Litigation Trust Agreement that allow for the document to be amended, the proposed amendments otherwise are consistent with the voting requirements of the Litigation Trust Agreement that authorize amendment with the approval of the majority of the Class A Interests held by the Special Servicer and the majority of the Class B Interests held by the remaining beneficiaries of the Litigation Trust.  *See* Litigation Trust Agreement § 11.1(b).  As a result, even if there had been an objecting beneficiary, such an objection would not be sufficient by itself to block an amendment of the Litigation Trust Agreement.

*The Proposed Amendment, While Permissible, Raises Questions That Still Need To Be Answered*

Despite the fact that votes of the Class A and Class B Interests are sufficient in any event to authorize the Litigation Trust Agreement Amendment, there are some appearance issues that mandate greater scrutiny of the proposed amendment, and this is true regardless of standing issues or votes that could have overwhelmed the dissenting voice of a hypothetical objecting beneficiary.

The Special Servicer and the Mezzanine Lenders are taking no chances here that a trustee, in exercising his or her fiduciary duties to the Trust Beneficiaries, might conclude that it would be appropriate to press the very same claims that were asserted by the Initial Trustee.  The Litigation Trust Agreement Amendment eliminates that risk, and does so in a calculated fashion.  However, that extra margin of protection for the Mezzanine Lenders also makes the entire structure seem somewhat contrived.  Replacing the trustee and then clipping his wings seems to be a severe remedy at this stage of litigation that has been pending for over a year.

From the Court's perspective, it would have been a more desirable approach for the Replacement Trustee to have been trusted to do the right thing and to have been allowed the discretion to think independently about the Examiner's Report, the Plan and the Litigation Trust Assets without the strict constraints imposed by the amendments that are before the Court. It is troublesome, even in the context of a consensual arrangement designed to benefit creditors, that the Mezzanine Lenders felt the need to tie the hands of the Replacement Trustee. It simply does not look right, especially so long after the briefing of the motions to dismiss, and has the appearance of a strategy designed to avoid a judicial determination on the merits.

The clarification of the Replacement Trustee's discretion to act with respect to the Litigation Trust Assets is permissible under the applicable documents, but the companion motions need more of an explanation to not appear to be a self-interested manipulation of the process. Subject to the conditions noted in this paragraph, the Court is inclined to approve the two motions: it is the best and seemingly the only practical outcome for the Trust Beneficiaries, especially in light of the heavy expenditures to date in connection with the efforts of the Initial Trustee in the pending litigation against the Mezzanine Lenders. The Court believes that transactional fixes to vexing problems need to both be right and to appear to be right. Thus, as a condition to approval of the motions, the Court will schedule an evidentiary hearing and a related chambers conference at which the Replacement Trustee will have an opportunity to explain his independent litigation judgment regarding the prospects for pursuing successfully the pending litigation against the Mezzanine Lenders for the benefit of Trust Beneficiaries in a cost effective manner.

*Conclusion*

The Court is prepared to approve the motions, but before doing so wants the Replacement Trustee to offer his best judgment as to the merits of the pending litigation and the likelihood of recovering anything of material value from the Mezzanine Lenders.  The Court could do that itself by ruling on the pending motions to dismiss, but they currently are not ripe for determination and are being avoided by the current procedural maneuvers of the movants.  The issue here is not what the Court might ultimately decide as to the merits of claims against the Mezzanine Lenders but rather how an independent fiduciary, acting without coercion, would view those claims in practical terms.  In short, in consideration of the many defenses raised by the Mezzanine Lenders, does an independent fiduciary for estate creditors believe that the claims in question should be abandoned at this stage of the litigation for no consideration?

Other interested parties will have an opportunity to participate in both the evidentiary hearing and chambers conference.  The hearing and conference will take place during the week of August 20, 2012.  Counsel shall make scheduling arrangements with Chambers by setting up a conference call to occur during the week of August 13, 2012.


Dated: New York, New York                    *s/ James M. Peck*
      August 8, 2012                          Honorable James M. Peck
                                       United States Bankruptcy Judge